# EXHIBIT A

FILED DATE: 1/11/2021 12:00 AM   2021L000284

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED
1/11/2021 12:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
11772324

ABDUL MOHAMMED,

PLAINTIFF,

vs.

JENNER & BLOCK LLP, UBER TECHNOLOGIES INC, RASIER LLC, LITTLER MENDELSON P.C., ROMANUCCI AND BLANDIN LLC, DARA KHOSROWSHAHI, TRAVIS KALANICK, RYAN GRAVES, NICK GICINTO, CRAIG CLARK, MAT HENLEY, ANTONIO ROMANUCCI, JENNIFER SCHILLING, JODI BOQUIST, REID SCHAR, MEGAN POETZEL AND DANIEL BOBIER INDIVIDUALLY AND AS AGENTS OR SERVANTS OR VOLUNTEERS OR ASSOCIATES OR CONTRACTORS OR EMPLOYEES OF UBER TECHNOLOGIES INC, RASIER LLC, LITTLER MENDELSON P.C, ROMANUCCI AND BLANDIN LLC AND JENNER & BLOCK LLP,

DEFENDANTS

2021L000284

COMPLAINT WITH JURY DEMAND

## COMPLAINT AT LAW

### PARTIES, JURISDICTION, AND VENUE

1. The Plaintiff is a protected person within the meaning of the Americans with Disabilities Act, the Rehabilitation Act of 1973, Section 504, the Illinois Adult Protective Services Act, and the Federal Traumatic Brain Injury Reauthorization Act of 2014.

2. The Defendants are located in the jurisdiction of this court and they are conducting business in the jurisdiction of this court and further one or more actions alleged in this complaint occurred in the jurisdiction of this court. Hence this court has jurisdiction over this matter and hence venue is proper.

### FACTUAL BACKGROUND

3. Plaintiff filed a complaint against Defendants Uber Technologies Inc (hereinafter Uber), Rasier LLC (hereinafter Rasier), Travis Kalanick (hereinafter Kalanick), and Ryan Graves (hereinafter Graves) in District Court of the United States for Northern District of Illinois, Eastern Division (hereinafter District Court) on February 24, 2016 and that case remains pending in District Court. See *Mohammed v Uber Technologies et.al*, Case # 16-cv-2537, N.D.Ill (hereinafter *Mohammed I*).

FILED DATE: 1/11/2021 12:00 AM    2021L000284

4.    There is a dispute regarding an alleged Arbitration Agreement which the Defendants allege in *Mohammed I* that the Plaintiff entered with the Defendants but anyhow the alleged Arbitration Agreement in the pertinent part states, "This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce." The instant complaint has nothing to do with a transaction involving interstate commerce and the instant complaint only deals with intentional crimes, intentional torts, and various other intentional violations committed by the Defendants against the Plaintiff, hence the instant complaint is not covered by the disputed alleged Arbitration Agreement.

5.    Further, there is not even an alleged Arbitration Agreement against Defendants Littler Mendelson P.C. (hereinafter Littler), Jenner & Block LLP (hereinafter J & B), Romanucci and Blandin LLC (hereinafter R & B), Antonio Romanucci (hereinafter Romanucci), Jennifer Schilling (hereinafter Schilling), Jodi Boquist (hereinafter Boquist), Reid Schar (hereinafter Schar), Megan Poetzel (hereinafter Poetzel) and Daniel Bobier (hereinafter Bobier).

6.    The actions alleged in this complaint are either stand-alone new allegations that occurred after the filing of *Mohammed I* and/or actions which were committed by the Defendants in retaliation against the Plaintiff for *Mohammed I*.

7.    On November 10, 2016, the Plaintiff had an appointment with a law firm named Romanucci & Blandin LLC located at 321 North Clark Street, Suite 900, Chicago, Illinois 60654. The Plaintiff was waiting in the conference room to see Romanucci. A Security Officer of the building along with Romanucci entered the conference room and the Security Officer informed the Plaintiff that they have a problem with him and asked him to come out of the conference room. Then the Security Officer took the Plaintiff toward the elevator and shoved him into the elevator and brought him down to the Ground Floor and pushed the Plaintiff towards the exit of the building and informed him that he has an order from Defendant Littler Mendelson PC to remove him from the building. Littler's office is located at 321 North Clark Street, Suite 1100, Chicago, Illinois 60654. The Security Officer also informed the Plaintiff that if he again sets foot in the building, he will not go back home on his feet. Littler has added the Plaintiff's information to the Security System and when the Security System scans his ID, his name comes up, that he should not be allowed in the building. Plaintiff called Romanucci and asked him about this matter and he was informed that Littler is not allowing the Plaintiff to enter the building so Romanucci is not able to represent the Plaintiff. This is retaliation against the Plaintiff as naked as it gets for filing of *Mohammed I*. The masterminds of this retaliation against the Plaintiff are the Defendants other than Dara Khosrowshahi (hereinafter Khosrowshahi), J & B, Schar, Poetzel, and Bobier.

8.    Before the Security Officer and Romanucci entered the conference room to remove the Plaintiff from the building, the Plaintiff heard that Security Officer saying to Romanucci, "Littler and Mendelson informed him that he is a criminal and he be removed from the building immediately".

9.    Plaintiff is alleging that Uber was following the Plaintiff's location through its Uber Rider and Driver App which was installed on the Plaintiff's phone as described below and when Uber found out through the Uber Rider and Driver App which was installed on the Plaintiff's phone that the Plaintiff is inside the building located at 321 North

Clark Street, Chicago, Illinois 60654, informed Littler, Schilling and Boquist that the Plaintiff is inside the building located at 321 North Clark Street, Chicago, Illinois 60654.

10. The actions as alleged in this complaint were committed by the Defendants with prejudice towards Plaintiff's Race, Religion, and Disabilities and in particular with prejudice towards Plaintiff's National Origin and Ancestry which is described in *Mohammed I*. Defendants committed actions as described in *Mohammed I* and the instant complaint with a perceived belief that the Plaintiff is not a United States Citizen, he is an immigrant and/or undocumented immigrant and their another perceived belief that people who are not United States Citizens, immigrants and/or undocumented immigrants will generally not take any legal action if intentional crimes are committed against them, if intentional torts or violations are committed against them. Undocumented immigrants generally do not report to the law enforcement agencies or take any kind of legal action if crimes, intentional torts, or violations are committed against them due to their fear of being removed from the United States due to their undocumented status.

11. **Uber's spying of its Drivers and Lyft Drivers to bring Drivers to Uber's Platform and effectively under their control;**

Further Uber spied on its drivers including the Plaintiff and Lyft drivers by intercepting, accessing, monitoring and/or transmitting electronic communications and whereabouts of its drivers including the Plaintiff and Lyft drivers to lure Lyft drivers and drivers who worked both for Uber and Lyft, to exclusively drive for Uber, all in violation of Federal Wiretap Act as amended by the Electronic Communications Privacy Act (the "ECPA"), the Federal Stored Communication Act (the "SCA"), and common law invasion of privacy. See the Lawsuit against Uber in United States District Court Northern District of California, San Francisco Division, Case No.: 3:17-CV-02264, as Exhibit-H. Uber's violations as described in Exhibit-H were committed to destroy its only remaining competitor, Lyft, and to take away the only remaining option other than Uber, for the drivers. When Uber spied on its drivers including this Plaintiff, that is not only a crime but such a crime was committed to control the drivers.

12. **Waymo LLC v. Uber Technologies, Inc. (3:17-CV-00939) (N.D.Cal);**

Further during the pendency of the *Waymo Case,* Richard Jacobs, and Uber's former Manager of Global Intelligence informed his lawyer how Uber stole trade secrets from Waymo, spied on drivers and other individuals and other companies, and committed various crimes with an intent to cause harm to other individuals, companies and to bring drivers of other Ride-Sharing Companies to come and drive for Uber. Please see the letter from Jacobs' lawyer to Uber as Exhibit-I for a detailed analysis of Uber's criminal activities to destroy other Ride-Sharing Companies and to bring all the drivers in their control. Uber settled with Jacobs for $4.5 Million + a Job at Uber and Uber also paid $3 Million to Jacobs' lawyer. Uber also settled with Waymo for $245 Million. Uber's lawyer, Angela Padilla, said in court, the allegations in the letter had seemed "quite fantastical" to her. Jacobs testified in the *Waymo* case, there was an intelligence operation inside Uber to research competitors and gather data about them, and use technology to avoid a paper trail. In court, Padilla said Uber viewed the Jacobs' letter as a tactic by a disgruntled former employee to secure money from the company. Padilla said, "We felt that Jacobs was trying to extort the company." Uber eventually settled the matter by paying Jacobs $4.5 million, including a year-long consulting contract, and a further

FILED DATE: 1/11/2021 12:00 AM    2021L000284

3

FILED DATE: 1/11/2021 12:00 AM 2021L000284

$3 million to his lawyer. Judge Alsup said to Padilla, "That is a lot of money". "And people don't pay that kind of money for BS. And you certainly don't hire them as consultants if you think everything they've got to contribute is BS." As per Exhibit-I, Uber fraudulently impersonates riders and drivers on competitors' platforms, hacks into competitors' networks, and conducts unlawful wiretapping (each tactic discussed in additional detail in Exhibit-I). These tactics are used to obtain trade secrets about:

    a)  the function of competitors' Apps;

    b)  vulnerabilities in the competitors' App, including performance and function;

    c)  vulnerabilities in competitors' App security;

    d)  supply data, including unique driver information;

    e)  pricing structures and incentives.

As per Exhibit-I, Uber worked to unlawfully obtain trade secrets from its competitors and 1) remotely accessed confidential corporate communications and data of its competitors, 2) impersonated riders and drivers including the Plaintiff on competitors' platform to derive key functions of rider and driver apps, 3) stole supply data by identifying possible drivers to boost Uber's market position, and 4) acquired codebase which allowed Uber to identify code used by its competitors' to understand in greater detail how their app functioned. By credibly impersonating both riders and drivers including the Plaintiff, Uber could request thousands of rides in a given geographic area to study the responsiveness and capability of the app, price quotes, and disposition of available drivers. Uber further impersonated prospective customers to ascertain the identity of drivers through their names including the Plaintiff, license plate numbers, and make/model of their vehicles. Uber then used this information to recruit drivers from their competitors' to Uber's platform. Uber also obtained key technical details about how its competitors would troubleshoot issues in comparison to Uber, and then used that data to develop contingencies to slow or impede competitors' business operations and also caused injury to the drivers including the Plaintiff to bring them to Uber's platform and effectively under their control. Uber employed tactics to obtain trade secrets, with a focus on stealing key supply data to boost Uber's pool of drivers, the function of the competitors' app, and its vulnerabilities, and then used that data to develop an aggressive "counterintelligence" campaign to slow competitors' efforts. Uber used special SIM cards to collect intelligence on competitors' trade secrets and to obtain private and protected information about the drivers including the Plaintiff. Specifically, the SIM cards were used to fraudulently impersonate customers on competitors' rider and driver applications. By credibly impersonating riders and drivers including the Plaintiff, Uber could:(i) develop processes to conduct thousands of data calls to reverse engineer products; (ii) identify and recruit supply (i.e. partner drivers); (iii) and derive key competitive business metrics to understand subsidies, available supply, processes for managing surge, and competitive market position. For instance, Uber would be able to study key technical details of how competitors' had engineered solutions to common problems ride-sharing providers have at scale, and in the context of dense population centers. Uber would then use that data to identify possible improvements, gain competitive advantages, or exploit weaknesses of competitors' platforms. Notably, Uber identified vulnerability in their competitors' system and collected

4

comprehensive supply data, including the license, name, and contact information for every single driver including the Plaintiff. Further Uber Executives conspired and acted in furtherance of the conspiracy to hack the database of its competitors and collected all driver information including the Plaintiff, to have a perfect set of possible drivers for Uber's platform which boosted supply when Uber targeted these operators and converted them to drivers for Uber. As discussed above, Uber used driver and customer impersonation to steal competitor trade secrets. This conduct not only violated the trade secrets law discussed above but also wire fraud law at 18 U.S.C § 1343, and California Penal Code § 528.5. Under this Section, it is unlawful to knowingly and without consent, credibly impersonate another actual person through the Internet or email, to harm, intimidate, threaten, or defraud someone. This conduct further exposes a company to civil liability under Section 528.5(e). This impersonation was intended to fraudulently steal business and bring drivers under its control and it was an "unlawful, unfair, or fraudulent business act and practice. California Bus & Prof Code § 1720. It is also in violation of the CFAA and related laws, discussed in Exhibit-I. Along with the theft of trade secrets, Jacobs observed Uber personnel, through their LAT operatives and their vendors; knowingly impersonate actual people over the Internet to keep tabs on competitors and opposition groups by accessing closed social media groups. This impersonation had the purpose of fraudulently stealing business and gaining a competitive advantage. During the summer of 2016, Jacobs learned that Uber's intelligence-gathering teams in other locations impersonated partner-drivers including the Plaintiff or taxi operators to gain access to private WhatsApp group messaging channels. Jacobs further investigated this conduct by searching Uber's internal network, TeamDot. Further Uber created a PowerPoint presentation which included a section on "intel gathering," a slide on driver chat group infiltration, and a link to the specific procedures for infiltrating driver-partner chat groups (including the impersonation of actual driver-partners including the Plaintiff) to collect information on growing discontent and possible opposition activities. Upon receipt, Jacobs disclosed the playbook to Craig Clark, who replied, "Do I want to know what it is?" Jacobs voiced concern as to its legality, noting that it encouraged "intel gathering" and described how to penetrate WhatsApp groups. Clark only replied that "this is happening everywhere and I'm not ready to deal with it." Clark did not investigate the presumed criminal violation. In late January and early February 2017, as part of SSG's virtual operations capability (VOC), Uber's agents posed as sympathetic protestors interested in participating in actions against Uber. By doing this, illegally gained access to closed Facebook groups and chatted with protesting drivers in an attempt to understand their nonpublic plans and intentions. All the actions described in Exhibit-I demonstrate how Uber spied on drivers including the Plaintiff and committed crimes left, right, and center with no fear whatsoever. An unredacted version of Exhibit-I can reveal further about Uber's activities.

13. **Sarbanes-Oxley Violations, Evidence Spoliation, and Other Discovery Abuses by Uber;**

The Sarbanes-Oxley Act of 2002 states that:

"whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case

FILED DATE: 1/11/2021 12:00 AM    2021L000284

filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both".

Sarbanes-Oxley Act of 2002, Pub. L. 107-204, § 802, 116 Stat. 745, 800 (2002). Codified at 18 U.S.C. § 1519, this provision applies to private companies and has a broad reach that is not limited to commenced litigation. Section 1519 "covers conduct intended to impede any federal investigation or proceeding *including one not even on the verge of commencement." Yates v. United States, -* U.S. --, 135 S.Ct. 1074, 1087 (2015) (emphasis added). Similarly, the California Rule of Professional Conduct 5-2320 prohibits members of the bar from suppressing evidence that the member or the member's client has a legal obligation to produce. Uber has knowingly violated 18 U.S.C § 1519 and continues to do so. Craig Clark, Uber's Legal Director for ThreatOps, and Mat Henley, Uber's Director of Threat Operations (ThreatOps), led Uber's efforts to evade current and future discovery requests, court orders, and government investigations in violation of state and federal law as well as ethical rules governing the legal profession. Clark devised training and provided advice intended to impede, obstruct, or influence the investigation of several ongoing lawsuits against Uber and in relation to or contemplation of further matters within the jurisdiction of the United States. Early in his tenure, Jacobs advocated for a secure and encrypted centralized database to ensure confidentiality and recordkeeping to provide access to intelligence for ThreatOps personnel. He presented a draft proposal to managers Henley and Clark. However, discussions broke down immediately because they objected to preserving any intelligence that would make preservation and legal discovery a simple process for future litigants. Clark emphasized that this was "exactly what we don't want to do … create [a paper trail] that could later be discoverable." Clark noted the errors of past collections where Uber was forced to turn over documents. He alluded to the lessons learned from the "Ergo Investigation" and noted that encryption alone was not enough to avoid discovery. Nick Gicinto added his own objections, stating that while his team would be willing to share some details on collections, including sources and methods of collections on the ground in foreign countries, they were not willing to preserve the raw intelligence on Uber's network. Jacobs then became aware that Uber, primarily through Clark and Henley, had implemented a sophisticated strategy to destroy, conceal, cover-up, and falsify records or documents with the intent to impede or obstruct government investigations as well as discovery obligations in pending and future litigation. Besides violating 18 U.S.C. § 1519, this conduct constitutes an ethical violation.

14. **Destruction and Concealment of Records Using Ephemeral Communications;**

Clark and Henley helped implement and directed the almost-exclusive use of ephemeral and encrypted communications software, including WickrMe (and later Wickr SCIF), to communicate sensitive information within ThreatOps. Wickr Inc. is a San Francisco-based company that describes its product as a "communications platform designed to empower greater control over data security … [using] multi-layers of peer-to-peer encryption". Henley and Clark implemented this program of ephemeral and encrypted communications for the express purpose of destroying evidence of illegal or unethical practices to avoid discovery in actual or potential litigation. The Wickr application uses robust encryption which prevents the information from being viewed by anyone except the intended recipient, but more importantly, programs messages to self-destruct in a matter of seconds to no longer

than six days. Consequently, Uber employees cannot be compelled to produce records of their chat conversations because no record is retained. Such a policy is inherently violative of the Sarbanes-Oxley Act, 18 U.S.C. Section 1519, and similar laws. Further, Clark and Henley directly instructed Jacobs to conceal documents in violation of Sarbanes-Oxley, by attempting to "shroud" them with, attorney-client privilege or work product protections. Clark taught the ThreatOps team that if they marked communications as "draft," asked for a legal opinion at the beginning of an email, and simply wrote "attorney-client privilege" on documents, they would be immune from discovery. What Clark failed to teach the team, however, is that there is no attorney-client privilege, no "seal of secrecy," if the communications were made for the purpose of enabling the commission of a crime or fraud. *U.S.v. Zolin* 491 U.S. 554, 563(1989); *see also* Cal. Evid. Code § 956. For example, Clark enabled illegal activities and gave legal advice designed to impede investigations by directing the hacking of the competitors' systems and platforms, and by directing the destruction of evidence related to eavesdropping against opposition groups of drivers as discussed above. Given the ongoing criminal and fraudulent activities within Uber, the crime-fraud exception to privilege applies, and all of Clark's communications in furtherance of these schemes would be fair game in discovery. His attempt to pre-emptively conceal them under attorney-client privilege is illegal, unethical, and improper.

15. **Concealment and Destruction of Records Using Non-attributable Hardware;**

Clark, Gicinto, and Henley acquired "non-attributable" hardware and software with which SSG and select members of ThreatOps planned and executed intelligence collection operations. Specifically, Henley and members of the MA team use computers not directly purchased by Uber that operate only on MiFi devices-so that the internet traffic would not appear to originate from an Uber network- virtual public networks (VPNs), and a distributed and non-attributable architecture of contracted Amazon Web Services (AWS) server space to conduct competitive intelligence collections against other ride-sharing companies. Likewise, Gicinto and the SSG team had similar non-attributable devices purchased through vendors and sub-vendors where they conducted virtual operations impersonating protesting drivers, Uber partner-drivers including the Plaintiff, and taxi operators. SSG used the devices to store raw information collected by their operatives from politicians, regulators, law enforcement, taxi organizations, and labor unions. By storing this data on non-attributable devices, Uber believed it would avoid detection and never be subject to legal discovery. This is because a standard preservation of evidence order typically focused on Uber work laptops, Uber networks, and Uber mobile devices. Non-attributable devices were deemed as not reasonably subsumed by any such preservation order and the team could, and did, "legally" (not so) dispose of any evidence or documentation held on these devices in the intervening period before knowledge of the devices' existence could be uncovered. Likewise, members of the ThreatOps team, notably Henley, were known to use personal computers to conduct substantial Uber-related work for the purpose of evading discovery.

16. **Concealment, Cover-up, and Falsification of Records through the Abuse of Attorney-Client Privilege Designations:**

7

Clark developed training on how to use attorney-client privilege to further conceal activities described in any non-ephemeral communication channel. Specifically, he developed a training using innocuous legal examples and the "lawyer dog" meme to produce a slide deck that taught the ThreatOps team how to utilize attorney-client privilege to impede discovery. While the presentation slides themselves did not depict or explain any unethical or illegal practices involving attorney-client privilege, Jacobs observed Clark's presentation first-hand. During the presentation, Clark verbally coached the participants on how to use attorney-client privilege to ensure sensitive intelligence collection activities would not surface in litigation. Clark also answered specific questions from employees on the minimum standards required to claim privilege for the purpose of shielding information. This "legal training" was particularly noteworthy because it surprisingly bears no Uber-branding; it does not even mention Uber, which is startling in a company with strong branding and adherence to process. Clark said that Uber needed to "shroud these work products in attorney-client privilege." Accordingly, Clark instructed Jacobs himself and others to address all emails on sensitive intelligence collection to him and ensure the emails were marked as "ATTORNEY- CLIENT PRIVILEGED AND CONFIDENTIAL," to mark any work product as "DRAFT" regardless of its actual status, and, on every communication, to specifically ask a question or request legal advice on some issue-even if no legal advice was needed or warranted. Likewise, he advised that Jacobs and others that they should communicate almost exclusively via phone, video teleconference ("Zoom"), or via the Wickr app, in that order of preference based on the record and audit trail each communications medium creates. Clark explained that the intent was to prevent disclosure of such communications if Jacobs was ever put on legal hold or his communications were ever subject to a preservation of evidence order. In sum, Uber has directly violated the document destruction, concealment, cover-up, and falsifications provisions of Sarbanes-Oxley in an effort to obstruct or impede active and future government investigations through the (1) acquisition and use of ephemeral communications programs; (2) the acquisition and use of non-attributable hardware and software; and (3) the wholesale abuse of attorney-client privilege designations and all of Uber's violations as described in this Brief were committed with a sole aim of destroying its competitors', so that the drivers including the Plaintiff have no other option than driving for Uber and to control the drivers including the Plaintiff.

**COUNT-1**
**ASSAULT AND BATTERY (COMMON LAW TORT)**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

17. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

18. Defendants listed under this count, without lawful authority through their Security Officer, manhandled the Plaintiff, pushed and shoved the Plaintiff into the elevator, brought the Plaintiff down to the Ground Floor by holding the Plaintiff by his belt from the back, and by further threatening the Plaintiff that he will not back on his feet if he comes back to the building located at 321 North Clark Street, Chicago, Illinois 60654 and in turn, Defendants listed under this count knowingly engaged in conduct which constitutes assault and battery under Illinois Law and also placed Plaintiff in reasonable apprehension of receiving further battery as described above,

FILED DATE: 1/11/2021 12:00 AM    2021L000284

which further constitutes assault under Illinois Law and such an assault and battery was committed upon the Plaintiff by the Defendants with prejudice towards his Religion, Race, Ancestry, National Origin and Disabilities.

19. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

20. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

### COUNT-2
### AGGRAVATED ASSAULT AND AGGRAVATED BATTERY (COMMON LAW TORT)
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

21. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

22. Defendants listed under this count committed an aggravated assault upon the Plaintiff as described above because assault against a disabled person constitutes aggravated assault under Illinois Law.

23. Defendants listed under this count committed an aggravated assault upon the Plaintiff on a public way, public property, a public place of accommodation, and Defendants listed under this count committed an assault upon the Plaintiff with full knowledge that a Plaintiff is a person with Disabilities which is aggravated assault.

24. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

25. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

### COUNT-3
### STALKING AND AGGRAVATED STALKING
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

26. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

27. Defendants through their actions as described in paragraphs 11 to 16 have committed stalking against the Plaintiff under Illinois Law and because such stalking was against a disabled person (the Plaintiff), the stalking of the Plaintiff was aggravated stalking under Illinois Law.

28. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

29. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

### COUNT-4
### VIOLATION OF ILLINOIS HATE CRIMES ACT OF ILLINOIS
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

30. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

FILED DATE: 1/11/2021 12:00 AM  2021L000284

31. Defendants' actions as described above and in particular as described in Count-1, Count-2, and Count-3 are offenses of assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct under the Illinois Law with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities.

32. Assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking and disorderly conduct are predicates of Illinois Hate Crimes Act and when Defendants committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities, they violated Illinois Hate Crimes Act.

33. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

34. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-5**
**VIOLATION OF COMPUTER FRAUD AND ABUSE ACT**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

35. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

36. Defendants with their actions as described in paragraphs 11 to 16 and as described in Count-1, Count-2 and Count-3 has committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct and in turn has caused a threat to public health and physical and mental injuries to the Plaintiff all in violation of Computer Fraud and Abuse Act.

37. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

38. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-6**
**VIOLATION OF STORED COMMUNICATIONS ACT**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

39. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

40. Defendants with their actions as described in paragraphs 11 to 16 violated the Stored Communications Act when they obtained electronic communication while such electronic communications were stored in an iPhone belonging to the Plaintiff and also obtained electronic communication while such electronic communications were stored on the server belonging to the Plaintiff's Internet Service Provider.

41. The violations of the Stored Communications Act by the Defendants were willful, wanton, and reckless.

42. Under the Stored Communications Act, "Proof of actual damages is not required before an award either for punitive damages and attorneys' fees is entered".

FILED DATE: 1/11/2021 12:00 AM   2021L000284

FILED DATE: 1/11/2021 12:00 AM   2021L000284

43. The Fourth Circuit held that "[i]f the violation [of the SCA] is willful or intentional, the court can assess punitive damages" Id. The Fourth Circuit further held that 18 U.S.C Section 2707(b) (3) permits an award of attorneys' fees absent any proof of actual damages.

44. Under the Stored Communication Act the Plaintiff is entered to punitive damages and attorneys' fees.

45. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

46. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-7**
**INTRUSION UPON SECLUSION AND PRIVACY OF THE PLAINTIFF**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

47. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

48. Intrusion upon Seclusion and Privacy of others was recognized by the Supreme Court of Illinois in *Lawlor v North American Corporation of Illinois*, 2012 IL 112530.

49. Defendants through their actions as described in paragraphs 11 to 16 have violated Intrusion upon Seclusion and Privacy of the Plaintiff.

50. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

51. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-8**
**DEFAMATION PER SE**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

52. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

53. Defendants committed to Defamation Per Se when they informed several individuals including but not limited to the Security Officer and Romanucci that the Plaintiff is a criminal.

54. Plaintiff has never committed any crime and he was neither arrested nor convicted for any crime in his entire life.

55. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

56. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-9**
**VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

FILED DATE: 1/11/2021 12:00 AM 2021L000284

57. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

58. Defendants violated the Electronic Communications Privacy Act (hereinafter ECPA) as described above in paragraphs 11 to 16.

59. Defendants' intent to violate ECPA, Defendants' intended conduct which violated ECPA, what Defendants sought to intercept which violated ECPA, the nature of targeted communications which violated ECPA, the tools used to (or intended to be used) to intercept the protected content which violated ECPA; is described above in detail in paragraphs 11 to 16.

60. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

61. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-10**
**VIOLATION OF RICO, 18 U.S.C. § 1961, et seq**
**(DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)**

62. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

63. Individual Defendants listed under this count individually and/or as agents and/or servants and/or employees of Uber and/or Rasier and/or Littler and/or J & B (hereinafter "RICO Defendants,") are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

64. There is the association-in-fact of all RICO Defendants for the purpose of violating Plaintiff's rights, committing crimes and torts against the Plaintiff and for intentional infliction of physical and mental injuries in violation of his basic rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"*). The Association-In-Fact Enterprise was created, controlled, and conducted by all RICO Defendants for the purposes as described in this complaint. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise. All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-In-Fact Enterprise as described in great detail in this complaint.

65. Defendants have conducted the affairs of the Association-In-Fact Enterprise, through a pattern of racketeering activity in interstate commerce that includes predicate acts indictable under 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant) and threat of kidnapping and bodily injury of the Plaintiff by the Security Officer on November 18, 2016 which is an indictable offense under the Illinois Law, as described under this count and as described in this complaint between the RICO Defendants and through the following actions, among others:

    a) RICO Defendants maliciously prosecuted the Plaintiff at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division and presented false and fabricated evidence that the Plaintiff gave fake rides to himself by using several fake identities, by using

FILED DATE: 1/11/2021 12:00 AM    2021L000284

several credit cards in the names of several fake individuals and by using several different SIM cards when actually Defendants gave fake rides to the Plaintiff by impersonating the Plaintiff as described in detail in paragraphs 11 to 16;

b) RICO Defendants further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that by listing Stanford University as his alma mater on Facebook, Plaintiff lied and committed an offense when actually the Plaintiff can list Stanford University as his alma mater as a matter of law and he can also possess a novelty Degree and/or Diploma from the Stanford University as a matter of law;

c) RICO Defendant further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that the Plaintiff deceived Uber by asking for a $500.00 joining bonus when he was still driving for Lyft when there was no condition for the Plaintiff to quit driving for Lyft and the Driver Support Representative at Uber's Chicago Office informed the Plaintiff that the only requirement for $500.00 joining bonus was that the Plaintiff needs to be a driver of Lyft and there was no requirement for the Plaintiff to quit driving Lyft.

66. Judge Lee who presided over the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division ruled that Plaintiff's fake rides, the request for $500.00 joining bonus, and his listing of Stanford University as his alma mater affected his credibility and ultimately Plaintiff's credibility was the major factor in Judge Lee's ruling that the Plaintiff entered into Arbitration Agreement with Uber.

67. RICO Defendants malicious prosecution as described above constitutes obstruction of justice, 18 U.S.C. § 1503(a), which is a predicate of Civil RICO.

68. Further RICO Defendants' obstruction of justice was accomplished through 18 U.S.C. § 1342 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), which are again predicates of Civil RICO.

69. Further RICO Defendants' obstruction of justice was in retaliation against the Plaintiff for his Federal Lawsuit (*Mohammed I*) in violation of 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant), which are again predicates of Civil RICO.

70. Further all actions of Defendants as described in paragraphs 1 to 16 constitute obstruction of justice, 18 U.S.C. § 1503(a), in relation to *Mohammed I*.

71. Each of the RICO Defendants' violations of 18 U.S.C. § 1503(a), 18 U.S.C. § 1342, 18 U.S.C. § 1343, 18 U.S.C. § 1512 and 18 U.S.C. § 1513 constitutes "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

72. RICO Defendants engaged in a pattern of racketeering activity intending to cause harm to the Plaintiff and to defraud the Plaintiff and to deny the Plaintiff of his property (to bind the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and to deny the Plaintiff his right to proceed with his claims in a court

of law and bounded the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and denied the Plaintiff his right to proceed with his claims in a court of law).

73. RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting the same victim (the Plaintiff). Based upon the agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of the Plaintiff.

74. RICO Defendants were an association of individuals, partnerships, and corporations joined in the purpose of conspiring to commit criminal activity as described above and as described in this complaint. The association employed a number of schemes in an attempt to cause harm to the Plaintiff including, but not limited to, causing acts as described under this count and as described in this complaint, causing intentional violations of the Plaintiff's rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff.

75. RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

76. By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the costs of this suit, including reasonable attorneys' fees. WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT-11
## MALICIOUS PROSECUTION IN RELATION TO COUNT-11 (ILLINOIS STATE LAW)
## (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

77. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

78. Defendants' actions as described in Count-10 also constitute malicious prosecution under the Illinois State Law.

79. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

80. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-12
## MALICIOUS PROSECUTION IN RELATION TO COUNT-11
## (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

81. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

82. Defendants further committed malicious prosecution under the Illinois State Law when they filed their Response to the Plaintiff's Motion to Vacate the Arbitration award in *Mohammed I* by arguing that the Motion to Vacate was in violation of the Executive Order of June 17, 2020, when the Executive Order only applies to cases filed after June

14

17, 2020 and by arguing that *Mohammed v. Anderson*, No. 18 C 8393, 2019 WL 3943669, at *1 (N.D. Ill. Aug. 21, 2019) was a frivolous action when in fact the court never ruled that *Mohammed v. Anderson*, was frivolous and when in fact *Mohammed v. Anderson* was dismissed under different grounds.

83. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

84. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-13
## FRAUDULENT MISREPRESENTATION IN RELATION TO COUNT-10, COUNT-11 AND COUNT-12
## (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

85. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

86. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

87. Defendants' actions as described in Count-10. Count-12 and Count-13 also constitute fraudulent misrepresentation under the Illinois State Law.

88. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

89. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-14
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (ALL DEFENDANTS)

90. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

91. In a manner more fully set forth above, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

92. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

93. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-15
## CIVIL CONSPIRACY
## (ALL DEFENDANTS)

94. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

FILED DATE: 1/11/2021 12:00 AM    2021L000284

15

FILED DATE: 1/11/2021 12:00 AM    2021L000284

95. In a manner more fully set forth above, Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves for the purpose of depriving Plaintiff of his rights and accomplish an unlawful purpose by unlawful means as described in this complaint.

96. In furtherance of this conspiracy or conspiracies, Defendants, acting in concert with other co-conspirators, committed the overt acts as set forth above and as described in this complaint.

97. Said conspiracy or conspiracies and overt acts continue from on or about November 10, 2016, through to the present date.

98. This conspiracy proximately caused the injuries to the Plaintiff as set forth above.

99. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

100. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## DAMAGES AND ADDITIONAL RELIEF REQUESTED

101. Plaintiff has sustained damages which are ongoing and yet to be completely identified and quantified, that are the direct and proximate result of wrongful actions of Defendants and others known and unknown to the Plaintiff, acting in concert, and which are described herein. Such damages are ongoing, and include, but are not limited to significant damages, direct, indirect, collateral, consequential, and incidental, to Plaintiff's business and property and physical and mental injuries to the Plaintiff. Due to the actions of the Defendants against the Plaintiff which include but not limited to crimes, torts and violations as described in this complaint which caused extreme physical and mental injuries to the Plaintiff, the Plaintiff was declared legally disabled on October 21, 2019 retroactively as of January 21, 2017. Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor against Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in the Counts other than Civil RICO Count, as well as any other relief this Court deems just and appropriate.

Dated-: 01/10/2021

Respectfully Submitted,
/s/Abdul Mohammed
Pro Se Plaintiff
258 East Bailey Rd, Apt C,
Naperville, IL 60565
Ph.: 630-854-5345
aamohammed@hotmail.com

# EXHIBIT B

**From:** Abdul Mohammed <aamohammed@hotmail.com>
**Sent:** Monday, January 11, 2021 11:53 AM
**To:** Schilling, Jennifer <JSchilling@littler.com>
**Subject:** Fwd: Mohammed v Jenner & Block LLP et.al; Case # 2021L284;Cook County Circuit Court

**[EXTERNAL E-MAIL]**

Sent from my iPhone

Begin forwarded message:

> **From:** Abdul Mohammed <aamohammed@hotmail.com>
> **Date:** January 11, 2021 at 11:50:56 AM CST
> **To:** jschiling@littler.com, rschar@jenner.com, mpoetzel@jenner.com, dbobier@jenner.com
> **Cc:** Mike Persoon <mpersoon@dsgchicago.com>
> **Subject: Mohammed v Jenner & Block LLP et.al; Case # 2021L284;Cook County Circuit Court**
>
>
> JS/RS/MP/DB,
> See attached. I don't know who is the biggest fish in this pond but I am a whole different animal.
>
> Abdul Mohammed
>
>
> Sent from my iPhone

# EXHIBIT C

* 5 0 0 7 6 7 4 7 *

FILED DATE: 5/6/2021 11:55 AM    2021L000284

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (03/15/21) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Abdul Mohammed

_____
                              Plaintiff(s)

v.                                                    Case No.    2021-L-000284

Jenner & Block LLP et.al

_____
                              Defendant(s)

Jenner & Block LLP, 353 N. Clark Street
Chicago, IL 60654

_____
              Address of Defendant(s)

Please serve as follows (check one):    ○ Certified Mail    ● Sheriff Service    ○ Alias

### SUMMONS

To each Defendant:   Jenner & Block LLP,353 N.Clark,Chicago,IL 60654

You have been named a defendant in the complaint in this case, a copy of which is hereto attached.
You are summoned and required to file your appearance, in the office of the clerk of this court,
within 30 days after service of this summons, not counting the day of service. If you fail to do so, a
judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:** **Your appearance date is NOT a court date.** It is the deadline
for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED
TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/
answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/
approved/procedures/appearance.asp. After completing and saving your Appearance form, you can
electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons**

‑ (03/15/21) CCG 0007 B

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

○ Atty. No.: _____
● Pro Se 99500

Name: Abdul Mohammed
Atty. for (if applicable): _____

Address: 258 East Bailey Rd,Apt C

City: Naperville

State: IL  Zip: 60565

Telephone: 630-854-5345

Primary Email: aamohammed@hotmail.com

Witness date  5/6/2021 11:55 AM IRIS Y. MARTINEZ

Iris Y. Martinez, Clerk of Court

☐ Service by Certified Mail: _____

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)



* 5 0 0 7 6 7 4 7 *

FILED DATE: 5/6/2021 11:55 AM  2021L000284

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION

**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5133

### CIVIL DIVISION

**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5116

### COUNTY DIVISION

**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION

**Court date EMAIL:** DRCourtDate@cookcountycourt.com
              OR
              ChildSupCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6300

### DOMESTIC VIOLENCE

**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:   (312) 325-9500

### LAW DIVISION

**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5426

### PROBATE DIVISION

**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE

**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:   (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS

**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:   (847) 818-3000

### DISTRICT 4 - MAYWOOD

**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:   (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW

**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:   (708) 974-6500

### DISTRICT 6 - MARKHAM

**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:   (708) 232-4551

**12-Person Jury**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED
1/11/2021 12:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
11772324

ABDUL MOHAMMED,

PLAINTIFF,

vs.

JENNER & BLOCK LLP, UBER TECHNOLOGIES INC, RASIER LLC, LITTLER MENDELSON P.C., ROMANUCCI AND BLANDIN LLC, DARA KHOSROWSHAHI, TRAVIS KALANICK, RYAN GRAVES, NICK GICINTO, CRAIG CLARK, MAT HENLEY, ANTONIO ROMANUCCI, JENNIFER SCHILLING, JODI BOQUIST, REID SCHAR, MEGAN POETZEL AND DANIEL BOBIER INDIVIDUALLY AND AS AGENTS OR SERVANTS OR VOLUNTEERS OR ASSOCIATES OR CONTRACTORS OR EMPLOYEES OF UBER TECHNOLOGIES INC, RASIER LLC, LITTLER MENDELSON P.C, ROMANUCCI AND BLANDIN LLC AND JENNER & BLOCK LLP,

DEFENDANTS

2021L000284

COMPLAINT WITH JURY DEMAND

## COMPLAINT AT LAW

### PARTIES, JURISDICTION, AND VENUE

1. The Plaintiff is a protected person within the meaning of the Americans with Disabilities Act, the Rehabilitation Act of 1973, Section 504, the Illinois Adult Protective Services Act, and the Federal Traumatic Brain Injury Reauthorization Act of 2014.

2. The Defendants are located in the jurisdiction of this court and they are conducting business in the jurisdiction of this court and further one or more actions alleged in this complaint occurred in the jurisdiction of this court. Hence this court has jurisdiction over this matter and hence venue is proper.

### FACTUAL BACKGROUND

3. Plaintiff filed a complaint against Defendants Uber Technologies Inc (hereinafter Uber), Rasier LLC (hereinafter Rasier), Travis Kalanick (hereinafter Kalanick), and Ryan Graves (hereinafter Graves) in District Court of the United States for Northern District of Illinois, Eastern Division (hereinafter District Court) on February 24, 2016 and that case remains pending in District Court. See *Mohammed v Uber Technologies et.al*, Case # 16-cv-2537, N.D.Ill (hereinafter *Mohammed I*).

FILED DATE: 1/11/2021 12:00 AM   2021L000284

4.  There is a dispute regarding an alleged Arbitration Agreement which the Defendants allege is not submitted that the Plaintiff entered with the Defendants but anyhow the alleged Arbitration Agreement in the pertinent part states, "This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce." The instant complaint has nothing to do with a transaction involving interstate commerce and the instant complaint only deals with intentional crimes, intentional torts, and various other intentional violations committed by the Defendants against the Plaintiff, hence the instant complaint is not covered by the disputed alleged Arbitration Agreement.

5.  Further, there is not even an alleged Arbitration Agreement against Defendants Littler Mendelson P.C. (hereinafter Littler), Jenner & Block LLP (hereinafter J & B), Romanucci and Blandin LLC (hereinafter R & B), Antonio Romanucci (hereinafter Romanucci), Jennifer Schilling (hereinafter Schilling), Jodi Boquist (hereinafter Boquist), Reid Schar (hereinafter Schar), Megan Poetzel (hereinafter Poetzel) and Daniel Bobier (hereinafter Bobier).

6.  The actions alleged in this complaint are either stand-alone new allegations that occurred after the filing of *Mohammed I* and/or actions which were committed by the Defendants in retaliation against the Plaintiff for *Mohammed I*.

7.  On November 10, 2016, the Plaintiff had an appointment with a law firm named Romanucci & Blandin LLC located at 321 North Clark Street, Suite 900, Chicago, Illinois 60654. The Plaintiff was waiting in the conference room to see Romanucci. A Security Officer of the building along with Romanucci entered the conference room and the Security Officer informed the Plaintiff that they have a problem with him and asked him to come out of the conference room. Then the Security Officer took the Plaintiff toward the elevator and shoved him into the elevator and brought him down to the Ground Floor and pushed the Plaintiff towards the exit of the building and informed him that he has an order from Defendant Littler Mendelson PC to remove him from the building. Littler's office is located at 321 North Clark Street, Suite 1100, Chicago, Illinois 60654. The Security Officer also informed the Plaintiff that if he again sets foot in the building, he will not go back home on his feet. Littler has added the Plaintiff's information to the Security System and when the Security System scans his ID, his name comes up, that he should not be allowed in the building. Plaintiff called Romanucci and asked him about this matter and he was informed that Littler is not allowing the Plaintiff to enter the building so Romanucci is not able to represent the Plaintiff. This is retaliation against the Plaintiff as naked as it gets for filing of *Mohammed I*. The masterminds of this retaliation against the Plaintiff are the Defendants other than Dara Khosrowshahi (hereinafter Khosrowshahi), J & B, Schar, Poetzel, and Bobier.

8.  Before the Security Officer and Romanucci entered the conference room to remove the Plaintiff from the building, the Plaintiff heard that Security Officer saying to Romanucci, "Littler and Mendelson informed him that he is a criminal and he be removed from the building immediately".

9.  Plaintiff is alleging that Uber was following the Plaintiff's location through its Uber Rider and Driver App which was installed on the Plaintiff's phone as described below and when Uber found out through the Uber Rider and Driver App which was installed on the Plaintiff's phone that the Plaintiff is inside the building located at 321 North

Clark Street, Chicago, Illinois 60654, informed Littler, Schilling and Boquist that the Plaintiff is inside the building located at 321 North Clark Street, Chicago, Illinois 60654.

10. The actions as alleged in this complaint were committed by the Defendants with prejudice towards Plaintiff's Race, Religion, and Disabilities and in particular with prejudice towards Plaintiff's National Origin and Ancestry which is described in *Mohammed I*. Defendants committed actions as described in *Mohammed I* and the instant complaint with a perceived belief that the Plaintiff is not a United States Citizen, he is an immigrant and/or undocumented immigrant and their another perceived belief that people who are not United States Citizens, immigrants and/or undocumented immigrants will generally not take any legal action if intentional crimes are committed against them, if intentional torts or violations are committed against them. Undocumented immigrants generally do not report to the law enforcement agencies or take any kind of legal action if crimes, intentional torts, or violations are committed against them due to their fear of being removed from the United States due to their undocumented status.

11. **Uber's spying of its Drivers and Lyft Drivers to bring Drivers to Uber's Platform and effectively under their control;**

Further Uber spied on its drivers including the Plaintiff and Lyft drivers by intercepting, accessing, monitoring and/or transmitting electronic communications and whereabouts of its drivers including the Plaintiff and Lyft drivers to lure Lyft drivers and drivers who worked both for Uber and Lyft, to exclusively drive for Uber, all in violation of Federal Wiretap Act as amended by the Electronic Communications Privacy Act (the "ECPA"), the Federal Stored Communication Act (the "SCA"), and common law invasion of privacy. See the Lawsuit against Uber in United States District Court Northern District of California, San Francisco Division, Case No.: 3:17-CV-02264, as Exhibit-H. Uber's violations as described in Exhibit-H were committed to destroy its only remaining competitor, Lyft, and to take away the only remaining option other than Uber, for the drivers. When Uber spied on its drivers including this Plaintiff, that is not only a crime but such a crime was committed to control the drivers.

12. **Waymo LLC v. Uber Technologies, Inc. (3:17-CV-00939) (N.D.Cal);**

Further during the pendency of the *Waymo Case*, Richard Jacobs, and Uber's former Manager of Global Intelligence informed his lawyer how Uber stole trade secrets from Waymo, spied on drivers and other individuals and other companies, and committed various crimes with an intent to cause harm to other individuals, companies and to bring drivers of other Ride Sharing Companies to come and drive for Uber. Please see the letter from Jacobs' lawyer to Uber as Exhibit-I for a detailed analysis of Uber's criminal activities to destroy other Ride-Sharing Companies and to bring all the drivers in their control. Uber settled with Jacobs for $4.5 Million + a Job at Uber and Uber also paid $3 Million to Jacobs' lawyer. Uber also settled with Waymo for $245 Million. Uber's lawyer, Angela Padilla, said in court, the allegations in the letter had seemed "quite fantastical" to her. Jacobs testified in the *Waymo* case, there was an intelligence operation inside Uber to research competitors and gather data about them, and use technology to avoid a paper trail. In court, Padilla said Uber viewed the Jacobs' letter as a tactic by a disgruntled former employee to secure money from the company. Padilla said, "We felt that Jacobs was trying to extort the company." Uber eventually settled the matter by paying Jacobs $4.5 million, including a year-long consulting contract, and a further

FILED DATE: 1/11/2021 12:00 AM  2021L000284



$3 million to his lawyer. Judge Alsup said to Padilla, "That is a lot of money". "And people don't pay that kind of money for BS. And you certainly don't hire them as consultants if you think everything they've got to contribute is BS." As per Exhibit-I, Uber fraudulently impersonates riders and drivers on competitors' platforms, hacks into competitors' networks, and conducts unlawful wiretapping (each tactic discussed in additional detail in Exhibit-I). These tactics are used to obtain trade secrets about:

a) the function of competitors' Apps;

b) vulnerabilities in the competitors' App, including performance and function;

c) vulnerabilities in competitors' App security;

d) supply data, including unique driver information;

e) pricing structures and incentives.

As per Exhibit I, Uber worked to unlawfully obtain trade secrets from its competitors and 1) remotely accessed confidential corporate communications and data of its competitors, 2) impersonated riders and drivers including the Plaintiff on competitors' platform to derive key functions of rider and driver apps, 3) stole supply data by identifying possible drivers to boost Uber's market position, and 4) acquired codebase which allowed Uber to identify code used by its competitors' to understand in greater detail how their app functioned. By credibly impersonating both riders and drivers including the Plaintiff, Uber could request thousands of rides in a given geographic area to study the responsiveness and capability of the app, price quotes, and disposition of available drivers. Uber further impersonated prospective customers to ascertain the identity of drivers through their names including the Plaintiff, license plate numbers, and make/model of their vehicles. Uber then used this information to recruit drivers from their competitors' to Uber's platform. Uber also obtained key technical details about how its competitors would troubleshoot issues in comparison to Uber, and then used that data to develop contingencies to slow or impede competitors' business operations and also caused injury to the drivers including the Plaintiff to bring them to Uber's platform and effectively under their control. Uber employed tactics to obtain trade secrets, with a focus on stealing key supply data to boost Uber's pool of drivers, the function of the competitors' app, and its vulnerabilities, and then used that data to develop an aggressive "counterintelligence" campaign to slow competitors' efforts. Uber used special SIM cards to collect intelligence on competitors' trade secrets and to obtain private and protected information about the drivers including the Plaintiff. Specifically, the SIM cards were used to fraudulently impersonate customers on competitors' rider and driver applications. By credibly impersonating riders and drivers including the Plaintiff, Uber could:(i) develop processes to conduct thousands of data calls to reverse engineer products; (ii) identify and recruit supply (i.e. partner drivers); (iii) and derive key competitive business metrics to understand subsidies, available supply, processes for managing surge, and competitive market position. For instance, Uber would be able to study key technical details of how competitors' had engineered solutions to common problems ride-sharing providers have at scale, and in the context of dense population centers. Uber would then use that data to identify possible improvements, gain competitive advantages, or exploit weaknesses of competitors' platforms. Notably, Uber identified vulnerability in their competitors' system and collected

FILED DATE: 1/11/2021 12:00 AM    2021L000284

4

FILED DATE: 1/11/2021 12:00 AM    2021L000284

comprehensive supply data, including the license, name, and contact information for every single driver including the Plaintiff. Further Uber Executives conspired and acted in furtherance of the conspiracy to hack the database of its competitors and collected all driver information including the Plaintiff, to have a perfect set of possible drivers for Uber's platform which boosted supply when Uber targeted these operators and converted them to drivers for Uber. As discussed above, Uber used driver and customer impersonation to steal competitor trade secrets. This conduct not only violated the trade secrets law discussed above but also wire fraud law at 18 U.S.C § 1343, and California Penal Code § 528.5. Under this Section, it is unlawful to knowingly and without consent, credibly impersonate another actual person through the Internet or email, to harm, intimidate, threaten, or defraud someone. This conduct further exposes a company to civil liability under Section 528.5(e). This impersonation was intended to fraudulently steal business and bring drivers under its control and it was an "unlawful, unfair, or fraudulent business act and practice. California Bus & Prof Code § 1720. It is also in violation of the CFAA and related laws, discussed in Exhibit-I. Along with the theft of trade secrets, Jacobs observed Uber personnel, through their LAT operatives and their vendors; knowingly impersonate actual people over the Internet to keep tabs on competitors and opposition groups by accessing closed social media groups. This impersonation had the purpose of fraudulently stealing business and gaining a competitive advantage. During the summer of 2016, Jacobs learned that Uber's intelligence-gathering teams in other locations impersonated partner-drivers including the Plaintiff or taxi operators to gain access to private WhatsApp group messaging channels. Jacobs further investigated this conduct by searching Uber's internal network, TeamDot. Further Uber created a PowerPoint presentation which included a section on "intel gathering," a slide on driver chat group infiltration, and a link to the specific procedures for infiltrating driver-partner chat groups (including the impersonation of actual driver-partners including the Plaintiff) to collect information on growing discontent and possible opposition activities. Upon receipt, Jacobs disclosed the playbook to Craig Clark, who replied, "Do I want to know what it is?" Jacobs voiced concern as to its legality, noting that it encouraged "intel gathering" and described how to penetrate WhatsApp groups. Clark only replied that "this is happening everywhere and I'm not ready to deal with it." Clark did not investigate the presumed criminal violation. In late January and early February 2017, as part of SSG's virtual operations capability (VOC), Uber's agents posed as sympathetic protestors interested in participating in actions against Uber. By doing this, illegally gained access to closed Facebook groups and chatted with protesting drivers in an attempt to understand their nonpublic plans and intentions. All the actions described in Exhibit-I demonstrate how Uber spied on drivers including the Plaintiff and committed crimes left, right, and center with no fear whatsoever. An unredacted version of Exhibit-I can reveal further about Uber's activities.

13. **Sarbanes-Oxley Violations, Evidence Spoliation, and Other Discovery Abuses by Uber;**

The Sarbanes-Oxley Act of 2002 states that:

"whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case

FILED DATE: 1/11/2021 12:00 AM    2021L000284

filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both".

Sarbanes-Oxley Act of 2002, Pub. L. 107-204, § 802, 116 Stat. 745, 800 (2002). Codified at 18 U.S.C. § 1519, this provision applies to private companies and has a broad reach that is not limited to commenced litigation. Section 1519 "covers conduct intended to impede any federal investigation or proceeding *including one not even on the verge of commencement." Yates v. United States*, - U.S. –, 135 S.Ct. 1074, 1087 (2015) (emphasis added). Similarly, the California Rule of Professional Conduct 5-2320 prohibits members of the bar from suppressing evidence that the member or the member's client has a legal obligation to produce. Uber has knowingly violated 18 U.S.C § 1519 and continues to do so. Craig Clark, Uber's Legal Director for ThreatOps, and Mat Henley, Uber's Director of Threat Operations (ThreatOps), led Uber's efforts to evade current and future discovery requests, court orders, and government investigations in violation of state and federal law as well as ethical rules governing the legal profession. Clark devised training and provided advice intended to impede, obstruct, or influence the investigation of several ongoing lawsuits against Uber and in relation to or contemplation of further matters within the jurisdiction of the United States. Early in his tenure, Jacobs advocated for a secure and encrypted centralized database to ensure confidentiality and recordkeeping to provide access to intelligence for ThreatOps personnel. He presented a draft proposal to managers Henley and Clark. However, discussions broke down immediately because they objected to preserving any intelligence that would make preservation and legal discovery a simple process for future litigants. Clark emphasized that this was "exactly what we don't want to do ... create [a paper trail] that could later be discoverable." Clark noted the errors of past collections where Uber was forced to turn over documents. He alluded to the lessons learned from the "Ergo Investigation" and noted that encryption alone was not enough to avoid discovery. Nick Gicinto added his own objections, stating that while his team would be willing to share some details on collections, including sources and methods of collections on the ground in foreign countries, they were not willing to preserve the raw intelligence on Uber's network. Jacobs then became aware that Uber, primarily through Clark and Henley, had implemented a sophisticated strategy to destroy, conceal, cover-up, and falsify records or documents with the intent to impede or obstruct government investigations as well as discovery obligations in pending and future litigation. Besides violating 18 U.S.C. § 1519, this conduct constitutes an ethical violation.

14. **Destruction and Concealment of Records Using Ephemeral Communications;**

Clark and Henley helped implement and directed the almost-exclusive use of ephemeral and encrypted communications software, including WickrMe (and later Wickr SCIF), to communicate sensitive information within ThreatOps. Wickr Inc. is a San Francisco-based company that describes its product as a "communications platform designed to empower greater control over data security ... [using] multi-layers of peer-to-peer encryption". Henley and Clark implemented this program of ephemeral and encrypted communications for the express purpose of destroying evidence of illegal or unethical practices to avoid discovery in actual or potential litigation. The Wickr application uses robust encryption which prevents the information from being viewed by anyone except the intended recipient, but more importantly, programs messages to self-destruct in a matter of seconds to no longer

FILED DATE: 1/11/2021 12:00 AM   2021L000284

than six days. Consequently, Uber employees cannot be compelled to produce records of their that conversations because no record is retained. Such a policy is inherently violative of the Sarbanes-Oxley Act, 18 U.S.C. Section 1519, and similar laws. Further, Clark and Henley directly instructed Jacobs to conceal documents in violation of Sarbanes-Oxley, by attempting to "shroud" them with, attorney-client privilege or work product protections. Clark taught the ThreatOps team that if they marked communications as "draft," asked for a legal opinion at the beginning of an email, and simply wrote "attorney-client privilege" on documents, they would be immune from discovery. What Clark failed to teach the team, however, is that there is no attorney-client privilege, no "seal of secrecy," if the communications were made for the purpose of enabling the commission of a crime or fraud. *U.S.v. Zolin* 491 U.S. 554, 563(1989); *see also* Cal. Evid. Code § 956. For example, Clark enabled illegal activities and gave legal advice designed to impede investigations by directing the hacking of the competitors' systems and platforms, and by directing the destruction of evidence related to eavesdropping against opposition groups of drivers as discussed above. Given the ongoing criminal and fraudulent activities within Uber, the crime-fraud exception to privilege applies, and all of Clark's communications in furtherance of these schemes would be fair game in discovery. His attempt to pre-emptively conceal them under attorney-client privilege is illegal, unethical, and improper.

15. **Concealment and Destruction of Records Using Non-attributable Hardware;**

Clark, Gicinto, and Henley acquired "non-attributable" hardware and software with which SSG and select members of ThreatOps planned and executed intelligence collection operations. Specifically, Henley and members of the MA team use computers not directly purchased by Uber that operate only on MiFi devices-so that the internet traffic would not appear to originate from an Uber network- virtual public networks (VPNs), and a distributed and non-attributable architecture of contracted Amazon Web Services (AWS) server space to conduct competitive intelligence collections against other ride-sharing companies. Likewise, Gicinto and the SSG team had similar non-attributable devices purchased through vendors and sub-vendors where they conducted virtual operations impersonating protesting drivers, Uber partner-drivers including the Plaintiff, and taxi operators. SSG used the devices to store raw information collected by their operatives from politicians, regulators, law enforcement, taxi organizations, and labor unions. By storing this data on non-attributable devices, Uber believed it would avoid detection and never be subject to legal discovery. This is because a standard preservation of evidence order typically focused on Uber work laptops, Uber networks, and Uber mobile devices. Non-attributable devices were deemed as not reasonably subsumed by any such preservation order and the team could, and did, "legally" (not so) dispose of any evidence or documentation held on these devices in the intervening period before knowledge of the devices' existence could be uncovered. Likewise, members of the ThreatOps team, notably Henley, were known to use personal computers to conduct substantial Uber-related work for the purpose of evading discovery.

16. **Concealment, Cover-up, and Falsification of Records through the Abuse of Attorney-Client Privilege Designations:**

Clark developed training on how to use attorney-client privilege to further conceal activities descriptor mount more ephemeral communication channel. Specifically, he developed a training using innocuous legal examples and the "lawyer dog" meme to produce a slide deck that taught the ThreatOps team how to utilize attorney-client privilege to impede discovery. While the presentation slides themselves did not depict or explain any unethical or illegal practices involving attorney-client privilege, Jacobs observed Clark's presentation first-hand. During the presentation, Clark verbally coached the participants on how to use attorney-client privilege to ensure sensitive intelligence collection activities would not surface in litigation. Clark also answered specific questions from employees on the minimum standards required to claim privilege for the purpose of shielding information. This "legal training" was particularly noteworthy because it surprisingly bears no Uber-branding; it does not even mention Uber, which is startling in a company with strong branding and adherence to process. Clark said that Uber needed to "shroud these work products in attorney-client privilege." Accordingly, Clark instructed Jacobs himself and others to address all emails on sensitive intelligence collection to him and ensure the emails were marked as "ATTORNEY- CLIENT PRIVILEGED AND CONFIDENTIAL," to mark any work product as "DRAFT" regardless of its actual status, and, on every communication, to specifically ask a question or request legal advice on some issue-even if no legal advice was needed or warranted. Likewise, he advised that Jacobs and others that they should communicate almost exclusively via phone, video teleconference ("Zoom"), or via the Wickr app, in that order of preference based on the record and audit trail each communications medium creates. Clark explained that the intent was to prevent disclosure of such communications if Jacobs was ever put on legal hold or his communications were ever subject to a preservation of evidence order. In sum, Uber has directly violated the document destruction, concealment, cover-up, and falsifications provisions of Sarbanes-Oxley in an effort to obstruct or impede active and future government investigations through the (1) acquisition and use of ephemeral communications programs; (2) the acquisition and use of non-attributable hardware and software; and (3) the wholesale abuse of attorney-client privilege designations and all of Uber's violations as described in this Brief were committed with a sole aim of destroying its competitors', so that the drivers including the Plaintiff have no other option than driving for Uber and to control the drivers including the Plaintiff.

**COUNT-1**
**ASSAULT AND BATTERY (COMMON LAW TORT)**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

17. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

18. Defendants listed under this count, without lawful authority through their Security Officer, manhandled the Plaintiff, pushed and shoved the Plaintiff into the elevator, brought the Plaintiff down to the Ground Floor by holding the Plaintiff by his belt from the back, and by further threatening the Plaintiff that he will not back on his feet if he comes back to the building located at 321 North Clark Street, Chicago, Illinois 60654 and in turn, Defendants listed under this count knowingly engaged in conduct which constitutes assault and battery under Illinois Law and also placed Plaintiff in reasonable apprehension of receiving further battery as described above,

FILED DATE: 1/11/2021 12:00 AM   2021L000284

which further constitutes assault under Illinois Law and such an assault and battery was committed upon the Plaintiff by the Defendants with prejudice towards his Religion, Race, Ancestry, National Origin and Disabilities.

19. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

20. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-2
## AGGRAVATED ASSAULT AND AGGRAVATED BATTERY (COMMON LAW TORT)
## (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

21. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

22. Defendants listed under this count committed an aggravated assault upon the Plaintiff as described above because assault against a disabled person constitutes aggravated assault under Illinois Law.

23. Defendants listed under this count committed an aggravated assault upon the Plaintiff on a public way, public property, a public place of accommodation, and Defendants listed under this count committed an assault upon the Plaintiff with full knowledge that a Plaintiff is a person with Disabilities which is aggravated assault.

24. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

25. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-3
## STALKING AND AGGRAVATED STALKING
## (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

26. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

27. Defendants through their actions as described in paragraphs 11 to 16 have committed stalking against the Plaintiff under Illinois Law and because such stalking was against a disabled person (the Plaintiff), the stalking of the Plaintiff was aggravated stalking under Illinois Law.

28. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

29. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-4
## VIOLATION OF ILLINOIS HATE CRIMES ACT OF ILLINOIS
## (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

30. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

FILED DATE: 1/11/2021 12:00 AM    2021L000284



31. Defendants' actions as described above and in particular as described in Count-1, Count-2, and Count-3 are offenses of assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct under the Illinois Law with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities.

32. Assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking and disorderly conduct are predicates of Illinois Hate Crimes Act and when Defendants committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities, they violated Illinois Hate Crimes Act.

33. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

34. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-5
### VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

35. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

36. Defendants with their actions as described in paragraphs 11 to 16 and as described in Count-1, Count-2 and Count-3 has committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct and in turn has caused a threat to public health and physical and mental injuries to the Plaintiff all in violation of Computer Fraud and Abuse Act.

37. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

38. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-6
### VIOLATION OF STORED COMMUNICATIONS ACT
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

39. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

40. Defendants with their actions as described in paragraphs 11 to 16 violated the Stored Communications Act when they obtained electronic communication while such electronic communications were stored in an iPhone belonging to the Plaintiff and also obtained electronic communication while such electronic communications were stored on the server belonging to the Plaintiff's Internet Service Provider.

41. The violations of the Stored Communications Act by the Defendants were willful, wanton, and reckless.

42. Under the Stored Communications Act, "Proof of actual damages is not required before an award either for punitive damages and attorneys' fees is entered".

FILED DATE: 1/11/2021 12:00 AM    2021L000284



43. The Fourth Circuit held that "[i]f the violation [of the SCA] is willful or intentional, the court can assess punitive damages" Id. The Fourth Circuit further held that 18 U.S.C Section 2707(b) (3) permits an award of attorneys' fees absent any proof of actual damages.

44. Under the Stored Communication Act the Plaintiff is entered to punitive damages and attorneys' fees.

45. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

46. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-7
### INTRUSION UPON SECLUSION AND PRIVACY OF THE PLAINTIFF
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

47. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

48. Intrusion upon Seclusion and Privacy of others was recognized by the Supreme Court of Illinois in *Lawlor v North American Corporation of Illinois*, 2012 IL 112530.

49. Defendants through their actions as described in paragraphs 11 to 16 have violated Intrusion upon Seclusion and Privacy of the Plaintiff.

50. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

51. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-8
### DEFAMATION PER SE
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

52. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

53. Defendants committed to Defamation Per Se when they informed several individuals including but not limited to the Security Officer and Romanucci that the Plaintiff is a criminal.

54. Plaintiff has never committed any crime and he was neither arrested nor convicted for any crime in his entire life.

55. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

56. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-9
### VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

FILED DATE: 1/11/2021 12:00 AM 2021L000284

57. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein. 4 7 *

58. Defendants violated the Electronic Communications Privacy Act (hereinafter ECPA) as described above in paragraphs 11 to 16.

59. Defendants' intent to violate ECPA, Defendants' intended conduct which violated ECPA, what Defendants sought to intercept which violated ECPA, the nature of targeted communications which violated ECPA, the tools used to (or intended to be used) to intercept the protected content which violated ECPA; is described above in detail in paragraphs 11 to 16.

60. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

61. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-10**
**VIOLATION OF RICO, 18 U.S.C. § 1961, et seq**
**(DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)**

62. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

63. Individual Defendants listed under this count individually and/or as agents and/or servants and/or employees of Uber and/or Rasier and/or Littler and/or J & B (hereinafter "RICO Defendants,") are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

64. There is the association-in-fact of all RICO Defendants for the purpose of violating Plaintiff's rights, committing crimes and torts against the Plaintiff and for intentional infliction of physical and mental injuries in violation of his basic rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"). The Association-In-Fact Enterprise was created, controlled, and conducted by all RICO Defendants for the purposes as described in this complaint. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise. All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-In-Fact Enterprise as described in great detail in this complaint.

65. Defendants have conducted the affairs of the Association-In-Fact Enterprise, through a pattern of racketeering activity in interstate commerce that includes predicate acts indictable under 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant) and threat of kidnapping and bodily injury of the Plaintiff by the Security Officer on November 18, 2016 which is an indictable offense under the Illinois Law, as described under this count and as described in this complaint between the RICO Defendants and through the following actions, among others:

   a) RICO Defendants maliciously prosecuted the Plaintiff at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division and presented false and fabricated evidence that the Plaintiff gave fake rides to himself by using several fake identities, by using

FILED DATE: 1/11/2021 12:00 AM   2021L000284

several credit cards in the names of several fake individuals and by using several different SIMs card when actually Defendants gave fake rides to the Plaintiff by impersonating the Plaintiff as described in detail in paragraphs 11 to 16;

b) RICO Defendants further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that by listing Stanford University as his alma mater on Facebook, Plaintiff lied and committed an offense when actually the Plaintiff can list Stanford University as his alma mater as a matter of law and he can also possess a novelty Degree and/or Diploma from the Stanford University as a matter of law;

c) RICO Defendant further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that the Plaintiff deceived Uber by asking for a $500.00 joining bonus when he was still driving for Lyft when there was no condition for the Plaintiff to quit driving for Lyft and the Driver Support Representative at Uber's Chicago Office informed the Plaintiff that the only requirement for $500.00 joining bonus was that the Plaintiff needs to be a driver of Lyft and there was no requirement for the Plaintiff to quit driving Lyft.

66. Judge Lee who presided over the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division ruled that Plaintiff's fake rides, the request for $500.00 joining bonus, and his listing of Stanford University as his alma mater affected his credibility and ultimately Plaintiff's credibility was the major factor in Judge Lee's ruling that the Plaintiff entered into Arbitration Agreement with Uber.

67. RICO Defendants malicious prosecution as described above constitutes obstruction of justice, 18 U.S.C. § 1503(a), which is a predicate of Civil RICO.

68. Further RICO Defendants' obstruction of justice was accomplished through 18 U.S.C. § 1342 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), which are again predicates of Civil RICO.

69. Further RICO Defendants' obstruction of justice was in retaliation against the Plaintiff for his Federal Lawsuit (*Mohammed I*) in violation of 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant), which are again predicates of Civil RICO.

70. Further all actions of Defendants as described in paragraphs 1 to 16 constitute obstruction of justice, 18 U.S.C. § 1503(a), in relation to *Mohammed I*.

71. Each of the RICO Defendants' violations of 18 U.S.C. § 1503(a), 18 U.S.C. § 1342, 18 U.S.C. § 1343, 18 U.S.C. § 1512 and 18 U.S.C. § 1513 constitutes "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

72. RICO Defendants engaged in a pattern of racketeering activity intending to cause harm to the Plaintiff and to defraud the Plaintiff and to deny the Plaintiff of his property (to bind the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and to deny the Plaintiff his right to proceed with his claims in a court

FILED DATE: 1/11/2021 12:00 AM  2021L000284

13



of law and bounded the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and denied the Plaintiff his right to proceed with his claims in a court of law).

73. RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting the same victim (the Plaintiff). Based upon the agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of the Plaintiff.

74. RICO Defendants were an association of individuals, partnerships, and corporations joined in the purpose of conspiring to commit criminal activity as described above and as described in this complaint. The association employed a number of schemes in an attempt to cause harm to the Plaintiff including, but not limited to, causing acts as described under this count and as described in this complaint, causing intentional violations of the Plaintiff's rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff.

75. RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

76. By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the costs of this suit, including reasonable attorneys' fees. WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

**COUNT-11**
**MALICIOUS PROSECUTION IN RELATION TO COUNT-11 (ILLINOIS STATE LAW)**
**(DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)**

77. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

78. Defendants' actions as described in Count-10 also constitute malicious prosecution under the Illinois State Law.

79. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

80. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-12**
**MALICIOUS PROSECUTION IN RELATION TO COUNT-11**
**(DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)**

81. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

82. Defendants further committed malicious prosecution under the Illinois State Law when they filed their Response to the Plaintiff's Motion to Vacate the Arbitration award in *Mohammed I* by arguing that the Motion to Vacate was in violation of the Executive Ordet of June 17, 2020, when the Executive Order only applies to cases filed after June

14

17, 2020 and by arguing that *Mohammed v. Anderson*, No. 18 C 8393, 2019 WL 3943669, a 'd (N.D. Ill.7 Aug.72), 2019) was a frivolous action when in fact the court never ruled that *Mohammed v. Anderson*, was frivolous and when in fact *Mohammed v. Anderson* was dismissed under different grounds.

83. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

84. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-13**
**FRAUDULENT MISREPRESENTATION IN RELATION TO COUNT-10, COUNT-11 AND COUNT-12**
**(DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)**

85. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

86. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

87. Defendants' actions as described in Count-10. Count-12 and Count-13 also constitute fraudulent misrepresentation under the Illinois State Law.

88. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

89. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-14**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(ALL DEFENDANTS)**

90. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

91. In a manner more fully set forth above, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

92. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

93. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-15**
**CIVIL CONSPIRACY**
**(ALL DEFENDANTS)**

94. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

FILED DATE: 1/11/2021 12:00 AM    2021L000284

95. In a manner more fully set forth above, Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves for the purpose of depriving Plaintiff of his rights and accomplish an unlawful purpose by unlawful means as described in this complaint.

96. In furtherance of this conspiracy or conspiracies, Defendants, acting in concert with other co-conspirators, committed the overt acts as set forth above and as described in this complaint.

97. Said conspiracy or conspiracies and overt acts continue from on or about November 10, 2016, through to the present date.

98. This conspiracy proximately caused the injuries to the Plaintiff as set forth above.

99. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

100. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## DAMAGES AND ADDITIONAL RELIEF REQUESTED

101. Plaintiff has sustained damages which are ongoing and yet to be completely identified and quantified, that are the direct and proximate result of wrongful actions of Defendants and others known and unknown to the Plaintiff, acting in concert, and which are described herein. Such damages are ongoing, and include, but are not limited to significant damages, direct, indirect, collateral, consequential, and incidental, to Plaintiff's business and property and physical and mental injuries to the Plaintiff. Due to the actions of the Defendants against the Plaintiff which include but not limited to crimes, torts and violations as described in this complaint which caused extreme physical and mental injuries to the Plaintiff, the Plaintiff was declared legally disabled on October 21, 2019 retroactively as of January 21, 2017. Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor against Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in the Counts other than Civil RICO Count, as well as any other relief this Court deems just and appropriate.

Dated-: 01/10/2021

Respectfully Submitted,
/s/Abdul Mohammed
Pro Se Plaintiff
258 East Bailey Rd, Apt C,
Naperville, IL 60565
Ph.: 630-854-5345
aamohammed@hotmail.com



FILED DATE: 5/6/2021 11:55 AM   2021L000284

* 5 0 0 7 6 7 5 0 *

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (03/15/21) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Abdul Mohammed

Plaintiff(s)

v.

Jenner & Block LLP et.al

Defendant(s)

Daniel Bobier 353 N. Clark Street
Chicago, IL 60654

Address of Defendant(s)

Case No.   2021-L-000284

Please serve as follows (check one):   ○ Certified Mail   ● Sheriff Service   ○ Alias

### SUMMONS

To each Defendant:   Daniel Bobier,353 N.Clark,Chicago,Illinois 60654

You have been named a defendant in the complaint in this case, a copy of which is hereto attached.
You are summoned and required to file your appearance, in the office of the clerk of this court,
within 30 days after service of this summons, not counting the day of service. If you fail to do so, a
judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:** **Your appearance date is NOT a court date.** It is the deadline
for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED
TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/
answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/
approved/procedures/appearance.asp. After completing and saving your Appearance form, you can
electronically file (e-File) it with the circuit clerk's office.

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org



**Summons - Alias Summons**

* (03/15/21) CCG 0001 B

FILED DATE: 5/6/2021 11:55 AM 2021L000284

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

○ Atty. No.: _____

◉ Pro Se 99500

Name: Abdul Mohammed

Atty. for (if applicable): _____

_____

Address: 258 East Bailey Rd,Apt C

City: Naperville

State: IL   Zip: 60565

Telephone: 630-854-5345

Primary Email: aamohammed@hotmail.com

Witness date   5/6/2021 11:55 AM IRIS Y. MARTINEZ

Iris Y. Martinez, Clerk of Court

☐ Service by Certified Mail:

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)



* 5 0 0 7 6 7 5 0 *

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION

**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5133

### CIVIL DIVISION

**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5116

### COUNTY DIVISION

**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION

**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-6300

### DOMESTIC VIOLENCE

**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:  (312) 325-9500

### LAW DIVISION

**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5426

### PROBATE DIVISION

**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-6441

### ALL SUBURBAN CASE TYPES

#### DISTRICT 2 - SKOKIE

**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:  (847) 470-7250

#### DISTRICT 3 - ROLLING MEADOWS

**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:  (847) 818-3000

#### DISTRICT 4 - MAYWOOD

**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:  (708) 865-6040

#### DISTRICT 5 - BRIDGEVIEW

**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:  (708) 974-6500

#### DISTRICT 6 - MARKHAM

**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:  (708) 232-4551

FILED DATE: 5/6/2021 11:55 AM  2021L000284

**12-Person Jury**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED
1/11/2021 12:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
11772324

ABDUL MOHAMMED,

PLAINTIFF,

vs.

JENNER & BLOCK LLP, UBER TECHNOLOGIES INC, RASIER LLC, LITTLER MENDELSON P.C., ROMANUCCI AND BLANDIN LLC, DARA KHOSROWSHAHI, TRAVIS KALANICK, RYAN GRAVES, NICK GICINTO, CRAIG CLARK, MAT HENLEY, ANTONIO ROMANUCCI, JENNIFER SCHILLING, JODI BOQUIST, REID SCHAR, MEGAN POETZEL AND DANIEL BOBIER INDIVIDUALLY AND AS AGENTS OR SERVANTS OR VOLUNTEERS OR ASSOCIATES OR CONTRACTORS OR EMPLOYEES OF UBER TECHNOLOGIES INC, RASIER LLC, LITTLER MENDELSON P.C, ROMANUCCI AND BLANDIN LLC AND JENNER & BLOCK LLP,

DEFENDANTS

2021L000284

COMPLAINT WITH JURY DEMAND

**COMPLAINT AT LAW**

**PARTIES, JURISDICTION, AND VENUE**

1. The Plaintiff is a protected person within the meaning of the Americans with Disabilities Act, the Rehabilitation Act of 1973, Section 504, the Illinois Adult Protective Services Act, and the Federal Traumatic Brain Injury Reauthorization Act of 2014.

2. The Defendants are located in the jurisdiction of this court and they are conducting business in the jurisdiction of this court and further one or more actions alleged in this complaint occurred in the jurisdiction of this court. Hence this court has jurisdiction over this matter and hence venue is proper.

**FACTUAL BACKGROUND**

3. Plaintiff filed a complaint against Defendants Uber Technologies Inc (hereinafter Uber), Rasier LLC (hereinafter Rasier), Travis Kalanick (hereinafter Kalanick), and Ryan Graves (hereinafter Graves) in District Court of the United States for Northern District of Illinois, Eastern Division (hereinafter District Court) on February 24, 2016 and that case remains pending in District Court. See *Mohammed v Uber Technologies et.al*, Case # 16-cv-2537, N.D.Ill (hereinafter *Mohammed I*).

1



FILED DATE: 1/11/2021 12:00 AM   2021L000284

4. There is a dispute regarding an alleged Arbitration Agreement which the Defendants allege sin0 *Mohammed I* that the Plaintiff entered with the Defendants but anyhow the alleged Arbitration Agreement in the pertinent part states, "This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce." The instant complaint has nothing to do with a transaction involving interstate commerce and the instant complaint only deals with intentional crimes, intentional torts, and various other intentional violations committed by the Defendants against the Plaintiff, hence the instant complaint is not covered by the disputed alleged Arbitration Agreement.

5. Further, there is not even an alleged Arbitration Agreement against Defendants Littler Mendelson P.C. (hereinafter Littler), Jenner & Block LLP (hereinafter J & B), Romanucci and Blandin LLC (hereinafter R & B), Antonio Romanucci (hereinafter Romanucci), Jennifer Schilling (hereinafter Schilling), Jodi Boquist (hereinafter Boquist), Reid Schar (hereinafter Schar), Megan Poetzel (hereinafter Poetzel) and Daniel Bobier (hereinafter Bobier).

6. The actions alleged in this complaint are either stand-alone new allegations that occurred after the filing of *Mohammed I* and/or actions which were committed by the Defendants in retaliation against the Plaintiff for *Mohammed I.*

7. On November 10, 2016, the Plaintiff had an appointment with a law firm named Romanucci & Blandin LLC located at 321 North Clark Street, Suite 900, Chicago, Illinois 60654. The Plaintiff was waiting in the conference room to see Romanucci. A Security Officer of the building along with Romanucci entered the conference room and the Security Officer informed the Plaintiff that they have a problem with him and asked him to come out of the conference room. Then the Security Officer took the Plaintiff toward the elevator and shoved him into the elevator and brought him down to the Ground Floor and pushed the Plaintiff towards the exit of the building and informed him that he has an order from Defendant Littler Mendelson PC to remove him from the building. Littler's office is located at 321 North Clark Street, Suite 1100, Chicago, Illinois 60654. The Security Officer also informed the Plaintiff that if he again sets foot in the building, he will not go back home on his feet. Littler has added the Plaintiff's information to the Security System and when the Security System scans his ID, his name comes up, that he should not be allowed in the building. Plaintiff called Romanucci and asked him about this matter and he was informed that Littler is not allowing the Plaintiff to enter the building so Romanucci is not able to represent the Plaintiff. This is retaliation against the Plaintiff as naked as it gets for filing of *Mohammed I*. The masterminds of this retaliation against the Plaintiff are the Defendants other than Dara Khosrowshahi (hereinafter Khosrowshahi), J & B, Schar, Poetzel, and Bobier.

8. Before the Security Officer and Romanucci entered the conference room to remove the Plaintiff from the building, the Plaintiff heard that Security Officer saying to Romanucci, "Littler and Mendelson informed him that he is a criminal and he be removed from the building immediately".

9. Plaintiff is alleging that Uber was following the Plaintiff's location through its Uber Rider and Driver App which was installed on the Plaintiff's phone as described below and when Uber found out through the Uber Rider and Driver App which was installed on the Plaintiff's phone that the Plaintiff is inside the building located at 321 North

2



FILED DATE: 1/11/2021 12:00 AM   2021L000284

Clark Street, Chicago, Illinois 60654, informed Littler, Schilling and Boquist that the Plaintiff is inside the building located at 321 North Clark Street, Chicago, Illinois 60654.

10. The actions as alleged in this complaint were committed by the Defendants with prejudice towards Plaintiff's Race, Religion, and Disabilities and in particular with prejudice towards Plaintiff's National Origin and Ancestry which is described in *Mohammed I*. Defendants committed actions as described in *Mohammed I* and the instant complaint with a perceived belief that the Plaintiff is not a United States Citizen, he is an immigrant and/or undocumented immigrant and their another perceived belief that people who are not United States Citizens, immigrants and/or undocumented immigrants will generally not take any legal action if intentional crimes are committed against them, if intentional torts or violations are committed against them. Undocumented immigrants generally do not report to the law enforcement agencies or take any kind of legal action if crimes, intentional torts, or violations are committed against them due to their fear of being removed from the United States due to their undocumented status.

11. **Uber's spying of its Drivers and Lyft Drivers to bring Drivers to Uber's Platform and effectively under their control;**

Further Uber spied on its drivers including the Plaintiff and Lyft drivers by intercepting, accessing, monitoring and/or transmitting electronic communications and whereabouts of its drivers including the Plaintiff and Lyft drivers to lure Lyft drivers and drivers who worked both for Uber and Lyft, to exclusively drive for Uber, all in violation of Federal Wiretap Act as amended by the Electronic Communications Privacy Act (the "ECPA"), the Federal Stored Communication Act (the "SCA"), and common law invasion of privacy. See the Lawsuit against Uber in United States District Court Northern District of California, San Francisco Division, Case No.: 3:17-CV-02264, as Exhibit-H. Uber's violations as described in Exhibit-H were committed to destroy its only remaining competitor, Lyft, and to take away the only remaining option other than Uber, for the drivers. When Uber spied on its drivers including this Plaintiff, that is not only a crime but such a crime was committed to control the drivers.

12. **Waymo LLC v. Uber Technologies, Inc. (3:17-CV-00939) (N.D.Cal);**

Further during the pendency of the *Waymo Case*, Richard Jacobs, and Uber's former Manager of Global Intelligence informed his lawyer how Uber stole trade secrets from Waymo, spied on drivers and other individuals and other companies, and committed various crimes with an intent to cause harm to other individuals, companies and to bring drivers of other Ride-Sharing Companies to come and drive for Uber. Please see the letter from Jacobs' lawyer to Uber as Exhibit-I for a detailed analysis of Uber's criminal activities to destroy other Ride-Sharing Companies and to bring all the drivers in their control. Uber settled with Jacobs for $4.5 Million + a Job at Uber and Uber also paid $3 Million to Jacobs' lawyer. Uber also settled with Waymo for $245 Million. Uber's lawyer, Angela Padilla, said in court, the allegations in the letter had seemed "quite fantastical" to her. Jacobs testified in the *Waymo* case, there was an intelligence operation inside Uber to research competitors and gather data about them, and use technology to avoid a paper trail. In court, Padilla said Uber viewed the Jacobs' letter as a tactic by a disgruntled former employee to secure money from the company. Padilla said, "We felt that Jacobs was trying to extort the company." Uber eventually settled the matter by paying Jacobs $4.5 million, including a year-long consulting contract, and a further



FILED DATE: 1/1/2021 12:00 AM  2021L000284

$3 million to his lawyer. Judge Alsup said to Padilla, "That is a lot of money". "And people don't pay out kind of money for BS. And you certainly don't hire them as consultants if you think everything they've got to contribute is BS." As per Exhibit-I, Uber fraudulently impersonates riders and drivers on competitors' platforms, hacks into competitors' networks, and conducts unlawful wiretapping (each tactic discussed in additional detail in Exhibit-I). These tactics are used to obtain trade secrets about:

    a) the function of competitors' Apps;

    b) vulnerabilities in the competitors' App, including performance and function;

    c) vulnerabilities in competitors' App security;

    d) supply data, including unique driver information;

    e) pricing structures and incentives.

As per Exhibit-I, Uber worked to unlawfully obtain trade secrets from its competitors and 1) remotely accessed confidential corporate communications and data of its competitors, 2) impersonated riders and drivers including the Plaintiff on competitors' platform to derive key functions of rider and driver apps, 3) stole supply data by identifying possible drivers to boost Uber's market position, and 4) acquired codebase which allowed Uber to identify code used by its competitors' to understand in greater detail how their app functioned. By credibly impersonating both riders and drivers including the Plaintiff, Uber could request thousands of rides in a given geographic area to study the responsiveness and capability of the app, price quotes, and disposition of available drivers. Uber further impersonated prospective customers to ascertain the identity of drivers through their names including the Plaintiff, license plate numbers, and make/model of their vehicles. Uber then used this information to recruit drivers from their competitors' to Uber's platform. Uber also obtained key technical details about how its competitors would troubleshoot issues in comparison to Uber, and then used that data to develop contingencies to slow or impede competitors' business operations and also caused injury to the drivers including the Plaintiff to bring them to Uber's platform and effectively under their control. Uber employed tactics to obtain trade secrets, with a focus on stealing key supply data to boost Uber's pool of drivers, the function of the competitors' app, and its vulnerabilities, and then used that data to develop an aggressive "counterintelligence" campaign to slow competitors' efforts. Uber used special SIM cards to collect intelligence on competitors' trade secrets and to obtain private and protected information about the drivers including the Plaintiff. Specifically, the SIM cards were used to fraudulently impersonate customers on competitors' rider and driver applications. By credibly impersonating riders and drivers including the Plaintiff, Uber could:(i) develop processes to conduct thousands of data calls to reverse engineer products; (ii) identify and recruit supply (i.e. partner drivers); (iii) and derive key competitive business metrics to understand subsidies, available supply, processes for managing surge, and competitive market position. For instance, Uber would be able to study key technical details of how competitors' had engineered solutions to common problems ride-sharing providers have at scale, and in the context of dense population centers. Uber would then use that data to identify possible improvements, gain competitive advantages, or exploit weaknesses of competitors' platforms. Notably, Uber identified vulnerability in their competitors' system and collected



comprehensive supply data, including the license, name, and contact information for every single driver including the Plaintiff. Further Uber Executives conspired and acted in furtherance of the conspiracy to hack the database of its competitors and collected all driver information including the Plaintiff, to have a perfect set of possible drivers for Uber's platform which boosted supply when Uber targeted these operators and converted them to drivers for Uber. As discussed above, Uber used driver and customer impersonation to steal competitor trade secrets. This conduct not only violated the trade secrets law discussed above but also wire fraud law at 18 U.S.C § 1343, and California Penal Code § 528.5. Under this Section, it is unlawful to knowingly and without consent, credibly impersonate another actual person through the Internet or email, to harm, intimidate, threaten, or defraud someone. This conduct further exposes a company to civil liability under Section 528.5(e). This impersonation was intended to fraudulently steal business and bring drivers under its control and it was an "unlawful, unfair, or fraudulent business act and practice. California Bus & Prof Code § 1720. It is also in violation of the CFAA and related laws, discussed in Exhibit-I. Along with the theft of trade secrets, Jacobs observed Uber personnel, through their LAT operatives and their vendors; knowingly impersonate actual people over the Internet to keep tabs on competitors and opposition groups by accessing closed social media groups. This impersonation had the purpose of fraudulently stealing business and gaining a competitive advantage. During the summer of 2016, Jacobs learned that Uber's intelligence-gathering teams in other locations impersonated partner-drivers including the Plaintiff or taxi operators to gain access to private WhatsApp group messaging channels. Jacobs further investigated this conduct by searching Uber's internal network, TeamDot. Further Uber created a PowerPoint presentation which included a section on "intel gathering," a slide on driver chat group infiltration, and a link to the specific procedures for infiltrating driver-partner chat groups (including the impersonation of actual driver-partners including the Plaintiff) to collect information on growing discontent and possible opposition activities. Upon receipt, Jacobs disclosed the playbook to Craig Clark, who replied, "Do I want to know what it is?" Jacobs voiced concern as to its legality, noting that it encouraged "intel gathering" and described how to penetrate WhatsApp groups. Clark only replied that "this is happening everywhere and I'm not ready to deal with it." Clark did not investigate the presumed criminal violation. In late January and early February 2017, as part of SSG's virtual operations capability (VOC), Uber's agents posed as sympathetic protestors interested in participating in actions against Uber. By doing this, illegally gained access to closed Facebook groups and chatted with protesting drivers in an attempt to understand their nonpublic plans and intentions. All the actions described in Exhibit-I demonstrate how Uber spied on drivers including the Plaintiff and committed crimes left, right, and center with no fear whatsoever. An unredacted version of Exhibit-I can reveal further about Uber's activities.

13. **Sarbanes-Oxley Violations, Evidence Spoliation, and Other Discovery Abuses by Uber;**

The Sarbanes-Oxley Act of 2002 states that:

"whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case



filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both".

Sarbanes-Oxley Act of 2002, Pub. L. 107-204, § 802, 116 Stat. 745, 800 (2002). Codified at 18 U.S.C. § 1519, this provision applies to private companies and has a broad reach that is not limited to commenced litigation. Section 1519 "covers conduct intended to impede any federal investigation or proceeding *including one not even on the verge of commencement." Yates v. United States,* - U.S. --, 135 S.Ct. 1074, 1087 (2015) (emphasis added). Similarly, the California Rule of Professional Conduct 5-2320 prohibits members of the bar from suppressing evidence that the member or the member's client has a legal obligation to produce. Uber has knowingly violated 18 U.S.C § 1519 and continues to do so. Craig Clark, Uber's Legal Director for ThreatOps, and Mat Henley, Uber's Director of Threat Operations (ThreatOps), led Uber's efforts to evade current and future discovery requests, court orders, and government investigations in violation of state and federal law as well as ethical rules governing the legal profession. Clark devised training and provided advice intended to impede, obstruct, or influence the investigation of several ongoing lawsuits against Uber and in relation to or contemplation of further matters within the jurisdiction of the United States. Early in his tenure, Jacobs advocated for a secure and encrypted centralized database to ensure confidentiality and recordkeeping to provide access to intelligence for ThreatOps personnel. He presented a draft proposal to managers Henley and Clark. However, discussions broke down immediately because they objected to preserving any intelligence that would make preservation and legal discovery a simple process for future litigants. Clark emphasized that this was "exactly what we don't want to do ... create [a paper trail] that could later be discoverable." Clark noted the errors of past collections where Uber was forced to turn over documents. He alluded to the lessons learned from the "Ergo Investigation" and noted that encryption alone was not enough to avoid discovery. Nick Gicinto added his own objections, stating that while his team would be willing to share some details on collections, including sources and methods of collections on the ground in foreign countries, they were not willing to preserve the raw intelligence on Uber's network. Jacobs then became aware that Uber, primarily through Clark and Henley, had implemented a sophisticated strategy to destroy, conceal, cover-up, and falsify records or documents with the intent to impede or obstruct government investigations as well as discovery obligations in pending and future litigation. Besides violating 18 U.S.C. § 1519, this conduct constitutes an ethical violation.

14. **Destruction and Concealment of Records Using Ephemeral Communications;**

Clark and Henley helped implement and directed the almost-exclusive use of ephemeral and encrypted communications software, including WickrMe (and later Wickr SCIF), to communicate sensitive information within ThreatOps. Wickr Inc. is a San Francisco-based company that describes its product as a "communications platform designed to empower greater control over data security ... [using] multi-layers of peer-to-peer encryption". Henley and Clark implemented this program of ephemeral and encrypted communications for the express purpose of destroying evidence of illegal or unethical practices to avoid discovery in actual or potential litigation. The Wickr application uses robust encryption which prevents the information from being viewed by anyone except the intended recipient, but more importantly, programs messages to self-destruct in a matter of seconds to no longer

6

FILED DATE: 1/11/2021 12:00 AM   2021L000284



FILED DATE: 1/11/2021 12:00 AM   2021L000284

than six days. Consequently, Uber employees cannot be compelled to produce records of their chat conversations because no record is retained. Such a policy is inherently violative of the Sarbanes-Oxley Act, 18 U.S.C. Section 1519, and similar laws. Further, Clark and Henley directly instructed Jacobs to conceal documents in violation of Sarbanes-Oxley, by attempting to "shroud" them with, attorney-client privilege or work product protections. Clark taught the ThreatOps team that if they marked communications as "draft," asked for a legal opinion at the beginning of an email, and simply wrote "attorney-client privilege" on documents, they would be immune from discovery. What Clark failed to teach the team, however, is that there is no attorney-client privilege, no "seal of secrecy," if the communications were made for the purpose of enabling the commission of a crime or fraud. *U.S.v. Zolin* 491 U.S. 554, 563(1989); *see also* Cal. Evid. Code § 956. For example, Clark enabled illegal activities and gave legal advice designed to impede investigations by directing the hacking of the competitors' systems and platforms, and by directing the destruction of evidence related to eavesdropping against opposition groups of drivers as discussed above. Given the ongoing criminal and fraudulent activities within Uber, the crime-fraud exception to privilege applies, and all of Clark's communications in furtherance of these schemes would be fair game in discovery. His attempt to pre-emptively conceal them under attorney-client privilege is illegal, unethical, and improper.

15. **Concealment and Destruction of Records Using Non-attributable Hardware;**

Clark, Gicinto, and Henley acquired "non-attributable" hardware and software with which SSG and select members of ThreatOps planned and executed intelligence collection operations. Specifically, Henley and members of the MA team use computers not directly purchased by Uber that operate only on MiFi devices-so that the internet traffic would not appear to originate from an Uber network- virtual public networks (VPNs), and a distributed and non-attributable architecture of contracted Amazon Web Services (AWS) server space to conduct competitive intelligence collections against other ride-sharing companies. Likewise, Gicinto and the SSG team had similar non-attributable devices purchased through vendors and sub-vendors where they conducted virtual operations impersonating protesting drivers, Uber partner-drivers including the Plaintiff, and taxi operators. SSG used the devices to store raw information collected by their operatives from politicians, regulators, law enforcement, taxi organizations, and labor unions. By storing this data on non-attributable devices, Uber believed it would avoid detection and never be subject to legal discovery. This is because a standard preservation of evidence order typically focused on Uber work laptops, Uber networks, and Uber mobile devices. Non-attributable devices were deemed as not reasonably subsumed by any such preservation order and the team could, and did, "legally" (not so) dispose of any evidence or documentation held on these devices in the intervening period before knowledge of the devices' existence could be uncovered. Likewise, members of the ThreatOps team, notably Henley, were known to use personal computers to conduct substantial Uber-related work for the purpose of evading discovery.

16. **Concealment, Cover-up, and Falsification of Records through the Abuse of Attorney-Client Privilege Designations:**



FILED DATE: 1/11/2021 12:00 AM   2021L000284

Clark developed training on how to use attorney-client privilege to further conceal activities described in an non-ephemeral communication channel. Specifically, he developed a training using innocuous legal examples and the "lawyer dog" meme to produce a slide deck that taught the ThreatOps team how to utilize attorney-client privilege to impede discovery. While the presentation slides themselves did not depict or explain any unethical or illegal practices involving attorney-client privilege, Jacobs observed Clark's presentation first-hand. During the presentation, Clark verbally coached the participants on how to use attorney-client privilege to ensure sensitive intelligence collection activities would not surface in litigation. Clark also answered specific questions from employees on the minimum standards required to claim privilege for the purpose of shielding information. This "legal training" was particularly noteworthy because it surprisingly bears no Uber-branding; it does not even mention Uber, which is startling in a company with strong branding and adherence to process. Clark said that Uber needed to "shroud these work products in attorney-client privilege." Accordingly, Clark instructed Jacobs himself and others to address all emails on sensitive intelligence collection to him and ensure the emails were marked as "ATTORNEY- CLIENT PRIVILEGED AND CONFIDENTIAL," to mark any work product as "DRAFT" regardless of its actual status, and, on every communication, to specifically ask a question or request legal advice on some issue-even if no legal advice was needed or warranted. Likewise, he advised that Jacobs and others that they should communicate almost exclusively via phone, video teleconference ("Zoom"), or via the Wickr app, in that order of preference based on the record and audit trail each communications medium creates. Clark explained that the intent was to prevent disclosure of such communications if Jacobs was ever put on legal hold or his communications were ever subject to a preservation of evidence order. In sum, Uber has directly violated the document destruction, concealment, cover-up, and falsifications provisions of Sarbanes-Oxley in an effort to obstruct or impede active and future government investigations through the (1) acquisition and use of ephemeral communications programs; (2) the acquisition and use of non-attributable hardware and software; and (3) the wholesale abuse of attorney-client privilege designations and all of Uber's violations as described in this Brief were committed with a sole aim of destroying its competitors', so that the drivers including the Plaintiff have no other option than driving for Uber and to control the drivers including the Plaintiff.

## COUNT-1
## ASSAULT AND BATTERY (COMMON LAW TORT)
## (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

17. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

18. Defendants listed under this count, without lawful authority through their Security Officer, manhandled the Plaintiff, pushed and shoved the Plaintiff into the elevator, brought the Plaintiff down to the Ground Floor by holding the Plaintiff by his belt from the back, and by further threatening the Plaintiff that he will not back on his feet if he comes back to the building located at 321 North Clark Street, Chicago, Illinois 60654 and in turn, Defendants listed under this count knowingly engaged in conduct which constitutes assault and battery under Illinois Law and also placed Plaintiff in reasonable apprehension of receiving further battery as described above,



which further constitutes assault under Illinois Law and such an assault and battery was committed upon the Plaintiff by the Defendants with prejudice towards his Religion, Race, Ancestry, National Origin and Disabilities.

19. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

20. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

FILED DATE: 1/11/2021 12:00 AM 2021L000284

## COUNT-2
### AGGRAVATED ASSAULT AND AGGRAVATED BATTERY (COMMON LAW TORT)
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

21. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

22. Defendants listed under this count committed an aggravated assault upon the Plaintiff as described above because assault against a disabled person constitutes aggravated assault under Illinois Law.

23. Defendants listed under this count committed an aggravated assault upon the Plaintiff on a public way, public property, a public place of accommodation, and Defendants listed under this count committed an assault upon the Plaintiff with full knowledge that a Plaintiff is a person with Disabilities which is aggravated assault.

24. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

25. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-3
### STALKING AND AGGRAVATED STALKING
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

26. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

27. Defendants through their actions as described in paragraphs 11 to 16 have committed stalking against the Plaintiff under Illinois Law and because such stalking was against a disabled person (the Plaintiff), the stalking of the Plaintiff was aggravated stalking under Illinois Law.

28. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

29. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-4
### VIOLATION OF ILLINOIS HATE CRIMES ACT OF ILLINOIS
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

30. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.



31. Defendants' actions as described above and in particular as described in Count-1, Count-2, and Count-3 are offenses of assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct under the Illinois Law with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities.

32. Assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking and disorderly conduct are predicates of Illinois Hate Crimes Act and when Defendants committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities, they violated Illinois Hate Crimes Act.

33. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

34. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-5
### VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

35. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

36. Defendants with their actions as described in paragraphs 11 to 16 and as described in Count-1, Count-2 and Count-3 has committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct and in turn has caused a threat to public health and physical and mental injuries to the Plaintiff all in violation of Computer Fraud and Abuse Act.

37. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

38. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-6
### VIOLATION OF STORED COMMUNICATIONS ACT
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

39. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

40. Defendants with their actions as described in paragraphs 11 to 16 violated the Stored Communications Act when they obtained electronic communication while such electronic communications were stored in an iPhone belonging to the Plaintiff and also obtained electronic communication while such electronic communications were stored on the server belonging to the Plaintiff's Internet Service Provider.

41. The violations of the Stored Communications Act by the Defendants were willful, wanton, and reckless.

42. Under the Stored Communications Act, "Proof of actual damages is not required before an award either for punitive damages and attorneys' fees is entered".

FILED DATE: 1/11/2021 12:00 AM 2021L000284



FILED DATE: 1/11/2021 12:00 AM 2021L000284

43. The Fourth Circuit held that "[i]f the violation [of the SCA] is willful or intentional, the court can assess punitive damages" Id. The Fourth Circuit further held that 18 U.S.C Section 2707(b) (3) permits an award of attorneys' fees absent any proof of actual damages.

44. Under the Stored Communication Act the Plaintiff is entered to punitive damages and attorneys' fees.

45. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

46. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-7
### INTRUSION UPON SECLUSION AND PRIVACY OF THE PLAINTIFF
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

47. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

48. Intrusion upon Seclusion and Privacy of others was recognized by the Supreme Court of Illinois in *Lawlor v North American Corporation of Illinois*, 2012 IL 112530.

49. Defendants through their actions as described in paragraphs 11 to 16 have violated Intrusion upon Seclusion and Privacy of the Plaintiff.

50. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

51. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-8
### DEFAMATION PER SE
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

52. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

53. Defendants committed to Defamation Per Se when they informed several individuals including but not limited to the Security Officer and Romanucci that the Plaintiff is a criminal.

54. Plaintiff has never committed any crime and he was neither arrested nor convicted for any crime in his entire life.

55. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

56. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-9
### VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)



57. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

58. Defendants violated the Electronic Communications Privacy Act (hereinafter ECPA) as described above in paragraphs 11 to 16.

59. Defendants' intent to violate ECPA, Defendants' intended conduct which violated ECPA, what Defendants sought to intercept which violated ECPA, the nature of targeted communications which violated ECPA, the tools used to (or intended to be used) to intercept the protected content which violated ECPA; is described above in detail in paragraphs 11 to 16.

60. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

61. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-10**
**VIOLATION OF RICO, 18 U.S.C. § 1961, et seq**
**(DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)**

62. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

63. Individual Defendants listed under this count individually and/or as agents and/or servants and/or employees of Uber and/or Rasier and/or Littler and/or J & B (hereinafter "RICO Defendants,") are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

64. There is the association-in-fact of all RICO Defendants for the purpose of violating Plaintiff's rights, committing crimes and torts against the Plaintiff and for intentional infliction of physical and mental injuries in violation of his basic rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"). The Association-In-Fact Enterprise was created, controlled, and conducted by all RICO Defendants for the purposes as described in this complaint. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise. All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-In-Fact Enterprise as described in great detail in this complaint.

65. Defendants have conducted the affairs of the Association-In-Fact Enterprise, through a pattern of racketeering activity in interstate commerce that includes predicate acts indictable under 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant) and threat of kidnapping and bodily injury of the Plaintiff by the Security Officer on November 18, 2016 which is an indictable offense under the Illinois Law, as described under this count and as described in this complaint between the RICO Defendants and through the following actions, among others:

    a) RICO Defendants maliciously prosecuted the Plaintiff at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division and presented false and fabricated evidence that the Plaintiff gave fake rides to himself by using several fake identities, by using

FILED DATE: 1/11/2021 12:00 AM   2021L000284



several credit cards in the names of several fake individuals and by using several different SIM cards when actually Defendants gave fake rides to the Plaintiff by impersonating the Plaintiff as described in detail in paragraphs 11 to 16;

FILED DATE: 1/11/2021 12:00 AM 2021L000284

b) RICO Defendants further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that by listing Stanford University as his alma mater on Facebook, Plaintiff lied and committed an offense when actually the Plaintiff can list Stanford University as his alma mater as a matter of law and he can also possess a novelty Degree and/or Diploma from the Stanford University as a matter of law;

c) RICO Defendant further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that the Plaintiff deceived Uber by asking for a $500.00 joining bonus when he was still driving for Lyft when there was no condition for the Plaintiff to quit driving for Lyft and the Driver Support Representative at Uber's Chicago Office informed the Plaintiff that the only requirement for $500.00 joining bonus was that the Plaintiff needs to be a driver of Lyft and there was no requirement for the Plaintiff to quit driving Lyft.

66. Judge Lee who presided over the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division ruled that Plaintiff's fake rides, the request for $500.00 joining bonus, and his listing of Stanford University as his alma mater affected his credibility and ultimately Plaintiff's credibility was the major factor in Judge Lee's ruling that the Plaintiff entered into Arbitration Agreement with Uber.

67. RICO Defendants malicious prosecution as described above constitutes obstruction of justice, 18 U.S.C. § 1503(a), which is a predicate of Civil RICO.

68. Further RICO Defendants' obstruction of justice was accomplished through 18 U.S.C. § 1342 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), which are again predicates of Civil RICO.

69. Further RICO Defendants' obstruction of justice was in retaliation against the Plaintiff for his Federal Lawsuit (*Mohammed I*) in violation of 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant), which are again predicates of Civil RICO.

70. Further all actions of Defendants as described in paragraphs 1 to 16 constitute obstruction of justice, 18 U.S.C. § 1503(a), in relation to *Mohammed I*.

71. Each of the RICO Defendants' violations of 18 U.S.C. § 1503(a), 18 U.S.C. § 1342, 18 U.S.C. § 1343, 18 U.S.C. § 1512 and 18 U.S.C. § 1513 constitutes "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

72. RICO Defendants engaged in a pattern of racketeering activity intending to cause harm to the Plaintiff and to defraud the Plaintiff and to deny the Plaintiff of his property (to bind the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and to deny the Plaintiff his right to proceed with his claims in a court



of law and bounded the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and denied the Plaintiff his right to proceed with his claims in a court of law).

73. RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting the same victim (the Plaintiff). Based upon the agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of the Plaintiff.

74. RICO Defendants were an association of individuals, partnerships, and corporations joined in the purpose of conspiring to commit criminal activity as described above and as described in this complaint. The association employed a number of schemes in an attempt to cause harm to the Plaintiff including, but not limited to, causing acts as described under this count and as described in this complaint, causing intentional violations of the Plaintiff's rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff.

75. RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

76. By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the costs of this suit, including reasonable attorneys' fees. WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT-11
## MALICIOUS PROSECUTION IN RELATION TO COUNT-11 (ILLINOIS STATE LAW)
### (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

77. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

78. Defendants' actions as described in Count-10 also constitute malicious prosecution under the Illinois State Law.

79. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

80. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-12
## MALICIOUS PROSECUTION IN RELATION TO COUNT-11
### (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

81. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

82. Defendants further committed malicious prosecution under the Illinois State Law when they filed their Response to the Plaintiff's Motion to Vacate the Arbitration award in *Mohammed I* by arguing that the Motion to Vacate was in violation of the Executive Order of June 17, 2020, when the Executive Order only applies to cases filed after June

FILED DATE: 1/11/2021 12:00 AM   2021L000284



17, 2020 and by arguing that *Mohammed v. Anderson*, No. 18 C 8393, 2019 WL 3943669, at 'd (N.D. Ill.Aug.02?, 2019) was a frivolous action when in fact the court never ruled that *Mohammed v. Anderson*, was frivolous and when in fact *Mohammed v. Anderson* was dismissed under different grounds.

83. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

84. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

### COUNT-13
### FRAUDULENT MISREPRESENTATION IN RELATION TO COUNT-10, COUNT-11 AND COUNT-12
### (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

85. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

86. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

87. Defendants' actions as described in Count-10. Count-12 and Count-13 also constitute fraudulent misrepresentation under the Illinois State Law.

88. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

89. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

### COUNT-14
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (ALL DEFENDANTS)

90. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

91. In a manner more fully set forth above, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

92. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

93. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

### COUNT-15
### CIVIL CONSPIRACY
### (ALL DEFENDANTS)

94. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.



95. In a manner more fully set forth above, Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves for the purpose of depriving Plaintiff of his rights and accomplish an unlawful purpose by unlawful means as described in this complaint.

96. In furtherance of this conspiracy or conspiracies, Defendants, acting in concert with other co-conspirators, committed the overt acts as set forth above and as described in this complaint.

97. Said conspiracy or conspiracies and overt acts continue from on or about November 10, 2016, through to the present date.

98. This conspiracy proximately caused the injuries to the Plaintiff as set forth above.

99. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

100. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## DAMAGES AND ADDITIONAL RELIEF REQUESTED

101. Plaintiff has sustained damages which are ongoing and yet to be completely identified and quantified, that are the direct and proximate result of wrongful actions of Defendants and others known and unknown to the Plaintiff, acting in concert, and which are described herein. Such damages are ongoing, and include, but are not limited to significant damages, direct, indirect, collateral, consequential, and incidental, to Plaintiff's business and property and physical and mental injuries to the Plaintiff. Due to the actions of the Defendants against the Plaintiff which include but not limited to crimes, torts and violations as described in this complaint which caused extreme physical and mental injuries to the Plaintiff, the Plaintiff was declared legally disabled on October 21, 2019 retroactively as of January 21, 2017. Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor against Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in the Counts other than Civil RICO Count, as well as any other relief this Court deems just and appropriate.

Dated-: 01/10/2021

Respectfully Submitted,
/s/Abdul Mohammed
Pro Se Plaintiff
258 East Bailey Rd, Apt C,
Naperville, IL 60565
Ph.: 630-854-5345
aamohammed@hotmail.com

* 5 0 0 7 6 7 4 9 *

FILED DATE: 5/6/2021 11:55 AM 2021L000284

| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (03/15/21) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Abdul Mohammed

Plaintiff(s)

v.

Case No.  2021-L-000284

Jenner & Block LLP et.al

Defendant(s)

Megan Poetzel, 353 N. Clark Street
Chicago, IL 60654

Address of Defendant(s)

Please serve as follows (check one):  ○ Certified Mail  ● Sheriff Service  ○ Alias

### SUMMONS

To each Defendant:  Megan Poetzel,353 N.Clark,Chicago,Illinois 60654

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE: Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 3



Summons - Alias Summons

- (03/15/21) CCG 0001 B

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

○ Atty. No.: _____
◉ Pro Se 99500

Name: Abdul Mohammed

Atty. for (if applicable): _____

Address: 258 East Bailey Rd, Apt C

City: Naperville

State: IL  Zip: 60565

Telephone: 630-854-5345

Primary Email: aamohammed@hotmail.com

Witness date __5/6/2021 11:55 AM IRIS Y. MARTINEZ__

_____

Iris Y. Martinez, Clerk of Court

☐ Service by Certified Mail: _____

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)



*5 0 0 7 6 7 4 9*

FILED DATE: 5/6/2021 11:55 AM   2021L000284

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:   (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6441

### ALL SUBURBAN CASE TYPES
#### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:   (847) 470-7250

#### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:   (847) 818-3000

#### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:   (708) 865-6040

#### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:   (708) 974-6500

#### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:   (708) 232-4551

**12-Person Jury**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS0 0 7 6 7 4 9 *

ABDUL MOHAMMED,

PLAINTIFF,

vs.

JENNER & BLOCK LLP, UBER TECHNOLOGIES
INC, RASIER LLC, LITTLER MENDELSON P.C.,
ROMANUCCI AND BLANDIN LLC, DARA
KHOSROWSHAHI, TRAVIS KALANICK, RYAN
GRAVES, NICK GICINTO, CRAIG CLARK, MAT
HENLEY, ANTONIO ROMANUCCI, JENNIFER
SCHILLING, JODI BOQUIST, REID SCHAR,
MEGAN POETZEL AND DANIEL BOBIER
INDIVIDUALLY AND AS AGENTS OR SERVANTS
OR VOLUNTEERS OR ASSOCIATES OR
CONTRACTORS OR EMPLOYEES OF UBER
TECHNOLOGIES INC, RASIER LLC, LITTLER
MENDELSON P.C, ROMANUCCI AND BLANDIN
LLC AND JENNER & BLOCK LLP,

DEFENDANTS

FILED
1/11/2021 12:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
11772324

2021L000284

COMPLAINT WITH JURY DEMAND

**COMPLAINT AT LAW**

**PARTIES, JURISDICTION, AND VENUE**

1.  The Plaintiff is a protected person within the meaning of the Americans with Disabilities Act, the Rehabilitation Act of 1973, Section 504, the Illinois Adult Protective Services Act, and the Federal Traumatic Brain Injury Reauthorization Act of 2014.

2.  The Defendants are located in the jurisdiction of this court and they are conducting business in the jurisdiction of this court and further one or more actions alleged in this complaint occurred in the jurisdiction of this court. Hence this court has jurisdiction over this matter and hence venue is proper.

**FACTUAL BACKGROUND**

3.  Plaintiff filed a complaint against Defendants Uber Technologies Inc (hereinafter Uber), Rasier LLC (hereinafter Rasier), Travis Kalanick (hereinafter Kalanick), and Ryan Graves (hereinafter Graves) in District Court of the United States for Northern District of Illinois, Eastern Division (hereinafter District Court) on February 24, 2016 and that case remains pending in District Court. See *Mohammed v Uber Technologies et.al*, Case # 16-cv-2537, N.D.Ill (hereinafter *Mohammed I*).

1

FILED DATE: 1/11/2021 12:00 AM   2021L000284

4. There is a dispute regarding an alleged Arbitration Agreement which the Defendants alleges in *Mohammed II* that the Plaintiff entered with the Defendants but anyhow the alleged Arbitration Agreement in the pertinent part states, "This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce." The instant complaint has nothing to do with a transaction involving interstate commerce and the instant complaint only deals with intentional crimes, intentional torts, and various other intentional violations committed by the Defendants against the Plaintiff, hence the instant complaint is not covered by the disputed alleged Arbitration Agreement.

5. Further, there is not even an alleged Arbitration Agreement against Defendants Littler Mendelson P.C. (hereinafter Littler), Jenner & Block LLP (hereinafter J & B), Romanucci and Blandin LLC (hereinafter R & B), Antonio Romanucci (hereinafter Romanucci), Jennifer Schilling (hereinafter Schilling), Jodi Boquist (hereinafter Boquist), Reid Schar (hereinafter Schar), Megan Poetzel (hereinafter Poetzel) and Daniel Bobier (hereinafter Bobier).

6. The actions alleged in this complaint are either stand-alone new allegations that occurred after the filing of *Mohammed I* and/or actions which were committed by the Defendants in retaliation against the Plaintiff for *Mohammed I*.

7. On November 10, 2016, the Plaintiff had an appointment with a law firm named Romanucci & Blandin LLC located at 321 North Clark Street, Suite 900, Chicago, Illinois 60654. The Plaintiff was waiting in the conference room to see Romanucci. A Security Officer of the building along with Romanucci entered the conference room and the Security Officer informed the Plaintiff that they have a problem with him and asked him to come out of the conference room. Then the Security Officer took the Plaintiff toward the elevator and shoved him into the elevator and brought him down to the Ground Floor and pushed the Plaintiff towards the exit of the building and informed him that he has an order from Defendant Littler Mendelson PC to remove him from the building. Littler's office is located at 321 North Clark Street, Suite 1100, Chicago, Illinois 60654. The Security Officer also informed the Plaintiff that if he again sets foot in the building, he will not go back home on his feet. Littler has added the Plaintiff's information to the Security System and when the Security System scans his ID, his name comes up, that he should not be allowed in the building. Plaintiff called Romanucci and asked him about this matter and he was informed that Littler is not allowing the Plaintiff to enter the building so Romanucci is not able to represent the Plaintiff. This is retaliation against the Plaintiff as naked as it gets for filing of *Mohammed I*. The masterminds of this retaliation against the Plaintiff are the Defendants other than Dara Khosrowshahi (hereinafter Khosrowshahi), J & B, Schar, Poetzel, and Bobier.

8. Before the Security Officer and Romanucci entered the conference room to remove the Plaintiff from the building, the Plaintiff heard that Security Officer saying to Romanucci, "Littler and Mendelson informed him that he is a criminal and he be removed from the building immediately".

9. Plaintiff is alleging that Uber was following the Plaintiff's location through its Uber Rider and Driver App which was installed on the Plaintiff's phone as described below and when Uber found out through the Uber Rider and Driver App which was installed on the Plaintiff's phone that the Plaintiff is inside the building located at 321 North



Clark Street, Chicago, Illinois 60654, informed Littler, Schilling and Boquist that the Plaintiff is inside the building located at 321 North Clark Street, Chicago, Illinois 60654.

10. The actions as alleged in this complaint were committed by the Defendants with prejudice towards Plaintiff's Race, Religion, and Disabilities and in particular with prejudice towards Plaintiff's National Origin and Ancestry which is described in *Mohammed I*. Defendants committed actions as described in *Mohammed I* and the instant complaint with a perceived belief that the Plaintiff is not a United States Citizen, he is an immigrant and/or undocumented immigrant and their another perceived belief that people who are not United States Citizens, immigrants and/or undocumented immigrants will generally not take any legal action if intentional crimes are committed against them, if intentional torts or violations are committed against them. Undocumented immigrants generally do not report to the law enforcement agencies or take any kind of legal action if crimes, intentional torts, or violations are committed against them due to their fear of being removed from the United States due to their undocumented status.

11. **Uber's spying of its Drivers and Lyft Drivers to bring Drivers to Uber's Platform and effectively under their control;**

Further Uber spied on its drivers including the Plaintiff and Lyft drivers by intercepting, accessing, monitoring and/or transmitting electronic communications and whereabouts of its drivers including the Plaintiff and Lyft drivers to lure Lyft drivers and drivers who worked both for Uber and Lyft, to exclusively drive for Uber, all in violation of Federal Wiretap Act as amended by the Electronic Communications Privacy Act (the "ECPA"), the Federal Stored Communication Act (the "SCA"), and common law invasion of privacy. See the Lawsuit against Uber in United States District Court Northern District of California, San Francisco Division, Case No.: 3:17-CV-02264, as Exhibit-H. Uber's violations as described in Exhibit-H were committed to destroy its only remaining competitor, Lyft, and to take away the only remaining option other than Uber, for the drivers. When Uber spied on its drivers including this Plaintiff, that is not only a crime but such a crime was committed to control the drivers.

12. **Waymo LLC v. Uber Technologies, Inc. (3:17-CV-00939) (N.D.Cal);**

Further during the pendency of the *Waymo Case,* Richard Jacobs, and Uber's former Manager of Global Intelligence informed his lawyer how Uber stole trade secrets from Waymo, spied on drivers and other individuals and other companies, and committed various crimes with an intent to cause harm to other individuals, companies and to bring drivers of other Ride-Sharing Companies to come and drive for Uber. Please see the letter from Jacobs' lawyer to Uber as Exhibit-I for a detailed analysis of Uber's criminal activities to destroy other Ride-Sharing Companies and to bring all the drivers in their control. Uber settled with Jacobs for $4.5 Million + a Job at Uber and Uber also paid $3 Million to Jacobs' lawyer. Uber also settled with Waymo for $245 Million. Uber's lawyer, Angela Padilla, said in court, the allegations in the letter had seemed "quite fantastical" to her. Jacobs testified in the *Waymo* case, there was an intelligence operation inside Uber to research competitors and gather data about them, and use technology to avoid a paper trail. In court, Padilla said Uber viewed the Jacobs' letter as a tactic by a disgruntled former employee to secure money from the company. Padilla said, "We felt that Jacobs was trying to extort the company." Uber eventually settled the matter by paying Jacobs $4.5 million, including a year-long consulting contract, and a further

FILED DATE: 1/11/2021 12:00 AM   2021L000284



FILED DATE: 1/11/2021 12:00 AM   2021L000284

$3 million to his lawyer. Judge Alsup said to Padilla, "That is a lot of money". "And people do not pay that kind of money for BS. And you certainly don't hire them as consultants if you think everything they've got to contribute is BS." As per Exhibit-I, Uber fraudulently impersonates riders and drivers on competitors' platforms, hacks into competitors' networks, and conducts unlawful wiretapping (each tactic discussed in additional detail in Exhibit-I). These tactics are used to obtain trade secrets about:

a) the function of competitors' Apps;

b) vulnerabilities in the competitors' App, including performance and function;

c) vulnerabilities in competitors' App security;

d) supply data, including unique driver information;

e) pricing structures and incentives.

As per Exhibit-I, Uber worked to unlawfully obtain trade secrets from its competitors and 1) remotely accessed confidential corporate communications and data of its competitors, 2) impersonated riders and drivers including the Plaintiff on competitors' platform to derive key functions of rider and driver apps, 3) stole supply data by identifying possible drivers to boost Uber's market position, and 4) acquired codebase which allowed Uber to identify code used by its competitors' to understand in greater detail how their app functioned. By credibly impersonating both riders and drivers including the Plaintiff, Uber could request thousands of rides in a given geographic area to study the responsiveness and capability of the app, price quotes, and disposition of available drivers. Uber further impersonated prospective customers to ascertain the identity of drivers through their names including the Plaintiff, license plate numbers, and make/model of their vehicles. Uber then used this information to recruit drivers from their competitors' to Uber's platform. Uber also obtained key technical details about how its competitors would troubleshoot issues in comparison to Uber, and then used that data to develop contingencies to slow or impede competitors' business operations and also caused injury to the drivers including the Plaintiff to bring them to Uber's platform and effectively under their control. Uber employed tactics to obtain trade secrets, with a focus on stealing key supply data to boost Uber's pool of drivers, the function of the competitors' app, and its vulnerabilities, and then used that data to develop an aggressive "counterintelligence" campaign to slow competitors' efforts. Uber used special SIM cards to collect intelligence on competitors' trade secrets and to obtain private and protected information about the drivers including the Plaintiff. Specifically, the SIM cards were used to fraudulently impersonate customers on competitors' rider and driver applications. By credibly impersonating riders and drivers including the Plaintiff, Uber could:(i) develop processes to conduct thousands of data calls to reverse engineer products; (ii) identify and recruit supply (i.e. partner drivers); (iii) and derive key competitive business metrics to understand subsidies, available supply, processes for managing surge, and competitive market position. For instance, Uber would be able to study key technical details of how competitors' had engineered solutions to common problems ride-sharing providers have at scale, and in the context of dense population centers. Uber would then use that data to identify possible improvements, gain competitive advantages, or exploit weaknesses of competitors' platforms. Notably, Uber identified vulnerability in their competitors' system and collected



comprehensive supply data, including the license, name, and contact information for every single driver including the Plaintiff. Further Uber Executives conspired and acted in furtherance of the conspiracy to hack the database of its competitors and collected all driver information including the Plaintiff, to have a perfect set of possible drivers for Uber's platform which boosted supply when Uber targeted these operators and converted them to drivers for Uber. As discussed above, Uber used driver and customer impersonation to steal competitor trade secrets. This conduct not only violated the trade secrets law discussed above but also wire fraud law at 18 U.S.C § 1343, and California Penal Code § 528.5. Under this Section, it is unlawful to knowingly and without consent, credibly impersonate another actual person through the Internet or email, to harm, intimidate, threaten, or defraud someone. This conduct further exposes a company to civil liability under Section 528.5(e). This impersonation was intended to fraudulently steal business and bring drivers under its control and it was an "unlawful, unfair, or fraudulent business act and practice. California Bus & Prof Code § 1720. It is also in violation of the CFAA and related laws, discussed in Exhibit-I. Along with the theft of trade secrets, Jacobs observed Uber personnel, through their LAT operatives and their vendors; knowingly impersonate actual people over the Internet to keep tabs on competitors and opposition groups by accessing closed social media groups. This impersonation had the purpose of fraudulently stealing business and gaining a competitive advantage. During the summer of 2016, Jacobs learned that Uber's intelligence-gathering teams in other locations impersonated partner-drivers including the Plaintiff or taxi operators to gain access to private WhatsApp group messaging channels. Jacobs further investigated this conduct by searching Uber's internal network, TeamDot. Further Uber created a PowerPoint presentation which included a section on "intel gathering," a slide on driver chat group infiltration, and a link to the specific procedures for infiltrating driver-partner chat groups (including the impersonation of actual driver-partners including the Plaintiff) to collect information on growing discontent and possible opposition activities. Upon receipt, Jacobs disclosed the playbook to Craig Clark, who replied, "Do I want to know what it is?" Jacobs voiced concern as to its legality, noting that it encouraged "intel gathering" and described how to penetrate WhatsApp groups. Clark only replied that "this is happening everywhere and I'm not ready to deal with it." Clark did not investigate the presumed criminal violation. In late January and early February 2017, as part of SSG's virtual operations capability (VOC), Uber's agents posed as sympathetic protestors interested in participating in actions against Uber. By doing this, illegally gained access to closed Facebook groups and chatted with protesting drivers in an attempt to understand their nonpublic plans and intentions. All the actions described in Exhibit-I demonstrate how Uber spied on drivers including the Plaintiff and committed crimes left, right, and center with no fear whatsoever. An unredacted version of Exhibit-I can reveal further about Uber's activities.

13. **Sarbanes-Oxley Violations, Evidence Spoliation, and Other Discovery Abuses by Uber;**

The Sarbanes-Oxley Act of 2002 states that:

"whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case



filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both".

Sarbanes-Oxley Act of 2002, Pub. L. 107-204, § 802, 116 Stat. 745, 800 (2002). Codified at 18 U.S.C. § 1519, this provision applies to private companies and has a broad reach that is not limited to commenced litigation. Section 1519 "covers conduct intended to impede any federal investigation or proceeding *including one not even on the verge of commencement.*" *Yates v. United States,* - U.S. --, 135 S.Ct. 1074, 1087 (2015) (emphasis added). Similarly, the California Rule of Professional Conduct 5-2320 prohibits members of the bar from suppressing evidence that the member or the member's client has a legal obligation to produce. Uber has knowingly violated 18 U.S.C § 1519 and continues to do so. Craig Clark, Uber's Legal Director for ThreatOps, and Mat Henley, Uber's Director of Threat Operations (ThreatOps), led Uber's efforts to evade current and future discovery requests, court orders, and government investigations in violation of state and federal law as well as ethical rules governing the legal profession. Clark devised training and provided advice intended to impede, obstruct, or influence the investigation of several ongoing lawsuits against Uber and in relation to or contemplation of further matters within the jurisdiction of the United States. Early in his tenure, Jacobs advocated for a secure and encrypted centralized database to ensure confidentiality and recordkeeping to provide access to intelligence for ThreatOps personnel. He presented a draft proposal to managers Henley and Clark. However, discussions broke down immediately because they objected to preserving any intelligence that would make preservation and legal discovery a simple process for future litigants. Clark emphasized that this was "exactly what we don't want to do ... create [a paper trail] that could later be discoverable." Clark noted the errors of past collections where Uber was forced to turn over documents. He alluded to the lessons learned from the "Ergo Investigation" and noted that encryption alone was not enough to avoid discovery. Nick Gicinto added his own objections, stating that while his team would be willing to share some details on collections, including sources and methods of collections on the ground in foreign countries, they were not willing to preserve the raw intelligence on Uber's network. Jacobs then became aware that Uber, primarily through Clark and Henley, had implemented a sophisticated strategy to destroy, conceal, cover-up, and falsify records or documents with the intent to impede or obstruct government investigations as well as discovery obligations in pending and future litigation. Besides violating 18 U.S.C. § 1519, this conduct constitutes an ethical violation.

14. **Destruction and Concealment of Records Using Ephemeral Communications;**

Clark and Henley helped implement and directed the almost-exclusive use of ephemeral and encrypted communications software, including WickrMe (and later Wickr SCIF), to communicate sensitive information within ThreatOps. Wickr Inc. is a San Francisco-based company that describes its product as a "communications platform designed to empower greater control over data security ... [using] multi-layers of peer-to-peer encryption". Henley and Clark implemented this program of ephemeral and encrypted communications for the express purpose of destroying evidence of illegal or unethical practices to avoid discovery in actual or potential litigation. The Wickr application uses robust encryption which prevents the information from being viewed by anyone except the intended recipient, but more importantly, programs messages to self-destruct in a matter of seconds to no longer

FILED DATE: 1/11/2021 12:00 AM    2021L000284

6



than six days. Consequently, Uber employees cannot be compelled to produce records of their chat conversations because no record is retained. Such a policy is inherently violative of the Sarbanes-Oxley Act, 18 U.S.C. Section 1519, and similar laws. Further, Clark and Henley directly instructed Jacobs to conceal documents in violation of Sarbanes-Oxley, by attempting to "shroud" them with attorney-client privilege or work product protections. Clark taught the ThreatOps team that if they marked communications as "draft," asked for a legal opinion at the beginning of an email, and simply wrote "attorney-client privilege" on documents, they would be immune from discovery. What Clark failed to teach the team, however, is that there is no attorney-client privilege, no "seal of secrecy," if the communications were made for the purpose of enabling the commission of a crime or fraud. *U.S.v. Zolin* 491 U.S. 554, 563(1989); *see also* Cal. Evid. Code § 956. For example, Clark enabled illegal activities and gave legal advice designed to impede investigations by directing the hacking of the competitors' systems and platforms, and by directing the destruction of evidence related to eavesdropping against opposition groups of drivers as discussed above. Given the ongoing criminal and fraudulent activities within Uber, the crime-fraud exception to privilege applies, and all of Clark's communications in furtherance of these schemes would be fair game in discovery. His attempt to pre-emptively conceal them under attorney-client privilege is illegal, unethical, and improper.

15. **Concealment and Destruction of Records Using Non-attributable Hardware;**

Clark, Gicinto, and Henley acquired "non-attributable" hardware and software with which SSG and select members of ThreatOps planned and executed intelligence collection operations. Specifically, Henley and members of the MA team use computers not directly purchased by Uber that operate only on MiFi devices-so that the internet traffic would not appear to originate from an Uber network- virtual public networks (VPNs), and a distributed and non-attributable architecture of contracted Amazon Web Services (AWS) server space to conduct competitive intelligence collections against other ride-sharing companies. Likewise, Gicinto and the SSG team had similar non-attributable devices purchased through vendors and sub-vendors where they conducted virtual operations impersonating protesting drivers, Uber partner-drivers including the Plaintiff, and taxi operators. SSG used the devices to store raw information collected by their operatives from politicians, regulators, law enforcement, taxi organizations, and labor unions. By storing this data on non-attributable devices, Uber believed it would avoid detection and never be subject to legal discovery. This is because a standard preservation of evidence order typically focused on Uber work laptops, Uber networks, and Uber mobile devices. Non-attributable devices were deemed as not reasonably subsumed by any such preservation order and the team could, and did, "legally" (not so) dispose of any evidence or documentation held on these devices in the intervening period before knowledge of the devices' existence could be uncovered. Likewise, members of the ThreatOps team, notably Henley, were known to use personal computers to conduct substantial Uber-related work for the purpose of evading discovery.

16. **Concealment, Cover-up, and Falsification of Records through the Abuse of Attorney-Client Privilege Designations:**



Clark developed training on how to use attorney-client privilege to further conceal activities descrilcdin7and non-ephemeral communication channel. Specifically, he developed a training using innocuous legal examples and the "lawyer dog" meme to produce a slide deck that taught the ThreatOps team how to utilize attorney-client privilege to impede discovery. While the presentation slides themselves did not depict or explain any unethical or illegal practices involving attorney-client privilege, Jacobs observed Clark's presentation first-hand. During the presentation, Clark verbally coached the participants on how to use attorney-client privilege to ensure sensitive intelligence collection activities would not surface in litigation. Clark also answered specific questions from employees on the minimum standards required to claim privilege for the purpose of shielding information. This "legal training" was particularly noteworthy because it surprisingly bears no Uber-branding; it does not even mention Uber, which is startling in a company with strong branding and adherence to process. Clark said that Uber needed to "shroud these work products in attorney-client privilege." Accordingly, Clark instructed Jacobs himself and others to address all emails on sensitive intelligence collection to him and ensure the emails were marked as "ATTORNEY- CLIENT PRIVILEGED AND CONFIDENTIAL," to mark any work product as "DRAFT" regardless of its actual status, and, on every communication, to specifically ask a question or request legal advice on some issue-even if no legal advice was needed or warranted. Likewise, he advised that Jacobs and others that they should communicate almost exclusively via phone, video teleconference ("Zoom"), or via the Wickr app, in that order of preference based on the record and audit trail each communications medium creates. Clark explained that the intent was to prevent disclosure of such communications if Jacobs was ever put on legal hold or his communications were ever subject to a preservation of evidence order. In sum, Uber has directly violated the document destruction, concealment, cover-up, and falsifications provisions of Sarbanes-Oxley in an effort to obstruct or impede active and future government investigations through the (1) acquisition and use of ephemeral communications programs; (2) the acquisition and use of non-attributable hardware and software; and (3) the wholesale abuse of attorney-client privilege designations and all of Uber's violations as described in this Brief were committed with a sole aim of destroying its competitors', so that the drivers including the Plaintiff have no other option than driving for Uber and to control the drivers including the Plaintiff.

## COUNT-1
## ASSAULT AND BATTERY (COMMON LAW TORT)
## (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

17. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

18. Defendants listed under this count, without lawful authority through their Security Officer, manhandled the Plaintiff, pushed and shoved the Plaintiff into the elevator, brought the Plaintiff down to the Ground Floor by holding the Plaintiff by his belt from the back, and by further threatening the Plaintiff that he will not back on his feet if he comes back to the building located at 321 North Clark Street, Chicago, Illinois 60654 and in turn, Defendants listed under this count knowingly engaged in conduct which constitutes assault and battery under Illinois Law and also placed Plaintiff in reasonable apprehension of receiving further battery as described above,



which further constitutes assault under Illinois Law and such an assault and battery *was committed upon the Plaintiff by the Defendants with prejudice towards his Religion, Race, Ancestry, National Origin and Disabilities.

19. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

20. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-2
### AGGRAVATED ASSAULT AND AGGRAVATED BATTERY (COMMON LAW TORT)
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

21. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

22. Defendants listed under this count committed an aggravated assault upon the Plaintiff as described above because assault against a disabled person constitutes aggravated assault under Illinois Law.

23. Defendants listed under this count committed an aggravated assault upon the Plaintiff on a public way, public property, a public place of accommodation, and Defendants listed under this count committed an assault upon the Plaintiff with full knowledge that a Plaintiff is a person with Disabilities which is aggravated assault.

24. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

25. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-3
### STALKING AND AGGRAVATED STALKING
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

26. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

27. Defendants through their actions as described in paragraphs 11 to 16 have committed stalking against the Plaintiff under Illinois Law and because such stalking was against a disabled person (the Plaintiff), the stalking of the Plaintiff was aggravated stalking under Illinois Law.

28. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

29. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-4
### VIOLATION OF ILLINOIS HATE CRIMES ACT OF ILLINOIS
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

30. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.



31. Defendants' actions as described above and in particular as described in Count-1, Count-2, and Count-3 are offenses of assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct under the Illinois Law with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities.

32. Assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking and disorderly conduct are predicates of Illinois Hate Crimes Act and when Defendants committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities, they violated Illinois Hate Crimes Act.

33. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

34. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-5
## VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

35. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

36. Defendants with their actions as described in paragraphs 11 to 16 and as described in Count-1, Count-2 and Count-3 has committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct and in turn has caused a threat to public health and physical and mental injuries to the Plaintiff all in violation of Computer Fraud and Abuse Act.

37. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

38. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-6
## VIOLATION OF STORED COMMUNICATIONS ACT
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

39. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

40. Defendants with their actions as described in paragraphs 11 to 16 violated the Stored Communications Act when they obtained electronic communication while such electronic communications were stored in an iPhone belonging to the Plaintiff and also obtained electronic communication while such electronic communications were stored on the server belonging to the Plaintiff's Internet Service Provider.

41. The violations of the Stored Communications Act by the Defendants were willful, wanton, and reckless.

42. Under the Stored Communications Act, "Proof of actual damages is not required before an award either for punitive damages and attorneys' fees is entered".

FILED DATE: 1/11/2021 12:00 AM    2021L000284



FILED DATE: 1/11/2021 12:00 AM    2021L000284

43. The Fourth Circuit held that "[i]f the violation [of the SCA] is willful or intentional, the court can assess punitive damages" Id. The Fourth Circuit further held that 18 U.S.C Section 2707(b) (3) permits an award of attorneys' fees absent any proof of actual damages.

44. Under the Stored Communication Act the Plaintiff is entered to punitive damages and attorneys' fees.

45. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

46. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-7
### INTRUSION UPON SECLUSION AND PRIVACY OF THE PLAINTIFF
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

47. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

48. Intrusion upon Seclusion and Privacy of others was recognized by the Supreme Court of Illinois in *Lawlor v North American Corporation of Illinois*, 2012 IL 112530.

49. Defendants through their actions as described in paragraphs 11 to 16 have violated Intrusion upon Seclusion and Privacy of the Plaintiff.

50. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

51. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-8
### DEFAMATION PER SE
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

52. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

53. Defendants committed to Defamation Per Se when they informed several individuals including but not limited to the Security Officer and Romanucci that the Plaintiff is a criminal.

54. Plaintiff has never committed any crime and he was neither arrested nor convicted for any crime in his entire life.

55. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

56. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-9
### VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)



57. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

58. Defendants violated the Electronic Communications Privacy Act (hereinafter ECPA) as described above in paragraphs 11 to 16.

59. Defendants' intent to violate ECPA, Defendants' intended conduct which violated ECPA, what Defendants sought to intercept which violated ECPA, the nature of targeted communications which violated ECPA, the tools used to (or intended to be used) to intercept the protected content which violated ECPA; is described above in detail in paragraphs 11 to 16.

60. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

61. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-10**
**VIOLATION OF RICO, 18 U.S.C. § 1961, et seq**
**(DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)**

62. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

63. Individual Defendants listed under this count individually and/or as agents and/or servants and/or employees of Uber and/or Rasier and/or Littler and/or J & B (hereinafter "RICO Defendants,") are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

64. There is the association-in-fact of all RICO Defendants for the purpose of violating Plaintiff's rights, committing crimes and torts against the Plaintiff and for intentional infliction of physical and mental injuries in violation of his basic rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"). The Association-In-Fact Enterprise was created, controlled, and conducted by all RICO Defendants for the purposes as described in this complaint. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise. All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-In-Fact Enterprise as described in great detail in this complaint.

65. Defendants have conducted the affairs of the Association-In-Fact Enterprise, through a pattern of racketeering activity in interstate commerce that includes predicate acts indictable under 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant) and threat of kidnapping and bodily injury of the Plaintiff by the Security Officer on November 18, 2016 which is an indictable offense under the Illinois Law, as described under this count and as described in this complaint between the RICO Defendants and through the following actions, among others:

    a) RICO Defendants maliciously prosecuted the Plaintiff at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division and presented false and fabricated evidence that the Plaintiff gave fake rides to himself by using several fake identities, by using



FILED DATE: 1/11/2021 12:00 AM 2021L000284

several credit cards in the names of several fake individuals and by using several different SIMs cards when actually Defendants gave fake rides to the Plaintiff by impersonating the Plaintiff as described in detail in paragraphs 11 to 16;

b) RICO Defendants further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that by listing Stanford University as his alma mater on Facebook, Plaintiff lied and committed an offense when actually the Plaintiff can list Stanford University as his alma mater as a matter of law and he can also possess a novelty Degree and/or Diploma from the Stanford University as a matter of law;

c) RICO Defendant further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that the Plaintiff deceived Uber by asking for a $500.00 joining bonus when he was still driving for Lyft when there was no condition for the Plaintiff to quit driving for Lyft and the Driver Support Representative at Uber's Chicago Office informed the Plaintiff that the only requirement for $500.00 joining bonus was that the Plaintiff needs to be a driver of Lyft and there was no requirement for the Plaintiff to quit driving Lyft.

66. Judge Lee who presided over the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division ruled that Plaintiff's fake rides, the request for $500.00 joining bonus, and his listing of Stanford University as his alma mater affected his credibility and ultimately Plaintiff's credibility was the major factor in Judge Lee's ruling that the Plaintiff entered into Arbitration Agreement with Uber.

67. RICO Defendants malicious prosecution as described above constitutes obstruction of justice, 18 U.S.C. § 1503(a), which is a predicate of Civil RICO.

68. Further RICO Defendants' obstruction of justice was accomplished through 18 U.S.C. § 1342 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), which are again predicates of Civil RICO.

69. Further RICO Defendants' obstruction of justice was in retaliation against the Plaintiff for his Federal Lawsuit (*Mohammed I*) in violation of 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant), which are again predicates of Civil RICO.

70. Further all actions of Defendants as described in paragraphs 1 to 16 constitute obstruction of justice, 18 U.S.C. § 1503(a), in relation to *Mohammed I*.

71. Each of the RICO Defendants' violations of 18 U.S.C. § 1503(a), 18 U.S.C. § 1342, 18 U.S.C. § 1343, 18 U.S.C. § 1512 and 18 U.S.C. § 1513 constitutes "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

72. RICO Defendants engaged in a pattern of racketeering activity intending to cause harm to the Plaintiff and to defraud the Plaintiff and to deny the Plaintiff of his property (to bind the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and to deny the Plaintiff his right to proceed with his claims in a court



of law and bounded the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and denied the Plaintiff his right to proceed with his claims in a court of law).

73. RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting the same victim (the Plaintiff). Based upon the agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of the Plaintiff.

74. RICO Defendants were an association of individuals, partnerships, and corporations joined in the purpose of conspiring to commit criminal activity as described above and as described in this complaint. The association employed a number of schemes in an attempt to cause harm to the Plaintiff including, but not limited to, causing acts as described under this count and as described in this complaint, causing intentional violations of the Plaintiff's rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff.

75. RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

76. By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the costs of this suit, including reasonable attorneys' fees. WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT-11
### MALICIOUS PROSECUTION IN RELATION TO COUNT-11 (ILLINOIS STATE LAW)
### (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

77. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

78. Defendants' actions as described in Count-10 also constitute malicious prosecution under the Illinois State Law.

79. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

80. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-12
### MALICIOUS PROSECUTION IN RELATION TO COUNT-11
### (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

81. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

82. Defendants further committed malicious prosecution under the Illinois State Law when they filed their Response to the Plaintiff's Motion to Vacate the Arbitration award in *Mohammed I* by arguing that the Motion to Vacate was in violation of the Executive Order of June 17, 2020, when the Executive Order only applies to cases filed after June

14



17, 2020 and by arguing that *Mohammed v. Anderson*, No. 18 C 8393, 2019 WL 3943669, at *d (N.D. Ill. Aug.92l*, 2019) was a frivolous action when in fact the court never ruled that *Mohammed v. Anderson*, was frivolous and when in fact *Mohammed v. Anderson* was dismissed under different grounds.

83. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

84. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-13**
**FRAUDULENT MISREPRESENTATION IN RELATION TO COUNT-10, COUNT-11 AND**
**COUNT-12**
**(DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)**

85. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

86. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

87. Defendants' actions as described in Count-10, Count-12 and Count-13 also constitute fraudulent misrepresentation under the Illinois State Law.

88. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

89. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-14**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(ALL DEFENDANTS)**

90. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

91. In a manner more fully set forth above, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

92. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

93. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-15**
**CIVIL CONSPIRACY**
**(ALL DEFENDANTS)**

94. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

FILED DATE: 1/11/2021 12:00 AM   2021L000284



95. In a manner more fully set forth above, Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves for the purpose of depriving Plaintiff of his rights and accomplish an unlawful purpose by unlawful means as described in this complaint.

96. In furtherance of this conspiracy or conspiracies, Defendants, acting in concert with other co-conspirators, committed the overt acts as set forth above and as described in this complaint.

97. Said conspiracy or conspiracies and overt acts continue from on or about November 10, 2016, through to the present date.

98. This conspiracy proximately caused the injuries to the Plaintiff as set forth above.

99. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

100. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## DAMAGES AND ADDITIONAL RELIEF REQUESTED

101. Plaintiff has sustained damages which are ongoing and yet to be completely identified and quantified, that are the direct and proximate result of wrongful actions of Defendants and others known and unknown to the Plaintiff, acting in concert, and which are described herein. Such damages are ongoing, and include, but are not limited to significant damages, direct, indirect, collateral, consequential, and incidental, to Plaintiff's business and property and physical and mental injuries to the Plaintiff. Due to the actions of the Defendants against the Plaintiff which include but not limited to crimes, torts and violations as described in this complaint which caused extreme physical and mental injuries to the Plaintiff, the Plaintiff was declared legally disabled on October 21, 2019 retroactively as of January 21, 2017. Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor against Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in the Counts other than Civil RICO Count, as well as any other relief this Court deems just and appropriate.

Dated-: 01/10/2021

Respectfully Submitted,
/s/Abdul Mohammed
Pro Se Plaintiff
258 East Bailey Rd, Apt C,
Naperville, IL 60565
Ph.: 630-854-5345
aamohammed@hotmail.com



* 5 0 0 7 6 7 4 8 *

FILED DATE: 5/6/2021 11:55 AM   2021L000284

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (03/15/21) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Abdul Mohammed

                                    Plaintiff(s)

                 v.                              Case No.   2021-L-000284

Jenner & Block LLP et.al

                                    Defendant(s)

Reid Schar, 353 N. Clark Street
Chicago, IL 60654

                  Address of Defendant(s)

Please serve as follows (check one):  ☐ Certified Mail  ☉ Sheriff Service  ☐ Alias

### SUMMONS

To each Defendant:  Reid Schar, 353 N.Clark, Chicago, Illinois 60654

You have been named a defendant in the complaint in this case, a copy of which is hereto attached.
You are summoned and required to file your appearance, in the office of the clerk of this court,
within 30 days after service of this summons, not counting the day of service. If you fail to do so, a
judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:**  **Your appearance date is NOT a court date.** It is the deadline
for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED
TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/
answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/
approved/procedures/appearance.asp. After completing and saving your Appearance form, you can
electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Summons - Alias Summons



**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

○ Atty. No.: _____

◉ Pro Se 99500

Name: Abdul Mohammed

Atty. for (if applicable): _____

_____

Address: 258 East Bailey Rd, Apt C

City: Naperville

State: IL   Zip: 60565

Telephone: 630-854-5345

Primary Email: aamohammed@hotmail.com

Witness date   5/6/2021 11:55 AM IRIS Y. MARTINEZ

_____

Iris Y. Martinez, Clerk of Court

☐ Service by Certified Mail

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)



\* 5 0 0 7 6 7 4 8 \*

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:   (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6441

### ALL SUBURBAN CASE TYPES
#### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:   (847) 470-7250

#### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:   (847) 818-3000

#### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:   (708) 865-6040

#### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:   (708) 974-6500

#### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:   (708) 232-4551

FILED DATE: 5/6/2021 11:55 AM   2021L000284

12-Person Jury                          *S0 0 7 6 7 4 8 *

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED
1/11/2021 12:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
11772324

ABDUL MOHAMMED,

PLAINTIFF,

vs.

JENNER & BLOCK LLP, UBER TECHNOLOGIES
INC, RASIER LLC, LITTLER MENDELSON P.C.,
ROMANUCCI AND BLANDIN LLC, DARA
KHOSROWSHAHI, TRAVIS KALANICK, RYAN
GRAVES, NICK GICINTO, CRAIG CLARK, MAT
HENLEY, ANTONIO ROMANUCCI, JENNIFER
SCHILLING, JODI BOQUIST, REID SCHAR,
MEGAN POETZEL AND DANIEL BOBIER
INDIVIDUALLY AND AS AGENTS OR SERVANTS
OR VOLUNTEERS OR ASSOCIATES OR
CONTRACTORS OR EMPLOYEES OF UBER
TECHNOLOGIES INC, RASIER LLC, LITTLER
MENDELSON P.C, ROMANUCCI AND BLANDIN
LLC AND JENNER & BLOCK LLP,

DEFENDANTS

2021L000284

COMPLAINT WITH JURY DEMAND

## COMPLAINT AT LAW

## PARTIES, JURISDICTION, AND VENUE

1. The Plaintiff is a protected person within the meaning of the Americans with Disabilities Act, the Rehabilitation Act of 1973, Section 504, the Illinois Adult Protective Services Act, and the Federal Traumatic Brain Injury Reauthorization Act of 2014.

2. The Defendants are located in the jurisdiction of this court and they are conducting business in the jurisdiction of this court and further one or more actions alleged in this complaint occurred in the jurisdiction of this court. Hence this court has jurisdiction over this matter and hence venue is proper.

## FACTUAL BACKGROUND

3. Plaintiff filed a complaint against Defendants Uber Technologies Inc (hereinafter Uber), Rasier LLC (hereinafter Rasier), Travis Kalanick (hereinafter Kalanick), and Ryan Graves (hereinafter Graves) in District Court of the United States for Northern District of Illinois, Eastern Division (hereinafter District Court) on February 24, 2016 and that case remains pending in District Court. See *Mohammed v Uber Technologies et.al*, Case # 16-cv-2537, N.D.Ill (hereinafter *Mohammed I*).

1



4.  There is a dispute regarding an alleged Arbitration Agreement which the Defendants allege *and it was that the* Plaintiff entered with the Defendants but anyhow the alleged Arbitration Agreement in the pertinent part states, "This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce." The instant complaint has nothing to do with a transaction involving interstate commerce and the instant complaint only deals with intentional crimes, intentional torts, and various other intentional violations committed by the Defendants against the Plaintiff, hence the instant complaint is not covered by the disputed alleged Arbitration Agreement.

5.  Further, there is not even an alleged Arbitration Agreement against Defendants Littler Mendelson P.C. (hereinafter Littler), Jenner & Block LLP (hereinafter J & B), Romanucci and Blandin LLC (hereinafter R & B), Antonio Romanucci (hereinafter Romanucci), Jennifer Schilling (hereinafter Schilling), Jodi Boquist (hereinafter Boquist), Reid Schar (hereinafter Schar), Megan Poetzel (hereinafter Poetzel) and Daniel Bobier (hereinafter Bobier).

6.  The actions alleged in this complaint are either stand-alone new allegations that occurred after the filing of *Mohammed I* and/or actions which were committed by the Defendants in retaliation against the Plaintiff for *Mohammed I*.

7.  On November 10, 2016, the Plaintiff had an appointment with a law firm named Romanucci & Blandin LLC located at 321 North Clark Street, Suite 900, Chicago, Illinois 60654. The Plaintiff was waiting in the conference room to see Romanucci. A Security Officer of the building along with Romanucci entered the conference room and the Security Officer informed the Plaintiff that they have a problem with him and asked him to come out of the conference room. Then the Security Officer took the Plaintiff toward the elevator and shoved him into the elevator and brought him down to the Ground Floor and pushed the Plaintiff towards the exit of the building and informed him that he has an order from Defendant Littler Mendelson PC to remove him from the building. Littler's office is located at 321 North Clark Street, Suite 1100, Chicago, Illinois 60654. The Security Officer also informed the Plaintiff that if he again sets foot in the building, he will not go back home on his feet. Littler has added the Plaintiff's information to the Security System and when the Security System scans his ID, his name comes up, that he should not be allowed in the building. Plaintiff called Romanucci and asked him about this matter and he was informed that Littler is not allowing the Plaintiff to enter the building so Romanucci is not able to represent the Plaintiff. This is retaliation against the Plaintiff as naked as it gets for filing of *Mohammed I*. The masterminds of this retaliation against the Plaintiff are the Defendants other than Dara Khosrowshahi (hereinafter Khosrowshahi), J & B, Schar, Poetzel, and Bobier.

8.  Before the Security Officer and Romanucci entered the conference room to remove the Plaintiff from the building, the Plaintiff heard that Security Officer saying to Romanucci, "Littler and Mendelson informed him that he is a criminal and he be removed from the building immediately".

9.  Plaintiff is alleging that Uber was following the Plaintiff's location through its Uber Rider and Driver App which was installed on the Plaintiff's phone as described below and when Uber found out through the Uber Rider and Driver App which was installed on the Plaintiff's phone that the Plaintiff is inside the building located at 321 North

2



Clark Street, Chicago, Illinois 60654, informed Littler, Schilling and Boquist that the Plaintiff is inside the building located at 321 North Clark Street, Chicago, Illinois 60654.

10. The actions as alleged in this complaint were committed by the Defendants with prejudice towards Plaintiff's Race, Religion, and Disabilities and in particular with prejudice towards Plaintiff's National Origin and Ancestry which is described in *Mohammed I*. Defendants committed actions as described in *Mohammed I* and the instant complaint with a perceived belief that the Plaintiff is not a United States Citizen, he is an immigrant and/or undocumented immigrant and their another perceived belief that people who are not United States Citizens, immigrants and/or undocumented immigrants will generally not take any legal action if intentional crimes are committed against them, if intentional torts or violations are committed against them. Undocumented immigrants generally do not report to the law enforcement agencies or take any kind of legal action if crimes, intentional torts, or violations are committed against them due to their fear of being removed from the United States due to their undocumented status.

11. **Uber's spying of its Drivers and Lyft Drivers to bring Drivers to Uber's Platform and effectively under their control;**

Further Uber spied on its drivers including the Plaintiff and Lyft drivers by intercepting, accessing, monitoring and/or transmitting electronic communications and whereabouts of its drivers including the Plaintiff and Lyft drivers to lure Lyft drivers and drivers who worked both for Uber and Lyft, to exclusively drive for Uber, all in violation of Federal Wiretap Act as amended by the Electronic Communications Privacy Act (the "ECPA"), the Federal Stored Communication Act (the "SCA"), and common law invasion of privacy. See the Lawsuit against Uber in United States District Court Northern District of California, San Francisco Division, Case No.: 3:17-CV-02264, as Exhibit-H. Uber's violations as described in Exhibit-H were committed to destroy its only remaining competitor, Lyft, and to take away the only remaining option other than Uber, for the drivers. When Uber spied on its drivers including this Plaintiff, that is not only a crime but such a crime was committed to control the drivers.

12. **Waymo LLC v. Uber Technologies, Inc. (3:17-CV-00939) (N.D.Cal);**

Further during the pendency of the *Waymo Case*, Richard Jacobs, and Uber's former Manager of Global Intelligence informed his lawyer how Uber stole trade secrets from Waymo, spied on drivers and other individuals and other companies, and committed various crimes with an intent to cause harm to other individuals, companies and to bring drivers of other Ride-Sharing Companies to come and drive for Uber. Please see the letter from Jacobs' lawyer to Uber as Exhibit-I for a detailed analysis of Uber's criminal activities to destroy other Ride-Sharing Companies and to bring all the drivers in their control. Uber settled with Jacobs for $4.5 Million + a Job at Uber and Uber also paid $3 Million to Jacobs' lawyer. Uber also settled with Waymo for $245 Million. Uber's lawyer, Angela Padilla, said in court, the allegations in the letter had seemed "quite fantastical" to her. Jacobs testified in the *Waymo* case, there was an intelligence operation inside Uber to research competitors and gather data about them, and use technology to avoid a paper trail. In court, Padilla said Uber viewed the Jacobs' letter as a tactic by a disgruntled former employee to secure money from the company. Padilla said, "We felt that Jacobs was trying to extort the company." Uber eventually settled the matter by paying Jacobs $4.5 million, including a year-long consulting contract, and a further

FILED DATE: 1/11/2021 12:00 AM    2021L000284



$3 million to his lawyer. Judge Alsup said to Padilla, "That is a lot of money". "And people do not pay that kind of money for BS. And you certainly don't hire them as consultants if you think everything they've got to contribute is BS." As per Exhibit-I, Uber fraudulently impersonates riders and drivers on competitors' platforms, hacks into competitors' networks, and conducts unlawful wiretapping (each tactic discussed in additional detail in Exhibit-I). These tactics are used to obtain trade secrets about:

a) the function of competitors' Apps;

b) vulnerabilities in the competitors' App, including performance and function;

c) vulnerabilities in competitors' App security;

d) supply data, including unique driver information;

e) pricing structures and incentives.

As per Exhibit-I, Uber worked to unlawfully obtain trade secrets from its competitors and 1) remotely accessed confidential corporate communications and data of its competitors, 2) impersonated riders and drivers including the Plaintiff on competitors' platform to derive key functions of rider and driver apps, 3) stole supply data by identifying possible drivers to boost Uber's market position, and 4) acquired codebase which allowed Uber to identify code used by its competitors' to understand in greater detail how their app functioned. By credibly impersonating both riders and drivers including the Plaintiff, Uber could request thousands of rides in a given geographic area to study the responsiveness and capability of the app, price quotes, and disposition of available drivers. Uber further impersonated prospective customers to ascertain the identity of drivers through their names including the Plaintiff, license plate numbers, and make/model of their vehicles. Uber then used this information to recruit drivers from their competitors' to Uber's platform. Uber also obtained key technical details about how its competitors would troubleshoot issues in comparison to Uber, and then used that data to develop contingencies to slow or impede competitors' business operations and also caused injury to the drivers including the Plaintiff to bring them to Uber's platform and effectively under their control. Uber employed tactics to obtain trade secrets, with a focus on stealing key supply data to boost Uber's pool of drivers, the function of the competitors' app, and its vulnerabilities, and then used that data to develop an aggressive "counterintelligence" campaign to slow competitors' efforts. Uber used special SIM cards to collect intelligence on competitors' trade secrets and to obtain private and protected information about the drivers including the Plaintiff. Specifically, the SIM cards were used to fraudulently impersonate customers on competitors' rider and driver applications. By credibly impersonating riders and drivers including the Plaintiff, Uber could:(i) develop processes to conduct thousands of data calls to reverse engineer products; (ii) identify and recruit supply (i.e. partner drivers); (iii) and derive key competitive business metrics to understand subsidies, available supply, processes for managing surge, and competitive market position. For instance, Uber would be able to study key technical details of how competitors' had engineered solutions to common problems ride-sharing providers have at scale, and in the context of dense population centers. Uber would then use that data to identify possible improvements, gain competitive advantages, or exploit weaknesses of competitors' platforms. Notably, Uber identified vulnerability in their competitors' system and collected

FILED DATE: 1/11/2021 12:00 AM   2021L000284



comprehensive supply data, including the license, name, and contact information for every single driver including the Plaintiff. Further Uber Executives conspired and acted in furtherance of the conspiracy to hack the database of its competitors and collected all driver information including the Plaintiff, to have a perfect set of possible drivers for Uber's platform which boosted supply when Uber targeted these operators and converted them to drivers for Uber. As discussed above, Uber used driver and customer impersonation to steal competitor trade secrets. This conduct not only violated the trade secrets law discussed above but also wire fraud law at 18 U.S.C § 1343, and California Penal Code § 528.5. Under this Section, it is unlawful to knowingly and without consent, credibly impersonate another actual person through the Internet or email, to harm, intimidate, threaten, or defraud someone. This conduct further exposes a company to civil liability under Section 528.5(e). This impersonation was intended to fraudulently steal business and bring drivers under its control and it was an "unlawful, unfair, or fraudulent business act and practice. California Bus & Prof Code § 1720. It is also in violation of the CFAA and related laws, discussed in Exhibit-I. Along with the theft of trade secrets, Jacobs observed Uber personnel, through their LAT operatives and their vendors; knowingly impersonate actual people over the Internet to keep tabs on competitors and opposition groups by accessing closed social media groups. This impersonation had the purpose of fraudulently stealing business and gaining a competitive advantage. During the summer of 2016, Jacobs learned that Uber's intelligence-gathering teams in other locations impersonated partner-drivers including the Plaintiff or taxi operators to gain access to private WhatsApp group messaging channels. Jacobs further investigated this conduct by searching Uber's internal network, TeamDot. Further Uber created a PowerPoint presentation which included a section on "intel gathering," a slide on driver chat group infiltration, and a link to the specific procedures for infiltrating driver-partner chat groups (including the impersonation of actual driver-partners including the Plaintiff) to collect information on growing discontent and possible opposition activities. Upon receipt, Jacobs disclosed the playbook to Craig Clark, who replied, "Do I want to know what it is?" Jacobs voiced concern as to its legality, noting that it encouraged "intel gathering" and described how to penetrate WhatsApp groups. Clark only replied that "this is happening everywhere and I'm not ready to deal with it." Clark did not investigate the presumed criminal violation. In late January and early February 2017, as part of SSG's virtual operations capability (VOC), Uber's agents posed as sympathetic protestors interested in participating in actions against Uber. By doing this, illegally gained access to closed Facebook groups and chatted with protesting drivers in an attempt to understand their nonpublic plans and intentions. All the actions described in Exhibit-I demonstrate how Uber spied on drivers including the Plaintiff and committed crimes left, right, and center with no fear whatsoever. An unredacted version of Exhibit-I can reveal further about Uber's activities.

13. **Sarbanes-Oxley Violations, Evidence Spoliation, and Other Discovery Abuses by Uber;**

The Sarbanes-Oxley Act of 2002 states that:

"whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case



FILED DATE: 1/11/2021 12:00 AM    2021L000284

filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both".

Sarbanes-Oxley Act of 2002, Pub. L. 107-204, § 802, 116 Stat. 745, 800 (2002). Codified at 18 U.S.C. § 1519, this provision applies to private companies and has a broad reach that is not limited to commenced litigation. Section 1519 "covers conduct intended to impede any federal investigation or proceeding *including one not even on the verge of commencement." Yates v. United States,* - U.S. --, 135 S.Ct. 1074, 1087 (2015) (emphasis added). Similarly, the California Rule of Professional Conduct 5-2320 prohibits members of the bar from suppressing evidence that the member or the member's client has a legal obligation to produce. Uber has knowingly violated 18 U.S.C § 1519 and continues to do so. Craig Clark, Uber's Legal Director for ThreatOps, and Mat Henley, Uber's Director of Threat Operations (ThreatOps), led Uber's efforts to evade current and future discovery requests, court orders, and government investigations in violation of state and federal law as well as ethical rules governing the legal profession. Clark devised training and provided advice intended to impede, obstruct, or influence the investigation of several ongoing lawsuits against Uber and in relation to or contemplation of further matters within the jurisdiction of the United States. Early in his tenure, Jacobs advocated for a secure and encrypted centralized database to ensure confidentiality and recordkeeping to provide access to intelligence for ThreatOps personnel. He presented a draft proposal to managers Henley and Clark. However, discussions broke down immediately because they objected to preserving any intelligence that would make preservation and legal discovery a simple process for future litigants. Clark emphasized that this was "exactly what we don't want to do ... create [a paper trail] that could later be discoverable." Clark noted the errors of past collections where Uber was forced to turn over documents. He alluded to the lessons learned from the "Ergo Investigation" and noted that encryption alone was not enough to avoid discovery. Nick Gicinto added his own objections, stating that while his team would be willing to share some details on collections, including sources and methods of collections on the ground in foreign countries, they were not willing to preserve the raw intelligence on Uber's network. Jacobs then became aware that Uber, primarily through Clark and Henley, had implemented a sophisticated strategy to destroy, conceal, cover-up, and falsify records or documents with the intent to impede or obstruct government investigations as well as discovery obligations in pending and future litigation. Besides violating 18 U.S.C. § 1519, this conduct constitutes an ethical violation.

14. **Destruction and Concealment of Records Using Ephemeral Communications;**

Clark and Henley helped implement and directed the almost-exclusive use of ephemeral and encrypted communications software, including WickrMe (and later Wickr SCIF), to communicate sensitive information within ThreatOps. Wickr Inc. is a San Francisco-based company that describes its product as a "communications platform designed to empower greater control over data security ... [using] multi-layers of peer-to-peer encryption". Henley and Clark implemented this program of ephemeral and encrypted communications for the express purpose of destroying evidence of illegal or unethical practices to avoid discovery in actual or potential litigation. The Wickr application uses robust encryption which prevents the information from being viewed by anyone except the intended recipient, but more importantly, programs messages to self-destruct in a matter of seconds to no longer



than six days. Consequently, Uber employees cannot be compelled to produce records of their chat conversations because no record is retained. Such a policy is inherently violative of the Sarbanes-Oxley Act, 18 U.S.C. Section 1519, and similar laws. Further, Clark and Henley directly instructed Jacobs to conceal documents in violation of Sarbanes-Oxley, by attempting to "shroud" them with, attorney-client privilege or work product protections. Clark taught the ThreatOps team that if they marked communications as "draft," asked for a legal opinion at the beginning of an email, and simply wrote "attorney-client privilege" on documents, they would be immune from discovery. What Clark failed to teach the team, however, is that there is no attorney-client privilege, no "seal of secrecy," if the communications were made for the purpose of enabling the commission of a crime or fraud. *U.S.v. Zolin* 491 U.S. 554, 563(1989); *see also* Cal. Evid. Code § 956. For example, Clark enabled illegal activities and gave legal advice designed to impede investigations by directing the hacking of the competitors' systems and platforms, and by directing the destruction of evidence related to eavesdropping against opposition groups of drivers as discussed above. Given the ongoing criminal and fraudulent activities within Uber, the crime-fraud exception to privilege applies, and all of Clark's communications in furtherance of these schemes would be fair game in discovery. His attempt to pre-emptively conceal them under attorney-client privilege is illegal, unethical, and improper.

15. **Concealment and Destruction of Records Using Non-attributable Hardware;**

Clark, Gicinto, and Henley acquired "non-attributable" hardware and software with which SSG and select members of ThreatOps planned and executed intelligence collection operations. Specifically, Henley and members of the MA team use computers not directly purchased by Uber that operate only on MiFi devices-so that the internet traffic would not appear to originate from an Uber network- virtual public networks (VPNs), and a distributed and non-attributable architecture of contracted Amazon Web Services (AWS) server space to conduct competitive intelligence collections against other ride-sharing companies. Likewise, Gicinto and the SSG team had similar non-attributable devices purchased through vendors and sub-vendors where they conducted virtual operations impersonating protesting drivers, Uber partner-drivers including the Plaintiff, and taxi operators. SSG used the devices to store raw information collected by their operatives from politicians, regulators, law enforcement, taxi organizations, and labor unions. By storing this data on non-attributable devices, Uber believed it would avoid detection and never be subject to legal discovery. This is because a standard preservation of evidence order typically focused on Uber work laptops, Uber networks, and Uber mobile devices. Non-attributable devices were deemed as not reasonably subsumed by any such preservation order and the team could, and did, "legally" (not so) dispose of any evidence or documentation held on these devices in the intervening period before knowledge of the devices' existence could be uncovered. Likewise, members of the ThreatOps team, notably Henley, were known to use personal computers to conduct substantial Uber-related work for the purpose of evading discovery.

16. **Concealment, Cover-up, and Falsification of Records through the Abuse of Attorney-Client Privilege Designations:**



FILED DATE: 1/11/2021 12:00 AM   2021L000284

Clark developed training on how to use attorney-client privilege to further conceal activities used in various non-ephemeral communication channel. Specifically, he developed a training using innocuous legal examples and the "lawyer dog" meme to produce a slide deck that taught the ThreatOps team how to utilize attorney-client privilege to impede discovery. While the presentation slides themselves did not depict or explain any unethical or illegal practices involving attorney-client privilege, Jacobs observed Clark's presentation first-hand. During the presentation, Clark verbally coached the participants on how to use attorney-client privilege to ensure sensitive intelligence collection activities would not surface in litigation. Clark also answered specific questions from employees on the minimum standards required to claim privilege for the purpose of shielding information. This "legal training" was particularly noteworthy because it surprisingly bears no Uber-branding; it does not even mention Uber, which is startling in a company with strong branding and adherence to process. Clark said that Uber needed to "shroud these work products in attorney-client privilege." Accordingly, Clark instructed Jacobs himself and others to address all emails on sensitive intelligence collection to him and ensure the emails were marked as "ATTORNEY- CLIENT PRIVILEGED AND CONFIDENTIAL," to mark any work product as "DRAFT" regardless of its actual status, and, on every communication, to specifically ask a question or request legal advice on some issue-even if no legal advice was needed or warranted. Likewise, he advised that Jacobs and others that they should communicate almost exclusively via phone, video teleconference ("Zoom"), or via the Wickr app, in that order of preference based on the record and audit trail each communications medium creates. Clark explained that the intent was to prevent disclosure of such communications if Jacobs was ever put on legal hold or his communications were ever subject to a preservation of evidence order. In sum, Uber has directly violated the document destruction, concealment, cover-up, and falsifications provisions of Sarbanes-Oxley in an effort to obstruct or impede active and future government investigations through the (1) acquisition and use of ephemeral communications programs; (2) the acquisition and use of non-attributable hardware and software; and (3) the wholesale abuse of attorney-client privilege designations and all of Uber's violations as described in this Brief were committed with a sole aim of destroying its competitors', so that the drivers including the Plaintiff have no other option than driving for Uber and to control the drivers including the Plaintiff.

## COUNT-1
## ASSAULT AND BATTERY (COMMON LAW TORT)
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

17. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

18. Defendants listed under this count, without lawful authority through their Security Officer, manhandled the Plaintiff, pushed and shoved the Plaintiff into the elevator, brought the Plaintiff down to the Ground Floor by holding the Plaintiff by his belt from the back, and by further threatening the Plaintiff that he will not back on his feet if he comes back to the building located at 321 North Clark Street, Chicago, Illinois 60654 and in turn, Defendants listed under this count knowingly engaged in conduct which constitutes assault and battery under Illinois Law and also placed Plaintiff in reasonable apprehension of receiving further battery as described above,



which further constitutes assault under Illinois Law and such an assault and battery *was committed upon the Plaintiff by the Defendants with prejudice towards his Religion, Race, Ancestry, National Origin and Disabilities.

19. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

20. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-2
### AGGRAVATED ASSAULT AND AGGRAVATED BATTERY (COMMON LAW TORT)
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

21. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

22. Defendants listed under this count committed an aggravated assault upon the Plaintiff as described above because assault against a disabled person constitutes aggravated assault under Illinois Law.

23. Defendants listed under this count committed an aggravated assault upon the Plaintiff on a public way, public property, a public place of accommodation, and Defendants listed under this count committed an assault upon the Plaintiff with full knowledge that a Plaintiff is a person with Disabilities which is aggravated assault.

24. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

25. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-3
### STALKING AND AGGRAVATED STALKING
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

26. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

27. Defendants through their actions as described in paragraphs 11 to 16 have committed stalking against the Plaintiff under Illinois Law and because such stalking was against a disabled person (the Plaintiff), the stalking of the Plaintiff was aggravated stalking under Illinois Law.

28. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

29. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-4
### VIOLATION OF ILLINOIS HATE CRIMES ACT OF ILLINOIS
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

30. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

FILED DATE: 1/11/2021 12:00 AM   2021L000284



31. Defendants' actions as described above and in particular as described in Count-1, Count-2, and Count-3 are offenses of assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct under the Illinois Law with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities.

32. Assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking and disorderly conduct are predicates of Illinois Hate Crimes Act and when Defendants committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities, they violated Illinois Hate Crimes Act.

33. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

34. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-5
### VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
#### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

35. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

36. Defendants with their actions as described in paragraphs 11 to 16 and as described in Count-1, Count-2 and Count-3 has committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct and in turn has caused a threat to public health and physical and mental injuries to the Plaintiff all in violation of Computer Fraud and Abuse Act.

37. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

38. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-6
### VIOLATION OF STORED COMMUNICATIONS ACT
#### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

39. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

40. Defendants with their actions as described in paragraphs 11 to 16 violated the Stored Communications Act when they obtained electronic communication while such electronic communications were stored in an iPhone belonging to the Plaintiff and also obtained electronic communication while such electronic communications were stored on the server belonging to the Plaintiff's Internet Service Provider.

41. The violations of the Stored Communications Act by the Defendants were willful, wanton, and reckless.

42. Under the Stored Communications Act, "Proof of actual damages is not required before an award either for punitive damages and attorneys' fees is entered".



43. The Fourth Circuit held that "[i]f the violation [of the SCA] is willful or intentional, the court can assess punitive damages" Id. The Fourth Circuit further held that 18 U.S.C Section 2707(b) (3) permits an award of attorneys' fees absent any proof of actual damages.

44. Under the Stored Communication Act the Plaintiff is entered to punitive damages and attorneys' fees.

45. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

46. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-7**
**INTRUSION UPON SECLUSION AND PRIVACY OF THE PLAINTIFF**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

47. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

48. Intrusion upon Seclusion and Privacy of others was recognized by the Supreme Court of Illinois in *Lawlor v North American Corporation of Illinois*, 2012 IL 112530.

49. Defendants through their actions as described in paragraphs 11 to 16 have violated Intrusion upon Seclusion and Privacy of the Plaintiff.

50. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

51. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-8**
**DEFAMATION PER SE**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

52. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

53. Defendants committed to Defamation Per Se when they informed several individuals including but not limited to the Security Officer and Romanucci that the Plaintiff is a criminal.

54. Plaintiff has never committed any crime and he was neither arrested nor convicted for any crime in his entire life.

55. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

56. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-9**
**VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

FILED DATE: 1/11/2021 12:00 AM 2021L000284



57. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

58. Defendants violated the Electronic Communications Privacy Act (hereinafter ECPA) as described above in paragraphs 11 to 16.

59. Defendants' intent to violate ECPA, Defendants' intended conduct which violated ECPA, what Defendants sought to intercept which violated ECPA, the nature of targeted communications which violated ECPA, the tools used to (or intended to be used) to intercept the protected content which violated ECPA; is described above in detail in paragraphs 11 to 16.

60. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

61. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-10**
**VIOLATION OF RICO, 18 U.S.C. § 1961, et seq**
**(DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)**

62. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

63. Individual Defendants listed under this count individually and/or as agents and/or servants and/or employees of Uber and/or Rasier and/or Littler and/or J & B (hereinafter "RICO Defendants,") are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

64. There is the association-in-fact of all RICO Defendants for the purpose of violating Plaintiff's rights, committing crimes and torts against the Plaintiff and for intentional infliction of physical and mental injuries in violation of his basic rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"). The Association-In-Fact Enterprise was created, controlled, and conducted by all RICO Defendants for the purposes as described in this complaint. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise. All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-In-Fact Enterprise as described in great detail in this complaint.

65. Defendants have conducted the affairs of the Association-In-Fact Enterprise, through a pattern of racketeering activity in interstate commerce that includes predicate acts indictable under 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant) and threat of kidnapping and bodily injury of the Plaintiff by the Security Officer on November 18, 2016 which is an indictable offense under the Illinois Law, as described under this count and as described in this complaint between the RICO Defendants and through the following actions, among others:

    a) RICO Defendants maliciously prosecuted the Plaintiff at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division and presented false and fabricated evidence that the Plaintiff gave fake rides to himself by using several fake identities, by using



several credit cards in the names of several fake individuals and by using several different SIM cards when actually Defendants gave fake rides to the Plaintiff by impersonating the Plaintiff as described in detail in paragraphs 11 to 16;

    b) RICO Defendants further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that by listing Stanford University as his alma mater on Facebook, Plaintiff lied and committed an offense when actually the Plaintiff can list Stanford University as his alma mater as a matter of law and he can also possess a novelty Degree and/or Diploma from the Stanford University as a matter of law;

    c) RICO Defendant further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that the Plaintiff deceived Uber by asking for a $500.00 joining bonus when he was still driving for Lyft when there was no condition for the Plaintiff to quit driving for Lyft and the Driver Support Representative at Uber's Chicago Office informed the Plaintiff that the only requirement for $500.00 joining bonus was that the Plaintiff needs to be a driver of Lyft and there was no requirement for the Plaintiff to quit driving Lyft.

66. Judge Lee who presided over the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division ruled that Plaintiff's fake rides, the request for $500.00 joining bonus, and his listing of Stanford University as his alma mater affected his credibility and ultimately Plaintiff's credibility was the major factor in Judge Lee's ruling that the Plaintiff entered into Arbitration Agreement with Uber.

67. RICO Defendants malicious prosecution as described above constitutes obstruction of justice, 18 U.S.C. § 1503(a), which is a predicate of Civil RICO.

68. Further RICO Defendants' obstruction of justice was accomplished through 18 U.S.C. § 1342 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), which are again predicates of Civil RICO.

69. Further RICO Defendants' obstruction of justice was in retaliation against the Plaintiff for his Federal Lawsuit (*Mohammed I*) in violation of 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant), which are again predicates of Civil RICO.

70. Further all actions of Defendants as described in paragraphs 1 to 16 constitute obstruction of justice, 18 U.S.C. § 1503(a), in relation to *Mohammed I*.

71. Each of the RICO Defendants' violations of 18 U.S.C. § 1503(a), 18 U.S.C. § 1342, 18 U.S.C. § 1343, 18 U.S.C. § 1512 and 18 U.S.C. § 1513 constitutes "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

72. RICO Defendants engaged in a pattern of racketeering activity intending to cause harm to the Plaintiff and to defraud the Plaintiff and to deny the Plaintiff of his property (to bind the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and to deny the Plaintiff his right to proceed with his claims in a court

13



of law and bounded the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and denied the Plaintiff his right to proceed with his claims in a court of law).

73. RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting the same victim (the Plaintiff). Based upon the agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of the Plaintiff.

74. RICO Defendants were an association of individuals, partnerships, and corporations joined in the purpose of conspiring to commit criminal activity as described above and as described in this complaint. The association employed a number of schemes in an attempt to cause harm to the Plaintiff including, but not limited to, causing acts as described under this count and as described in this complaint, causing intentional violations of the Plaintiff's rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff.

75. RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

76. By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the costs of this suit, including reasonable attorneys' fees. WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT-11
### MALICIOUS PROSECUTION IN RELATION TO COUNT-11 (ILLINOIS STATE LAW)
### (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

77. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

78. Defendants' actions as described in Count-10 also constitute malicious prosecution under the Illinois State Law.

79. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

80. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-12
### MALICIOUS PROSECUTION IN RELATION TO COUNT-11
### (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

81. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

82. Defendants further committed malicious prosecution under the Illinois State Law when they filed their Response to the Plaintiff's Motion to Vacate the Arbitration award in *Mohammed I* by arguing that the Motion to Vacate was in violation of the Executive Order of June 17, 2020, when the Executive Order only applies to cases filed after June

FILED DATE: 1/11/2021 12:00 AM    2021L000284

14



17, 2020 and by arguing that *Mohammed v. Anderson*, No. 18 C 8393, 2019 WL 3943669, at d (N.D. Ill. Aug. 82 k, 2019) was a frivolous action when in fact the court never ruled that *Mohammed v. Anderson*, was frivolous and when in fact *Mohammed v. Anderson* was dismissed under different grounds.

83. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

84. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-13
## FRAUDULENT MISREPRESENTATION IN RELATION TO COUNT-10, COUNT-11 AND COUNT-12
## (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

85. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

86. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

87. Defendants' actions as described in Count-10. Count-12 and Count-13 also constitute fraudulent misrepresentation under the Illinois State Law.

88. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

89. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-14
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (ALL DEFENDANTS)

90. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

91. In a manner more fully set forth above, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

92. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

93. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-15
## CIVIL CONSPIRACY
## (ALL DEFENDANTS)

94. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

FILED DATE: 1/11/2021 12:00 AM    2021L000284



95. In a manner more fully set forth above, Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves for the purpose of depriving Plaintiff of his rights and accomplish an unlawful purpose by unlawful means as described in this complaint.

96. In furtherance of this conspiracy or conspiracies, Defendants, acting in concert with other co-conspirators, committed the overt acts as set forth above and as described in this complaint.

97. Said conspiracy or conspiracies and overt acts continue from on or about November 10, 2016, through to the present date.

98. This conspiracy proximately caused the injuries to the Plaintiff as set forth above.

99. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

100. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## DAMAGES AND ADDITIONAL RELIEF REQUESTED

101. Plaintiff has sustained damages which are ongoing and yet to be completely identified and quantified, that are the direct and proximate result of wrongful actions of Defendants and others known and unknown to the Plaintiff, acting in concert, and which are described herein. Such damages are ongoing, and include, but are not limited to significant damages, direct, indirect, collateral, consequential, and incidental, to Plaintiff's business and property and physical and mental injuries to the Plaintiff. Due to the actions of the Defendants against the Plaintiff which include but not limited to crimes, torts and violations as described in this complaint which caused extreme physical and mental injuries to the Plaintiff, the Plaintiff was declared legally disabled on October 21, 2019 retroactively as of January 21, 2017. Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor against Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in the Counts other than Civil RICO Count, as well as any other relief this Court deems just and appropriate.

Dated-: 01/10/2021

Respectfully Submitted,
/s/Abdul Mohammed
Pro Se Plaintiff
258 East Bailey Rd, Apt C,
Naperville, IL 60565
Ph.: 630-854-5345
aamohammed@hotmail.com

# EXHIBIT D



* 5 0 0 7 6 7 4 3 *

FILED DATE: 5/6/2021 11:55 AM  2021L000284

| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (03/15/21) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Abdul Mohammed

_____
                                    Plaintiff(s)

v.                                              Case No.  2021-L-000284

Jenner & Block LLP et.al

_____
                                   Defendant(s)

Uber Technologies Inc, 1401 W North Ave,
Chicago, IL 60642

_____
                           Address of Defendant(s)

Please serve as follows (check one):  ○ Certified Mail  ● Sheriff Service  ○ Alias

## SUMMONS

To each Defendant:  Uber Technologies Inc, 1401 West North Ave, Chicago, Illinois 60642

You have been named a defendant in the complaint in this case, a copy of which is hereto attached.
You are summoned and required to file your appearance, in the office of the clerk of this court,
within 30 days after service of this summons, not counting the day of service. If you fail to do so, a
judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:** **Your appearance date is NOT a court date.** It is the deadline
for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED
TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/
answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/
approved/procedures/appearance.asp. After completing and saving your Appearance form, you can
electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 3

Summons - Alias Summons



* (03/15/21) CCG 0003 B

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

| | |
|---|---|
| ○ Atty. No.: _____ | Witness date 5/6/2021 11:55 AM IRIS Y. MARTINEZ _____ |
| ● Pro Se 99500 | |
| Name: Abdul Mohammed | |
| Atty. for (if applicable): _____ | Iris Y. Martinez, Clerk of Court |
| _____ | ☐ Service by Certified Mail: _____ |
| Address: 258 East Bailey Rd,Apt C | ☐ Date of Service: _____ |
| City: Naperville | (To be inserted by officer on copy left with employer or other person) |
| State: IL Zip: 60565 | |
| Telephone: 630-854-5345 | |
| Primary Email: aamohammed@hotmail.com | |

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org
Page 2 of 3



* 5 0 0 7 6 7 4 3 *

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
                                OR
                            ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

#### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

#### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

#### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

#### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

#### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

FILED DATE: 5/6/2021 11:55 AM  2021L000284

**12-Person Jury**



IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS 0 0 7 6 7 4 3 *

FILED
1/11/2021 12:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
11772324

ABDUL MOHAMMED,

PLAINTIFF,

vs.

JENNER & BLOCK LLP, UBER TECHNOLOGIES INC, RASIER LLC, LITTLER MENDELSON P.C., ROMANUCCI AND BLANDIN LLC, DARA KHOSROWSHAHI, TRAVIS KALANICK, RYAN GRAVES, NICK GICINTO, CRAIG CLARK, MAT HENLEY, ANTONIO ROMANUCCI, JENNIFER SCHILLING, JODI BOQUIST, REID SCHAR, MEGAN POETZEL AND DANIEL BOBIER INDIVIDUALLY AND AS AGENTS OR SERVANTS OR VOLUNTEERS OR ASSOCIATES OR CONTRACTORS OR EMPLOYEES OF UBER TECHNOLOGIES INC, RASIER LLC, LITTLER MENDELSON P.C, ROMANUCCI AND BLANDIN LLC AND JENNER & BLOCK LLP,

DEFENDANTS

2021L000284

COMPLAINT WITH JURY DEMAND

## COMPLAINT AT LAW
### PARTIES, JURISDICTION, AND VENUE

1. The Plaintiff is a protected person within the meaning of the Americans with Disabilities Act, the Rehabilitation Act of 1973, Section 504, the Illinois Adult Protective Services Act, and the Federal Traumatic Brain Injury Reauthorization Act of 2014.

2. The Defendants are located in the jurisdiction of this court and they are conducting business in the jurisdiction of this court and further one or more actions alleged in this complaint occurred in the jurisdiction of this court. Hence this court has jurisdiction over this matter and hence venue is proper.

### FACTUAL BACKGROUND

3. Plaintiff filed a complaint against Defendants Uber Technologies Inc (hereinafter Uber), Rasier LLC (hereinafter Rasier), Travis Kalanick (hereinafter Kalanick), and Ryan Graves (hereinafter Graves) in District Court of the United States for Northern District of Illinois, Eastern Division (hereinafter District Court) on February 24, 2016 and that case remains pending in District Court. See *Mohammed v Uber Technologies et.al*, Case # 16-cv-2537, N.D.Ill (hereinafter *Mohammed I*).



FILED DATE: 1/11/2021 12:00 AM   2021L000284

4. There is a dispute regarding an alleged Arbitration Agreement which the Defendants alleges not to have said that the Plaintiff entered with the Defendants but anyhow the alleged Arbitration Agreement in the pertinent part states, "This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce." The instant complaint has nothing to do with a transaction involving interstate commerce and the instant complaint only deals with intentional crimes, intentional torts, and various other intentional violations committed by the Defendants against the Plaintiff, hence the instant complaint is not covered by the disputed alleged Arbitration Agreement.

5. Further, there is not even an alleged Arbitration Agreement against Defendants Littler Mendelson P.C. (hereinafter Littler), Jenner & Block LLP (hereinafter J & B), Romanucci and Blandin LLC (hereinafter R & B), Antonio Romanucci (hereinafter Romanucci), Jennifer Schilling (hereinafter Schilling), Jodi Boquist (hereinafter Boquist), Reid Schar (hereinafter Schar), Megan Poetzel (hereinafter Poetzel) and Daniel Bobier (hereinafter Bobier).

6. The actions alleged in this complaint are either stand-alone new allegations that occurred after the filing of *Mohammed I* and/or actions which were committed by the Defendants in retaliation against the Plaintiff for *Mohammed I.*

7. On November 10, 2016, the Plaintiff had an appointment with a law firm named Romanucci & Blandin LLC located at 321 North Clark Street, Suite 900, Chicago, Illinois 60654. The Plaintiff was waiting in the conference room to see Romanucci. A Security Officer of the building along with Romanucci entered the conference room and the Security Officer informed the Plaintiff that they have a problem with him and asked him to come out of the conference room. Then the Security Officer took the Plaintiff toward the elevator and shoved him into the elevator and brought him down to the Ground Floor and pushed the Plaintiff towards the exit of the building and informed him that he has an order from Defendant Littler Mendelson PC to remove him from the building. Littler's office is located at 321 North Clark Street, Suite 1100, Chicago, Illinois 60654. The Security Officer also informed the Plaintiff that if he again sets foot in the building, he will not go back home on his feet. Littler has added the Plaintiff's information to the Security System and when the Security System scans his ID, his name comes up, that he should not be allowed in the building. Plaintiff called Romanucci and asked him about this matter and he was informed that Littler is not allowing the Plaintiff to enter the building so Romanucci is not able to represent the Plaintiff. This is retaliation against the Plaintiff as naked as it gets for filing of *Mohammed I.* The masterminds of this retaliation against the Plaintiff are the Defendants other than Dara Khosrowshahi (hereinafter Khosrowshahi), J & B, Schar, Poetzel, and Bobier.

8. Before the Security Officer and Romanucci entered the conference room to remove the Plaintiff from the building, the Plaintiff heard that Security Officer saying to Romanucci, "Littler and Mendelson informed him that he is a criminal and he be removed from the building immediately".

9. Plaintiff is alleging that Uber was following the Plaintiff's location through its Uber Rider and Driver App which was installed on the Plaintiff's phone as described below and when Uber found out through the Uber Rider and Driver App which was installed on the Plaintiff's phone that the Plaintiff is inside the building located at 321 North



Clark Street, Chicago, Illinois 60654, informed Littler, Schilling and Boquist that the Plaintiff owns the whole building located at 321 North Clark Street, Chicago, Illinois 60654.

10. The actions as alleged in this complaint were committed by the Defendants with prejudice towards Plaintiff's Race, Religion, and Disabilities and in particular with prejudice towards Plaintiff's National Origin and Ancestry which is described in *Mohammed I*. Defendants committed actions as described in *Mohammed I* and the instant complaint with a perceived belief that the Plaintiff is not a United States Citizen, he is an immigrant and/or undocumented immigrant and their another perceived belief that people who are not United States Citizens, immigrants and/or undocumented immigrants will generally not take any legal action if intentional crimes are committed against them, if intentional torts or violations are committed against them. Undocumented immigrants generally do not report to the law enforcement agencies or take any kind of legal action if crimes, intentional torts, or violations are committed against them due to their fear of being removed from the United States due to their undocumented status.

11. **Uber's spying of its Drivers and Lyft Drivers to bring Drivers to Uber's Platform and effectively under their control;**

Further Uber spied on its drivers including the Plaintiff and Lyft drivers by intercepting, accessing, monitoring and/or transmitting electronic communications and whereabouts of its drivers including the Plaintiff and Lyft drivers to lure Lyft drivers and drivers who worked both for Uber and Lyft, to exclusively drive for Uber, all in violation of Federal Wiretap Act as amended by the Electronic Communications Privacy Act (the "ECPA"), the Federal Stored Communication Act (the "SCA"), and common law invasion of privacy. See the Lawsuit against Uber in United States District Court Northern District of California, San Francisco Division, Case No.: 3:17-CV-02264, as Exhibit-H. Uber's violations as described in Exhibit-H were committed to destroy its only remaining competitor, Lyft, and to take away the only remaining option other than Uber, for the drivers. When Uber spied on its drivers including this Plaintiff, that is not only a crime but such a crime was committed to control the drivers.

12. **Waymo LLC v. Uber Technologies, Inc. (3:17-CV-00939) (N.D.Cal);**

Further during the pendency of the *Waymo Case,* Richard Jacobs, and Uber's former Manager of Global Intelligence informed his lawyer how Uber stole trade secrets from Waymo, spied on drivers and other individuals and other companies, and committed various crimes with an intent to cause harm to other individuals, companies and to bring drivers of other Ride-Sharing Companies to come and drive for Uber. Please see the letter from Jacobs' lawyer to Uber as Exhibit-I for a detailed analysis of Uber's criminal activities to destroy other Ride-Sharing Companies and to bring all the drivers in their control. Uber settled with Jacobs for $4.5 Million + a Job at Uber and Uber also paid $3 Million to Jacobs' lawyer. Uber also settled with Waymo for $245 Million. Uber's lawyer, Angela Padilla, said in court, the allegations in the letter had seemed "quite fantastical" to her. Jacobs testified in the *Waymo* case, there was an intelligence operation inside Uber to research competitors and gather data about them, and use technology to avoid a paper trail. In court, Padilla said Uber viewed the Jacobs' letter as a tactic by a disgruntled former employee to secure money from the company. Padilla said, "We felt that Jacobs was trying to extort the company." Uber eventually settled the matter by paying Jacobs $4.5 million, including a year-long consulting contract, and a further

FILED DATE: 1/11/2021 12:00 AM   2021L000284



$3 million to his lawyer. Judge Alsup said to Padilla, "That is a lot of money". "And people don't pay that kind of money for BS. And you certainly don't hire them as consultants if you think everything they've got to contribute is BS." As per Exhibit-I, Uber fraudulently impersonates riders and drivers on competitors' platforms, hacks into competitors' networks, and conducts unlawful wiretapping (each tactic discussed in additional detail in Exhibit-I). These tactics are used to obtain trade secrets about:

a) the function of competitors' Apps;

b) vulnerabilities in the competitors' App, including performance and function;

c) vulnerabilities in competitors' App security;

d) supply data, including unique driver information;

e) pricing structures and incentives.

As per Exhibit-I, Uber worked to unlawfully obtain trade secrets from its competitors and 1) remotely accessed confidential corporate communications and data of its competitors, 2) impersonated riders and drivers including the Plaintiff on competitors' platform to derive key functions of rider and driver apps, 3) stole supply data by identifying possible drivers to boost Uber's market position, and 4) acquired codebase which allowed Uber to identify code used by its competitors' to understand in greater detail how their app functioned. By credibly impersonating both riders and drivers including the Plaintiff, Uber could request thousands of rides in a given geographic area to study the responsiveness and capability of the app, price quotes, and disposition of available drivers. Uber further impersonated prospective customers to ascertain the identity of drivers through their names including the Plaintiff, license plate numbers, and make/model of their vehicles. Uber then used this information to recruit drivers from their competitors' to Uber's platform. Uber also obtained key technical details about how its competitors would troubleshoot issues in comparison to Uber, and then used that data to develop contingencies to slow or impede competitors' business operations and also caused injury to the drivers including the Plaintiff to bring them to Uber's platform and effectively under their control. Uber employed tactics to obtain trade secrets, with a focus on stealing key supply data to boost Uber's pool of drivers, the function of the competitors' app, and its vulnerabilities, and then used that data to develop an aggressive "counterintelligence" campaign to slow competitors' efforts. Uber used special SIM cards to collect intelligence on competitors' trade secrets and to obtain private and protected information about the drivers including the Plaintiff. Specifically, the SIM cards were used to fraudulently impersonate customers on competitors' rider and driver applications. By credibly impersonating riders and drivers including the Plaintiff, Uber could:(i) develop processes to conduct thousands of data calls to reverse engineer products; (ii) identify and recruit supply (i.e. partner drivers); (iii) and derive key competitive business metrics to understand subsidies, available supply, processes for managing surge, and competitive market position. For instance, Uber would be able to study key technical details of how competitors' had engineered solutions to common problems ride-sharing providers have at scale, and in the context of dense population centers. Uber would then use that data to identify possible improvements, gain competitive advantages, or exploit weaknesses of competitors' platforms. Notably, Uber identified vulnerability in their competitors' system and collected

FILED DATE: 1/11/2021 12:00 AM   2021L000284

4



comprehensive supply data, including the license, name, and contact information for every single driver including the Plaintiff. Further Uber Executives conspired and acted in furtherance of the conspiracy to hack the database of its competitors and collected all driver information including the Plaintiff, to have a perfect set of possible drivers for Uber's platform which boosted supply when Uber targeted these operators and converted them to drivers for Uber. As discussed above, Uber used driver and customer impersonation to steal competitor trade secrets. This conduct not only violated the trade secrets law discussed above but also wire fraud law at 18 U.S.C § 1343, and California Penal Code § 528.5. Under this Section, it is unlawful to knowingly and without consent, credibly impersonate another actual person through the Internet or email, to harm, intimidate, threaten, or defraud someone. This conduct further exposes a company to civil liability under Section 528.5(e). This impersonation was intended to fraudulently steal business and bring drivers under its control and it was an "unlawful, unfair, or fraudulent business act and practice. California Bus & Prof Code § 1720. It is also in violation of the CFAA and related laws, discussed in Exhibit-I. Along with the theft of trade secrets, Jacobs observed Uber personnel, through their LAT operatives and their vendors; knowingly impersonate actual people over the Internet to keep tabs on competitors and opposition groups by accessing closed social media groups. This impersonation had the purpose of fraudulently stealing business and gaining a competitive advantage. During the summer of 2016, Jacobs learned that Uber's intelligence-gathering teams in other locations impersonated partner-drivers including the Plaintiff or taxi operators to gain access to private WhatsApp group messaging channels. Jacobs further investigated this conduct by searching Uber's internal network, TeamDot. Further Uber created a PowerPoint presentation which included a section on "intel gathering," a slide on driver chat group infiltration, and a link to the specific procedures for infiltrating driver-partner chat groups (including the impersonation of actual driver-partners including the Plaintiff) to collect information on growing discontent and possible opposition activities. Upon receipt, Jacobs disclosed the playbook to Craig Clark, who replied, "Do I want to know what it is?" Jacobs voiced concern as to its legality, noting that it encouraged "intel gathering" and described how to penetrate WhatsApp groups. Clark only replied that "this is happening everywhere and I'm not ready to deal with it." Clark did not investigate the presumed criminal violation. In late January and early February 2017, as part of SSG's virtual operations capability (VOC), Uber's agents posed as sympathetic protestors interested in participating in actions against Uber. By doing this, illegally gained access to closed Facebook groups and chatted with protesting drivers in an attempt to understand their nonpublic plans and intentions. All the actions described in Exhibit-I demonstrate how Uber spied on drivers including the Plaintiff and committed crimes left, right, and center with no fear whatsoever. An unredacted version of Exhibit-I can reveal further about Uber's activities.

13. **Sarbanes-Oxley Violations, Evidence Spoliation, and Other Discovery Abuses by Uber;**

The Sarbanes-Oxley Act of 2002 states that:

"whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case

5



filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both".

Sarbanes-Oxley Act of 2002, Pub. L. 107-204, § 802, 116 Stat. 745, 800 (2002). Codified at 18 U.S.C. § 1519, this provision applies to private companies and has a broad reach that is not limited to commenced litigation. Section 1519 "covers conduct intended to impede any federal investigation or proceeding *including one not even on the verge of commencement.*" *Yates v. United States*, - U.S. –, 135 S.Ct. 1074, 1087 (2015) (emphasis added). Similarly, the California Rule of Professional Conduct 5-2320 prohibits members of the bar from suppressing evidence that the member or the member's client has a legal obligation to produce. Uber has knowingly violated 18 U.S.C § 1519 and continues to do so. Craig Clark, Uber's Legal Director for ThreatOps, and Mat Henley, Uber's Director of Threat Operations (ThreatOps), led Uber's efforts to evade current and future discovery requests, court orders, and government investigations in violation of state and federal law as well as ethical rules governing the legal profession. Clark devised training and provided advice intended to impede, obstruct, or influence the investigation of several ongoing lawsuits against Uber and in relation to or contemplation of further matters within the jurisdiction of the United States. Early in his tenure, Jacobs advocated for a secure and encrypted centralized database to ensure confidentiality and recordkeeping to provide access to intelligence for ThreatOps personnel. He presented a draft proposal to managers Henley and Clark. However, discussions broke down immediately because they objected to preserving any intelligence that would make preservation and legal discovery a simple process for future litigants. Clark emphasized that this was "exactly what we don't want to do ... create [a paper trail] that could later be discoverable." Clark noted the errors of past collections where Uber was forced to turn over documents. He alluded to the lessons learned from the "Ergo Investigation" and noted that encryption alone was not enough to avoid discovery. Nick Gicinto added his own objections, stating that while his team would be willing to share some details on collections, including sources and methods of collections on the ground in foreign countries, they were not willing to preserve the raw intelligence on Uber's network. Jacobs then became aware that Uber, primarily through Clark and Henley, had implemented a sophisticated strategy to destroy, conceal, cover-up, and falsify records or documents with the intent to impede or obstruct government investigations as well as discovery obligations in pending and future litigation. Besides violating 18 U.S.C. § 1519, this conduct constitutes an ethical violation.

14. **Destruction and Concealment of Records Using Ephemeral Communications;**

Clark and Henley helped implement and directed the almost-exclusive use of ephemeral and encrypted communications software, including WickrMe (and later Wickr SCIF), to communicate sensitive information within ThreatOps. Wickr Inc. is a San Francisco-based company that describes its product as a "communications platform designed to empower greater control over data security ... [using] multi-layers of peer-to-peer encryption". Henley and Clark implemented this program of ephemeral and encrypted communications for the express purpose of destroying evidence of illegal or unethical practices to avoid discovery in actual or potential litigation. The Wickr application uses robust encryption which prevents the information from being viewed by anyone except the intended recipient, but more importantly, programs messages to self-destruct in a matter of seconds to no longer

6

than six days. Consequently, Uber employees cannot be compelled to produce records of similar illicit communications because no record is retained. Such a policy is inherently violative of the Sarbanes-Oxley Act, 18 U.S.C. Section 1519, and similar laws. Further, Clark and Henley directly instructed Jacobs to conceal documents in violation of Sarbanes-Oxley, by attempting to "shroud" them with, attorney-client privilege or work product protections. Clark taught the ThreatOps team that if they marked communications as "draft," asked for a legal opinion at the beginning of an email, and simply wrote "attorney-client privilege" on documents, they would be immune from discovery. What Clark failed to teach the team, however, is that there is no attorney-client privilege, no "seal of secrecy," if the communications were made for the purpose of enabling the commission of a crime or fraud. *U.S.v. Zolin* 491 U.S. 554, 563(1989); *see also* Cal. Evid. Code § 956. For example, Clark enabled illegal activities and gave legal advice designed to impede investigations by directing the hacking of the competitors' systems and platforms, and by directing the destruction of evidence related to eavesdropping against opposition groups of drivers as discussed above. Given the ongoing criminal and fraudulent activities within Uber, the crime-fraud exception to privilege applies, and all of Clark's communications in furtherance of these schemes would be fair game in discovery. His attempt to pre-emptively conceal them under attorney-client privilege is illegal, unethical, and improper.

15. **Concealment and Destruction of Records Using Non-attributable Hardware;**

Clark, Gicinto, and Henley acquired "non-attributable" hardware and software with which SSG and select members of ThreatOps planned and executed intelligence collection operations. Specifically, Henley and members of the MA team use computers not directly purchased by Uber that operate only on MiFi devices-so that the internet traffic would not appear to originate from an Uber network- virtual public networks (VPNs), and a distributed and non-attributable architecture of contracted Amazon Web Services (AWS) server space to conduct competitive intelligence collections against other ride-sharing companies. Likewise, Gicinto and the SSG team had similar non-attributable devices purchased through vendors and sub-vendors where they conducted virtual operations impersonating protesting drivers, Uber partner-drivers including the Plaintiff, and taxi operators. SSG used the devices to store raw information collected by their operatives from politicians, regulators, law enforcement, taxi organizations, and labor unions. By storing this data on non-attributable devices, Uber believed it would avoid detection and never be subject to legal discovery. This is because a standard preservation of evidence order typically focused on Uber work laptops, Uber networks, and Uber mobile devices. Non-attributable devices were deemed as not reasonably subsumed by any such preservation order and the team could, and did, "legally" (not so) dispose of any evidence or documentation held on these devices in the intervening period before knowledge of the devices' existence could be uncovered. Likewise, members of the ThreatOps team, notably Henley, were known to use personal computers to conduct substantial Uber-related work for the purpose of evading discovery.

16. **Concealment, Cover-up, and Falsification of Records through the Abuse of Attorney-Client Privilege Designations:**



Clark developed training on how to use attorney-client privilege to further conceal activities description7an4 don-ephemeral communication channel. Specifically, he developed a training using innocuous legal examples and the "lawyer dog" meme to produce a slide deck that taught the ThreatOps team how to utilize attorney-client privilege to impede discovery. While the presentation slides themselves did not depict or explain any unethical or illegal practices involving attorney-client privilege, Jacobs observed Clark's presentation first-hand. During the presentation, Clark verbally coached the participants on how to use attorney-client privilege to ensure sensitive intelligence collection activities would not surface in litigation. Clark also answered specific questions from employees on the minimum standards required to claim privilege for the purpose of shielding information. This "legal training" was particularly noteworthy because it surprisingly bears no Uber-branding; it does not even mention Uber, which is startling in a company with strong branding and adherence to process. Clark said that Uber needed to "shroud these work products in attorney-client privilege." Accordingly, Clark instructed Jacobs himself and others to address all emails on sensitive intelligence collection to him and ensure the emails were marked as "ATTORNEY- CLIENT PRIVILEGED AND CONFIDENTIAL," to mark any work product as "DRAFT" regardless of its actual status, and, on every communication, to specifically ask a question or request legal advice on some issue-even if no legal advice was needed or warranted. Likewise, he advised that Jacobs and others that they should communicate almost exclusively via phone, video teleconference ("Zoom"), or via the Wickr app, in that order of preference based on the record and audit trail each communications medium creates. Clark explained that the intent was to prevent disclosure of such communications if Jacobs was ever put on legal hold or his communications were ever subject to a preservation of evidence order. In sum, Uber has directly violated the document destruction, concealment, cover-up, and falsifications provisions of Sarbanes-Oxley in an effort to obstruct or impede active and future government investigations through the (1) acquisition and use of ephemeral communications programs; (2) the acquisition and use of non-attributable hardware and software; and (3) the wholesale abuse of attorney-client privilege designations and all of Uber's violations as described in this Brief were committed with a sole aim of destroying its competitors', so that the drivers including the Plaintiff have no other option than driving for Uber and to control the drivers including the Plaintiff.

### COUNT-1
### ASSAULT AND BATTERY (COMMON LAW TORT)
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

17. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

18. Defendants listed under this count, without lawful authority through their Security Officer, manhandled the Plaintiff, pushed and shoved the Plaintiff into the elevator, brought the Plaintiff down to the Ground Floor by holding the Plaintiff by his belt from the back, and by further threatening the Plaintiff that he will not back on his feet if he comes back to the building located at 321 North Clark Street, Chicago, Illinois 60654 and in turn, Defendants listed under this count knowingly engaged in conduct which constitutes assault and battery under Illinois Law and also placed Plaintiff in reasonable apprehension of receiving further battery as described above,

FILED DATE 1/11/2021 12:00 AM   2021L000284



which further constitutes assault under Illinois Law and such an assault and battery was committed upon the Plaintiff by the Defendants with prejudice towards his Religion, Race, Ancestry, National Origin and Disabilities.

19. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

20. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

### COUNT-2
### AGGRAVATED ASSAULT AND AGGRAVATED BATTERY (COMMON LAW TORT)
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

21. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

22. Defendants listed under this count committed an aggravated assault upon the Plaintiff as described above because assault against a disabled person constitutes aggravated assault under Illinois Law.

23. Defendants listed under this count committed an aggravated assault upon the Plaintiff on a public way, public property, a public place of accommodation, and Defendants listed under this count committed an assault upon the Plaintiff with full knowledge that a Plaintiff is a person with Disabilities which is aggravated assault.

24. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

25. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

### COUNT-3
### STALKING AND AGGRAVATED STALKING
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

26. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

27. Defendants through their actions as described in paragraphs 11 to 16 have committed stalking against the Plaintiff under Illinois Law and because such stalking was against a disabled person (the Plaintiff), the stalking of the Plaintiff was aggravated stalking under Illinois Law.

28. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

29. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

### COUNT-4
### VIOLATION OF ILLINOIS HATE CRIMES ACT OF ILLINOIS
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

30. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

FILED DATE: 1/11/2021 12:00 AM 2021L000284

FILED DATE: 1/11/2021 12:00 AM   2021L000284

31. Defendants' actions as described above and in particular as described in Count-1, Count-2, and Count-3 are offenses of assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct under the Illinois Law with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities.

32. Assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking and disorderly conduct are predicates of Illinois Hate Crimes Act and when Defendants committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities, they violated Illinois Hate Crimes Act.

33. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

34. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-5
## VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

35. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

36. Defendants with their actions as described in paragraphs 11 to 16 and as described in Count-1, Count-2 and Count-3 has committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct and in turn has caused a threat to public health and physical and mental injuries to the Plaintiff all in violation of Computer Fraud and Abuse Act.

37. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

38. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-6
## VIOLATION OF STORED COMMUNICATIONS ACT
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

39. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

40. Defendants with their actions as described in paragraphs 11 to 16 violated the Stored Communications Act when they obtained electronic communication while such electronic communications were stored in an iPhone belonging to the Plaintiff and also obtained electronic communication while such electronic communications were stored on the server belonging to the Plaintiff's Internet Service Provider.

41. The violations of the Stored Communications Act by the Defendants were willful, wanton, and reckless.

42. Under the Stored Communications Act, "Proof of actual damages is not required before an award either for punitive damages and attorneys' fees is entered".

10



43. The Fourth Circuit held that "[i]f the violation [of the SCA] is willful or intentional, the court authorizes punitive damages" Id. The Fourth Circuit further held that 18 U.S.C Section 2707(b) (3) permits an award of attorneys' fees absent any proof of actual damages.

44. Under the Stored Communication Act the Plaintiff is entered to punitive damages and attorneys' fees.

45. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

46. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-7
## INTRUSION UPON SECLUSION AND PRIVACY OF THE PLAINTIFF
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

47. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

48. Intrusion upon Seclusion and Privacy of others was recognized by the Supreme Court of Illinois in *Lawlor v North American Corporation of Illinois*, 2012 IL 112530.

49. Defendants through their actions as described in paragraphs 11 to 16 have violated Intrusion upon Seclusion and Privacy of the Plaintiff.

50. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

51. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-8
## DEFAMATION PER SE
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

52. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

53. Defendants committed to Defamation Per Se when they informed several individuals including but not limited to the Security Officer and Romanucci that the Plaintiff is a criminal.

54. Plaintiff has never committed any crime and he was neither arrested nor convicted for any crime in his entire life.

55. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

56. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-9
## VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

FILED DATE: 1/11/2021 12:00 AM 2021L000284



57. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

58. Defendants violated the Electronic Communications Privacy Act (hereinafter ECPA) as described above in paragraphs 11 to 16.

59. Defendants' intent to violate ECPA, Defendants' intended conduct which violated ECPA, what Defendants sought to intercept which violated ECPA, the nature of targeted communications which violated ECPA, the tools used to (or intended to be used) to intercept the protected content which violated ECPA; is described above in detail in paragraphs 11 to 16.

60. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

61. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

### COUNT-10
### VIOLATION OF RICO, 18 U.S.C. § 1961, et seq
### (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

62. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

63. Individual Defendants listed under this count individually and/or as agents and/or servants and/or employees of Uber and/or Rasier and/or Littler and/or J & B (hereinafter "RICO Defendants,") are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

64. There is the association-in-fact of all RICO Defendants for the purpose of violating Plaintiff's rights, committing crimes and torts against the Plaintiff and for intentional infliction of physical and mental injuries in violation of his basic rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"). The Association-In-Fact Enterprise was created, controlled, and conducted by all RICO Defendants for the purposes as described in this complaint. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise. All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-In-Fact Enterprise as described in great detail in this complaint.

65. Defendants have conducted the affairs of the Association-In-Fact Enterprise, through a pattern of racketeering activity in interstate commerce that includes predicate acts indictable under 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant) and threat of kidnapping and bodily injury of the Plaintiff by the Security Officer on November 18, 2016 which is an indictable offense under the Illinois Law, as described under this count and as described in this complaint between the RICO Defendants and through the following actions, among others:

    a) RICO Defendants maliciously prosecuted the Plaintiff at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division and presented false and fabricated evidence that the Plaintiff gave fake rides to himself by using several fake identities, by using



several credit cards in the names of several fake individuals and by using several discount S1No cards when actually Defendants gave fake rides to the Plaintiff by impersonating the Plaintiff as described in detail in paragraphs 11 to 16;

b) RICO Defendants further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that by listing Stanford University as his alma mater on Facebook, Plaintiff lied and committed an offense when actually the Plaintiff can list Stanford University as his alma mater as a matter of law and he can also possess a novelty Degree and/or Diploma from the Stanford University as a matter of law;

c) RICO Defendant further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that the Plaintiff deceived Uber by asking for a $500.00 joining bonus when he was still driving for Lyft when there was no condition for the Plaintiff to quit driving for Lyft and the Driver Support Representative at Uber's Chicago Office informed the Plaintiff that the only requirement for $500.00 joining bonus was that the Plaintiff needs to be a driver of Lyft and there was no requirement for the Plaintiff to quit driving Lyft.

66. Judge Lee who presided over the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division ruled that Plaintiff's fake rides, the request for $500.00 joining bonus, and his listing of Stanford University as his alma mater affected his credibility and ultimately Plaintiff's credibility was the major factor in Judge Lee's ruling that the Plaintiff entered into Arbitration Agreement with Uber.

67. RICO Defendants malicious prosecution as described above constitutes obstruction of justice, 18 U.S.C. § 1503(a), which is a predicate of Civil RICO.

68. Further RICO Defendants' obstruction of justice was accomplished through 18 U.S.C. § 1342 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), which are again predicates of Civil RICO.

69. Further RICO Defendants' obstruction of justice was in retaliation against the Plaintiff for his Federal Lawsuit (*Mohammed I*) in violation of 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant), which are again predicates of Civil RICO.

70. Further all actions of Defendants as described in paragraphs 1 to 16 constitute obstruction of justice, 18 U.S.C. § 1503(a), in relation to *Mohammed I*.

71. Each of the RICO Defendants' violations of 18 U.S.C. § 1503(a), 18 U.S.C. § 1342, 18 U.S.C. § 1343, 18 U.S.C. § 1512 and 18 U.S.C. § 1513 constitutes "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

72. RICO Defendants engaged in a pattern of racketeering activity intending to cause harm to the Plaintiff and to defraud the Plaintiff and to deny the Plaintiff of his property (to bind the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and to deny the Plaintiff his right to proceed with his claims in a court

FILED DATE: 1/11/2021 12:00 AM   2021L000284



of law and bounded the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and denied the Plaintiff his right to proceed with his claims in a court of law).

73. RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting the same victim (the Plaintiff). Based upon the agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of the Plaintiff.

74. RICO Defendants were an association of individuals, partnerships, and corporations joined in the purpose of conspiring to commit criminal activity as described above and as described in this complaint. The association employed a number of schemes in an attempt to cause harm to the Plaintiff including, but not limited to, causing acts as described under this count and as described in this complaint, causing intentional violations of the Plaintiff's rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff.

75. RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

76. By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the costs of this suit, including reasonable attorneys' fees. WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

### COUNT-11
### MALICIOUS PROSECUTION IN RELATION TO COUNT-11 (ILLINOIS STATE LAW)
### (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

77. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

78. Defendants' actions as described in Count-10 also constitute malicious prosecution under the Illinois State Law.

79. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

80. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

### COUNT-12
### MALICIOUS PROSECUTION IN RELATION TO COUNT-11
### (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

81. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

82. Defendants further committed malicious prosecution under the Illinois State Law when they filed their Response to the Plaintiff's Motion to Vacate the Arbitration award in *Mohammed I* by arguing that the Motion to Vacate was in violation of the Executive Order of June 17, 2020, when the Executive Order only applies to cases filed after June



17, 2020 and by arguing that *Mohammed v. Anderson*, No. 18 C 8393, 2019 WL 3943669, at *d (N. D. Ill.7 Aug32P, 2019) was a frivolous action when in fact the court never ruled that *Mohammed v. Anderson*, was frivolous and when in fact *Mohammed v. Anderson* was dismissed under different grounds.

83. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

84. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-13**

**FRAUDULENT MISREPRESENTATION IN RELATION TO COUNT-10, COUNT-11 AND COUNT-12**

**(DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)**

85. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

86. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

87. Defendants' actions as described in Count-10. Count-12 and Count-13 also constitute fraudulent misrepresentation under the Illinois State Law.

88. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

89. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-14**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(ALL DEFENDANTS)**

90. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

91. In a manner more fully set forth above, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

92. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

93. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-15**

**CIVIL CONSPIRACY**

**(ALL DEFENDANTS)**

94. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.



FILED DATE: 1/11/2021 12:00 AM 2021L000284

95. In a manner more fully set forth above, Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves for the purpose of depriving Plaintiff of his rights and accomplish an unlawful purpose by unlawful means as described in this complaint.

96. In furtherance of this conspiracy or conspiracies, Defendants, acting in concert with other co-conspirators, committed the overt acts as set forth above and as described in this complaint.

97. Said conspiracy or conspiracies and overt acts continue from on or about November 10, 2016, through to the present date.

98. This conspiracy proximately caused the injuries to the Plaintiff as set forth above.

99. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

100. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## DAMAGES AND ADDITIONAL RELIEF REQUESTED

101. Plaintiff has sustained damages which are ongoing and yet to be completely identified and quantified, that are the direct and proximate result of wrongful actions of Defendants and others known and unknown to the Plaintiff, acting in concert, and which are described herein. Such damages are ongoing, and include, but are not limited to significant damages, direct, indirect, collateral, consequential, and incidental, to Plaintiff's business and property and physical and mental injuries to the Plaintiff. Due to the actions of the Defendants against the Plaintiff which include but not limited to crimes, torts and violations as described in this complaint which caused extreme physical and mental injuries to the Plaintiff, the Plaintiff was declared legally disabled on October 21, 2019 retroactively as of January 21, 2017. Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor against Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in the Counts other than Civil RICO Count, as well as any other relief this Court deems just and appropriate.

Dated-: 01/10/2021

Respectfully Submitted,
/s/Abdul Mohammed
Pro Se Plaintiff
258 East Bailey Rd, Apt C,
Naperville, IL 60565
Ph.: 630-854-5345
aamohammed@hotmail.com

# EXHIBIT E

* 5 0 0 7 6 7 5 2 *

FILED DATE: 5/6/2021 11:55 AM 2021L000284

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |

Summons - Alias Summons                                   (03/15/21) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Abdul Mohammed

_____
                                        Plaintiff(s)

                                                        Case No.    2021-L-000284

                        v.

Jenner & Block LLP et.al

_____
                                        Defendant(s)

Antonio Romanucci , 321 N.Clark St #900,
Chicago, IL 60654

_____
                        Address of Defendant(s)

Please serve as follows (check one):   ○ Certified Mail   ● Sheriff Service   ○ Alias

### SUMMONS

To each Defendant:   Antonio Romanucci, 321 N.Clark, Suite # 900, Chicago,IL
                     60654

You have been named a defendant in the complaint in this case, a copy of which is hereto attached.
You are summoned and required to file your appearance, in the office of the clerk of this court,
within 30 days after service of this summons, not counting the day of service. If you fail to do so, a
judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:** **Your appearance date is NOT a court date.** It is the deadline
for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED
TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/
answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/
approved/procedures/appearance.asp. After completing and saving your Appearance form, you can
electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Summons - Alias Summons  (03/15/21) CCG 0001 B

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

○ Atty. No.: _____

Witness date _____ 5/6/2021 11:55 AM IRIS Y MARTINEZ

◉ Pro Se 99500

Name: Abdul Mohammed

Atty. for (if applicable): _____

Iris Y. Martinez, Clerk of Court

☐ Service by Certified Mail: _____

Address: 258 East Bailey Rd, Apt C

City: Naperville

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

State: IL    Zip: 60565

Telephone: 630-854-5345

Primary Email: aamohammed@hotmail.com



*5 0 0 7 6 7 5 2*

# GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info: (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6441

### ALL SUBURBAN CASE TYPES
#### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info: (847) 470-7250

#### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info: (847) 818-3000

#### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info: (708) 865-6040

#### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info: (708) 974-6500

#### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info: (708) 232-4551

FILED DATE: 5/6/2021 11:55 AM   2021L000284



* 5 0 0 7 6 7 5 2 *

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (03/15/21) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Abdul Mohammed

_____
Plaintiff(s)

v.

Jenner & Block LLP et.al

_____
Defendant(s)

Romanucci & Blandin LLC, 321 N Clark St
#900, Chicago, IL 60654

_____
Address of Defendant(s)

Case No.   2021-L-000284

Please serve as follows (check one):   ○ Certified Mail   ● Sheriff Service   ○ Alias

### SUMMONS

To each Defendant: **Romanucci & Blandin LLC, 321 N.Clark,Suite # 900,Chicago,IL 60654**

You have been named a defendant in the complaint in this case, a copy of which is hereto attached.
You are summoned and required to file your appearance, in the office of the clerk of this court,
within 30 days after service of this summons, not counting the day of service. If you fail to do so, a
judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:** **Your appearance date is NOT a court date.** It is the deadline
for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED
TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/
answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/
approved/procedures/appearance.asp. After completing and saving your Appearance form, you can
electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

FILED DATE: 5/6/2021 11:55 AM   2021L000284



**Summons - Alias Summons** (03/15/21) CCG 0001 B

FILED DATE: 5/6/2021 11:55 AM 2021L000284

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

○ Atty. No.: _____

● Pro Se 99500

Name: Abdul Mohammed

Atty. for (if applicable): _____

Address: 258 East Bailey Rd, Apt C

City: Naperville

State: IL   Zip: 60565

Telephone: 630-854-5345

Primary Email: aamohammed@hotmail.com

Witness date   5/6/2021 11:55 AM IRIS Y MARTINEZ

Iris Y. Martinez, Clerk of Court

☐ Service by Certified Mail

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)



*5 0 0 7 6 7 5 2*

FILED DATE: 5/6/2021 11:55 AM   2021L000284

# GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date.  Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
                OR
            ChildSupCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:   (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6441

## ALL SUBURBAN CASE TYPES
### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:   (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:   (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:   (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:   (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:   (708) 232-4551

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**12-Person Jury**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED
1/11/2021 12:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
11772324

ABDUL MOHAMMED,

PLAINTIFF,

vs.

JENNER & BLOCK LLP, UBER TECHNOLOGIES INC, RASIER LLC, LITTLER MENDELSON P.C., ROMANUCCI AND BLANDIN LLC, DARA KHOSROWSHAHI, TRAVIS KALANICK, RYAN GRAVES, NICK GICINTO, CRAIG CLARK, MAT HENLEY, ANTONIO ROMANUCCI, JENNIFER SCHILLING, JODI BOQUIST, REID SCHAR, MEGAN POETZEL AND DANIEL BOBIER INDIVIDUALLY AND AS AGENTS OR SERVANTS OR VOLUNTEERS OR ASSOCIATES OR CONTRACTORS OR EMPLOYEES OF UBER TECHNOLOGIES INC, RASIER LLC, LITTLER MENDELSON P.C, ROMANUCCI AND BLANDIN LLC AND JENNER & BLOCK LLP,

DEFENDANTS

2021L000284

COMPLAINT WITH JURY DEMAND

**COMPLAINT AT LAW**

**PARTIES, JURISDICTION, AND VENUE**

1.  The Plaintiff is a protected person within the meaning of the Americans with Disabilities Act, the Rehabilitation Act of 1973, Section 504, the Illinois Adult Protective Services Act, and the Federal Traumatic Brain Injury Reauthorization Act of 2014.

2.  The Defendants are located in the jurisdiction of this court and they are conducting business in the jurisdiction of this court and further one or more actions alleged in this complaint occurred in the jurisdiction of this court. Hence this court has jurisdiction over this matter and hence venue is proper.

**FACTUAL BACKGROUND**

3.  Plaintiff filed a complaint against Defendants Uber Technologies Inc (hereinafter Uber), Rasier LLC (hereinafter Rasier), Travis Kalanick (hereinafter Kalanick), and Ryan Graves (hereinafter Graves) in District Court of the United States for Northern District of Illinois, Eastern Division (hereinafter District Court) on February 24, 2016 and that case remains pending in District Court. See *Mohammed v Uber Technologies et.al*, Case # 16-cv-2537, N.D.Ill (hereinafter *Mohammed I*).

1



4.  There is a dispute regarding an alleged Arbitration Agreement which the Defendants allege in *Mohammed I* that the Plaintiff entered with the Defendants but anyhow the alleged Arbitration Agreement in the pertinent part states, "This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce." The instant complaint has nothing to do with a transaction involving interstate commerce and the instant complaint only deals with intentional crimes, intentional torts, and various other intentional violations committed by the Defendants against the Plaintiff, hence the instant complaint is not covered by the disputed alleged Arbitration Agreement.

5.  Further, there is not even an alleged Arbitration Agreement against Defendants Littler Mendelson P.C. (hereinafter Littler), Jenner & Block LLP (hereinafter J & B), Romanucci and Blandin LLC (hereinafter R & B), Antonio Romanucci (hereinafter Romanucci), Jennifer Schilling (hereinafter Schilling), Jodi Boquist (hereinafter Boquist), Reid Schar (hereinafter Schar), Megan Poetzel (hereinafter Poetzel) and Daniel Bobier (hereinafter Bobier).

6.  The actions alleged in this complaint are either stand-alone new allegations that occurred after the filing of *Mohammed I* and/or actions which were committed by the Defendants in retaliation against the Plaintiff for *Mohammed I*.

7.  On November 10, 2016, the Plaintiff had an appointment with a law firm named Romanucci & Blandin LLC located at 321 North Clark Street, Suite 900, Chicago, Illinois 60654. The Plaintiff was waiting in the conference room to see Romanucci. A Security Officer of the building along with Romanucci entered the conference room and the Security Officer informed the Plaintiff that they have a problem with him and asked him to come out of the conference room. Then the Security Officer took the Plaintiff toward the elevator and shoved him into the elevator and brought him down to the Ground Floor and pushed the Plaintiff towards the exit of the building and informed him that he has an order from Defendant Littler Mendelson PC to remove him from the building. Littler's office is located at 321 North Clark Street, Suite 1100, Chicago, Illinois 60654. The Security Officer also informed the Plaintiff that if he again sets foot in the building, he will not go back home on his feet. Littler has added the Plaintiff's information to the Security System and when the Security System scans his ID, his name comes up, that he should not be allowed in the building. Plaintiff called Romanucci and asked him about this matter and he was informed that Littler is not allowing the Plaintiff to enter the building so Romanucci is not able to represent the Plaintiff. This is retaliation against the Plaintiff as naked as it gets for filing of *Mohammed I*. The masterminds of this retaliation against the Plaintiff are the Defendants other than Dara Khosrowshahi (hereinafter Khosrowshahi), J & B, Schar, Poetzel, and Bobier.

8.  Before the Security Officer and Romanucci entered the conference room to remove the Plaintiff from the building, the Plaintiff heard that Security Officer saying to Romanucci, "Littler and Mendelson informed him that he is a criminal and he be removed from the building immediately".

9.  Plaintiff is alleging that Uber was following the Plaintiff's location through its Uber Rider and Driver App which was installed on the Plaintiff's phone as described below and when Uber found out through the Uber Rider and Driver App which was installed on the Plaintiff's phone that the Plaintiff is inside the building located at 321 North

FILED DATE: 1/11/2021 12:00 AM    2021L000284



Clark Street, Chicago, Illinois 60654, informed Littler, Schilling and Boquist that the Plaintiff is inside the building located at 321 North Clark Street, Chicago, Illinois 60654.

10. The actions as alleged in this complaint were committed by the Defendants with prejudice towards Plaintiff's Race, Religion, and Disabilities and in particular with prejudice towards Plaintiff's National Origin and Ancestry which is described in *Mohammed I*. Defendants committed actions as described in *Mohammed I* and the instant complaint with a perceived belief that the Plaintiff is not a United States Citizen, he is an immigrant and/or undocumented immigrant and their another perceived belief that people who are not United States Citizens, immigrants and/or undocumented immigrants will generally not take any legal action if intentional crimes are committed against them, if intentional torts or violations are committed against them. Undocumented immigrants generally do not report to the law enforcement agencies or take any kind of legal action if crimes, intentional torts, or violations are committed against them due to their fear of being removed from the United States due to their undocumented status.

11. **Uber's spying of its Drivers and Lyft Drivers to bring Drivers to Uber's Platform and effectively under their control;**

Further Uber spied on its drivers including the Plaintiff and Lyft drivers by intercepting, accessing, monitoring and/or transmitting electronic communications and whereabouts of its drivers including the Plaintiff and Lyft drivers to lure Lyft drivers and drivers who worked both for Uber and Lyft, to exclusively drive for Uber, all in violation of Federal Wiretap Act as amended by the Electronic Communications Privacy Act (the "ECPA"), the Federal Stored Communication Act (the "SCA"), and common law invasion of privacy. See the Lawsuit against Uber in United States District Court Northern District of California, San Francisco Division, Case No.: 3:17-CV-02264, as Exhibit-H. Uber's violations as described in Exhibit-H were committed to destroy its only remaining competitor, Lyft, and to take away the only remaining option other than Uber, for the drivers. When Uber spied on its drivers including this Plaintiff, that is not only a crime but such a crime was committed to control the drivers.

12. **Waymo LLC v. Uber Technologies, Inc. (3:17-CV-00939) (N.D.Cal);**

Further during the pendency of the *Waymo Case,* Richard Jacobs, and Uber's former Manager of Global Intelligence informed his lawyer how Uber stole trade secrets from Waymo, spied on drivers and other individuals and other companies, and committed various crimes with an intent to cause harm to other individuals, companies and to bring drivers of other Ride-Sharing Companies to come and drive for Uber. Please see the letter from Jacobs' lawyer to Uber as Exhibit-I for a detailed analysis of Uber's criminal activities to destroy other Ride-Sharing Companies and to bring all the drivers in their control. Uber settled with Jacobs for $4.5 Million + a Job at Uber and Uber also paid $3 Million to Jacobs' lawyer. Uber also settled with Waymo for $245 Million. Uber's lawyer, Angela Padilla, said in court, the allegations in the letter had seemed "quite fantastical" to her. Jacobs testified in the *Waymo* case, there was an intelligence operation inside Uber to research competitors and gather data about them, and use technology to avoid a paper trail. In court, Padilla said Uber viewed the Jacobs' letter as a tactic by a disgruntled former employee to secure money from the company. Padilla said, "We felt that Jacobs was trying to extort the company." Uber eventually settled the matter by paying Jacobs $4.5 million, including a year-long consulting contract, and a further

3



FILED DATE: 1/11/2021 12:00 AM    2021L000284

$3 million to his lawyer. Judge Alsup said to Padilla, "That is a lot of money". "And people do not pay that kind of money for BS. And you certainly don't hire them as consultants if you think everything they've got to contribute is BS." As per Exhibit-I, Uber fraudulently impersonates riders and drivers on competitors' platforms, hacks into competitors' networks, and conducts unlawful wiretapping (each tactic discussed in additional detail in Exhibit-I). These tactics are used to obtain trade secrets about:

a)   the function of competitors' Apps;

b)   vulnerabilities in the competitors' App, including performance and function;

c)   vulnerabilities in competitors' App security;

d)    supply data, including unique driver information;

e)   pricing structures and incentives.

As per Exhibit-I, Uber worked to unlawfully obtain trade secrets from its competitors and 1) remotely accessed confidential corporate communications and data of its competitors, 2) impersonated riders and drivers including the Plaintiff on competitors' platform to derive key functions of rider and driver apps, 3) stole supply data by identifying possible drivers to boost Uber's market position, and 4) acquired codebase which allowed Uber to identify code used by its competitors' to understand in greater detail how their app functioned. By credibly impersonating both riders and drivers including the Plaintiff, Uber could request thousands of rides in a given geographic area to study the responsiveness and capability of the app, price quotes, and disposition of available drivers. Uber further impersonated prospective customers to ascertain the identity of drivers through their names including the Plaintiff, license plate numbers, and make/model of their vehicles. Uber then used this information to recruit drivers from their competitors' to Uber's platform. Uber also obtained key technical details about how its competitors would troubleshoot issues in comparison to Uber, and then used that data to develop contingencies to slow or impede competitors' business operations and also caused injury to the drivers including the Plaintiff to bring them to Uber's platform and effectively under their control. Uber employed tactics to obtain trade secrets, with a focus on stealing key supply data to boost Uber's pool of drivers, the function of the competitors' app, and its vulnerabilities, and then used that data to develop an aggressive "counterintelligence" campaign to slow competitors' efforts. Uber used special SIM cards to collect intelligence on competitors' trade secrets and to obtain private and protected information about the drivers including the Plaintiff. Specifically, the SIM cards were used to fraudulently impersonate customers on competitors' rider and driver applications. By credibly impersonating riders and drivers including the Plaintiff, Uber could:(i) develop processes to conduct thousands of data calls to reverse engineer products; (ii) identify and recruit supply (i.e. partner drivers); (iii) and derive key competitive business metrics to understand subsidies, available supply, processes for managing surge, and competitive market position. For instance, Uber would be able to study key technical details of how competitors' had engineered solutions to common problems ride-sharing providers have at scale, and in the context of dense population centers. Uber would then use that data to identify possible improvements, gain competitive advantages, or exploit weaknesses of competitors' platforms. Notably, Uber identified vulnerability in their competitors' system and collected

4



comprehensive supply data, including the license, name, and contact information for every single driver including the Plaintiff. Further Uber Executives conspired and acted in furtherance of the conspiracy to hack the database of its competitors and collected all driver information including the Plaintiff, to have a perfect set of possible drivers for Uber's platform which boosted supply when Uber targeted these operators and converted them to drivers for Uber. As discussed above, Uber used driver and customer impersonation to steal competitor trade secrets. This conduct not only violated the trade secrets law discussed above but also wire fraud law at 18 U.S.C § 1343, and California Penal Code § 528.5. Under this Section, it is unlawful to knowingly and without consent, credibly impersonate another actual person through the Internet or email, to harm, intimidate, threaten, or defraud someone. This conduct further exposes a company to civil liability under Section 528.5(e). This impersonation was intended to fraudulently steal business and bring drivers under its control and it was an "unlawful, unfair, or fraudulent business act and practice. California Bus & Prof Code § 1720. It is also in violation of the CFAA and related laws, discussed in Exhibit-I. Along with the theft of trade secrets, Jacobs observed Uber personnel, through their LAT operatives and their vendors; knowingly impersonate actual people over the Internet to keep tabs on competitors and opposition groups by accessing closed social media groups. This impersonation had the purpose of fraudulently stealing business and gaining a competitive advantage. During the summer of 2016, Jacobs learned that Uber's intelligence-gathering teams in other locations impersonated partner-drivers including the Plaintiff or taxi operators to gain access to private WhatsApp group messaging channels. Jacobs further investigated this conduct by searching Uber's internal network, TeamDot. Further Uber created a PowerPoint presentation which included a section on "intel gathering," a slide on driver chat group infiltration, and a link to the specific procedures for infiltrating driver-partner chat groups (including the impersonation of actual driver-partners including the Plaintiff) to collect information on growing discontent and possible opposition activities. Upon receipt, Jacobs disclosed the playbook to Craig Clark, who replied, "Do I want to know what it is?" Jacobs voiced concern as to its legality, noting that it encouraged "intel gathering" and described how to penetrate WhatsApp groups. Clark only replied that "this is happening everywhere and I'm not ready to deal with it." Clark did not investigate the presumed criminal violation. In late January and early February 2017, as part of SSG's virtual operations capability (VOC), Uber's agents posed as sympathetic protestors interested in participating in actions against Uber. By doing this, illegally gained access to closed Facebook groups and chatted with protesting drivers in an attempt to understand their nonpublic plans and intentions. All the actions described in Exhibit-I demonstrate how Uber spied on drivers including the Plaintiff and committed crimes left, right, and center with no fear whatsoever. An unredacted version of Exhibit-I can reveal further about Uber's activities.

13. **Sarbanes-Oxley Violations, Evidence Spoliation, and Other Discovery Abuses by Uber;**

The Sarbanes-Oxley Act of 2002 states that:

"whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case



filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both".

Sarbanes-Oxley Act of 2002, Pub. L. 107-204, § 802, 116 Stat. 745, 800 (2002). Codified at 18 U.S.C. § 1519, this provision applies to private companies and has a broad reach that is not limited to commenced litigation. Section 1519 "covers conduct intended to impede any federal investigation or proceeding *including one not even on the verge of commencement." Yates v. United States,* - U.S. --, 135 S.Ct. 1074, 1087 (2015) (emphasis added). Similarly, the California Rule of Professional Conduct 5-2320 prohibits members of the bar from suppressing evidence that the member or the member's client has a legal obligation to produce. Uber has knowingly violated 18 U.S.C § 1519 and continues to do so. Craig Clark, Uber's Legal Director for ThreatOps, and Mat Henley, Uber's Director of Threat Operations (ThreatOps), led Uber's efforts to evade current and future discovery requests, court orders, and government investigations in violation of state and federal law as well as ethical rules governing the legal profession. Clark devised training and provided advice intended to impede, obstruct, or influence the investigation of several ongoing lawsuits against Uber and in relation to or contemplation of further matters within the jurisdiction of the United States. Early in his tenure, Jacobs advocated for a secure and encrypted centralized database to ensure confidentiality and recordkeeping to provide access to intelligence for ThreatOps personnel. He presented a draft proposal to managers Henley and Clark. However, discussions broke down immediately because they objected to preserving any intelligence that would make preservation and legal discovery a simple process for future litigants. Clark emphasized that this was "exactly what we don't want to do ... create [a paper trail] that could later be discoverable." Clark noted the errors of past collections where Uber was forced to turn over documents. He alluded to the lessons learned from the "Ergo Investigation" and noted that encryption alone was not enough to avoid discovery. Nick Gicinto added his own objections, stating that while his team would be willing to share some details on collections, including sources and methods of collections on the ground in foreign countries, they were not willing to preserve the raw intelligence on Uber's network. Jacobs then became aware that Uber, primarily through Clark and Henley, had implemented a sophisticated strategy to destroy, conceal, cover-up, and falsify records or documents with the intent to impede or obstruct government investigations as well as discovery obligations in pending and future litigation. Besides violating 18 U.S.C. § 1519, this conduct constitutes an ethical violation.

14. **Destruction and Concealment of Records Using Ephemeral Communications;**

Clark and Henley helped implement and directed the almost-exclusive use of ephemeral and encrypted communications software, including WickrMe (and later Wickr SCIF), to communicate sensitive information within ThreatOps. Wickr Inc. is a San Francisco-based company that describes its product as a "communications platform designed to empower greater control over data security ... [using] multi-layers of peer-to-peer encryption". Henley and Clark implemented this program of ephemeral and encrypted communications for the express purpose of destroying evidence of illegal or unethical practices to avoid discovery in actual or potential litigation. The Wickr application uses robust encryption which prevents the information from being viewed by anyone except the intended recipient, but more importantly, programs messages to self-destruct in a matter of seconds to no longer

6



FILED DATE: 1/11/2021 12:00 AM    2021L000284

than six days. Consequently, Uber employees cannot be compelled to produce records of their chat conversations because no record is retained. Such a policy is inherently violative of the Sarbanes-Oxley Act, 18 U.S.C. Section 1519, and similar laws. Further, Clark and Henley directly instructed Jacobs to conceal documents in violation of Sarbanes-Oxley, by attempting to "shroud" them with, attorney-client privilege or work product protections. Clark taught the ThreatOps team that if they marked communications as "draft," asked for a legal opinion at the beginning of an email, and simply wrote "attorney-client privilege" on documents, they would be immune from discovery. What Clark failed to teach the team, however, is that there is no attorney-client privilege, no "seal of secrecy," if the communications were made for the purpose of enabling the commission of a crime or fraud. *U.s.v. Zolin* 491 U.S. 554, 563(1989); *see also* Cal. Evid. Code § 956. For example, Clark enabled illegal activities and gave legal advice designed to impede investigations by directing the hacking of the competitors' systems and platforms, and by directing the destruction of evidence related to eavesdropping against opposition groups of drivers as discussed above. Given the ongoing criminal and fraudulent activities within Uber, the crime-fraud exception to privilege applies, and all of Clark's communications in furtherance of these schemes would be fair game in discovery. His attempt to pre-emptively conceal them under attorney-client privilege is illegal, unethical, and improper.

15. **Concealment and Destruction of Records Using Non-attributable Hardware;**

Clark, Gicinto, and Henley acquired "non-attributable" hardware and software with which SSG and select members of ThreatOps planned and executed intelligence collection operations. Specifically, Henley and members of the MA team use computers not directly purchased by Uber that operate only on MiFi devices-so that the internet traffic would not appear to originate from an Uber network- virtual public networks (VPNs), and a distributed and non-attributable architecture of contracted Amazon Web Services (AWS) server space to conduct competitive intelligence collections against other ride-sharing companies. Likewise, Gicinto and the SSG team had similar non-attributable devices purchased through vendors and sub-vendors where they conducted virtual operations impersonating protesting drivers, Uber partner-drivers including the Plaintiff, and taxi operators. SSG used the devices to store raw information collected by their operatives from politicians, regulators, law enforcement, taxi organizations, and labor unions. By storing this data on non-attributable devices, Uber believed it would avoid detection and never be subject to legal discovery. This is because a standard preservation of evidence order typically focused on Uber work laptops, Uber networks, and Uber mobile devices. Non-attributable devices were deemed as not reasonably subsumed by any such preservation order and the team could, and did, "legally" (not so) dispose of any evidence or documentation held on these devices in the intervening period before knowledge of the devices' existence could be uncovered. Likewise, members of the ThreatOps team, notably Henley, were known to use personal computers to conduct substantial Uber-related work for the purpose of evading discovery.

16. **Concealment, Cover-up, and Falsification of Records through the Abuse of Attorney-Client Privilege Designations:**

FILED DATE: 1/11/2021 12:00 AM    2021L000284

Clark developed training on how to use attorney-client privilege to further conceal activities described in any short-ephemeral communication channel. Specifically, he developed a training using innocuous legal examples and the "lawyer dog" meme to produce a slide deck that taught the ThreatOps team how to utilize attorney-client privilege to impede discovery. While the presentation slides themselves did not depict or explain any unethical or illegal practices involving attorney-client privilege, Jacobs observed Clark's presentation first-hand. During the presentation, Clark verbally coached the participants on how to use attorney-client privilege to ensure sensitive intelligence collection activities would not surface in litigation. Clark also answered specific questions from employees on the minimum standards required to claim privilege for the purpose of shielding information. This "legal training" was particularly noteworthy because it surprisingly bears no Uber-branding; it does not even mention Uber, which is startling in a company with strong branding and adherence to process. Clark said that Uber needed to "shroud these work products in attorney-client privilege." Accordingly, Clark instructed Jacobs himself and others to address all emails on sensitive intelligence collection to him and ensure the emails were marked as "ATTORNEY- CLIENT PRIVILEGED AND CONFIDENTIAL," to mark any work product as "DRAFT" regardless of its actual status, and, on every communication, to specifically ask a question or request legal advice on some issue-even if no legal advice was needed or warranted. Likewise, he advised that Jacobs and others that they should communicate almost exclusively via phone, video teleconference ("Zoom"), or via the Wickr app, in that order of preference based on the record and audit trail each communications medium creates. Clark explained that the intent was to prevent disclosure of such communications if Jacobs was ever put on legal hold or his communications were ever subject to a preservation of evidence order. In sum, Uber has directly violated the document destruction, concealment, cover-up, and falsifications provisions of Sarbanes-Oxley in an effort to obstruct or impede active and future government investigations through the (1) acquisition and use of ephemeral communications programs; (2) the acquisition and use of non-attributable hardware and software; and (3) the wholesale abuse of attorney-client privilege designations and all of Uber's violations as described in this Brief were committed with a sole aim of destroying its competitors', so that the drivers including the Plaintiff have no other option than driving for Uber and to control the drivers including the Plaintiff.

**COUNT-1**
**ASSAULT AND BATTERY (COMMON LAW TORT)**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

17. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

18. Defendants listed under this count, without lawful authority through their Security Officer, manhandled the Plaintiff, pushed and shoved the Plaintiff into the elevator, brought the Plaintiff down to the Ground Floor by holding the Plaintiff by his belt from the back, and by further threatening the Plaintiff that he will not back on his feet if he comes back to the building located at 321 North Clark Street, Chicago, Illinois 60654 and in turn, Defendants listed under this count knowingly engaged in conduct which constitutes assault and battery under Illinois Law and also placed Plaintiff in reasonable apprehension of receiving further battery as described above,



FILED DATE: 1/11/2021 12:00 AM   2021L000284

which further constitutes assault under Illinois Law and such an assault and battery was committed upon the Plaintiff by the Defendants with prejudice towards his Religion, Race, Ancestry, National Origin and Disabilities.

19. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

20. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-2
## AGGRAVATED ASSAULT AND AGGRAVATED BATTERY (COMMON LAW TORT)
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

21. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

22. Defendants listed under this count committed an aggravated assault upon the Plaintiff as described above because assault against a disabled person constitutes aggravated assault under Illinois Law.

23. Defendants listed under this count committed an aggravated assault upon the Plaintiff on a public way, public property, a public place of accommodation, and Defendants listed under this count committed an assault upon the Plaintiff with full knowledge that a Plaintiff is a person with Disabilities which is aggravated assault.

24. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

25. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-3
## STALKING AND AGGRAVATED STALKING
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

26. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

27. Defendants through their actions as described in paragraphs 11 to 16 have committed stalking against the Plaintiff under Illinois Law and because such stalking was against a disabled person (the Plaintiff), the stalking of the Plaintiff was aggravated stalking under Illinois Law.

28. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

29. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-4
## VIOLATION OF ILLINOIS HATE CRIMES ACT OF ILLINOIS
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

30. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

9



31. Defendants' actions as described above and in particular as described in Count-1, Count-2, and Count-3 are offenses of assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct under the Illinois Law with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities.

32. Assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking and disorderly conduct are predicates of Illinois Hate Crimes Act and when Defendants committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities, they violated Illinois Hate Crimes Act.

33. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

34. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-5**
**VIOLATION OF COMPUTER FRAUD AND ABUSE ACT**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC,**
**ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

35. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

36. Defendants with their actions as described in paragraphs 11 to 16 and as described in Count-1, Count-2 and Count-3 has committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct and in turn has caused a threat to public health and physical and mental injuries to the Plaintiff all in violation of Computer Fraud and Abuse Act.

37. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

38. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-6**
**VIOLATION OF STORED COMMUNICATIONS ACT**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC,**
**ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

39. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

40. Defendants with their actions as described in paragraphs 11 to 16 violated the Stored Communications Act when they obtained electronic communication while such electronic communications were stored in an iPhone belonging to the Plaintiff and also obtained electronic communication while such electronic communications were stored on the server belonging to the Plaintiff's Internet Service Provider.

41. The violations of the Stored Communications Act by the Defendants were willful, wanton, and reckless.

42. Under the Stored Communications Act, "Proof of actual damages is not required before an award either for punitive damages and attorneys' fees is entered".

10



43. The Fourth Circuit held that "[i]f the violation [of the SCA] is willful or intentional, the court can assess punitive damages" Id. The Fourth Circuit further held that 18 U.S.C Section 2707(b) (3) permits an award of attorneys' fees absent any proof of actual damages.

44. Under the Stored Communication Act the Plaintiff is entered to punitive damages and attorneys' fees.

45. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

46. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-7
## INTRUSION UPON SECLUSION AND PRIVACY OF THE PLAINTIFF
## (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

47. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

48. Intrusion upon Seclusion and Privacy of others was recognized by the Supreme Court of Illinois in *Lawlor v North American Corporation of Illinois*, 2012 IL 112530.

49. Defendants through their actions as described in paragraphs 11 to 16 have violated Intrusion upon Seclusion and Privacy of the Plaintiff.

50. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

51. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-8
## DEFAMATION PER SE
## (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

52. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

53. Defendants committed to Defamation Per Se when they informed several individuals including but not limited to the Security Officer and Romanucci that the Plaintiff is a criminal.

54. Plaintiff has never committed any crime and he was neither arrested nor convicted for any crime in his entire life.

55. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

56. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-9
## VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT
## (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

11



57. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

58. Defendants violated the Electronic Communications Privacy Act (hereinafter ECPA) as described above in paragraphs 11 to 16.

59. Defendants' intent to violate ECPA, Defendants' intended conduct which violated ECPA, what Defendants sought to intercept which violated ECPA, the nature of targeted communications which violated ECPA, the tools used to (or intended to be used) to intercept the protected content which violated ECPA; is described above in detail in paragraphs 11 to 16.

60. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

61. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-10**
**VIOLATION OF RICO, 18 U.S.C. § 1961, et seq**
**(DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)**

62. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

63. Individual Defendants listed under this count individually and/or as agents and/or servants and/or employees of Uber and/or Rasier and/or Littler and/or J & B (hereinafter "RICO Defendants,") are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

64. There is the association-in-fact of all RICO Defendants for the purpose of violating Plaintiff's rights, committing crimes and torts against the Plaintiff and for intentional infliction of physical and mental injuries in violation of his basic rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"). The Association-In-Fact Enterprise was created, controlled, and conducted by all RICO Defendants for the purposes as described in this complaint. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise. All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-In-Fact Enterprise as described in great detail in this complaint.

65. Defendants have conducted the affairs of the Association-In-Fact Enterprise, through a pattern of racketeering activity in interstate commerce that includes predicate acts indictable under 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant) and threat of kidnapping and bodily injury of the Plaintiff by the Security Officer on November 18, 2016 which is an indictable offense under the Illinois Law, as described under this count and as described in this complaint between the RICO Defendants and through the following actions, among others:

    a) RICO Defendants maliciously prosecuted the Plaintiff at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division and presented false and fabricated evidence that the Plaintiff gave fake rides to himself by using several fake identities, by using



several credit cards in the names of several fake individuals and by using several different SIM cards when actually Defendants gave fake rides to the Plaintiff by impersonating the Plaintiff as described in detail in paragraphs 11 to 16;

  b) RICO Defendants further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that by listing Stanford University as his alma mater on Facebook, Plaintiff lied and committed an offense when actually the Plaintiff can list Stanford University as his alma mater as a matter of law and he can also possess a novelty Degree and/or Diploma from the Stanford University as a matter of law;

  c) RICO Defendant further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that the Plaintiff deceived Uber by asking for a $500.00 joining bonus when he was still driving for Lyft when there was no condition for the Plaintiff to quit driving for Lyft and the Driver Support Representative at Uber's Chicago Office informed the Plaintiff that the only requirement for $500.00 joining bonus was that the Plaintiff needs to be a driver of Lyft and there was no requirement for the Plaintiff to quit driving Lyft.

66. Judge Lee who presided over the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division ruled that Plaintiff's fake rides, the request for $500.00 joining bonus, and his listing of Stanford University as his alma mater affected his credibility and ultimately Plaintiff's credibility was the major factor in Judge Lee's ruling that the Plaintiff entered into Arbitration Agreement with Uber.

67. RICO Defendants malicious prosecution as described above constitutes obstruction of justice, 18 U.S.C. § 1503(a), which is a predicate of Civil RICO.

68. Further RICO Defendants' obstruction of justice was accomplished through 18 U.S.C. § 1342 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), which are again predicates of Civil RICO.

69. Further RICO Defendants' obstruction of justice was in retaliation against the Plaintiff for his Federal Lawsuit (*Mohammed I*) in violation of 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant), which are again predicates of Civil RICO.

70. Further all actions of Defendants as described in paragraphs 1 to 16 constitute obstruction of justice, 18 U.S.C. § 1503(a), in relation to *Mohammed I*.

71. Each of the RICO Defendants' violations of 18 U.S.C. § 1503(a), 18 U.S.C. § 1342, 18 U.S.C. § 1343, 18 U.S.C. § 1512 and 18 U.S.C. § 1513 constitutes "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

72. RICO Defendants engaged in a pattern of racketeering activity intending to cause harm to the Plaintiff and to defraud the Plaintiff and to deny the Plaintiff of his property (to bind the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and to deny the Plaintiff his right to proceed with his claims in a court

13



of law and bounded the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and denied the Plaintiff his right to proceed with his claims in a court of law).

73. RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting the same victim (the Plaintiff). Based upon the agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of the Plaintiff.

74. RICO Defendants were an association of individuals, partnerships, and corporations joined in the purpose of conspiring to commit criminal activity as described above and as described in this complaint. The association employed a number of schemes in an attempt to cause harm to the Plaintiff including, but not limited to, causing acts as described under this count and as described in this complaint, causing intentional violations of the Plaintiff's rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff.

75. RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

76. By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the costs of this suit, including reasonable attorneys' fees. WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT-11
## MALICIOUS PROSECUTION IN RELATION TO COUNT-11 (ILLINOIS STATE LAW)
### (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

77. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

78. Defendants' actions as described in Count-10 also constitute malicious prosecution under the Illinois State Law.

79. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

80. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-12
## MALICIOUS PROSECUTION IN RELATION TO COUNT-11
### (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

81. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

82. Defendants further committed malicious prosecution under the Illinois State Law when they filed their Response to the Plaintiff's Motion to Vacate the Arbitration award in *Mohammed I* by arguing that the Motion to Vacate was in violation of the Executive Order of June 17, 2020, when the Executive Order only applies to cases filed after June



17, 2020 and by arguing that *Mohammed v. Anderson*, No. 18 C 8393, 2019 WL 3943669, at *d (N.D. Ill. Aug 21, 2019) was a frivolous action when in fact the court never ruled that *Mohammed v. Anderson*, was frivolous and when in fact *Mohammed v. Anderson* was dismissed under different grounds.

83. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

84. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-13
## FRAUDULENT MISREPRESENTATION IN RELATION TO COUNT-10, COUNT-11 AND COUNT-12
## (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

85. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

86. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

87. Defendants' actions as described in Count-10. Count-12 and Count-13 also constitute fraudulent misrepresentation under the Illinois State Law.

88. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

89. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-14
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (ALL DEFENDANTS)

90. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

91. In a manner more fully set forth above, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

92. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

93. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-15
## CIVIL CONSPIRACY
## (ALL DEFENDANTS)

94. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

FILED DATE: 1/11/2021 12:00 AM   2021L000284

95. In a manner more fully set forth above, Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves for the purpose of depriving Plaintiff of his rights and accomplish an unlawful purpose by unlawful means as described in this complaint.

96. In furtherance of this conspiracy or conspiracies, Defendants, acting in concert with other co-conspirators, committed the overt acts as set forth above and as described in this complaint.

97. Said conspiracy or conspiracies and overt acts continue from on or about November 10, 2016, through to the present date.

98. This conspiracy proximately caused the injuries to the Plaintiff as set forth above.

99. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

100. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## DAMAGES AND ADDITIONAL RELIEF REQUESTED

101. Plaintiff has sustained damages which are ongoing and yet to be completely identified and quantified, that are the direct and proximate result of wrongful actions of Defendants and others known and unknown to the Plaintiff, acting in concert, and which are described herein. Such damages are ongoing, and include, but are not limited to significant damages, direct, indirect, collateral, consequential, and incidental, to Plaintiff's business and property and physical and mental injuries to the Plaintiff. Due to the actions of the Defendants against the Plaintiff which include but not limited to crimes, torts and violations as described in this complaint which caused extreme physical and mental injuries to the Plaintiff, the Plaintiff was declared legally disabled on October 21, 2019 retroactively as of January 21, 2017. Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor against Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in the Counts other than Civil RICO Count, as well as any other relief this Court deems just and appropriate.

Dated-: 01/10/2021

Respectfully Submitted,
/s/Abdul Mohammed
Pro Se Plaintiff
258 East Bailey Rd, Apt C,
Naperville, IL 60565
Ph.: 630-854-5345
aamohammed@hotmail.com

16

# EXHIBIT F

FILED DATE: 5/6/2021 11:55 AM   2021L000284

| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |

**Summons - Alias Summons**        **(03/15/21) CCG 0001 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Abdul Mohammed

Plaintiff(s)

v.

Jenner & Block LLP et.al

Defendant(s)

Rasier LLC, 208 South LaSalle, Suite 814,
Chicago,Illinois 60604

Address of Defendant(s)

Case No.    2021-L-000284

Please serve as follows (check one): ○ Certified Mail   ● Sheriff Service   ○ Alias

### SUMMONS

To each Defendant:   **Rasier LLC,208 South LaSalle,Suite 814,Chicago,Illinois 60604**

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:** **Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

Page 1 of 3

Summons - Alias Summons                                  (03/15/21) CCG 0001 B

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

○ Atty. No.: _____

● Pro Se 99500

Name: Abdul Mohammed

Atty. for (if applicable): _____

Address: 258 East Bailey Rd,Apt C

City: Naperville

State: IL   Zip: 60565

Telephone: 630-854-5345

Primary Email: aamohammed@hotmail.com

Witness date  5/6/2021 11:55 AM IRIS Y. MARTINEZ

_____
Iris Y. Martinez, Clerk of Court

□ Service by Certified Mail: _____

□ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 5/6/2021 11:55 AM  2021L000284

FILED DATE: 5/6/2021 11:55 AM    2021L000284

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:**  CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:**  CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:**  DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:**  DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:**  LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:**  ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:**  D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:**  D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:**  D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:**  D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:**  D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 5/6/2021 11:55 AM  2021L000284

| | | |
|---|---|---|
| **2120 - Served** | **2121 - Served** | **2620 - Sec. of State** |
| **2220 - Not Served** | **2221 - Not Served** | **2621 - Alias Sec of State** |
| **2320 - Served By Mail** | **2321 - Served By Mail** | |
| **2420 - Served By Publication** | **2421 - Served By Publication** | |

**Summons - Alias Summons**                                      **(03/15/21) CCG 0001 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Abdul Mohammed

_____
                              Plaintiff(s)

                    v.                                Case No.    2021-L-000284
                                                     _____

Jenner & Block LLP et.al

_____
                             Defendant(s)

Dara Khosrowshahi, 1401 W North Ave,
Chicago, IL 60642

_____
            Address of Defendant(s)

Please serve as follows (check one):  ○ Certified Mail  ◉ Sheriff Service  ○ Alias

### SUMMONS

To each Defendant: **Dara Khosrowshshi,1401 West North Ave, Chicago,Illinois 60642**

You have been named a defendant in the complaint in this case, a copy of which is hereto attached.
You are summoned and required to file your appearance, in the office of the clerk of this court,
within 30 days after service of this summons, not counting the day of service. If you fail to do so, a
judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:  Your appearance date is NOT a court date.**  It is the deadline
for filing your appearance/answer.  To file your appearance/answer **YOU DO NOT NEED
TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/
answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/
approved/procedures/appearance.asp.  After completing and saving your Appearance form, you can
electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons** (03/15/21) CCG 0001 B

FILED DATE: 5/6/2021 11:55 AM 2021L000284

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

○ Atty. No.: _____
● Pro Se 99500

Name: Abdul Mohammed
Atty. for (if applicable): _____

Address: 258 East Bailey Rd,Apt C
City: Naperville
State: IL  Zip: 60565
Telephone: 630-854-5345
Primary Email: aamohammed@hotmail.com

Witness date _5/6/2021 11:55 AM IRIS Y. MARTINEZ_

Iris Y. Martinez, Clerk of Court

☐ Service by Certified Mail: _____
☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 2 of 3

**GET YOUR COURT DATE BY CALLING IN OR BY EMAIL**

FILED DATE: 5/6/2021 11:55 AM    2021L000284

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date.  Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION

**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION

**Court date EMAIL:**  CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION

**Court date EMAIL:**  CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION

**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE

**Court date EMAIL:**  DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION

**Court date EMAIL:**  LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION

**Court date EMAIL:**  ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

#### DISTRICT 2 - SKOKIE

**Court date EMAIL:**  D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

#### DISTRICT 3 - ROLLING MEADOWS

**Court date EMAIL:**  D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

#### DISTRICT 4 - MAYWOOD

**Court date EMAIL:**  D4CourtDate@cookcountycourt.com
Gen. Info:   (708) 865-6040

#### DISTRICT 5 - BRIDGEVIEW

**Court date EMAIL:**  D5CourtDate@cookcountycourt.com
Gen. Info:   (708) 974-6500

#### DISTRICT 6 - MARKHAM

**Court date EMAIL:**  D6CourtDate@cookcountycourt.com
Gen. Info:   (708) 232-4551

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

# EXHIBIT G

FILED DATE: 5/6/2021 11:55 AM    2021L000284

| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |

**Summons - Alias Summons**                    **(03/15/21) CCG 0001 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Abdul Mohammed

Plaintiff(s)

v.                                                      Case No.    2021-L-000284

Jenner & Block LLP et.al

Defendant(s)

Jennifer Schilling, 321 North Clark Street
Suite 1100, Chicago, IL 60654

Address of Defendant(s)

Please serve as follows (check one):    ○ Certified Mail    ● Sheriff Service    ○ Alias

### SUMMONS

To each Defendant: **Jennifer Schilling,321 North Clark Street Suite 1100, Chicago, IL 60654**

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:** **Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons** (03/15/21) CCG 0001 B

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference.
This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

○ Atty. No.: _____

● Pro Se 99500

Name: Abdul Mohammed _____

Atty. for (if applicable):

_____

Address: 258 East Bailey Rd,Apt C _____

City: Naperville _____

State: IL   Zip: 60565 _____

Telephone: 630-854-5345 _____

Primary Email: aamohammed@hotmail.com _____

Witness date ___5/6/2021 11:55 AM IRIS Y. MARTINEZ___

_____

Iris Y. Martinez, Clerk of Court

☐ Service by Certified Mail: _____

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 2 of 3

FILED DATE: 5/6/2021 11:55 AM   2021L000284

FILED DATE: 5/6/2021 11:55 AM  2021L000284

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date.  Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:**  CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:**  CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:**  DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:**  DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:**  LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:**  ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:**  D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:**  D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:**  D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:**  D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:**  D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

FILED DATE: 5/6/2021 11:55 AM   2021L000284

| | | |
|---|---|---|
| **2120 - Served** | **2121 - Served** | **2620 - Sec. of State** |
| **2220 - Not Served** | **2221 - Not Served** | **2621 - Alias Sec of State** |
| **2320 - Served By Mail** | **2321 - Served By Mail** | |
| **2420 - Served By Publication** | **2421 - Served By Publication** | |

**Summons - Alias Summons**                                        **(03/15/21) CCG 0001 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Abdul Mohammed
_____
Plaintiff(s)

v.

Jenner & Block LLP et.al
_____
Defendant(s)

Case No.   2021-L-000284

Jodi Boquist, 321 North Clark Street
Suite 1100, Chicago, IL 60654
_____
Address of Defendant(s)

Please serve as follows (check one):   ○ Certified Mail   ● Sheriff Service   ○ Alias

### SUMMONS

To each Defendant:   Jodi Boquist,321 North Clark Street Suite 1100, Chicago, IL 60654

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:  Your appearance date is NOT a court date.**  It is the deadline for filing your appearance/answer.  To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp.  After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons**                                    **(03/15/21) CCG 0001 B**

FILED DATE: 5/6/2021 11:55 AM    2021L000284

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

○ Atty. No.: _____          Witness date    5/6/2021 11:55 AM IRIS Y. MARTINEZ
◉ Pro Se 99500

Name: Abdul Mohammed _____          _____
Atty. for (if applicable):                          Iris Y. Martinez, Clerk of Court

_____          ☐ Service by Certified Mail: _____

Address: 258 East Bailey Rd,Apt C _____          ☐ Date of Service: _____
                                               (To be inserted by officer on copy left with employer or other person)
City: Naperville _____

State: IL ___  Zip: 60565 _____

Telephone: 630-854-5345 _____

Primary Email: aamohammed@hotmail.com _____

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 2 of 3

**GET YOUR COURT DATE BY CALLING IN OR BY EMAIL**

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:**  CivCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:**  CntyCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:**  DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:**  DVCourtDate@cookcountycourt.com
Gen. Info:  (312) 325-9500

### LAW DIVISION
**Court date EMAIL:**  LawCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:**  ProbCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:**  D2CourtDate@cookcountycourt.com
Gen. Info:  (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:**  D3CourtDate@cookcountycourt.com
Gen. Info:  (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:**  D4CourtDate@cookcountycourt.com
Gen. Info:  (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:**  D5CourtDate@cookcountycourt.com
Gen. Info:  (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:**  D6CourtDate@cookcountycourt.com
Gen. Info:  (708) 232-4551

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 5/6/2021 11:55 AM   2021L000284

FILED DATE: 5/6/2021 11:55 AM   2021L000284

| | | |
|---|---|---|
| **2120 - Served** | **2121 - Served** | **2620 - Sec. of State** |
| **2220 - Not Served** | **2221 - Not Served** | **2621 - Alias Sec of State** |
| **2320 - Served By Mail** | **2321 - Served By Mail** | |
| **2420 - Served By Publication** | **2421 - Served By Publication** | |

**Summons - Alias Summons**                    **(03/15/21) CCG 0001 A**

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Abdul Mohammed

Plaintiff(s)

v.

Jenner & Block LLP et.al

Defendant(s)

Case No. 2021-L-000284

Littler Mendelson P.C., 321 North Clark Street
Suite 1100, Chicago, IL 60654

Address of Defendant(s)

Please serve as follows (check one): ○ Certified Mail   ● Sheriff Service   ○ Alias

### SUMMONS

To each Defendant: **Littler Mendelson P.C., 321 North Clark Street, Suite 1100, Chicago, IL 60654**

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:** **Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons**            **(03/15/21) CCG 0001 B**

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

○ Atty. No.: _____

◉ Pro Se 99500

Name: Abdul Mohammed

Atty. for (if applicable): _____

Address: 258 East Bailey Rd,Apt C

City: Naperville

State: IL    Zip: 60565

Telephone: 630-854-5345

Primary Email: aamohammed@hotmail.com

Witness date    5/6/2021 11:55 AM IRIS Y. MARTINEZ

Iris Y. Martinez, Clerk of Court

☐ Service by Certified Mail: _____

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 2 of 3

FILED DATE: 5/6/2021 11:55 AM   2021L000284

### GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

FILED DATE: 5/6/2021 11:55 AM    2021L000284

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:**  CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:**  CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
                    OR
              ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:**  DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:**  LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:**  ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:**  D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:**  D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:**  D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:**  D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:**  D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED
1/11/2021 12:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
11772324

ABDUL MOHAMMED,

PLAINTIFF,

vs.

JENNER & BLOCK LLP, UBER TECHNOLOGIES INC, RASIER LLC, LITTLER MENDELSON P.C., ROMANUCCI AND BLANDIN LLC, DARA KHOSROWSHAHI, TRAVIS KALANICK, RYAN GRAVES, NICK GICINTO, CRAIG CLARK, MAT HENLEY, ANTONIO ROMANUCCI, JENNIFER SCHILLING, JODI BOQUIST, REID SCHAR, MEGAN POETZEL AND DANIEL BOBIER INDIVIDUALLY AND AS AGENTS OR SERVANTS OR VOLUNTEERS OR ASSOCIATES OR CONTRACTORS OR EMPLOYEES OF UBER TECHNOLOGIES INC, RASIER LLC, LITTLER MENDELSON P.C, ROMANUCCI AND BLANDIN LLC AND JENNER & BLOCK LLP, DEFENDANTS

2021L000284

COMPLAINT WITH JURY DEMAND

## COMPLAINT AT LAW
### PARTIES, JURISDICTION, AND VENUE

1. The Plaintiff is a protected person within the meaning of the Americans with Disabilities Act, the Rehabilitation Act of 1973, Section 504, the Illinois Adult Protective Services Act, and the Federal Traumatic Brain Injury Reauthorization Act of 2014.

2. The Defendants are located in the jurisdiction of this court and they are conducting business in the jurisdiction of this court and further one or more actions alleged in this complaint occurred in the jurisdiction of this court. Hence this court has jurisdiction over this matter and hence venue is proper.

### FACTUAL BACKGROUND

3. Plaintiff filed a complaint against Defendants Uber Technologies Inc (hereinafter Uber), Rasier LLC (hereinafter Rasier), Travis Kalanick (hereinafter Kalanick), and Ryan Graves (hereinafter Graves) in District Court of the United States for Northern District of Illinois, Eastern Division (hereinafter District Court) on February 24, 2016 and that case remains pending in District Court. See *Mohammed v Uber Technologies et.al*, Case # 16-cv-2537, N.D.Ill (hereinafter *Mohammed I*).

FILED DATE: 1/11/2021 12:00 AM   2021L000284

4. There is a dispute regarding an alleged Arbitration Agreement which the Defendants allege in *Mohammed I* that the Plaintiff entered with the Defendants but anyhow the alleged Arbitration Agreement in the pertinent part states, "This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce." The instant complaint has nothing to do with a transaction involving interstate commerce and the instant complaint only deals with intentional crimes, intentional torts, and various other intentional violations committed by the Defendants against the Plaintiff, hence the instant complaint is not covered by the disputed alleged Arbitration Agreement.

5. Further, there is not even an alleged Arbitration Agreement against Defendants Littler Mendelson P.C. (hereinafter Littler), Jenner & Block LLP (hereinafter J & B), Romanucci and Blandin LLC (hereinafter R & B), Antonio Romanucci (hereinafter Romanucci), Jennifer Schilling (hereinafter Schilling), Jodi Boquist (hereinafter Boquist), Reid Schar (hereinafter Schar), Megan Poetzel (hereinafter Poetzel) and Daniel Bobier (hereinafter Bobier).

6. The actions alleged in this complaint are either stand-alone new allegations that occurred after the filing of *Mohammed I* and/or actions which were committed by the Defendants in retaliation against the Plaintiff for *Mohammed I*.

7. On November 10, 2016, the Plaintiff had an appointment with a law firm named Romanucci & Blandin LLC located at 321 North Clark Street, Suite 900, Chicago, Illinois 60654. The Plaintiff was waiting in the conference room to see Romanucci. A Security Officer of the building along with Romanucci entered the conference room and the Security Officer informed the Plaintiff that they have a problem with him and asked him to come out of the conference room. Then the Security Officer took the Plaintiff toward the elevator and shoved him into the elevator and brought him down to the Ground Floor and pushed the Plaintiff towards the exit of the building and informed him that he has an order from Defendant Littler Mendelson PC to remove him from the building. Littler's office is located at 321 North Clark Street, Suite 1100, Chicago, Illinois 60654. The Security Officer also informed the Plaintiff that if he again sets foot in the building, he will not go back home on his feet. Littler has added the Plaintiff's information to the Security System and when the Security System scans his ID, his name comes up, that he should not be allowed in the building. Plaintiff called Romanucci and asked him about this matter and he was informed that Littler is not allowing the Plaintiff to enter the building so Romanucci is not able to represent the Plaintiff. This is retaliation against the Plaintiff as naked as it gets for filing of *Mohammed I*. The masterminds of this retaliation against the Plaintiff are the Defendants other than Dara Khosrowshahi (hereinafter Khosrowshahi), J & B, Schar, Poetzel, and Bobier.

8. Before the Security Officer and Romanucci entered the conference room to remove the Plaintiff from the building, the Plaintiff heard that Security Officer saying to Romanucci, "Littler and Mendelson informed him that he is a criminal and he be removed from the building immediately".

9. Plaintiff is alleging that Uber was following the Plaintiff's location through its Uber Rider and Driver App which was installed on the Plaintiff's phone as described below and when Uber found out through the Uber Rider and Driver App which was installed on the Plaintiff's phone that the Plaintiff is inside the building located at 321 North

FILED DATE: 1/11/2021 12:00 AM    2021L000284

Clark Street, Chicago, Illinois 60654, informed Littler, Schilling and Boquist that the Plaintiff is inside the building located at 321 North Clark Street, Chicago, Illinois 60654.

10. The actions as alleged in this complaint were committed by the Defendants with prejudice towards Plaintiff's Race, Religion, and Disabilities and in particular with prejudice towards Plaintiff's National Origin and Ancestry which is described in *Mohammed I*. Defendants committed actions as described in *Mohammed I* and the instant complaint with a perceived belief that the Plaintiff is not a United States Citizen, he is an immigrant and/or undocumented immigrant and their another perceived belief that people who are not United States Citizens, immigrants and/or undocumented immigrants will generally not take any legal action if intentional crimes are committed against them, if intentional torts or violations are committed against them. Undocumented immigrants generally do not report to the law enforcement agencies or take any kind of legal action if crimes, intentional torts, or violations are committed against them due to their fear of being removed from the United States due to their undocumented status.

11. **Uber's spying of its Drivers and Lyft Drivers to bring Drivers to Uber's Platform and effectively under their control;**

Further Uber spied on its drivers including the Plaintiff and Lyft drivers by intercepting, accessing, monitoring and/or transmitting electronic communications and whereabouts of its drivers including the Plaintiff and Lyft drivers to lure Lyft drivers and drivers who worked both for Uber and Lyft, to exclusively drive for Uber, all in violation of Federal Wiretap Act as amended by the Electronic Communications Privacy Act (the "ECPA"), the Federal Stored Communication Act (the "SCA"), and common law invasion of privacy. See the Lawsuit against Uber in United States District Court Northern District of California, San Francisco Division, Case No.: 3:17-CV-02264, as Exhibit-H. Uber's violations as described in Exhibit-H were committed to destroy its only remaining competitor, Lyft, and to take away the only remaining option other than Uber, for the drivers. When Uber spied on its drivers including this Plaintiff, that is not only a crime but such a crime was committed to control the drivers.

12. **Waymo LLC v. Uber Technologies, Inc. (3:17-CV-00939) (N.D.Cal);**

Further during the pendency of the *Waymo Case,* Richard Jacobs, and Uber's former Manager of Global Intelligence informed his lawyer how Uber stole trade secrets from Waymo, spied on drivers and other individuals and other companies, and committed various crimes with an intent to cause harm to other individuals, companies and to bring drivers of other Ride-Sharing Companies to come and drive for Uber. Please see the letter from Jacobs' lawyer to Uber as Exhibit-I for a detailed analysis of Uber's criminal activities to destroy other Ride-Sharing Companies and to bring all the drivers in their control. Uber settled with Jacobs for $4.5 Million + a Job at Uber and Uber also paid $3 Million to Jacobs' lawyer. Uber also settled with Waymo for $245 Million. Uber's lawyer, Angela Padilla, said in court, the allegations in the letter had seemed "quite fantastical" to her. Jacobs testified in the *Waymo* case, there was an intelligence operation inside Uber to research competitors and gather data about them, and use technology to avoid a paper trail. In court, Padilla said Uber viewed the Jacobs' letter as a tactic by a disgruntled former employee to secure money from the company. Padilla said, "We felt that Jacobs was trying to extort the company." Uber eventually settled the matter by paying Jacobs $4.5 million, including a year-long consulting contract, and a further

FILED DATE: 1/11/2021 12:00 AM    2021L000284

$3 million to his lawyer. Judge Alsup said to Padilla, "That is a lot of money". "And people don't pay that kind of money for BS. And you certainly don't hire them as consultants if you think everything they've got to contribute is BS." As per Exhibit-I, Uber fraudulently impersonates riders and drivers on competitors' platforms, hacks into competitors' networks, and conducts unlawful wiretapping (each tactic discussed in additional detail in Exhibit-I). These tactics are used to obtain trade secrets about:

   a) the function of competitors' Apps;

   b) vulnerabilities in the competitors' App, including performance and function;

   c) vulnerabilities in competitors' App security;

   d) supply data, including unique driver information;

   e) pricing structures and incentives.

As per Exhibit-I, Uber worked to unlawfully obtain trade secrets from its competitors and 1) remotely accessed confidential corporate communications and data of its competitors, 2) impersonated riders and drivers including the Plaintiff on competitors' platform to derive key functions of rider and driver apps, 3) stole supply data by identifying possible drivers to boost Uber's market position, and 4) acquired codebase which allowed Uber to identify code used by its competitors' to understand in greater detail how their app functioned. By credibly impersonating both riders and drivers including the Plaintiff, Uber could request thousands of rides in a given geographic area to study the responsiveness and capability of the app, price quotes, and disposition of available drivers. Uber further impersonated prospective customers to ascertain the identity of drivers through their names including the Plaintiff, license plate numbers, and make/model of their vehicles. Uber then used this information to recruit drivers from their competitors' to Uber's platform. Uber also obtained key technical details about how its competitors would troubleshoot issues in comparison to Uber, and then used that data to develop contingencies to slow or impede competitors' business operations and also caused injury to the drivers including the Plaintiff to bring them to Uber's platform and effectively under their control. Uber employed tactics to obtain trade secrets, with a focus on stealing key supply data to boost Uber's pool of drivers, the function of the competitors' app, and its vulnerabilities, and then used that data to develop an aggressive "counterintelligence" campaign to slow competitors' efforts. Uber used special SIM cards to collect intelligence on competitors' trade secrets and to obtain private and protected information about the drivers including the Plaintiff. Specifically, the SIM cards were used to fraudulently impersonate customers on competitors' rider and driver applications. By credibly impersonating riders and drivers including the Plaintiff, Uber could:(i) develop processes to conduct thousands of data calls to reverse engineer products; (ii) identify and recruit supply (i.e. partner drivers); (iii) and derive key competitive business metrics to understand subsidies, available supply, processes for managing surge, and competitive market position. For instance, Uber would be able to study key technical details of how competitors' had engineered solutions to common problems ride-sharing providers have at scale, and in the context of dense population centers. Uber would then use that data to identify possible improvements, gain competitive advantages, or exploit weaknesses of competitors' platforms. Notably, Uber identified vulnerability in their competitors' system and collected

FILED DATE: 1/11/2021 12:00 AM   2021L000284

comprehensive supply data, including the license, name, and contact information for every single driver including the Plaintiff. Further Uber Executives conspired and acted in furtherance of the conspiracy to hack the database of its competitors and collected all driver information including the Plaintiff, to have a perfect set of possible drivers for Uber's platform which boosted supply when Uber targeted these operators and converted them to drivers for Uber. As discussed above, Uber used driver and customer impersonation to steal competitor trade secrets. This conduct not only violated the trade secrets law discussed above but also wire fraud law at 18 U.S.C § 1343, and California Penal Code § 528.5. Under this Section, it is unlawful to knowingly and without consent, credibly impersonate another actual person through the Internet or email, to harm, intimidate, threaten, or defraud someone. This conduct further exposes a company to civil liability under Section 528.5(e). This impersonation was intended to fraudulently steal business and bring drivers under its control and it was an "unlawful, unfair, or fraudulent business act and practice. California Bus & Prof Code § 1720. It is also in violation of the CFAA and related laws, discussed in Exhibit-I. Along with the theft of trade secrets, Jacobs observed Uber personnel, through their LAT operatives and their vendors; knowingly impersonate actual people over the Internet to keep tabs on competitors and opposition groups by accessing closed social media groups. This impersonation had the purpose of fraudulently stealing business and gaining a competitive advantage. During the summer of 2016, Jacobs learned that Uber's intelligence-gathering teams in other locations impersonated partner-drivers including the Plaintiff or taxi operators to gain access to private WhatsApp group messaging channels. Jacobs further investigated this conduct by searching Uber's internal network, TeamDot. Further Uber created a PowerPoint presentation which included a section on "intel gathering," a slide on driver chat group infiltration, and a link to the specific procedures for infiltrating driver-partner chat groups (including the impersonation of actual driver-partners including the Plaintiff) to collect information on growing discontent and possible opposition activities. Upon receipt, Jacobs disclosed the playbook to Craig Clark, who replied, "Do I want to know what it is?" Jacobs voiced concern as to its legality, noting that it encouraged "intel gathering" and described how to penetrate WhatsApp groups. Clark only replied that "this is happening everywhere and I'm not ready to deal with it." Clark did not investigate the presumed criminal violation. In late January and early February 2017, as part of SSG's virtual operations capability (VOC), Uber's agents posed as sympathetic protestors interested in participating in actions against Uber. By doing this, illegally gained access to closed Facebook groups and chatted with protesting drivers in an attempt to understand their nonpublic plans and intentions. All the actions described in Exhibit-I demonstrate how Uber spied on drivers including the Plaintiff and committed crimes left, right, and center with no fear whatsoever. An unredacted version of Exhibit-I can reveal further about Uber's activities.

13. **Sarbanes-Oxley Violations, Evidence Spoliation, and Other Discovery Abuses by Uber;**

The Sarbanes-Oxley Act of 2002 states that:

"whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case

FILED DATE: 1/11/2021 12:00 AM    2021L000284

filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both".

Sarbanes-Oxley Act of 2002, Pub. L. 107-204, § 802, 116 Stat. 745, 800 (2002). Codified at 18 U.S.C. § 1519, this provision applies to private companies and has a broad reach that is not limited to commenced litigation. Section 1519 "covers conduct intended to impede any federal investigation or proceeding *including one not even on the verge of commencement." Yates v. United States,* - U.S. --, 135 S.Ct. 1074, 1087 (2015) (emphasis added). Similarly, the California Rule of Professional Conduct 5-2320 prohibits members of the bar from suppressing evidence that the member or the member's client has a legal obligation to produce. Uber has knowingly violated 18 U.S.C § 1519 and continues to do so. Craig Clark, Uber's Legal Director for ThreatOps, and Mat Henley, Uber's Director of Threat Operations (ThreatOps), led Uber's efforts to evade current and future discovery requests, court orders, and government investigations in violation of state and federal law as well as ethical rules governing the legal profession. Clark devised training and provided advice intended to impede, obstruct, or influence the investigation of several ongoing lawsuits against Uber and in relation to or contemplation of further matters within the jurisdiction of the United States. Early in his tenure, Jacobs advocated for a secure and encrypted centralized database to ensure confidentiality and recordkeeping to provide access to intelligence for ThreatOps personnel. He presented a draft proposal to managers Henley and Clark. However, discussions broke down immediately because they objected to preserving any intelligence that would make preservation and legal discovery a simple process for future litigants. Clark emphasized that this was "exactly what we don't want to do ... create [a paper trail] that could later be discoverable." Clark noted the errors of past collections where Uber was forced to turn over documents. He alluded to the lessons learned from the "Ergo Investigation" and noted that encryption alone was not enough to avoid discovery. Nick Gicinto added his own objections, stating that while his team would be willing to share some details on collections, including sources and methods of collections on the ground in foreign countries, they were not willing to preserve the raw intelligence on Uber's network. Jacobs then became aware that Uber, primarily through Clark and Henley, had implemented a sophisticated strategy to destroy, conceal, cover-up, and falsify records or documents with the intent to impede or obstruct government investigations as well as discovery obligations in pending and future litigation. Besides violating 18 U.S.C. § 1519, this conduct constitutes an ethical violation.

14. **Destruction and Concealment of Records Using Ephemeral Communications;**

Clark and Henley helped implement and directed the almost-exclusive use of ephemeral and encrypted communications software, including WickrMe (and later Wickr SCIF), to communicate sensitive information within ThreatOps. Wickr Inc. is a San Francisco-based company that describes its product as a "communications platform designed to empower greater control over data security ... [using] multi-layers of peer-to-peer encryption". Henley and Clark implemented this program of ephemeral and encrypted communications for the express purpose of destroying evidence of illegal or unethical practices to avoid discovery in actual or potential litigation. The Wickr application uses robust encryption which prevents the information from being viewed by anyone except the intended recipient, but more importantly, programs messages to self-destruct in a matter of seconds to no longer

than six days. Consequently, Uber employees cannot be compelled to produce records of their chat conversations because no record is retained. Such a policy is inherently violative of the Sarbanes-Oxley Act, 18 U.S.C. Section 1519, and similar laws. Further, Clark and Henley directly instructed Jacobs to conceal documents in violation of Sarbanes-Oxley, by attempting to "shroud" them with, attorney-client privilege or work product protections. Clark taught the ThreatOps team that if they marked communications as "draft," asked for a legal opinion at the beginning of an email, and simply wrote "attorney-client privilege" on documents, they would be immune from discovery. What Clark failed to teach the team, however, is that there is no attorney-client privilege, no "seal of secrecy," if the communications were made for the purpose of enabling the commission of a crime or fraud. *U.S.v. Zolin* 491 U.S. 554, 563(1989); *see also* Cal. Evid. Code § 956. For example, Clark enabled illegal activities and gave legal advice designed to impede investigations by directing the hacking of the competitors' systems and platforms, and by directing the destruction of evidence related to eavesdropping against opposition groups of drivers as discussed above. Given the ongoing criminal and fraudulent activities within Uber, the crime-fraud exception to privilege applies, and all of Clark's communications in furtherance of these schemes would be fair game in discovery. His attempt to pre-emptively conceal them under attorney-client privilege is illegal, unethical, and improper.

15. **Concealment and Destruction of Records Using Non-attributable Hardware;**

Clark, Gicinto, and Henley acquired "non-attributable" hardware and software with which SSG and select members of ThreatOps planned and executed intelligence collection operations. Specifically, Henley and members of the MA team use computers not directly purchased by Uber that operate only on MiFi devices-so that the internet traffic would not appear to originate from an Uber network- virtual public networks (VPNs), and a distributed and non-attributable architecture of contracted Amazon Web Services (AWS) server space to conduct competitive intelligence collections against other ride-sharing companies. Likewise, Gicinto and the SSG team had similar non-attributable devices purchased through vendors and sub-vendors where they conducted virtual operations impersonating protesting drivers, Uber partner-drivers including the Plaintiff, and taxi operators. SSG used the devices to store raw information collected by their operatives from politicians, regulators, law enforcement, taxi organizations, and labor unions. By storing this data on non-attributable devices, Uber believed it would avoid detection and never be subject to legal discovery. This is because a standard preservation of evidence order typically focused on Uber work laptops, Uber networks, and Uber mobile devices. Non-attributable devices were deemed as not reasonably subsumed by any such preservation order and the team could, and did, "legally" (not so) dispose of any evidence or documentation held on these devices in the intervening period before knowledge of the devices' existence could be uncovered. Likewise, members of the ThreatOps team, notably Henley, were known to use personal computers to conduct substantial Uber-related work for the purpose of evading discovery.

16. **Concealment, Cover-up, and Falsification of Records through the Abuse of Attorney-Client Privilege Designations:**

Clark developed training on how to use attorney-client privilege to further conceal activities described in any non-ephemeral communication channel. Specifically, he developed a training using innocuous legal examples and the "lawyer dog" meme to produce a slide deck that taught the ThreatOps team how to utilize attorney-client privilege to impede discovery. While the presentation slides themselves did not depict or explain any unethical or illegal practices involving attorney-client privilege, Jacobs observed Clark's presentation first-hand. During the presentation, Clark verbally coached the participants on how to use attorney-client privilege to ensure sensitive intelligence collection activities would not surface in litigation. Clark also answered specific questions from employees on the minimum standards required to claim privilege for the purpose of shielding information. This "legal training" was particularly noteworthy because it surprisingly bears no Uber-branding; it does not even mention Uber, which is startling in a company with strong branding and adherence to process. Clark said that Uber needed to "shroud these work products in attorney-client privilege." Accordingly, Clark instructed Jacobs himself and others to address all emails on sensitive intelligence collection to him and ensure the emails were marked as "ATTORNEY- CLIENT PRIVILEGED AND CONFIDENTIAL," to mark any work product as "DRAFT" regardless of its actual status, and, on every communication, to specifically ask a question or request legal advice on some issue-even if no legal advice was needed or warranted. Likewise, he advised that Jacobs and others that they should communicate almost exclusively via phone, video teleconference ("Zoom"), or via the Wickr app, in that order of preference based on the record and audit trail each communications medium creates. Clark explained that the intent was to prevent disclosure of such communications if Jacobs was ever put on legal hold or his communications were ever subject to a preservation of evidence order. In sum, Uber has directly violated the document destruction, concealment, cover-up, and falsifications provisions of Sarbanes-Oxley in an effort to obstruct or impede active and future government investigations through the (1) acquisition and use of ephemeral communications programs; (2) the acquisition and use of non-attributable hardware and software; and (3) the wholesale abuse of attorney-client privilege designations and all of Uber's violations as described in this Brief were committed with a sole aim of destroying its competitors', so that the drivers including the Plaintiff have no other option than driving for Uber and to control the drivers including the Plaintiff.

**COUNT-1**
**ASSAULT AND BATTERY (COMMON LAW TORT)**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

17. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

18. Defendants listed under this count, without lawful authority through their Security Officer, manhandled the Plaintiff, pushed and shoved the Plaintiff into the elevator, brought the Plaintiff down to the Ground Floor by holding the Plaintiff by his belt from the back, and by further threatening the Plaintiff that he will not back on his feet if he comes back to the building located at 321 North Clark Street, Chicago, Illinois 60654 and in turn, Defendants listed under this count knowingly engaged in conduct which constitutes assault and battery under Illinois Law and also placed Plaintiff in reasonable apprehension of receiving further battery as described above,

FILED DATE: 1/11/2021 12:00 AM   2021L000284

8

FILED DATE: 1/11/2021 12:00 AM   2021L000284

which further constitutes assault under Illinois Law and such an assault and battery was committed upon the Plaintiff by the Defendants with prejudice towards his Religion, Race, Ancestry, National Origin and Disabilities.

19. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

20. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-2
### AGGRAVATED ASSAULT AND AGGRAVATED BATTERY (COMMON LAW TORT)
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

21. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

22. Defendants listed under this count committed an aggravated assault upon the Plaintiff as described above because assault against a disabled person constitutes aggravated assault under Illinois Law.

23. Defendants listed under this count committed an aggravated assault upon the Plaintiff on a public way, public property, a public place of accommodation, and Defendants listed under this count committed an assault upon the Plaintiff with full knowledge that a Plaintiff is a person with Disabilities which is aggravated assault.

24. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

25. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-3
### STALKING AND AGGRAVATED STALKING
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

26. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

27. Defendants through their actions as described in paragraphs 11 to 16 have committed stalking against the Plaintiff under Illinois Law and because such stalking was against a disabled person (the Plaintiff), the stalking of the Plaintiff was aggravated stalking under Illinois Law.

28. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

29. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-4
### VIOLATION OF ILLINOIS HATE CRIMES ACT OF ILLINOIS
### (DEFENDANTS OTHER THAN JENNER & BLOCK LLP, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)

30. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

FILED DATE: 1/11/2021 12:00 AM    2021L000284

31. Defendants' actions as described above and in particular as described in Count-1, Count-2, and Count-3 are offenses of assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct under the Illinois Law with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities.

32. Assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking and disorderly conduct are predicates of Illinois Hate Crimes Act and when Defendants committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct with prejudice towards Plaintiff's Race, Religion, Ancestry, National Origin and Disabilities, they violated Illinois Hate Crimes Act.

33. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

34. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-5**
**VIOLATION OF COMPUTER FRAUD AND ABUSE ACT**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

35. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

36. Defendants with their actions as described in paragraphs 11 to 16 and as described in Count-1, Count-2 and Count-3 has committed assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct and in turn has caused a threat to public health and physical and mental injuries to the Plaintiff all in violation of Computer Fraud and Abuse Act.

37. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

38. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-6**
**VIOLATION OF STORED COMMUNICATIONS ACT**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

39. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

40. Defendants with their actions as described in paragraphs 11 to 16 violated the Stored Communications Act when they obtained electronic communication while such electronic communications were stored in an iPhone belonging to the Plaintiff and also obtained electronic communication while such electronic communications were stored on the server belonging to the Plaintiff's Internet Service Provider.

41. The violations of the Stored Communications Act by the Defendants were willful, wanton, and reckless.

42. Under the Stored Communications Act, "Proof of actual damages is not required before an award either for punitive damages and attorneys' fees is entered".

FILED DATE: 1/11/2021 12:00 AM    2021L000284

43. The Fourth Circuit held that "[i]f the violation [of the SCA] is willful or intentional, the court can assess punitive damages" Id. The Fourth Circuit further held that 18 U.S.C Section 2707(b) (3) permits an award of attorneys' fees absent any proof of actual damages.

44. Under the Stored Communication Act the Plaintiff is entered to punitive damages and attorneys' fees.

45. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

46. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-7**
**INTRUSION UPON SECLUSION AND PRIVACY OF THE PLAINTIFF**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

47. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

48. Intrusion upon Seclusion and Privacy of others was recognized by the Supreme Court of Illinois in *Lawlor v North American Corporation of Illinois*, 2012 IL 112530.

49. Defendants through their actions as described in paragraphs 11 to 16 have violated Intrusion upon Seclusion and Privacy of the Plaintiff.

50. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

51. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-8**
**DEFAMATION PER SE**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

52. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

53. Defendants committed to Defamation Per Se when they informed several individuals including but not limited to the Security Officer and Romanucci that the Plaintiff is a criminal.

54. Plaintiff has never committed any crime and he was neither arrested nor convicted for any crime in his entire life.

55. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

56. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-9**
**VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT**
**(DEFENDANTS OTHER THAN JENNER & BLOCK LLP, ROMANUCCI & BLANDIN LLC, ROMANUCCI, KHOSROWSHAHI, SCHAR, POETZEL AND BOBIER)**

11

57. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

58. Defendants violated the Electronic Communications Privacy Act (hereinafter ECPA) as described above in paragraphs 11 to 16.

59. Defendants' intent to violate ECPA, Defendants' intended conduct which violated ECPA, what Defendants sought to intercept which violated ECPA, the nature of targeted communications which violated ECPA, the tools used to (or intended to be used) to intercept the protected content which violated ECPA; is described above in detail in paragraphs 11 to 16.

60. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

61. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-10**
**VIOLATION OF RICO, 18 U.S.C. § 1961, et seq**
**(DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)**

62. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

63. Individual Defendants listed under this count individually and/or as agents and/or servants and/or employees of Uber and/or Rasier and/or Littler and/or J & B (hereinafter "RICO Defendants,") are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

64. There is the association-in-fact of all RICO Defendants for the purpose of violating Plaintiff's rights, committing crimes and torts against the Plaintiff and for intentional infliction of physical and mental injuries in violation of his basic rights for RICO Defendants' own enrichment and profit as an "enterprise" within the definition of RICO (the "Association-In-Fact Enterprise"). The Association-In-Fact Enterprise was created, controlled, and conducted by all RICO Defendants for the purposes as described in this complaint. All RICO Defendants are Defendants for purposes of the Association-in-Fact Enterprise. All RICO Defendants have exerted ongoing and continuous control over the Association-In-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-In-Fact Enterprise as described in great detail in this complaint.

65. Defendants have conducted the affairs of the Association-In-Fact Enterprise, through a pattern of racketeering activity in interstate commerce that includes predicate acts indictable under 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant) and threat of kidnapping and bodily injury of the Plaintiff by the Security Officer on November 18, 2016 which is an indictable offense under the Illinois Law, as described under this count and as described in this complaint between the RICO Defendants and through the following actions, among others:

   a) RICO Defendants maliciously prosecuted the Plaintiff at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division and presented false and fabricated evidence that the Plaintiff gave fake rides to himself by using several fake identities, by using

FILED DATE: 1/11/2021 12:00 AM 2021L000284

FILED DATE: 1/11/2021 12:00 AM   2021L000284

several credit cards in the names of several fake individuals and by using several different SIM cards when actually Defendants gave fake rides to the Plaintiff by impersonating the Plaintiff as described in detail in paragraphs 11 to 16;

b) RICO Defendants further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that by listing Stanford University as his alma mater on Facebook, Plaintiff lied and committed an offense when actually the Plaintiff can list Stanford University as his alma mater as a matter of law and he can also possess a novelty Degree and/or Diploma from the Stanford University as a matter of law;

c) RICO Defendant further committed malicious prosecution at the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division by arguing and testifying that the Plaintiff deceived Uber by asking for a $500.00 joining bonus when he was still driving for Lyft when there was no condition for the Plaintiff to quit driving for Lyft and the Driver Support Representative at Uber's Chicago Office informed the Plaintiff that the only requirement for $500.00 joining bonus was that the Plaintiff needs to be a driver of Lyft and there was no requirement for the Plaintiff to quit driving Lyft.

66. Judge Lee who presided over the limited trial on Arbitration Agreement in United States District Court for the Northern District of Illinois, Eastern Division ruled that Plaintiff's fake rides, the request for $500.00 joining bonus, and his listing of Stanford University as his alma mater affected his credibility and ultimately Plaintiff's credibility was the major factor in Judge Lee's ruling that the Plaintiff entered into Arbitration Agreement with Uber.

67. RICO Defendants malicious prosecution as described above constitutes obstruction of justice, 18 U.S.C. § 1503(a), which is a predicate of Civil RICO.

68. Further RICO Defendants' obstruction of justice was accomplished through 18 U.S.C. § 1342 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), which are again predicates of Civil RICO.

69. Further RICO Defendants' obstruction of justice was in retaliation against the Plaintiff for his Federal Lawsuit (*Mohammed I*) in violation of 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. §1513 (relating to retaliation against a witness, victim, or an informant), which are again predicates of Civil RICO.

70. Further all actions of Defendants as described in paragraphs 1 to 16 constitute obstruction of justice, 18 U.S.C. § 1503(a), in relation to *Mohammed I*.

71. Each of the RICO Defendants' violations of 18 U.S.C. § 1503(a), 18 U.S.C. § 1342, 18 U.S.C. § 1343, 18 U.S.C. § 1512 and 18 U.S.C. § 1513 constitutes "racketeering activity" with the meaning of 18 U.S.C. § 1961(1). Collectively these violations are a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

72. RICO Defendants engaged in a pattern of racketeering activity intending to cause harm to the Plaintiff and to defraud the Plaintiff and to deny the Plaintiff of his property (to bind the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and to deny the Plaintiff his right to proceed with his claims in a court

FILED DATE: 1/11/2021 12:00 AM    2021L000284

of law and bounded the Plaintiff into a fraudulent Arbitration Agreement which the Plaintiff never entered and denied the Plaintiff his right to proceed with his claims in a court of law).

73. RICO Defendants' criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting the same victim (the Plaintiff). Based upon the agreements entered into by the RICO Defendants, most of which are still in force, RICO Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of the Plaintiff.

74. RICO Defendants were an association of individuals, partnerships, and corporations joined in the purpose of conspiring to commit criminal activity as described above and as described in this complaint. The association employed a number of schemes in an attempt to cause harm to the Plaintiff including, but not limited to, causing acts as described under this count and as described in this complaint, causing intentional violations of the Plaintiff's rights, the commission of crimes and torts against the Plaintiff and intentional infliction of physical and mental injuries upon the Plaintiff.

75. RICO Defendants engaged in said association and actions during the entire relevant time period, in violation of 18 U.S.C. §1961.

76. By virtue of these violations of 18 U.S.C. § 1962(c), RICO Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the costs of this suit, including reasonable attorneys' fees. WHEREFORE, Plaintiffs demand judgment against RICO Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorneys' fees and such other relief and such other relief as this Honorable Court may deem appropriate.

## COUNT-11
## MALICIOUS PROSECUTION IN RELATION TO COUNT-11 (ILLINOIS STATE LAW)
## (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

77. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

78. Defendants' actions as described in Count-10 also constitute malicious prosecution under the Illinois State Law.

79. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

80. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## COUNT-12
## MALICIOUS PROSECUTION IN RELATION TO COUNT-11
## (DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)

81. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

82. Defendants further committed malicious prosecution under the Illinois State Law when they filed their Response to the Plaintiff's Motion to Vacate the Arbitration award in *Mohammed I* by arguing that the Motion to Vacate was in violation of the Executive Order of June 17, 2020, when the Executive Order only applies to cases filed after June

14

17, 2020 and by arguing that *Mohammed v. Anderson*, No. 18 C 8393, 2019 WL 3943669, at *1 (N.D. Ill. Aug. 21, 2019) was a frivolous action when in fact the court never ruled that *Mohammed v. Anderson*, was frivolous and when in fact *Mohammed v. Anderson* was dismissed under different grounds.

83. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental, physical, and economic injury to Plaintiff.

84. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-13**
**FRAUDULENT MISREPRESENTATION IN RELATION TO COUNT-10, COUNT-11 AND COUNT-12**
**(DEFENDANTS OTHER THAN ROMANUCCI & BLANDIN LLC AND ROMANUCCI)**

85. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

86. In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendants' intent that the statement induces the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 552 (Ill. App. Ct. 2013).

87. Defendants' actions as described in Count-10. Count-12 and Count-13 also constitute fraudulent misrepresentation under the Illinois State Law.

88. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

89. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-14**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(ALL DEFENDANTS)**

90. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

91. In a manner more fully set forth above, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause extreme intentional emotional distress to the Plaintiff or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff.

92. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

93. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

**COUNT-15**
**CIVIL CONSPIRACY**
**(ALL DEFENDANTS)**

94. Plaintiff incorporates by reference herein all preceding and succeeding paragraphs as if fully set forth herein.

FILED DATE: 1/11/2021 12:00 AM    2021L000284

15

FILED DATE: 1/11/2021 12:00 AM    2021L000284

95. In a manner more fully set forth above, Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves for the purpose of depriving Plaintiff of his rights and accomplish an unlawful purpose by unlawful means as described in this complaint.

96. In furtherance of this conspiracy or conspiracies, Defendants, acting in concert with other co-conspirators, committed the overt acts as set forth above and as described in this complaint.

97. Said conspiracy or conspiracies and overt acts continue from on or about November 10, 2016, through to the present date.

98. This conspiracy proximately caused the injuries to the Plaintiff as set forth above.

99. Defendants' actions as described under this count have caused extreme and irreparable harm to Plaintiff and have proximately caused mental and physical injury.

100. Defendants' actions as described under this count will proximately cause immediate and further irreparable harm to Plaintiff.

## DAMAGES AND ADDITIONAL RELIEF REQUESTED

101. Plaintiff has sustained damages which are ongoing and yet to be completely identified and quantified, that are the direct and proximate result of wrongful actions of Defendants and others known and unknown to the Plaintiff, acting in concert, and which are described herein. Such damages are ongoing, and include, but are not limited to significant damages, direct, indirect, collateral, consequential, and incidental, to Plaintiff's business and property and physical and mental injuries to the Plaintiff. Due to the actions of the Defendants against the Plaintiff which include but not limited to crimes, torts and violations as described in this complaint which caused extreme physical and mental injuries to the Plaintiff, the Plaintiff was declared legally disabled on October 21, 2019 retroactively as of January 21, 2017. Plaintiff, Abdul Mohammed, respectfully requests that this Court enter judgment in his favor against Defendants, awarding compensatory damages, costs, and attorney's fees along with punitive damages in an amount in excess of $1000, 000.00 against each of the Defendants named in the Counts other than Civil RICO Count, as well as any other relief this Court deems just and appropriate.

Dated-: 01/10/2021

Respectfully Submitted,
/s/Abdul Mohammed
Pro Se Plaintiff
258 East Bailey Rd, Apt C,
Naperville, IL 60565
Ph.: 630-854-5345
aamohammed@hotmail.com

16

# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ABDUL MOHAMMED,** | |
| Plaintiff, | |
| v. | Case No: 21-cv-3261 |
| **UBER TECHNOLOGIES, INC., et al.,** | Removed from the Circuit Court of Cook County, Illinois, Law Division, Case No. 2021L000284 |
| Defendants. | |

**CONSENT OF DEFENDANTS JENNER & BLOCK LLP, REID SCHAR, MEGAN
POETZEL AND DANIEL BOBIER TO REMOVAL**

Pursuant to 28 U.S.C. § 1446(b)(2)(A), Defendants Jenner & Block LLP, Reid Schar, Megan Poetzel and Daniel Bobier (the "Jenner Defendants"), by and through their undersigned counsel, hereby consent to Defendants Uber Technologies, Inc.'s, Raiser, LLC's, and Dara Khosrowshahi's removal of the action captioned *Abdul Mohammed v. Jenner & Block LLP, Uber Technologies Inc., Raiser LLC, Littler Mendelson P.C., Romanucci and Blandin LLC, Dara Khosrowshahi, Travis Kalanick, Ryan Graves, Nick Gicinto, Craig Clark, Mat Henley, Antonio Romanucci, Jennifer Schilling, Jodi [sic] Boquist, Reid Schar, Megan Poetzel, and Daniel Bobier Individually and as Agents or Servants or Volunteers or Associates or Contractors or Employees of Uber Technologies Inc., Raiser LLC, Littler Mendelson P.C., Romanucci and Blandin LLC and Jenner & Block LLP*, Case No. 2021L000284, filed in the Circuit Court of Cook County, Illinois, Law Division, to the United States District Court for the Northern District of Illinois, Eastern Division. In consenting to this removal, the Jenner Defendants do not waive any rights or defenses to which they are otherwise entitled, including but not limited to, those rights and defenses set forth in the Federal Rules of Civil Procedure.

Dated: June 17, 2021                   Respectfully submitted,

**JENNER & BLOCK LLP, REID SCHAR, MEGAN POETZEL AND DANIEL BOBIER**

By: */s/ Robert R. Stauffer*
                   One of their attorneys

Robert R. Stauffer
David Jimenez-Ekman
Katharine R. Ciliberti
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
(312) 222-9350
rstauffer@jenner.com
djimenez-ekman@jenner.com
kmclaughlin@jenner.com

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ABDUL MOHAMMED,**<br><br>Plaintiff,<br><br>v.<br><br>**UBER TECHNOLOGIES, INC., et al.,**<br><br>Defendants. | Case No:   21-cv-3261<br><br>Removed from the Circuit Court of Cook County, Illinois, Law Division, Case No. 2021L000284 |

### CONSENT OF DEFENDANTS ROMANUCCI & BLANDIN, LLC, AND ANTONIO ROMANUCCI TO REMOVAL

Pursuant to 28 U.S.C. § 1446(b)(2)(A), Defendants Romanucci & Blandin, LLC, and Antonio Romanucci (the "Romanucci Defendants"), by and through their undersigned counsel, hereby consent to Defendants Uber Technologies, Inc.'s and Raiser, LLC's removal of the action captioned *Abdul Mohammed v. Jenner & Block LLP, Uber Technologies Inc., Raiser LLC, Littler Mendelson P.C., Romanucci and Blandin LLC, Dara Khosrowshahi, Travis Kalanick, Ryan Graves, Nick Gicinto, Craig Clark, Mat Henley, Antonio Romanucci, Jennifer Schilling, Jodi [sic] Boquist, Reid Schar, Megan Poetzel, and Daniel Bobier Individually and as Agents or Servants or Volunteers or Associates or Contractors or Employees of Uber Technologies Inc., Raiser LLC, Littler Mendelson P.C., Romanucci and Blandin LLC and Jenner & Block LLP*, Case No. 2021L000284, filed in the Circuit Court of Cook County, Illinois, Law Division, to the United States District Court for the Northern District of Illinois, Eastern Division. In consenting to this removal, the Romanucci Defendants do not waive any rights or defenses to which they are otherwise entitled, including but not limited to, those rights and defenses set forth in the Federal Rules of Civil Procedure.

Dated: June 18, 2021                                        Respectfully submitted,

ROMANUCCI & BLANDIN, LLC, AND
ANTONIO ROMANUCCI

By: /s/
_____
One of their attorneys

Gina Arquilla DeBoni
Jason J. Friedl
Romanucci & Blandin, LLC
321 N. Clark St., Ste. 900
Chicago, Illinois 60654
Office: 312.458.1000
gdeboni@rblaw.net
jfriedl@rblaw.net

2

# EXHIBIT J

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ABDUL MOHAMMED,** | |
| Plaintiff, | |
| | Case No:  21-cv-3261 |
| v. | |
| | Removed from the Circuit Court of Cook |
| **UBER TECHNOLOGIES, INC., et al.,** | County, Illinois, Law Division, |
| Defendants. | Case No. 2021L000284 |

**CONSENT OF DEFENDANTS LITTLER MENDELSON, P.C., JODY BOQUIST, AND
JENNIFER SCHILLING TO REMOVAL**

Pursuant to 28 U.S.C. § 1446(b)(2)(A), Defendants Littler Mendelson, P.C., Jody[1]

Boquist, and Jennifer Schilling, by and through their undersigned counsel, LITTLER

MENDELSON, P.C., hereby consent to Defendants Uber Technologies, Inc. Raiser, LLC, and

Dara Khosrowshahi's  removal of the action captioned *Abdul Mohammed v. Jenner & Block LLP,*

*Uber Technologies Inc., Raiser LLC, Littler Mendelson P.C., Romanucci and Blandin LLC, Dara*

*Khosrowshahi, Travis Kalanick, Ryan Graves, Nick Gicinto, Craig Clark, Mat Henley, Antonio*

*Romanucci, Jennifer Schilling, Jodi [sic] Boquist, Reid Schar, Megan Poetzel, and Daniel Bobier*

*Individually and as Agents or Servants or Volunteers or Associates or Contractors or Employees*

*of Uber Technologies Inc., Raiser LLC, Littler Mendelson P.C., Romanucci and Blandin LLC and*

*Jenner & Block LLP*, Case No. 2021L000284, filed in the Circuit Court of Cook County, Illinois,

Law Division, to the United States District Court for the Northern District of Illinois, Eastern

Division. In consenting to this removal, Defendants Littler Mendelson, P.C., Jody Boquist, and

Jennifer Schilling do not waive any rights or defenses to which they are otherwise entitled,

including but not limited to, those rights and defenses set forth in the Federal Rules of Civil

---

[1] Defendant Jody Boquist's first name is misspelled as "Jodi" in the Complaint.

Procedure.

Dated:  June 17, 2021                          Respectfully submitted,

                                               **LITTLER MENDELSON, P.C., JODY**
                                               **BOQUIST, AND JENNIFER SCHILLING,**


                                               By: */s/ Kerri Feczko*
                                               _____
                                                       One of their Attorneys


Kerri Feczko, Illinois Bar No. 6320598
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, IL  60654
312.372.5520
kfeczko@littler.com

# EXHIBIT K

| | |
|---|---|
| **From:** | Gladstein, Andrew |
| **To:** | Feczko, Kerri |
| **Cc:** | Schilling, Jennifer |
| **Subject:** | Re: Mohammed v. Uber, Ryan Graves, et. al - Case No. 2021-L-000284 - Consent to Removal to Federal Court |
| **Date:** | Monday, June 14, 2021 6:50:30 PM |
| **Attachments:** | ATT00001.png |
| | ATT00002.png |

Thanks, Kerri.  I have confirmed with Ryan.  He has not been served.

**Andrew D. Gladstein**
Special Counsel
212.756.2449

Schulte Roth & Zabel LLP
www.srz.com

# EXHIBIT L

| | |
|---|---|
| **From:** | Brown, Walt |
| **To:** | Feczko, Kerri |
| **Cc:** | Schilling, Jennifer; mhaag@paulweiss.com |
| **Subject:** | RE: Mohammed v. Uber, Travis Kalanick, et. al - Case No. 2021-L-000284 - Consent to Removal to Federal Court |
| **Date:** | Friday, June 11, 2021 10:38:27 AM |
| **Attachments:** | ATT00001.png |
| | ATT00002.png |

Kerri - - It is our belief that Mr. Kalanick has never been served in this matter. For that reason, it seems ill advised (and unnecessary) to have him lodge a consent to removal. Please let us know if you would like to discuss further.

Thanks.

Walt

**Walter F. Brown** | Partner (Bio)
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
943 Steiner St. | San Francisco, CA 94117
628 432 5111 (Direct Phone) | 925 787 0867 (Cell)
202 204 7379 (Direct Fax)
wbrown@paulweiss.com | www.paulweiss.com

# EXHIBIT M

# Cook County
# Clerk of the Circuit Court
## Electronic Docket Search
### Chancery, Domestic/Child Support, Civil and Law Divisions

| Case Information Summary for Case Number |
|:---:|
| 2021-L-000284 |

Filing Date: 01/11/2021

Case Type: INTENTIONAL TORT

Division: Law Division

District: First Municipal

Ad Damnum: $15000000.00

Calendar: H

## Party Information

**Plaintiff(s)**
MOHAMMED ABDUL

**Attorney(s)**
PRO SE

**Defendant(s)**
JENNER & BLOCK LLP

**Defendant Date of Service**

**Attorney(s)**

## Case Activity

Activity Date: 01/11/2021

Participant: MOHAMMED ABDUL

INTENTIONAL TORT COMPLAINT FILED (JURY DEMAND)

Court Fee: 600.50
Ad Damnum Amount: 5000000.00

Attorney: PRO SE

Activity Date: 01/11/2021

Participant: MOHAMMED ABDUL

NOTICE OF FILING FILED

Ad Damnum Amount: 5000000.00

Attorney: PRO SE

Activity Date: 01/11/2021

Participant: MOHAMMED ABDUL

298 PETITION FILED-PLAINTIFF/PETITIONER

Ad Damnum Amount: 5000000.00

Attorney: PRO SE

Activity Date: 03/17/2021

Participant: MOHAMMED ABDUL

MOTION FILED

Attorney: PRO SE

Activity Date: 04/05/2021

Participant: MOHAMMED ABDUL

MOTION FILED

Attorney: PRO SE

Activity Date: 04/06/2021                    Participant: MOHAMMED ABDUL

298 PETITION PLAINTIFF/PETITIONER - 100% GRANTED/ALLOWED

Judge: FLANNERY, JAMES P

Activity Date: 05/04/2021                    Participant: MOHAMMED ABDUL

298 PETITION FILED-PLAINTIFF/PETITIONER

Attorney: PRO SE

Activity Date: 05/06/2021                    Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021                    Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021                    Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021                    Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021                    Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021                    Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021                    Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021　　　　　　　　　　　Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021　　　　　　　　　　　Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021　　　　　　　　　　　Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021　　　　　　　　　　　Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021　　　　　　　　　　　Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021　　　　　　　　　　　Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021　　　　　　　　　　　Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021　　　　　　　　　　　Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021　　　　　　　　　　　Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/06/2021                          Participant: MOHAMMED ABDUL

SUMMONS ISSUED AND RETURNABLE

Attorney: PRO SE

Activity Date: 05/21/2021                          Participant: JENNER AND

SUMMONS SERVED - CORPORATION/COMPANY/BUSINESS

Date: 05/21/2021                          Microfilm: LD000000000

Activity Date: 05/21/2021                          Participant: UNKNOWN LITIGANT

SUMMONS SERVED - CORPORATION/COMPANY/BUSINESS

Date: 05/21/2021                          Microfilm: LD000000000

Activity Date: 05/21/2021                          Participant: UNKNOWN LITIGANT

SUMMONS SERVED - CORPORATION/COMPANY/BUSINESS

Date: 05/21/2021                          Microfilm: LD000000000

Activity Date: 05/21/2021                          Participant: UNKNOWN LITIGANT

SUMMONS SERVED - CORPORATION/COMPANY/BUSINESS

Date: 05/21/2021                          Microfilm: LD000000000

Activity Date: 05/21/2021                          Participant: UNKNOWN LITIGANT

SUMMONS SERVED - CORPORATION/COMPANY/BUSINESS

Date: 05/21/2021                          Microfilm: LD000000000

Activity Date: 05/21/2021                          Participant: UNKNOWN LITIGANT

SUMMONS SERVED - CORPORATION/COMPANY/BUSINESS

Date: 05/21/2021                          Microfilm: LD000000000

Activity Date: 05/24/2021                          Participant: UNKNOWN LITIGANT

SUMMONS RETURNED - N.S. REASON: OTHER REASON

Date: 05/24/2021                          Microfilm: LD000000000

Activity Date: 05/24/2021                          Participant: UNKNOWN LITIGANT

SUMMONS RETURNED - N.S. REASON: OTHER REASON

Date: 05/24/2021                          Microfilm: LD000000000

Activity Date: 05/24/2021                    Participant: UNKNOWN LITIGANT

SUMMONS RETURNED - N.S. REASON: OTHER REASON

Date: 05/24/2021                    Microfilm: LD000000000


Activity Date: 05/24/2021                    Participant: UNKNOWN LITIGANT

SUMMONS RETURNED - N.S. REASON: OTHER REASON

Date: 05/24/2021                    Microfilm: LD000000000


Activity Date: 05/24/2021                    Participant: UNKNOWN LITIGANT

SUMMONS RETURNED - N.S. REASON: OTHER REASON

Date: 05/24/2021                    Microfilm: LD000000000


Activity Date: 05/24/2021                    Participant: UNKNOWN LITIGANT

SUMMONS RETURNED - N.S. REASON: OTHER REASON

Date: 05/24/2021                    Microfilm: LD000000000


Activity Date: 05/25/2021                    Participant: UNKNOWN LITIGANT

SUMMONS SERVED - CORPORATION/COMPANY/BUSINESS

Date: 05/24/2021                    Microfilm: LD000000000


Activity Date: 05/26/2021                    Participant: UNKNOWN LITIGANT

SUMMONS RETURNED - N.S. REASON: OTHER REASON

Date: 05/25/2021                    Microfilm: LD000000000


Activity Date: 05/26/2021                    Participant: SCHILLING JENNIFER

SUMMONS RETURNED - N.S. REASON: OTHER REASON

Date: 05/25/2021                    Microfilm: LD000000000


Activity Date: 05/26/2021                    Participant: UNKNOWN LITIGANT

SUMMONS RETURNED - N.S. REASON: OTHER REASON

Date: 05/25/2021                    Microfilm: LD000000000

[Back to Top](#)

Please note: Neither the Circuit Court of Cook County nor the Clerk of the
Circuit Court of Cook County warrants the accuracy, completeness, or the currency
of this data. This data is not an official record of the Court or the Clerk and may
not be represented as an official court record.

If data does not appear in a specific field, we likely do not have the responsive data
in our master database.

# EXHIBIT N

## IN THE CIRCUIT COURT OF COOK COUNTY
## ILLINOIS COUNTY DEPARTMENT, LAW DIVISION

**ABDUL MOHAMMED,**

                Plaintiff,

    v.

**UBER TECHNOLOGIES, INC. et al.,**

                Defendants.

Case No.  2021L000284

Judge James P Flannery

(Removed to the United States District Court for the Northern District of Illinois Eastern Division)

## NOTICE TO ADVERSE PARTY OF FILING OF NOTICE OF REMOVAL

TO:    Abdul Mohammed
        258 East Bailey Rd., Apt. C
        Naperville, IL 60565
        aamohammed@hotmail.com

PLEASE TAKE NOTICE that, on June 17, 2021, Defendants Uber Technologies, Inc., Raiser, LLC, and Dara Khosrowshahi, by and through their attorneys Littler Mendelson P.C., filed their Notice of Removal with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, of this action now pending in the Circuit court of Cook County, Illinois, Law Division, Case No. 2021L000284. A true and correct copy of the Complaint was filed with the Notice of Removal. Pursuant to 28 U.S.C. § 1446(d), a true and correct copy of the Notice of Removal is attached and hereby served upon you.

[Signature is on next page]

Dated:  June 17, 2021                    Respectfully submitted,

                                         **UBER TECHNOLOGIES, INC., RAISER,**
                                         **LLC, and DARA KHOSROWSHAHI,**


                                         By: */s/ Kerri Feczko*
                                         _____
                                                   One of Their Attorneys


Jennifer Schilling
Kerri Feczko
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, IL  60654
312.372.5520
jschilling@littler.com
kfeczko@littler.com

## <u>CERTIFICATE OF SERVICE</u>

Kerri Feczko, an attorney, hereby certifies that on June 17, 2021, she electronically filed

***Notice to State Court of Filing Notice of Removal*** via the electronic filing system with the Circuit

Court of Cook County, Illinois, and sent a copy of the same via e-mail:

**ABDUL MOHAMMED**
258 East Bailey Rd., Apt. C
Naperville, IL 60565
aamohammed@hotmail.com



/s/ Kerri Feczko
Kerri Feczko

4822-3967-8954.1 / 073208-1869

-3-

# EXHIBIT O

**IN THE CIRCUIT COURT OF COOK COUNTY**
**ILLINOIS COUNTY DEPARTMENT, LAW DIVISION**

**ABDUL MOHAMMED,**

           Plaintiff,

    v.

**UBER TECHNOLOGIES, INC., et al.,**

         Defendants.

Case No. 2021L000284

Judge James P Flannery

(Removed to the United States District Court for the Northern District of Illinois Eastern Division)

---

**NOTICE TO STATE COURT OF FILING OF NOTICE OF REMOVAL**

TO:    Clerk of the Circuit Court of Cook County
        Richard J. Daley Center, Room 1001
        50 W. Washington St.
        Chicago, IL 60602

       PLEASE TAKE NOTICE that, on June 17, 2021, Defendants Uber Technologies, Inc., Raiser, LLC, and Dara Khosrowshahi, by and through their attorneys Littler Mendelson P.C., filed their Notice of Removal with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. A true and correct copy of the Notice of Removal is attached as **Exhibit A**.

       PLEASE TAKE FURTHER NOTICE that the filing of said Notice in Federal Court, together with the filing of a copy of said Notice with this Court, effects the removal of this action in accordance with 28 U.S.C. § 1446(d).

[Signature is on next page]

Dated:  June 17, 2021                Respectfully submitted,

                                        **UBER TECHNOLOGIES, INC., RAISER, LLC, and DARA KHOSROWSHAHI,**

                                        By: */s/ Kerri Feczko*              
                                               One of Their Attorneys

Jennifer Schilling
Kerri Feczko
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, IL  60654
312.372.5520
jschilling@littler.com
kfeczko@littler.com

## <u>CERTIFICATE OF SERVICE</u>

Kerri Feczko, an attorney, hereby certifies that on June 17, 2021, she electronically filed

***Notice to State Court of Filing Notice of Removal*** via the electronic filing system with the Circuit

Court of Cook County, Illinois, and sent a copy of the same via e-mail:

ABDUL MOHAMMED
258 East Bailey Rd., Apt. C
Naperville, IL 60565
aamohammed@hotmail.com



                    */s/ Kerri Feczko*
                    Kerri Feczko

4843-7208-8810.1 / 073208-2241