**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ABDUL MOHAMMED,** | |
| Plaintiff, | |
| v. | No. 21-cv-3261 |
| **UBER TECHNOLOGIES, INC., et al.,** | Honorable Sharon Johnson Coleman |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Jennifer Schilling
jschilling@littler.com
Kerri Feczko
kfeczko@littler.com
LITTLER MENDELSON P.C.
321 North Clark Street, Suite 1100
Chicago, IL 60654
Telephone: 312.372.5520
Facsimile: 313.372.7880
*Attorneys for Defendants Uber Technologies, Inc., Raiser, LLC, and Dara Khosrowshahi*

Jennifer Youpa (*Appearing Pro Hac Vice*)
jyoupa@littler.com
LITTLER MENDELSON P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
Telephone: (214) 880-8100
Kerri Feczko
kfeczko@littler.com
LITTLER MENDELSON P.C.
321 North Clark Street, Suite 1100
Chicago, IL 60654
Telephone: 312.372.5520
Facsimile: 313.372.7880
*Attorneys for Littler Mendelson, P.C., Jody Boquist, and Jennifer Schilling*

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................................. 1

II.   PROCEDURAL AND FACTUAL BACKGROUND......................................... 1

    A.    Mohammed's History of Abusing the Legal System............................. 1

    B.    Mohammed's Causes of Action............................................................. 2

    C.    Mohammed's Factual Allegations ......................................................... 3

III.  LEGAL ARGUMENT ...................................................................................... 4

    A.    Rule 12(b)(6) Standard ......................................................................... 4

    B.    Defendants Khosrowshahi, Boquist, Schilling, and Raiser Should Be Dismissed Because Mohammed Does Not Allege Facts Sufficient To Prove Any Claims Against Them.......................................................................................... 4

    C.    Counts 1, 2, 4, 5, 6, 8, 9, 10, and 14 Are Barred by The Applicable Statutes of Limitations. ...................................................................................... 6

           1.    Mohammed's Claims for Assault and Battery (Count One) and Aggravated Assault and Battery (Count 2) Are Barred as Untimely.......... 6

           2.    Mohammed's Claim Under the Illinois Hate Crimes Act (Count 4) is Barred By the Two-Year Statute of Limitations........................................ 7

           3.    Mohammed's Claim for Violation of the Computer Fraud and Abuse Act (Count 5) is Barred by Its Two-Year Statute of Limitations. .................... 7

           4.    Mohammed's Claim For Violation of the Stored Communications Act (Count 6) is Barred By Its Two-Year Statute of Limitations..................... 8

           5.    Mohammed's Claim For Defamation Per Se (Count 8) is Barred By the One-Year Statute of Limitations............................................................... 8

           6.    Mohammed's Claim For Violation of the Electronic Communications Privacy Act (Count 9) is Barred By Its Two-Year Statute of Limitations.. 9

           7.    Mohammed's Claim For Violation of RICO (Count 10) is Barred By Its Four-Year Statute of Limitations............................................................... 9

           8.    Mohammed's Intentional Infliction of Emotional Distress Claim (Count 14) Is Barred by the Two-Year Statute of Limitations. ............................ 10

    D.    Mohammed's Assault and Battery and Aggravated Assault and Battery Claims (Counts 1 and 2) Fail to State a Claim Because Defendants Are Not Responsible for the Actions of the Third-Party Security Officer............................................. 10

    E.    Mohammed Cannot Bring Stalking / Aggravated Stalking Claims (Count 3) in a Civil Action and, Even If He Could, The Claims Would Fail Because He Has Not Pled the Elements of Those Claims. .................................................................... 11

i

F.     Mohammed's IHCA Claim (Count 4) Fails to State a Claim Because It Fails To Set Forth a Predicate Offense and Because It Fails to State Facts Supporting a Claim that Defendants Were Motivated by Hate. ................................................. 13

G.     Mohammed's Claim for Violation of the CFAA (Count 5) Fails to Allege Facts Sufficient to Establish A Plausible Claim. ............................................................. 15

H.     Mohammed's Claim for Violation of the SCA (Count 6) Fails to Allege Facts Sufficient to Establish A Plausible Claim. ............................................................. 17

I.     Mohammed's Claim for Intrusion Upon Seclusion (Count 7) Fails to Allege Facts Sufficient to Establish this Claim. ....................................................................... 20

J.     Mohammed's Claim for Defamation *Per Se* (Count 8) Fails to State a Claim. ..... 22

K.     Mohammed's Claim for Violation of the ECPA (Count 9) Fails to State a Claim. ................................................................................................................................... 23

L.     Mohammed's Claim of a RICO Violation (Count 10) Fails to State a Claim ...... 25

M.     Mohammed's State and Federal Claims for Malicious Prosecution (Counts 11 and 12) Fail Because Mohammed Does Not Plead The Requisite Elements. ............. 27

N.     Mohammed's Claim for Fraudulent Misrepresentation (Count 13) Fails As Mohammed Has Not Pled Any of the Requisite Elements. ................................... 28

O.     Mohammed's Claim for IIED (Count 14) Does Not Allege "Extreme and Outrageous" Conduct or Anything More than Boilerplate Allegations That Defendants Intended to Inflict Emotional Distress. ............................................. 30

P.     Mohammed's Claim for Civil Conspiracy (Count 15) Fails Because Each Underlying Claim Fails as a Matter of Law and Fails to Adequately Plead the Elements of this Cause of Action. ......................................................................... 31

IV.     CONCLUSION ................................................................................................................ 32

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abel v. Caldwell,*
    2017 IL App (3d) 160520-U ....................................................................12

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,*
    483 U.S. 143 (1987)..................................................................................9

*Akins-Brakefield v. Philip Env't Servs. Corp.,*
    No. 08-CV-710-DRH, 2010 WL 1032632 (S.D. Ill. Mar. 17, 2010) .......7

*In re Apple Inc. Device Performance Litig.,*
    347 F. Supp. 3d 434 (N.D. Cal. 2018) ...................................................17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................4, 25

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................ *passim*

*Benitez v. Am. Standard Cirs., Inc.,*
    678 F. Supp. 2d 745 (N.D. Ill. 2010) .....................................................30

*Brooks v. Ross,*
    578 F.3d 574 (7th Cir. 2009) ...................................................................4

*Busse v. Motorola, Inc.,*
    351 Ill. App. 3d 67 (2004) ......................................................................20

*Butera & Andrews v. IBM Corp.,*
    456 F. Supp. 2d 104 (D.D.C. 2006) .......................................................16

*Cairel v. Alderden,*
    821 F.3d 823 (7th Cir. 2016) ..................................................................28

*Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP,*
    559 F.3d 671 (7th Cir. 2009) ..................................................................10

*In re Carrier IQ, Inc.,*
    78 F.Supp.3d 1051 (N.D. Cal. 2015) ......................................................24

*Caudle v. Illinois,*
    No. 18 CV 50230, 2019 WL 1522641 (N.D. Ill. Apr. 5, 2019)................7

*Coghlan v. Beck*,
 984 N.E.2d 132 (1st Dist. 2013) ................................................................23

*Collins v. Vill. of Palatine, Ill.*,
 875 F.3d 839 (7th Cir. 2017) ...................................................................4

*Council on American-Islamic Rels. Action Network, Inc. v. Gaubatz*,
 793 F. Supp. 2d 311 (D.D.C. 2011) ...........................................................19

*Courser v. Allard*,
 969 F.3d 604 (6th Cir. 2020) ...............................................................9, 27

*Cousineau v. Microsoft Corp.*,
 992 F.Supp.2d 1116 (W.D. Wash. 2012)......................................................24

*Crowley v. Cybersource Corp.*,
 166 F. Supp. 2d 1263 (N.D. Cal. 2001) .......................................................19

*Doe v. Columbia College Chicago*,
 299 F.Supp.3d 939 (N.D. Ill. 2017) ...........................................................31

*Dubinsky v. United Airlines Master Exec. Council*,
 303 Ill. App. 3d 317 (1999) .....................................................................23

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
 48 F.3d 1260 (D.C. Cir. 1995) ..................................................................27

*Ellison v. Minnear*,
 No. 08 C 3247, 2008 WL 11432100 (N.D. Ill. July 7, 2008) .............................11

*Equity Residential v. Kendall Risk Mgmt., Inc.*,
 No. 04 C 3812, 2005 WL 1026686 (N.D. Ill. Apr. 12, 2005) (Gettleman, J.).........26

*Farmers Ins. Exch. v. Auto Club Grp.*,
 823 F. Supp. 2d 847 (N.D. Ill. 2011) ..........................................................16

*Garcia v. Laredo*,
 702 F.3d 788 (5th Cir. 2012) ...................................................................19

*In re Google Inc.*,
 806 F.3d 125 (3rd Cir. 2015) ...................................................................19

*In re Google Location History Litig.*,
 428 F. Supp. 3d 185 (N.D. Cal. 2019) .........................................................21

*Green v. Rogers*,
 917 N.E.2d 450 (2009)...........................................................................22

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989)............................................................................................25, 26

*Howard v. Urban Inv. Trust, Inc.*,
    No. 03 CV 7668, 2010 WL 832294 (N.D. Ill. March 8, 2010) ..............................30

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................19, 21

*J.D. Marshall Int'l, Inc. v. Redstart, Inc.*,
    935 F.2d 815 (7th Cir. 1991) ................................................................................26

*Jennings v. Auto Meter Prods., Inc.*,
    495 F.3d 466 (7th Cir. 2007) ................................................................................26

*JF Enter., LLC v. Fifth Third Bank*,
    824 F. Supp. 2d 818 (N.D. Ill. 2011) ...................................................................29

*Joseph v. Carnes*,
    108 F. Supp. 3d 613 (N.D. Ill. 2015) ...................................................................17

*Kurt v. Platinum Supplemental Ins., Inc.*,
    No. 19 C 4520, 2021 WL 3109667 (N.D. Ill. July 22, 2021) ................................32

*Lee v. Radulovic*,
    No. 94 C 930, 1994 WL 384010 (N.D. Ill. July 20, 1994) ....................................13

*Loughnane v. Zukowski, Rogers, Flood & McArdle*,
    No. 19 C 86, 2021 WL 1057278 (N.D. Ill. Mar. 18, 2021) ............................18, 19

*Lovgren v. Citizens First Nat'l Bank*,
    126 Ill. 2d 411 (1989) ..........................................................................................20

*Martin v. Living Essentials, LLC*,
    160 F. Supp. 3d 1042 (N.D. Ill.), *aff'd*, 653 F. App'x 482 (7th Cir. 2016) ..............6

*McClure v. Owens Corning Fiberglass Corp.*,
    188 Ill.2d 102, 720 N.E.2d 242 (1999) ................................................................32

*McGreal v. AT&T Corp.*,
    892 F.Supp.2d 996 (N.D. Ill. 2012) .....................................................................22

*Menasco, Inc. v. Wasserman*,
    886 F.2d 681 (4th Cir. 1989) ...............................................................................27

*Meyer Tech. Solutions, LLC v. Kaegem Corp.*,
    No. 17-C-281, 2017 WL 4512918 (N.D. Ill. Oct. 10, 2017) ...................................7

*Mohammed v. Alonso, et. al.*,
   Case No. 20-cv-03481 ...................................................................................................2

*Mohammed v. Hamdard Ctr. for Health & Hum. Servs.*,
   2020 IL App (2d) 181017-U ..........................................................................................14

*Mohammed v. Naperville Cmty. Unit Sch. Dist. 203*,
   No. 19 C 6525, 2021 WL 428831 (N.D. Ill. Feb. 8, 2021).............................................14

*Mohammed v. Uber Technologies, Inc.*,
   Case No. 16-cv-02537, Dkt. 74, 91. (See Compl.) ........................................................10

*Moore v. People for the Ethical Treatment of Animals, Inc.*,
   402 Ill. App. 3d 62 (1st Dist. 2010) .................................................................................8

*Morgan v. Bank of Waukegan*,
   804 F.2d 970 (7th Cir. 1986) .........................................................................................27

*Motorola, Inc. v. Lemko Corp.*,
   609 F. Supp. 2d 760 (N.D. Ill. 2009) .............................................................................16

*Murphy v. City of Chicago*,
   No. 14 C 7681, 2015 WL 1746554 (N.D. Ill. Apr. 15, 2015).........................................32

*Nichols Motorcycle Supply, Inc. v. Dunlop Tire Corp.*,
   No. 93-C-5578, 1994 WL 698486 (N.D. Ill. Dec. 12, 1994)..........................................31

*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018 (N.D. Cal. 2014) ...........................................................................17

*Owen v. Cigna*,
   188 F. Supp. 3d 790 (N.D. Ill. 2016) ..............................................................................9

*Patel v. Zillow, Inc.*,
   No. 17-CV-4008, 2017 WL 3620812 (N.D. Ill. Aug. 23, 2017), *aff'd*, 915 F.3d
   446 (7th Cir. 2019).........................................................................................................21

*People v. Vladimir P.*,
   283 Ill. App. 3d 1068 (1st Dist. 1996) ...........................................................................15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) .........................................................................................29

*RBG Plastic, LLC v. The Webstaurant Store*,
   No. 1:18-CV-05192, 2021 WL 4146899 (N.D. Ill. Sept. 13, 2021)...............................29

*Roger Whitmore's Auto. Servs., Inc. v. Lake Cty., Illinois*,
   424 F.3d 659 (7th Cir. 2005) .........................................................................................26

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)...............................................................................25

*Shamin v. Siemens*,
    854 F. Supp. 2d 496 (N.D. Ill. 2012) ................................................30, 31

*In re Sony PS3 Other OS Litig.*,
    551 F. App'x. 916 (9th Cir. 2014) .......................................................16

*Steinbach v. Vill. of Forest Park*,
    No. 06 C 4215, 2009 WL 2605283 (N.D. Ill. Aug. 25, 2009)..................9

*Talbot v. Robert Matthews Distributing Co.*,
    961 F.2d 654 (7th Cir. 1992) ...........................................................26, 27

*TCYK, LLC v. Does 1-87*,
    No. 13 C 3845, 2013 WL 5567772 (N.D. Ill. Oct. 9, 2013)..................24

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) ...........................................................24, 25

*Thompson v. Vill. of Monee*,
    No. 12 C 5020, 2013 WL 3337801 (N.D. Ill. July 1, 2013) ...................6

*Troeckler v. Zeiser*,
    No. 14-CV-40, 2015 WL 1042187 (S.D. Ill. Mar. 5, 2015) ..................21

*United States v. Szymuszkiewicz*,
    622 F.3d 701 (7th Cir. 2010), *as amended* (Nov. 29, 2010)..................24

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021)........................................................................16

*Vanzant v. Berger*,
    No. 18-CV-02119-SMY, 2019 WL 2326208 (S.D. Ill. May 31, 2019) ................................15

*Vega v. Chi. Park Dist.*,
    958 F. Supp. 2d 943 (N.D. Ill. 2013) ................................................20, 21

*Whelan v. Winchester Prod. Co.*,
    319 F.3d 225 (5th Cir. 2003) ..............................................................27

*Wojtanek v. Pactiv LLC*,
    492 F. App'x 650 (7th Cir. 2012) .......................................................15

*Wrenn v. Exelon Generation, LLC*,
    No. 18 C 2524, 2019 WL 11660918 (N.D. Ill. Mar. 5, 2019) ..................20

*In re Zynga Privacy Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ............................................................................24

**Statutes**

720 ILCS 5/12-6 ...................................................................................................11

720 ILCS 5/12-7.4 ................................................................................................11

735 ILCS 5/13–201 (West 2006) ...........................................................................8

735 ILCS 5/13–202 (West 1998) .........................................................................10

740 ILCS 21/10 (West 2018) ...............................................................................12

740 ILCS 21/20(a) (West 2014) ..........................................................................12

740 ILCS 21/45 (West 2014) ...............................................................................12

15 U.S.C. § 15b, [is] ...............................................................................................9

18 U.S.C. 2707(f) ...................................................................................................9

18 U.S.C. § .............................................................................................................25

18 U.S.C. § 1030 .....................................................................................................8

18 U.S.C. § 1030(a) ..............................................................................................16

18 U.S.C. § 1030(a)(1)-(3) ...................................................................................16

18 U.S.C. § 1030(c)(4)(A)(i)(I),(g) ....................................................................16

18 U.S.C. § 1030(g) ................................................................................................7

18 U.S.C. § 1343 ...................................................................................................26

18 U.S.C. § 1503 ...................................................................................................26

18 U.S.C. § 1512 ...................................................................................................26

18 U.S.C. § 1513 ...................................................................................................26

18 U.S.C. § 1961(3) ................................................................................................5

18 U.S.C. § 1962 .....................................................................................................9

18 U.S.C. § 1962(c) ................................................................................................6

18 U.S.C. §§ 1964(c), 1962 ..................................................................................25

18 U.S.C. § 2510(17)(A), (B) ...................................................................................18

18 U.S.C. § 2511(1) ...............................................................................................24

18 U.S.C. § 2520(e) ..................................................................................................9

18 U.S.C § 2701(a) .................................................................................................17

18 U.S.C § 2707(f) ...................................................................................................8

Fed. R. Civ. P. 9(b) ................................................................................................29

Federal Rule of Civil Procedure 12(b)(6) ........................................................1, 2, 4

Ill. Comp. Stat. Ann. 5/12-7.1(a) ...........................................................................13

Ill. Comp. Stat. Ann. 5/26-1(a)(2-12) .....................................................................14

## Other Authorities

CFAA ................................................................................................................ *passim*

Clayton Act ..............................................................................................................9

Computer Fraud and Abuse Act ....................................................................3, 7, 8, 9

ECPA ...................................................................................................9, 23, 24, 25

Electronic Communications Privacy Act ...............................................................3, 9

IHCA ...................................................................................................7, 13, 14, 15

RICO ............................................................................................................... *passim*

SCA ................................................................................................................. *passim*

SCA. First ...............................................................................................................18

## I.  INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Uber Technologies, Inc., ("Uber"), Raiser, LLC, ("Raiser") and Dara Khosrowshahi ("Khosrowashahi") (collectively, the "Uber Defendants"), along with Littler Mendelson, P.C., Jody Boquist ("Boquist"), and Jennifer Schilling ("Schilling") (collectively, the "Littler Defendants"),[1] by and through their undersigned counsel, respectfully move this Court to dismiss the Complaint against them filed by Plaintiff Abdul Mohammed ("Mohammed") because the Complaint fails to state a claim upon which relief can be granted. Mohammed is a serial *pro se* litigant whose inappropriate use of the judicial process has been repeatedly noted, including two admonishments by the Seventh Circuit Court of Appeals. The present lawsuit is another in a long line of abusive suits Mohammed has brought.

The claims against Defendants Khosrowshahi, Boquist, Schilling, and Raiser should be dismissed because Mohammed fails to allege any facts supporting any of the claims asserted against them. Further, Counts 1, 2, 4, 5, 6, 8, 9, 10, and 14 must be dismissed as untimely. Specifically, while Mohammed filed this suit on January 11, 2021, his claims are all predicated on alleged conduct occurring on or before November 10, 2016 – more than four years prior to his filing this suit – which exceeds the various statutes of limitation applying to these causes of action.

Finally, every Count of the Complaint fails to state a claim upon which relief may be granted, or a sufficient factual basis to state a plausible claim against each defendant. For these reasons, Mohammed's claims against Defendants fail and should be dismissed.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

### A.  Mohammed's History of Abusing the Legal System

Mohammed filed this lawsuit *pro se,* on January 11, 2021. (Dkt 1). Defendants timely

---

[1] The Uber Defendants and the Litter Defendants shall be referred to collectively as "Defendants."

removed it to this Court from the Circuit Court of Cook County on June 17, 2021. (*Id.*). Mohammed is a serial litigant, having filed at least nineteen (19) actions in the Northern District of Illinois since 2016, as well as numerous other actions across the state. (*See* Dkt. 20, **Ex. A**). Amongst Mohammed's many suits is a June 2020 complaint filed against Northern District of Illinois Judges Jorge Alonso, Gary Feinerman, John Blakey, and Seventh Circuit Justices, Chief Judge Diane Wood, Joel Flaum, Kenneth Ripple, and Diane Sykes in the matter of *Mohammed v. Alonso, et. al.,* Case No. 20-cv-03481. In this 65-page complaint, Mohammed sought to hold the Judges personally liable for dismissing his repeated and baseless claims. (*See* Dkt. 20, **Ex. B**).

On June 17, 2020, this Court issued an Executive Committee Order enjoining Mohammed, or anyone other than an attorney acting on his behalf, from filing any new civil action or proceeding in the United States District Court for the Northern District of Illinois without first obtaining leave of Court. (*See* Dkt. 20, **Ex. C**).[2] Despite this, Mohammed emailed Uber's Defense counsel (and now named Defendant, Jennifer Schilling) stating Mohammed's "rules," which included that she not to talk to him like "her husband or boyfriend," attempted to demean her by advising that she will only be referred to as "JS", and threatened a "freight train" of complaints and lawsuits against her personally, as well as against her client and law firm if she did not comply with his "rules". (*See* Dkt. 20, **Ex. H**). This matter is the manifestation of precisely what he threatened to do, and as a means of harassing Defendants after his frivolous claims have been repeatedly dismissed.

**B. Mohammed's Causes of Action**

Mohammed alleges the following claims: Assault and Battery (Count 1); Aggravated Assault and Aggravated Battery (Count 2); Stalking and Aggravated Stalking (Count 3); Violation

---

[2] The Executive Committee's June 2020 Order was subsequently affirmed by an Executive Committee Order issued on August 3, 2020 (*see* Dkt. 20, **Ex. D**), and on June 23, 2021 (*see* Dkt. 20, **Ex. E**). Mohammed has also been admonished by the Seventh Circuit Court of Appeals, *twice* (*see* Dkt. 20, **Exs. F and G**).

of Illinois Hate Crimes Act (Count 4); Violation of the Computer Fraud and Abuse Act (Count 5); Violation of the Stored Communications Act (Count 6); Intrusion Upon Seclusion and Privacy (Count 7); Defamation Per Se (Count 8); Violation of the Electronic Communications Privacy Act (Count 9); Violation of the Racketeering Influenced and Corrupt Organizations ("RICO") Act (Count 10); Malicious Prosecution (Counts 11 and 12); Fraudulent Misrepresentation (Count 13); Intentional Infliction of Emotional Distress (Count 14); and Civil Conspiracy (Count 15). (Dkt. 1).

### C. Mohammed's Factual Allegations[3]

Mohammed filed a federal court complaint against Uber and Raiser on February 24, 2016 in this Court (hereafter "Mohammed I"). (Compl., ¶ 3). On November 10, 2016, Mohammed had an appointment with a law firm named Romanucci & Blandin LLC – also a defendant in this lawsuit – and went to one of its conference rooms. (Compl., ¶ 7). Mohammed asserts that an unnamed security officer, employed by an unnamed company, came to the conference room, informed him that an unnamed "they" have a problem with him, and asked him to leave the conference room. (*Id.*). Mohammed asserts this unnamed person "shoved him into the elevator," subsequently "pushed" him towards the exit of the building, held him by his belt, and threatened him. (*Id.* at ¶¶ 7, 18). Mohammed claims the security officer said Littler ordered his removal from the building; he also claims to have overheard the security officer tell someone that "Littler and Mendelson" called Mohammed a criminal. (*Id.* at ¶¶ 7-8).

Mohammed asserts that Littler was aware he was in the building because Uber was following Mohammed through its Uber Rider and Driver Apps, which were installed on his phone. But Mohammed provides no factual basis for the assertions that Uber (a) was tracking him; and (b) told the Littler Defendants that he was in the building. (*Id.* at ¶ 9). Mohammed asserts Uber

---

[3] The facts alleged in Mohammed's Complaint are accepted as true for purposes of this Motion only and Defendants reserve the right to deny each and any fact alleged in the Complaint.

"spied on its drivers…by intercepting, accessing, monitoring and/or transmitting electronic communications and whereabouts of its drivers." (*Id.* at ¶ 11).[4] Mohammed asserts that Defendants acted with prejudice towards Mohammed's race, religion, disabilities, national origin and ancestry, though he cites no facts showing Defendants were so motivated. (*Id.* at ¶ 10).

## III. LEGAL ARGUMENT

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts but not bald assertions or legal conclusions. *Id.* at 678-79. Put differently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *see also Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). A defendant may raise the statute of limitations in a motion to dismiss "if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009); *Collins v. Vill. of Palatine, Ill.,* 875 F.3d 839, 842 (7th Cir. 2017) (same).

### B. Defendants Khosrowshahi, Boquist, Schilling, and Raiser Should Be Dismissed Because Mohammed Does Not Allege Facts Sufficient To Prove Any Claims Against Them.

The Complaint does not allege that Khosrowshahi, Boquist, or Schilling committed *any* of the alleged wrongdoing giving rise to the claims in this case. As to Raiser, there is no specific

---

[4] Though unclear why, as they have no bearing on Mohammed's claims, Mohammed further recites allegations or filings from other lawsuits brought by unrelated third parties against Uber in 2017. (Compl. ¶¶ 11-16).

4

factual allegation of wrongdoing by it, either.

With regard to Khosrowshahi, his name comes up 12 times in the Complaint, but 11 of those instances simply note that the allegation or the specific Count is *not* made against him. (Compl., ¶ 7 (twice) and the titles for Counts 1-9). In the twelfth instance, his name is merely included in the case caption. Every Count brought against Khosrowshahi should be dismissed as to him for failure to state a claim and he should be dismissed as a defendant in this action.

Boquist and Schilling are referenced four times each in the Complaint, once in the caption, twice to note that there is no arbitration agreement between them and plaintiff (Compl., ¶ 5), and lastly to speculate that Uber relayed Mohammed's whereabouts to them on November 10, 2016. (Compl., ¶ 9). Mohammed's allegations with respect to Boquist and Schilling in Paragraph 9 are mere speculation and cannot support the claims against them. *See Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level"). Moreover, there is no allegation that they took any action with this supposed knowledge. Thus, each Count brought against Boquist and Schilling should be dismissed.

Raiser is referenced five times in the Complaint – twice in the caption and twice to note that Mohammed previously sued it in Mohammed I. (Compl., ¶ 3). The final reference comes in Paragraph 63, where Mohammed alleges, "Individual Defendants listed under this count individually and/or as agents and/or servants and/or employees of Uber and/or Raiser and/or Littler and/or J & B (hereinafter 'RICO Defendants,') are 'persons' within the meaning of 18 U.S.C. § 1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c)." (Compl., ¶ 63). Bizarrely, Mohammed lists no individuals in this count other than "Judge Lee," who presided over Mohammed I. (*Id*. at ¶ 66). He names no individual that is or was an agent, servant or employee of Raiser. (*Id*. at ¶¶ 62-76). Given that there

are no specific allegations against Raiser in the Complaint, all claims against Raiser should be dismissed and Raiser should be dismissed as a defendant.

### C. Counts 1, 2, 4, 5, 6, 8, 9, 10, and 14 Are Barred by The Applicable Statutes of Limitations.

The Complaint asserts that, on or before November 10, 2016[5], Defendants engaged in various wrongful acts against him. (Compl., ¶¶ 7, 97). Mohammed claims he suffered an assault and battery from an unnamed security guard who worked for an unnamed company on November 10, 2016. (Compl., ¶ 7). He further claims he was defamed either on or before November 10, 2016, having allegedly overheard this phantom security guard say he had been called a criminal. (*Id.* ¶¶ 7-8). He also claims that prior to and including November 10, 2016, Uber was monitoring his whereabouts. (*Id.* ¶¶ 9 and 11). Thus, each cause of action pled necessarily accrued on or before November 10, 2016. *See Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1046 (N.D. Ill.), *aff'd*, 653 F. App'x 482 (7th Cir. 2016) ("Where there is a single overt act from which subsequent damages may flow, however, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury..."). Mohammed filed the instant Complaint on January 11, 2021, more than four years and two months later.

### 1. Mohammed's Claims for Assault and Battery (Count One) and Aggravated Assault and Battery (Count 2) Are Barred as Untimely.

The statute of limitations for assault and battery and aggravated assault and battery claims under Illinois law is two years. *Thompson v. Vill. of Monee,* No. 12 C 5020, 2013 WL 3337801, at *5 (N.D. Ill. July 1, 2013) (two-year statute of limitations for Illinois personal injury); *Akins-Brakefield v. Philip Env't Servs. Corp.,* No. 08-CV-710-DRH, 2010 WL 1032632, at *11–12 (S.D. Ill. Mar. 17, 2010) ("[C]auses of action for assault, battery and negligent supervision are subject

---

[5] While Mohammed later refers to November 18, 2016 as the date that he suffered "bodily injury…by the Security Officer," the date appears to be a typographical error. (Compl., ¶ 65).

to a two-year limitations period."). Mohammed's claims for assault and battery and aggravated assault and battery must therefore be dismissed as he did not file the Complaint until January 11, 2021, more than two years *after* the statute of limitations had expired. (Compl., ¶¶ 17-25).

### 2. Mohammed's Claim Under the Illinois Hate Crimes Act (Count 4) is Barred By the Two-Year Statute of Limitations.

In *Nihiser v. Lutz*, the Court held that all of the plaintiff's state law claims, including a civil claim under the Illinois Hate Crimes Act ("IHCA"), were barred by the two-year statute of limitations for personal injury actions in Illinois. No. 15-CV-2102, 2017 WL 5759979, at *4 (C.D. Ill. Mar. 29, 2017); *see also Caudle v. Illinois*, No. 18 CV 50230, 2019 WL 1522641, at *5 n.9 (N.D. Ill. Apr. 5, 2019) (explaining that any IHCA claim would be time-barred under either the one-year statute of limitations applicable to tort claims against a local entity or the generally applicable two-year statutory bar for personal injury actions in Illinois). Because Mohammed claims that the allegations underlying his IHCA claim occurred more than two years after the applicable statute of limitations, Count 4 is is likewise barred. (Compl., ¶¶ 30-34).

### 3. Mohammed's Claim for Violation of the Computer Fraud and Abuse Act (Count 5) is Barred by Its Two-Year Statute of Limitations.

The Computer Fraud and Abuse Act ("CFAA") clearly states "[n]o action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g); *see also Meyer Tech. Solutions, LLC v. Kaegem Corp.*, No. 17-C-281, 2017 WL 4512918, at *1 (N.D. Ill. Oct. 10, 2017) (dismissing time-barred CFAA claims when counter-plaintiff "discovered the damage flowing from the unauthorized access" more than two years before it filed its counterclaims, and refusing to apply a "continuing violation" theory to the claims). Mohammed claims that the actions

described in Paragraphs 11-16 of his Complaint form the basis of his CFAA claim.[6] Those allegations, irrespective of their legitimacy or relevance, are centered on alleged conduct by Uber occurring: (a) prior to lawsuits filed in 2017 (describing now-dismissed lawsuits against Uber), or (b) on November 10, 2016.  (Compl., ¶¶ 11-16). As a result, the Complaint in this case was filed well outside the CFAA two-year limitations period, even if the Court assumes the 2017 lawsuits were filed on December 31, 2017.  Accordingly, Plaintiff's CFAA claim is untimely.

### 4. Mohammed's Claim For Violation of the Stored Communications Act (Count 6) is Barred By Its Two-Year Statute of Limitations.

The statute of limitations under the Stored Communications Act ("SCA") is "two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation." 18 U.S.C. § 2707(f).  Mohammed alleges that a violation of the SCA is described in Paragraphs 11-16 of the Complaint, which is based on events allegedly occurring on November 10, 2016. (Compl., ¶¶ 11-16, 40). These allegations fall far outside of the SCA's two-year statute of limitations and necessitate dismissal.

### 5. Mohammed's Claim For Defamation Per Se (Count 8) is Barred By the One-Year Statute of Limitations.

Mohammed's claim for defamation *per se* is subject to a one-year statute of limitations. 735 ILCS 5/13–201 (West 2006). Under Illinois law, the cause of action for defamation accrues, and the statute of limitations begins to run, on the date of publication of the defamatory material. *Moore v. People for the Ethical Treatment of Animals, Inc*., 402 Ill. App. 3d 62, 73 (1st Dist. 2010). As the supposed defamation of Mohammed occurred on or before November 10, 2016 (*see* Compl., ¶¶ 8, 53), and this suit was not brought until January 11, 2021, this claim is barred.

---

[6] Mohammed also incorporates the conduct set forth in Counts 1 through 3 of the Complaint, including "assault, aggravated assault, battery, aggravated battery, stalking, aggravated stalking, and disorderly conduct," but these offenses are not unlawful under the CFAA and cannot form the basis of a CFAA claim.  *See generally* 18 U.S.C. § 1030 (describing conduct made unlawful under the CFAA).

6.     **Mohammed's Claim For Violation of the Electronic Communications Privacy Act (Count 9) is Barred By Its Two-Year Statute of Limitations.**

Mohammed's claim under the Electronic Communications Privacy Act ("ECPA") is also time-barred.[7] The statute expressly states that "[a] civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). In the context of ECPA, courts have found that a "reasonable opportunity" includes learning of an unlawful recording or listening to such a recording. *E.g.*, *Courser v. Allard*, 969 F.3d 604, 623-24 (6th Cir. 2020) (dismissing claims under ECPA where the plaintiff heard an allegedly unlawful recording in September 2015, and failed to file suit until August 2018). As such, the alleged conduct (which Mohammed describes in Paragraphs 11-16 of the Complaint as occurring on November 10, 2016) occurred outside the two-year statute of limitations. *Id.*

7.     **Mohammed's Claim For Violation of RICO (Count 10) is Barred By Its Four-Year Statute of Limitations.**

The Supreme Court has made clear that a four-year statute of limitations applies to federal RICO claims, including that which Mohammed brings, under 18 U.S.C. § 1962. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) ("the 4-year statute of limitations for Clayton Act actions, 15 U.S.C. § 15b, [is] the most appropriate limitations period for RICO actions."). Specifically, the statute of limitations begins to run when the plaintiff "discover[s], or should, if diligent, have discovered" that he had been injured by the defendant. *Cancer Found.,*

---

[7] Though Mohammed does not specify the actual provision of ECPA under which he brings suit, the ECPA also encompasses the Stored Communications Act, discussed above. *Owen v. Cigna*, 188 F. Supp. 3d 790, 794 (N.D. Ill. 2016) ("…Defendants violated the Stored Communications Act (SCA), which is Title II of the Electronic Communications Privacy Act…"). As a result, to the extent that this claim is likewise brought under the SCA and somehow differs from Count 6, the claim is nevertheless time-barred under the SCA's two-year statute of limitations. *Steinbach v. Vill. of Forest Park*, No. 06 C 4215, 2009 WL 2605283, at *7 (N.D. Ill. Aug. 25, 2009) ("The [SCA] states that "a civil action under this section may not be commenced later than two years after the date upon which the claimant first had reasonable opportunity to discover the violation. 18 U.S.C. 2707(f)").

*Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). Here, notwithstanding his other allegations (occurring even earlier), Mohammed alleges that he was injured in November 2016. (Compl. ¶¶ 11-16, 65). Thus, as Mohammed's Complaint is predicated on an injury discovered more than four years prior to his filing this suit, his civil RICO claim is time-barred.

### 8. Mohammed's Intentional Infliction of Emotional Distress Claim (Count 14) Is Barred by the Two-Year Statute of Limitations.

The statute of limitations for an intentional infliction of emotional distress claim ("IIED") is two years. *Feltmeier*, 207 Ill. 2d at 277–78. ("We agree that the applicable statute of limitations for [IIED] is two years, because the tort is a form of personal injury. 735 ILCS 5/13–202 (West 1998)."). Here, Plaintiff incorporates 89 paragraphs of his Complaint as the basis of his IIED claim, which does not contain any purported conduct occurring later than June 2017.[8] Because Mohammed filed his Complaint three and a half years after the latest-occurring event, his IIED claim is untimely and must be dismissed.

### D. Mohammed's Assault and Battery and Aggravated Assault and Battery Claims (Counts 1 and 2) Fail to State a Claim Because Defendants Are Not Responsible for the Actions of the Third-Party Security Officer.[9]

Mohammed's claim for assault and battery and aggravated assault and battery are predicated entirely on the actions of an unnamed security guard who worked for an unnamed company. (Compl., ¶¶ 7, 18, 22-23). As this court described in *Russell v. Chism*:

> Generally, a person injured by the tortious act of another must seek relief from the person who caused the injury. *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶ 42. The doctrine of *respondeat superior*, which provides that a principal may be liable for the tortious actions of its agent even if the principal itself does not engage in any conduct in relation to the plaintiff, is an exception to this general rule. See *id. Respondeat superior*, however, typically cannot be used to impose vicarious liability on a "principal" for the tortious acts of its independent

---

[8] Albeit vaguely, Plaintiff refers to Defense counsel's actions during the bench trial that was held on June 14, 2017 in Mohammed I to determine whether Mohammed entered into an arbitration agreement with Uber. *See Mohammed v. Uber Technologies, Inc*., Case No. 16-cv-02537, Dkt. 74, 91. (See Compl., ¶¶ 65-66).
[9] Counts 1-9 are brought against Uber, Raiser, and the Littler Defendants, not Khosrowshahi. (*See* Compl.)

contractor. *Id.*; *see also Carney v. Union Pac. R.R. Co.*, 2016 IL 118984, ¶ 32 ("Because the hiring entity has no control over the details and methods of the independent contractor's work, it is not in a good position to prevent negligent performance, and liability therefor should not attach.").

No. 15-CV-560, 2017 WL 3478817, at *4–7 (N.D. Ill. Aug. 14, 2017).

Here, Mohammed does not allege the unnamed security guard was employed by, or an agent of, any Defendant. Indeed, Mohammed does not plead by whom the guard was employed or that he was an agent of any of one of the Defendants. As such, he has not pleaded sufficient claims of assault and battery or aggravated assault and battery against any Defendant.

Even assuming that Mohammed has sufficiently pled that this unnamed person could be considered Defendants' agent, which Defendants deny, there is nothing in the Complaint to indicate that this unnamed person is anything more than an independent contractor. Indeed, there is nothing in the Complaint at all to indicate the relationship between this person and Defendants. (*see generally,* Compl.). Accordingly, Mohammed has failed to plead facts that provide a basis for holding Defendants liable for this person's supposed actions and Mohammed's claims in Counts 1 and 2 should be dismissed.

**E.    Mohammed Cannot Bring Stalking / Aggravated Stalking Claims (Count 3) in a Civil Action and, Even If He Could, The Claims Would Fail Because He Has Not Pled the Elements of Those Claims.**

Mohammed's claims of stalking and aggravated stalking should be dismissed as there is no civil cause of action for those acts. *Ellison v. Minnear,* No. 08 C 3247, 2008 WL 11432100, at *1 (N.D. Ill. July 7, 2008) ("Plaintiff cannot bring a civil action for the alleged crime of aggravated stalking, 720 ILCS 5/12-7.4 (nor stalking, 720 ILCS 5/12-6), because no civil action is authorized under the statute. Accordingly, his claim of aggravated stalking is dismissed."). The recourse for a person who believes that they are a victim of stalking and/or aggravated stalking is to petition for a no contact order. *See e.g. Abel v. Caldwell*, 2017 IL App (3d) 160520-U, ¶ 33 ("Section 45

of the Act provides for subject matter jurisdiction over stalking no contact orders in all circuit courts: "Each of the circuit courts has the power to issue stalking no contact orders." 740 ILCS 21/45 (West 2014). Section 20 of the Act provides that an action for a stalking no contact order is commenced "by filing a petition for stalking no contact order in any civil court." 740 ILCS 21/20(a) (West 2014).").  As Mohammed has not sought, nor could he seek, such an order, and as there is no civil cause of action for stalking or aggravated stalking, Count 3 should be dismissed.

Even if a civil action could be pursued, Mohammed has not sufficiently alleged the requisite elements. Under Illinois law, stalking is defined as "engaging in a course of conduct directed at a specific person, and he or she knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety, the safety of a workplace, school, or place of worship, or the safety of a third person or suffer emotional distress." 740 ILCS 21/10 (West 2018).  Generously assuming that Uber was tracking Mohammed as alleged and that such conduct would constitute a "course of conduct" within the meaning of this law, the Complaint is still woefully deficient as there is nothing in it to suggest that Uber's doing so would "cause a reasonable person[10]" to either "fear for his *safety*" or cause such a person to "suffer emotional distress[11]." (*See generally* Compl.).

Furthermore, there is nothing at all in the Complaint to suggest the Littler Defendants or Raiser were tracking Mohammed or engaged in any "course of conduct" with respect to him that could in any way be stalking (much less aggravated stalking). Count 3 should be dismissed as to these Defendants for this reason as well.

---

[10] A "reasonable person" is defined as "a person in the petitioner's circumstances with the petitioner's knowledge of the respondent and the respondent's prior acts." 740 ILCS 21/10 (West 2018).
[11] "Emotional distress" means "significant mental suffering, anxiety or alarm." 740 ILCS 21/10 (West 2018).

### F.     Mohammed's IHCA Claim (Count 4) Fails to State a Claim Because It Fails To Set Forth a Predicate Offense and Because It Fails to State Facts Supporting a Claim that Defendants Were Motivated by Hate.

Mohammed's IHCA claim should be dismissed because it is dependent on his claim that he was subjected to an assault or aggravated assault, a battery or aggravated battery and/or stalking or aggravated stalking, as alleged in Counts 1-3 of the Complaint. (Compl., ¶¶ 31-34). As described above, each of these claims should be dismissed for failure to state a claim. *See Lee v. Radulovic*, No. 94 C 930, 1994 WL 384010, at *5 (N.D. Ill. July 20, 1994) (dismissing the portion of the IHCA claim concerning assault as to most of the defendants because the plaintiff failed to state the separate cause of action for assault against those defendants).[12] "Aggravated battery" and "aggravated stalking" are not listed as predicate offenses for liability for a hate crime under the IHCA and, as such, the portions of Count 4 concerning aggravated battery and aggravated stalking should be dismissed on that basis, as well. *See* 720 Ill. Comp. Stat. Ann. 5/12-7.1(a).

Mohammed's assertion that Defendants engaged in disorderly conduct, (Compl., ¶ 32), is equally unavailing as Mohammed does not allege any specific actions of Defendants that could amount to disorderly conduct. Under Illinois law, a person commits "disorderly conduct when he or she knowingly does any act in such unreasonable manner as to alarm or disturb another *and* to provoke a breach of the peace" or commits one of twelve specifically prescribed acts set forth in the statute; none of which bear any resemblance to the claims in this matter. 720 Ill. Comp. Stat. Ann. 5/26-1 (emphasis added). Those specific acts include, but are not limited to, falsely reporting a fire, bomb, crime or child abuse to authorities, as well as spying through windows "for a lewd or

---

[12] Under the IHCA, "A person commits a hate crime when, by reason of the actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin of another individual or group of individuals… he or she commits assault, battery, aggravated assault . . . stalking . . . disorderly conduct." 720 Ill. Comp. Stat. Ann. 5/12-7.1(a).

unlawful purpose." *See* 720 Ill. Comp. Stat. Ann. 5/26-1(a)(2-12). Mohammed sets forth no facts in the Complaint that meet this standard. Notably, this is not Mohammed's first foray into an IHCA claim, having had this same claim dismissed in *Mohammed v. Naperville Cmty. Unit Sch. Dist. 203*, No. 19 C 6525, 2021 WL 428831 (N.D. Ill. Feb. 8, 2021). The court, there, as the Court should here, dismissed the IHCA claim because the actions alleged in the complaint did not "fall within the scope of, or even remotely resemble, the specific acts the statute prohibits, nor can they be said to 'breach the peace.'" *Id.* at *9.

Moreover, in support of Count 4, Mohammed has primarily alleged conduct committed by an unnamed third-party security guard that worked for an unnamed company. He has not alleged actions by Uber, Raiser or the Littler Defendants. (Compl., ¶¶ 7-9, 31-34). As demonstrated in Section III.D., *supra*, there is no basis for attributing liability to the Defendants for this person's actions, further warranting dismissal. While Mohammed speculates that Uber made Boquist and Schilling aware of his location, such speculation as to what Uber did and what Boquist and/or Schilling knew, is insufficient to state a claim. *See Twombly*, 550 U.S. 544 at 555 (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). Mohammed also makes no allegation as to what, if anything, Boquist or Schilling did with the information, much less that they acted wrongfully.

Finally, Mohammed has failed to plead any facts indicating that his injuries were the result of a hate crime. A mere allegation of belonging to a class protected by the IHCA, without more, is insufficient. *See Mohammed v. Hamdard Ctr. for Health & Hum. Servs.*, 2020 IL App (2d) 181017-U, ¶ 32 (affirming dismissal of Mohammed's IHCA claims because he did not allege that the threat was based on his protected class). In that case, Mohammed alleged that the defendant threatened to kill him and his family members living in India, but the court determined that "he

never alleged that the threat was based on his Indian descent." *Id.* The IHCA requires a "causal connection between a victim's race, religion, etc., and the offender's reason for choosing the victim." *People v. Vladimir P.*, 283 Ill. App. 3d 1068, 1075 (1st Dist. 1996). Mohammed has not pled any connection between his protected class(es) and the alleged acts that were committed. *See Vanzant v. Berger*, No. 18-CV-02119-SMY, 2019 WL 2326208, at *3–4 (S.D. Ill. May 31, 2019) (dismissing hate crimes claim as "[p]laintiff does not allege or suggest a connection between his race or specific disability…and any decision to delay his medical care.").

In fact, Mohammed's Complaint acknowledges (to his detriment) that the underlying reasons for the conduct were *not* his protected classes. Specifically, Mohammed pleads that the actions of the "Security Officer" on November 10, 2016 were "retaliation[13] against [Mohammed] as naked as it gets for filing of *Mohammed I*." (Compl., ¶ 7). Mohammed further asserts that the Security Officer removed him from the building because "Littler and Mendelson informed him that he is a criminal." (*Id*. at ¶ 8). Those reasons, as asserted by Mohammed, expressly refute the causal connection that Mohammed must establish under the IHCA. Additionally, none of the allegations pled in support of Count 3 for stalking and aggravated stalking have any relation, even tangentially, to Mohammed's allegedly protected class(es). Thus, Count 4 should be dismissed.

**G.      Mohammed's Claim for Violation of the CFAA (Count 5) Fails to Allege Facts Sufficient to Establish A Plausible Claim.**

Generally speaking, a defendant violates the CFAA if the defendant (1) "intentionally accesses a computer" (2) "without authorization or exceeds authorized access" and (3) "thereby

---

[13] Mohammed does not include an individual retaliation claim as part of his 15-count Complaint, but does refer to allegedly retaliatory conduct throughout his Complaint. (Compl., ¶¶ 6-7, 65, 69). To the extent Mohammed does seek to recover for retaliation, that claim is barred as Mohammed has failed to exhaust his administrative remedies. *See Wojtanek v. Pactiv LLC*, 492 F. App'x 650, 651 (7th Cir. 2012) (affirming dismissal of plaintiff's retaliation claim for failure to submit a timely administrative charge of retaliation).

obtains . . . information from any protected computer."[14] 18 U.S.C. § 1030(a); *Van Buren v. United States*, 141 S. Ct. 1648, 1652 (2021). In addition, a plaintiff may only bring a private cause of action under the CFAA under six specific circumstances, only two of which are relevant (and mentioned) here: (1) physical injury to any person; and (2) a threat to public health or safety. *See* 18 U.S.C. § 1030(c)(4)(A)(i)(I),(g), (listing circumstances in which a civil action may be brought).

As a threshold matter, Mohammed does not allege that Raiser or the Littler Defendants committed or authorized any act giving rise to a violation of the CFAA. Without such, Mohammed fails to state a claim. *Farmers Ins. Exch. v. Auto Club Grp.*, 823 F. Supp. 2d 847 (N.D. Ill. 2011) ("Competitor's unauthorized access to insurer's computer database for its own business purposes did not constitute "damage," for purposes of [CFAA] where there was no evidence that competitor actually impaired insurer's databases or data, or caused interruption in service."); *Butera & Andrews v. IBM Corp.*, 456 F. Supp. 2d 104, 111-12 (D.D.C. 2006) (dismissing CFFA claims where plaintiff did not plausibly allege that "IBM itself initiated or authorized the computer attacks").

Additionally, Mohammed is required to plead that any access to a "protected computer" was done "without authorization" or in a way that "exceeds authorized access." *See Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 765–66 (N.D. Ill. 2009) ("A person violates section 1030(a)(2) if she 'intentionally accesses a computer without authorization or exceeds authorized access and thereby obtains…information from any protected computer…'"). Mohammed, however, failed to do so. Courts have made clear that "users who have 'voluntarily installed' software that allegedly caused harm cannot plead unauthorized 'access' under the CFAA." *In re*

---

[14] While other provisions of the CFAA prohibit unlawful conduct, these provisions are limited to financial institutions, credit card issuers, federal governmental agencies, and other such inapplicable scenarios that are clearly not described in Mohammed's Complaint, much less plausibly alleged. 18 U.S.C. § 1030(a)(1)-(3).

*Sony PS3 Other OS Litig.*, 551 F. App'x. 916, 923 (9th Cir. 2014); *see also In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 452 (N.D. Cal. 2018) (plaintiffs authorized Apple's access to devices when they "chose to voluntarily download and install" Apple's software updates); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1062-63 (N.D. Cal. 2014) (dismissing CFAA claim where software was downloaded voluntarily and plaintiff did not allege that the apps "circumvented any restrictions").

Here, while Mohammed alleges that the Defendants accessed Mohammed's phone through Uber's Rider and Driver Apps (the "Apps") (Compl., ¶¶ 9, 12), he has not alleged (nor would it be plausible if alleged) that his installation of the Apps was anything but voluntary. Mohammed has not alleged that he revoked any consent for information collected through the Apps. Likewise, Mohammed does not allege any facts related to the scope of his authorization when he downloaded the Apps, *e.g.*, that he authorized certain information to be transmitted but not his location (location being a necessary aspect of using the Apps), or that the Apps hid information about its access to information. On these grounds, Mohammed's claim under the CFAA fails.

### H. Mohammed's Claim for Violation of the SCA (Count 6) Fails to Allege Facts Sufficient to Establish A Plausible Claim.

The SCA creates criminal and civil liability for certain unauthorized access to stored communications and records. *See Joseph v. Carnes*, 108 F. Supp. 3d 613, 616 (N.D. Ill. 2015). The SCA creates a private right of action against anyone who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C § 2701(a); *see id.* § 2707 (creating a private right of action). The SCA defines "electronic storage" as "(A) any temporary, intermediate storage of a wire or electronic

17

communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for the purpose of backup protection of such communication." 18 U.S.C. § 2510(17)(A), (B).

Mohammed alleges that Defendants violated the SCA when they "obtained electronic communication[s] while such electronic communications were stored in an iPhone belonging to [Mohammed] and also obtained electronic communication[s] while such electronic communications were stored on the server belonging to [Mohammed's] Internet Service Provider." (Compl. ¶ 40). As to the allegation that Defendants obtained electronic communications that were "stored on the server belonging to [Mohammed's] Internet Service Provider," (Compl. ¶ 40), Mohammed has not alleged facts that would render this assertion plausible; *i.e.*, able to survive dismissal. For example, Mohammed does not allege who his Internet Service Provider is, when or how Defendants obtained communications from this unknown entity, or whether those communications were in "electronic storage" as that phrase is narrowly defined under the SCA. As such, Mohammed's claim cannot rest on the barebones conclusion that Defendants accessed communications at an Internet Service Provider without any facts that would render such a conclusion plausible. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions").

As to accessing communications on his phone, Mohammed does not (nor could he) allege that this involved access to a "facility," or that the communications were in "electronic storage," both of which are required by the SCA. First, federal courts across the country have held that a personal computer or phone is not a "facility" under the SCA. *See Loughnane v. Zukowski, Rogers, Flood & McArdle*, No. 19 C 86, 2021 WL 1057278, at *3 (N.D. Ill. Mar. 18, 2021) ("[C]ourts have deduced that 'the relevant facilities the SCA is designed to protect are

not computers that *enable* the use of an electronic communication service, but instead are facilities that are *operated by* electronic communication service providers and used to store and maintain electronic storage.'"). As a result, "these courts agree that a 'home computer of an end user is not protected by the SCA.'" *Id.* at 793. *See also, e.g.*, *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1270-71 (N.D. Cal. 2001) (rejecting the argument that a user's computer is a "facility" under the SCA, and noting that "[t]his argument seems destined to failure, especially in light of the fact that all one needs to render access to such a facility authorized is consent by a provider of an electronic communication service. It would certainly seem odd that the provider of a communication service could grant access to one's home computer to third parties, but that would be the result of [plaintiff's] argument."); *Garcia v. Laredo*, 702 F.3d 788, 790 (5th Cir. 2012) (concluding that the SCA, in that it requires access to a facility, "does not apply to data stored in a personal cell phone."); *In re Google Inc.*, 806 F.3d 125 (3rd Cir. 2015) (following *Garcia*).

In addition, data stored in or on a phone\personal computer is not "electronic storage" under the SCA. *Loughnane,* 2021 WL 1057278 at 3. Courts have uniformly held that data stored in a phone is not merely a "'temporary, intermediate storage . . . incidental to the electronic transmission' of an electronic communication," and dismissed SCA claims on this basis. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1059 (N.D. Cal. 2012); *see also Garcia*, 702 F.3d at 793 ("information that an individual stores to his hard drive or cell phone is not in electronic storage under the [SCA]."); *Council on American-Islamic Rels. Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 337 (D.D.C. 2011) ("It is entirely non-controversial that e-mail messages downloaded and stored on, and subsequently accessed solely from, a user's personal computer do not fall within the SCA's definition of electronic storage.").

On these bases, Mohammed's SCA claim should be dismissed.

19

I.  **Mohammed's Claim for Intrusion Upon Seclusion (Count 7) Fails to Allege Facts Sufficient to Establish this Claim.**

The Illinois Supreme Court has declined to expressly recognize the tort of unreasonable intrusion upon the seclusion of another. *Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411, 416-18 (1989). However, the opinions of the Illinois Appellate Court which have recognized the tort have instructed that in order to state a claim for intrusion upon seclusion under Illinois law, a plaintiff must allege: "(1) an unauthorized intrusion or prying into the plaintiff's seclusion, (2) the intrusion would be 'highly offensive or objectionable to a reasonable person,' (3) the matters upon which the intrusion occurred were private, and (4) the intrusion caused anguish and suffering." *Vega v. Chi. Park Dist*., 958 F. Supp. 2d 943, 959 (N.D. Ill. 2013) (citing *Busse v. Motorola, Inc.,* 351 Ill. App. 3d 67, 71 (2004)); *Wrenn v. Exelon Generation, LLC*, No. 18 C 2524, 2019 WL 11660918, at *9 (N.D. Ill. Mar. 5, 2019). Critically, "[w]ithout private facts, the other three elements of the tort need not be reached." *Busse*, 351 Ill. App. 3d at 72.

Here, Mohammed does not plausibly allege any requisite element. First, Mohammed's claim fails to satisfy the first prong with respect to Raiser and the Littler Defendants. Indeed, Mohammed's intrusion claim is founded entirely on ambiguous speculation that Uber was "spying" on Mohammed and tracking him through the Apps on his phone. (Compl., ¶¶ 9, 11, 49). The Complaint contains no allegation that Raiser or the Littler Defendants played any role in "tracking" or "spying" on Mohammed or otherwise engaged in any intrusive conduct. Accordingly, Count 7 should be dismissed as to Raiser and the Littler Defendants. Mohammed's claim with respect to Uber fares not better because there is nothing in the Complaint stating that Uber committed any *unauthorized* act upon Mohammed' seclusion, or that Uber placed the Apps on Mohammed's phone without his consent. As such, Mohammed consented to any alleged "intrusion" committed by Uber by virtue of the location functionality inherent in the Apps.

With respect to the second prong, Mohammed cannot refute that his claim is devoid of any allegation that Uber's alleged intrusion is "offensive or objectionable to a reasonable person," and warrants dismissal on this basis alone. (*See* Compl., ¶¶ 47-51). Even if he did, Mohammed has not provided more specific allegations regarding Uber's conduct that would render the conduct "offensive or objectionable" to a reasonable person; he merely alleges that Uber tracked his location through the Apps on his phone. (*Id*. at ¶¶ 9,11). However, Mohammed's location in a publicly-accessible building is observable by the public, and as such, cannot form the basis of an actionable intrusion upon seclusion claim. *See Patel v. Zillow, Inc.,* No. 17-CV-4008, 2017 WL 3620812, at *10 (N.D. Ill. Aug. 23, 2017), *aff'd*, 915 F.3d 446 (7th Cir. 2019) citing *Schiller v. Mitchell*, 828 N.E.2d 323, 329 (2d Dist. 2005) (explaining that if a defendant observed what the public can see, there is no actionable intrusion upon seclusion)).

Mohammed further fails to satisfy the third prong by failing to plead that the matters upon which the intrusion occurred were private. Instead, he merely relies on a conclusory allegation that Uber was tracking his public location. However, Courts have consistently held that obtaining, use of, or disclosure of geolocation information does not create an actionable intrusion upon seclusion claim. *See Vega v. Chicago Park Dist.,* 958 F. Supp. 2d 943 (N.D. Ill. 2013) (dismissing intrusion upon seclusion claim based on investigator's tracking of employee's vehicle to determine whether she was present at work); *see also, e.g.*, *Troeckler v. Zeiser*, No. 14-CV-40, 2015 WL 1042187, at *2-3 (S.D. Ill. Mar. 5, 2015) (dismissing intrusion upon seclusion claim based on use of GPS tracking device); *In re Google Location History Litig.*, 428 F. Supp. 3d 185, 196-99 (N.D. Cal. 2019) (dismissing claims of intrusion upon seclusion as the plaintiffs' location is not a legally protected privacy interest); *In re iPhone Application Litig.*, 844 F.Supp.2d at 1063 ("[e]ven assuming this information was transmitted without Plaintiffs' knowledge and consent… such

21

disclosure [of information including device identifier number, personal data, and geolocation information] does not constitute an egregious breach of social norms").

Finally, Mohammed has failed to sufficiently allege that the intrusion into his privacy caused "anguish and suffering" as required by the fourth prong. *Burns*, 874 N.E.2d at 77. Mohammed's bald assertion that he was caused anguish and suffering or, "mental and physical injury," is not sufficient to survive a motion to dismiss. *See, e.g. McGreal v. AT&T Corp.*, 892 F.Supp.2d 996, 1015-16 (N.D. Ill. 2012) (plaintiff's statement that she felt "angry, humiliated, frustrated and embarrassed" was not sufficient evidence of anguish and suffering to support an intrusion upon seclusion claim) (internal citations omitted). Accordingly, this cause of action should be dismissed.

**J.      Mohammed's Claim for Defamation *Per Se* (Count 8) Fails to State a Claim.**

In order to state a defamation claim in Illinois, Mohammed must present facts showing that (1) Defendants made a false statement about him, (2) Defendants made an unprivileged publication of that statement to a third party, and (3) this publication caused damages. *Green v. Rogers*, 917 N.E.2d 450, 459 (2009). In Illinois, statements must be defamatory "per se," meaning the words used are obviously harmful to the plaintiff's reputation. *Id.* To prove a defamation *per se* claim, Mohammed must establish all three elements cited above and that the comments fall within one of the defamation *per se;* categories. Illinois courts recognize five categories of statements that are considered defamatory per se; at issue here is the category of "words that impute a person has committed a crime." *Green*, 917 N.E.2d at 459. Additionally, while a complaint for defamation *per se* need not set forth the allegedly defamatory words *in haec verba*, the substance of the statement must be pled with sufficient precision and particularity so as to permit initial judicial review of its defamatory content. *Id*.

Mohammed pleads his claim with such ambiguity as to deprive Defendants of their ability

to substantively defend against it. In his Complaint, Mohammed claims that an unnamed security officer told Defendant Romanucci that "Littler and Mendelson" (not a person) "informed him that [Mohammed] is a criminal." (Compl., ¶ 8). Mohammed later claims that unidentified "Defendants" informed "several individuals…that [he] is a criminal," but fails to set forth any specific allegations of defamatory conduct by those defendants. (*Id*. at ¶ 53). At no time does Mohammed identify who exactly made the statement, when, or to whom it was made, and bases his claim entirely off information and belief. Such vague assertions are insufficient to meet the heightened level of precision and particularity required for defamation *per se* claims. *See Coghlan v. Beck*, 984 N.E.2d 132, 145 (1st Dist. 2013) ("A claim of defamation *per se*, however, must be pled with a heightened level of precision and particularity").

Additionally, while words imputing the commission of a criminal offense may be defamatory *per se*, case law is clear that a simple assertion that a person is a "criminal" does *not* meet this standard. *See Dubinsky v. United Airlines Master Exec. Council*, 303 Ill. App. 3d 317, 329–30 (1999) (calling an individual a "crook" is not defamatory). Per the Court:

> In the present case, Richards' statement that Dubinsky was a "crook" was not actionable because it was not made in any specific factual context. One cannot rely on an assumption that those who heard the statement were completely apprised of all the developments in the ESOP controversy so as to create a definitive factual context for the use of the word "crook." Based on the totality of the circumstances, we conclude that this general statement, in the absence of factual context, is a statement of opinion, not objectively verifiable and devoid of factual content.

*Id*. The Complaint contains nothing more than the bare assertion that "Littler and Mendelson" – an undefined and fictional entity – called Mohammed a criminal. (Compl., ¶ 8). Mohammed's allegation is, therefore, insufficient to state a claim under any standard, much less under the heightened pleading requirements Illinois imposes on claims of defamation *per se*.

**K.      Mohammed's Claim for Violation of the ECPA (Count 9) Fails to State a Claim.**

23

Mohammed's claim under ECPA warrants dismissal on several bases. ECPA prohibits the "interception" of "wire, oral, or electronic communications." 18 U.S.C. § 2511(1). The statute defines "intercept" as "the aural or other acquisition of the *contents* of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* at § 2510(4). The "contents" of a communication, in turn, are defined in the statute as "any information concerning the substance, purport, or meaning of that communication." *Id.* at § 2510(8).

Courts agree that certain information about a person, such as his or her name, contact information, location, or other identifying data, is not "content" as defined by ECPA. *See TCYK, LLC v. Does 1-87,* No. 13 C 3845, 2013 WL 5567772, at *3 (N.D. Ill. Oct. 9, 2013) (dismissing ECPA claim where information requested was limited to names, email addresses, addresses, telephone numbers and MAC IP addresses as it was not "content" within the ECPA.); *see also, e.g.*, *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1082 (N.D. Cal. 2015) ("[t]he geographic location of a mobile device at any given time has likewise been deemed to be non-content information."); *Cousineau v. Microsoft Corp.*, 992 F.Supp.2d 1116, 1127 (W.D. Wash. 2012) ("contents" as used in ECPA is not broad enough to encompass geolocation data); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("content" refers to "the intended message conveyed by the communication, and does not include record information" such as "name," "address," and "subscriber number or identity" of an individual). Likewise, it is well-settled that "an interception must be "contemporaneous" with the communication." *United States v. Szymuszkiewicz*, 622 F.3d 701, 705 (7th Cir. 2010), *as amended* (Nov. 29, 2010); *see also Theofel v. Farey-Jones*, 359 F.3d 1066, 1077 (9th Cir. 2004) (interception in the context of ECPA means ""communication contemporaneous with transmission."). "Specifically, Congress did not intend for 'intercept' to apply to 'electronic communications' when those communications are in

'electronic storage.'" *Theofel*, 359 F.3d at 1077.

Mohammed alleges that Uber obtained information about him, including his location, and shared it with the Littler Defendants. (Compl. ¶ 9). He does not (notwithstanding his bare recital of the elements) allege the nature of any specific "communication" that was intercepted, the content of those communications, or any other detail about the communications underpinning the alleged violation of ECPA. As demonstrated above, location, contact, and other customer information is not considered "content" under the ECPA and cannot form the basis of an ECPA claim. Likewise, Mohammed does not allege that Defendants "intercepted" any such communication in a way that was "contemporaneous with transmission," nor provide any facts that could allow an inference of such actions. *Theofel*, 359 F.3d at 1077. Therefore, Mohammed's claim under ECPA should be dismissed.

### L.     Mohammed's Claim of a RICO Violation (Count 10) Fails to State a Claim

As stated above, to survive a dismissal motion, a claim must be pled with sufficient factual allegations, rather than legal conclusions, to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79. As to Count 10, which alleges a violation of RICO, Mohammed's Complaint is so devoid of the necessary factual allegations that it deprives the Defendants of fair notice as to how, exactly, they purportedly violated RICO.

The federal RICO statute creates a cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962," which prohibits persons from engaging in a pattern of racketeering. 18 U.S.C. §§ 1964(c), 1962. To establish a claim under RICO, the plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). To prove a pattern of racketeering, a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S.

229, 239 (1989). For continuity to exist, there must be a threat of future criminal conduct. *See id.* at 242; *Roger Whitmore's Auto. Servs., Inc. v. Lake Cty., Illinois*, 424 F.3d 659 (7th Cir. 2005). If the alleged scheme involved a single scheme and a single goal, the continuity requirement is not met. *See, e.g., Talbot v. Robert Matthews Distributing Co.,* 961 F.2d 654, 663 (7th Cir. 1992) (finding no pattern where a single scheme occurred over a period of years); *Equity Residential v. Kendall Risk Mgmt., Inc.,* No. 04 C 3812, 2005 WL 1026686, at *10 n. 7 (N.D. Ill. Apr. 12, 2005) (Gettleman, J.) (a "lengthy scheme alone is not sufficient to demonstrate a pattern"). Indeed, as courts have long recognized, satisfying the "pattern" element is no easy feat. *See Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) (emphasizing that "courts carefully scrutinize the pattern requirement"); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 820 (7th Cir. 1991) ("Satisfying the pattern requirements—that there be continuity and relationship among the predicate acts—is not easy in practice.").

Mohammed's RICO claim appears to be based on several alleged predicate acts, including: (1) wire fraud, under 18 U.S.C. § 1343; (2) witness tampering, under 18 U.S.C. § 1512; (3) retaliation against a witness, under 18 U.S.C. § 1513; (4) a "threat of kidnapping and bodily injury" by the unnamed Security Officer; and (5) obstruction of justice (by virtue of malicious prosecution), under 18 U.S.C. § 1503. (Compl., ¶¶65-68). This claim fails on several bases.[15]

First, Mohammed does not adequately allege a distinct RICO "person" and "enterprise," which is a requirement for his claim. Included within the alleged wrongdoers Mohammed identifies are Littler, Uber, and Rasier, along with Individual Defendants in their capacity as officers or employees of those entities. (Compl. ¶ 62). As the Fifth Circuit has stated, "officers or

---

[15] Mohammed's allegations on this claim stem either from a (purportedly) unfavorable ruling in a prior lawsuit, or from his removal from an office building by an unnamed Security Officer. (Compl., ¶¶ 6-7). As explained in further detail elsewhere in this Motion, these claims are meritless, and Mohammed's RICO claim similarly fails, where there are no plausible predicate acts to form the basis of such a claim.

employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). Thus, all allegations regarding the Individual Defendants' conduct in the course of their employment fail to state a civil RICO claim because they fail to allege a distinct RICO "person" and "enterprise."[16]

Likewise, Mohammed cannot establish a "pattern of racketeering activity." Taking Mohammed's allegations at face value, Defendants' actions have but one goal: to harm Mohammed. (*See generally*, Compl.). Yet courts have refused to find a pattern of racketeering activity on this exact premise. *See Talbot*, 961 F.2d 654 at 663; *see also Courser v. Allard*, 969 F.3d 604, 621 (6th Cir. 2020) ("[i]f the alleged scheme involved a single scheme and a single goal, the continuity requirement is not met."); *see also Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (plaintiff's allegations failed to satisfy the "continuity prong of RICO's pattern requirement" when they involved a limited purpose, and one set of victims). In fact, the combination of a single scheme, single injury and few victims does not satisfy the continuity aspect of a pattern of racketeering. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 977 (7th Cir. 1986); *see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) ("the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiffs to state a RICO claim."). Thus, Mohammed's claim should be dismissed for his failure to establish any "pattern of racketeering activity."

### M. Mohammed's State and Federal Claims for Malicious Prosecution (Counts 11 and 12) Fail Because Mohammed Does Not Plead The Requisite Elements.

The tort of malicious prosecution has five elements: "(1) the commencement or

---

[16] To the extent the Court indulges Mohammed's bizarre allegations about Uber, Littler, Raiser, and other corporate Defendants, these allegations suffer from other shortcomings described in this Motion.

continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016).

Mohammed does not assert *any* of the elements necessary for a malicious prosecution action. First, Mohammed does not assert, nor could he, that any of the Defendants "commenced or continued" civil litigation against him. To the contrary, Mohammed admits that his malicious prosecution claims are based on Defendants' actions set forth in his RICO claim (which is nonsensical) (Compl. ¶ 78), and Defendants' filing of their "Response to the Plaintiff's Motion to Vacate the Arbitration award in Mohammed I." (*Id*. at ¶ 82). As Mohammed concedes, it was not Defendants who commenced or continued a judicial proceeding against Mohammed; it was Mohammed. (*Id*. at ¶ 3). Because defending against Mohammed's suit cannot, as a matter of law, amount to malicious *prosecution* of a suit, Counts 11 and 12 should be dismissed.

Further, Mohammed does not assert that the foregoing litigation has terminated,[17] that the litigation terminated in his favor, [18] that Defendants acted with malice in mounting their defense to his lawsuit, or that Defendants lacked probable cause to mount a defense to his suit as necessary to state a claim for malicious prosecution. Accordingly, Counts 11 and 12 for malicious prosecution should be dismissed.

### N. Mohammed's Claim for Fraudulent Misrepresentation (Count 13) Fails As Mohammed Has Not Pled Any of the Requisite Elements.

---

[17] The only proceeding that Mohammed references as having been completed was not an independent civil proceeding but, rather, a hearing within the Mohammed I case to determine whether Mohammed's claims in Mohammed I were subject to arbitration and Mohammed *admits that the hearing terminated in Defendants' favor.* (Compl. ¶ 66).

[18] In fact, subsequent to the filing of this suit, the Court terminated Mohammed I upon a defense verdict. *See* Case No. 16-cv-02537, (Dkt. 102) (denying Mohammed's motion to vacate the arbitration award).

To survive a motion to dismiss on a fraudulent misrepresentation claim, Mohammed must adequately plead (1) Defendant made a false statement of material fact; (2) Defendant knew or believed that the statement was false; (3) Defendants intended to induce Mohammed to act upon the statement; (4) Mohammed justifiably acted in reliance upon the statement; and (5) Mohammed suffered damage as a result. *JF Enter., LLC v. Fifth Third Bank,* 824 F. Supp. 2d 818, 823 (N.D. Ill. 2011). Moreover, a party who alleges fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." *Id*. citing Fed. R. Civ. P. 9(b).

Other than a boilerplate recitation of the requisite elements, Mohammed fails to plead any of the elements with sufficient particularity. Rather, he simply asserts that the elements are met by the allegations set forth in his RICO claim (Count 10) and his Malicious Prosecution claim (Count 12). (Compl. ¶¶ 86-87). However, neither count sets forth any action by Defendants that could reasonably constitute "a false statement of fact," nor with such particularity required under the Federal Rules of Civil Procedure.[19] *See* Fed. R. Civ. P. 9(b); (*see* Compl., ¶¶ 62-76, 81-84).

Even assuming that Mohammed's assertion that Defendants offered "false and fabricated" evidence in Mohammed I suffices to state a false statement of fact with particularity, he offers nothing in his Complaint that would meet the remaining prongs of this tort.[20] Given that the statement(s) in question were offered at a hearing in opposition to Mohammed's claims, they could not possibly have been intended to induce reliance *by him* and Mohammed does not plead that they were so intended. (*See* Compl., ¶¶ 86-88). Mohammed does not plead that *he* relied on the

---

[19] As recently described by this court in *RBG Plastic, LLC v. The Webstaurant Store*, No. 1:18-CV-05192, 2021 WL 4146899 at *2 (N.D. Ill. Sept. 13, 2021): "Rule 9(b) requires that [defendant's] counterclaims 'state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" Put differently, the Complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011).

[20] Notably, Mohammed does not assert who made this supposed false statement of fact, relying on a generalized assertion that "Defendants" did. (Compl., ¶ 87, incorporating ¶ 65). That is, he fails to plead this allegation with the requisite particularity and, thus, it is insufficient to stave off dismissal.

supposed misrepresentations nor that his reliance caused him to suffer damages.[21] (*Id.*). He further does not plead that Defendants knew the statements offered were false; rather, he simply asserts that they were. (*Id.*). Mohammed's Fraudulent Misrepresentation claim should be dismissed.

### O. Mohammed's Claim for IIED (Count 14) Does Not Allege "Extreme and Outrageous" Conduct or Anything More than Boilerplate Allegations That Defendants Intended to Inflict Emotional Distress.

"To establish a claim for IIED, a plaintiff must establish that: (1) the conduct involved is "truly extreme and outrageous;" (2) the actor intended that his conduct inflict severe emotional distress, or at least knew that there was a high probability that his conduct would cause severe emotional distress; and (3) the conduct, in fact, caused severe emotional distress." *Benitez v. Am. Standard Cirs., Inc.,* 678 F. Supp. 2d 745, 765–67 (N.D. Ill. 2010). To meet the outrageous threshold of the first prong of an IIED inquiry, a defendant's conduct must be so extreme as to go "beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *U.S. ex rel. Howard v. Urban Inv. Trust, Inc.*, No. 03 CV 7668, 2010 WL 832294, at *5 (N.D. Ill. March 8, 2010) (citation omitted). Whether conduct reaches that threshold "is judged on an objective standard, based on all the facts and circumstances of the particular case." *Shamin v. Siemens*, 854 F. Supp. 2d 496, 511 (N.D. Ill. 2012) (citations omitted).

Here, Mohammed simply has not alleged conduct that goes "beyond all bounds of decency" and which is "utterly intolerable in a civilized community." In fact, Mohammed does not allege what particular conduct *at all* forms the basis of his IIED claim. (Compl., ¶¶ 90-93). Instead, Mohammed broadly and vaguely incorporates the prior 89 paragraphs of his Complaint as the basis for his IIED claim, which is insufficient. *See Shamim v. Siemens Indus., Inc.,* 854 F. Supp. 2d 496, 513 (N.D. Ill. 2012) (IIED claim denied where plaintiff merely alleged she was

---

[21] While Mohammed asserts the supposed misrepresentations caused him injury, he does not plead that the injury was caused by his *reliance on* them. (Compl., ¶ 88).

30

subjected to insults and indignities, which did not rise to the level of extreme and outrageous conduct.) Even assuming that the basis of Plaintiff's IIED claim was Defendants' actions in defending Mohammed's lawsuit in Mohammed I (Compl., ¶ 6), the unidentified security guard's actions on November 10, 2016, (*Id*. at ¶ 7), and Mohammed's unfounded speculation that Uber was "following [his] location" through the App. (*Id*. at ¶ 9) – none of it rises to the level of "extreme and outrageous" conduct necessary to sustain an IIED claim. *See Shamin*, 854 F. Supp. 2d 496.

Further, Mohammed has provided no facts beyond conclusory allegations that Defendants intended their conduct to cause severe emotional distress and that the conduct did, in fact, cause Mohammed severe emotional distress. (Compl., ¶¶90-93). Such boilerplate allegations are insufficient to withstand a motion to dismiss. See *Doe v. Columbia College Chicago*, 299 F.Supp.3d 939, 964 (N.D. Ill. 2017) ("When pleading an IIED claim, a litigant cannot rely on boilerplate allegations that the defendant intended to inflict emotional distress and actually did so."). Therefore, Mohammed's IIED claim should be dismissed.

### P. Mohammed's Claim for Civil Conspiracy (Count 15) Fails Because Each Underlying Claim Fails as a Matter of Law and Fails to Adequately Plead the Elements of this Cause of Action.

While civil conspiracy is a separate cause of action recognized by Illinois courts, it is entirely dependent upon an underlying tort or unlawful activity. *See Nichols Motorcycle Supply, Inc. v. Dunlop Tire Corp.,* No. 93-C-5578, 1994 WL 698486, at *2 (N.D. Ill. Dec. 12, 1994) (plaintiff's conspiracy claim "cannot stand alone without any independent underlying tortious or unlawful conduct."). Because each of Mohammed's other claims fail as a matter of law, Mohammed's civil conspiracy claim must likewise fail.

In fact, this court has found allegations like those in Mohammed's Complaint to be inadequate to establish a civil conspiracy claim. *Id*. at *2 ("[Plaintiff's] civil conspiracy count alleges the general conclusion that the 'numerous actions' of all defendants, as previously pled in

all prior paragraphs, 'constitute an agreement and/or conspiracy to injure [plaintiff's] business and/or drive [plaintiff] out of business' . . . the prior counts of the complaint cannot be read to provide the necessary allegations."). Notably, Mohammed has identified no *facts* demonstrating there was an "agreement" among Defendants, which is a necessary predicate for a conspiracy. (Compl., ¶¶ 94-100); *See McClure v. Owens Corning Fiberglass Corp.*, 188 Ill.2d 102, 133, 720 N.E.2d 242 (1999) ("First, a plaintiff's claim based on Illinois civil conspiracy must include facts tending to show an agreement among the defendants to commit a tortious or unlawful act.").[22] Mohammed asserts only that there was an agreement, without any facts demonstrating formation of an agreement, which is insufficient. *See, e.g., Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Mohammed's civil conspiracy claim must also be dismissed as it is duplicative of other underlying torts that he has separately pled. *See Murphy v. City of Chicago*, No. 14 C 7681, 2015 WL 1746554, at *2 (N.D. Ill. Apr. 15, 2015) ("[I]f a plaintiff bases a state law conspiracy claim on the same tort, which was already separately pled by the plaintiff in the case, the civil conspiracy claim is duplicative . . . and should be stricken.")

## IV. CONCLUSION

WHEREFORE, Defendants Uber Technologies, Inc., Raiser, LLC, Dara Khosrowshahi, Littler Mendelson, P.C., Jody Boquist, and Jennifer Schilling, respectfully request that this Court grant their Motion, dismissing Mohammed's Complaint in its entirety, and granting such further

---

[22] Additionally, a civil conspiracy cannot exist between a company and its agents or employees. *See Kurt v. Platinum Supplemental Ins., Inc.,* No. 19 C 4520, 2021 WL 3109667, at *10–11 (N.D. Ill. July 22, 2021) ("The plaintiffs have not plausibly plead a cause of action for civil conspiracy for two reasons: first, under the intracorporate conspiracy doctrine, 'there can be no civil conspiracy between a corporation's own officers or employees...nor between a corporation and its agents,' and second, because the plaintiffs' allegations regarding Medico's involvement in the alleged conspiracy are too conclusory…to survive a motion to dismiss.").

relief this Court deems equitable and just.

Dated:  November 12, 2021

Respectfully submitted,

**UBER TECHNOLOGIES, INC., RAISER, LLC, DARA KHOSROWSHAHI, LITTLER MENDELSON, P.C., JODY BOQUIST, JENNIFER SCHILLING,**

*/s/ Kerri Feczko*
One of their Attorneys

Jennifer Schilling
jschilling@littler.com
Kerri Feczko
kfeczko@littler.com
LITTLER MENDELSON P.C.
321 North Clark Street, Suite 1100
Chicago, IL  60654
Telephone: 312.372.5520
Facsimile: 313.372.7880
*Attorneys for Defendants Uber Technologies,*
*Inc., Raiser, LLC, and Dara Khosrowshahi*

Jennifer Youpa (*Appearing Pro Hac Vice*)
jyoupa@littler.com
LITTLER MENDELSON P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
Telephone: (214) 880-8100
Kerri Feczko
kfeczko@littler.com
LITTLER MENDELSON P.C.
321 North Clark Street, Suite 1100
Chicago, IL  60654
Telephone: 312.372.5520
Facsimile: 313.372.7880
*Attorneys for Littler Mendelson, P.C., Jody*
*Boquist, and Jennifer Schilling*

## CERTIFICATE OF SERVICE

Kerri Feczko, an attorney, hereby certifies that on November 12, 2021, she caused a copy of ***Defendants' Memorandum of Law in Support of Their Motion to Dismiss*** to be electronically filed with the Clerk of the U.S. District Court, Northern District of Illinois, using the CM/ECF (*electronic case filing*) system, which sent notification via electronic mail of such filing to the all ECF participants of record, including:

ABDUL MOHAMMED
258 East Bailey Rd., Apt. C
Naperville, IL 60565
aamohammed@hotmail.com

Robert R. Stauffer
rstauffer@jenner.com
David Jimenez-Ekman
Djimenez-ekman@jenner.com
Katharine R. McLaughlin
kmclaughlin@jenner.com
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: 312.222-9350
Facsimile: 312.527.0484
*Attorneys for Jenner & Block, LLP, Reid Schar, Megan Poetzel, and Daniel Bobier*

Gina Arquilla DeBoni
gdeboni@rblaw.net
Jason J. Friedl
jfriedl@rblaw.net
ROMANUCCI & BLANDIN, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654
Telephone: 312.458.1000
Facsimile: 312.458.1004
*Attorneys for Antonio Romanucci, and Romanucci & Blandin, LLC*

*/s/ Kerri Feczko*
Kerri Feczko