## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ABDUL MOHAMMED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21 cv 3261 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| JENNER & BLOCK, LLP, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On July 17, 2021, defendants, including Uber Technologies, Inc., Raiser, LLC, and employees of Uber (collectively "the Uber defendants") and the law firm of Littler Mendelson, P.C. and some of its employees (collectively "the Littler Mendelson defendants"), removed this lawsuit from the Circuit Court of Cook County, Law Division. Pro se plaintiff Abdul Mohammed brings fifteen claims against the Uber and Littler Mendelson defendants, among others. The Court presumes familiarity with its February 28, 2022 rulings concerning the other defendants in this lawsuit. Before the Court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the present motion to dismiss in its entirety.

**Background**

Mohammed filed a federal court complaint against Uber and certain Uber employees, along with other defendants, on February 24, 2016, case number 16 C 2537, *Mohammed v. Uber, et al.,* ("*Mohammed I*"). Mohammed had been a driver for Uber starting in October 2014 through June 2015. In *Mohammed I*, the Court granted defendants' motion to compel arbitration and final judgment was entered on September 1, 2021 in favor of Uber.

Construing his pro se allegations liberally, *Harris v. United States*, 13 F.4th 623, 627 (7th Cir. 2021), Mohammed alleges that he had an appointment with the law firm of Romanucci & Blandin, LLC on November 10, 2016. On that day, he went to the Romanucci firm's conference room at 321 North Clark Street in Chicago to meet with attorney Antonio Romanucci. While he was waiting in the conference room, a building security officer and Romanucci entered the room. The security officer informed Mohammed that he had an order from another tenant of 321 North Clark Street, the law firm of Littler Mendelson, to remove him from the building. The security officer then allegedly shoved Mohammed into the elevator to go to the ground floor of the building, pushed him towards the exit of the building, held him by his belt, and threatened him. Thereafter, Mohammed called Antonio Romanucci, who informed him that the Littler Mendelson law firm would not allow Mohammed in the building. Prior to being escorted out of the building, Mohammed alleges that he overheard the security officer say someone at Littler Mendelson called him a criminal.

Mohammed alleges that Littler Mendelson and Uber knew he was in the building on November 10, 2016 because Uber tracks him through its Uber Rider and Driver Apps that he had installed on his phone when he drove for Uber. Mohammed asserts that the November 2016 incident was in retaliation for bringing his earlier lawsuit *Mohammed I*, in which Littler Mendelson represented Uber.

Mohammed is a frequent litigant having filed over twenty lawsuits in the Northern District of Illinois, along with numerous state court cases. Due to his frequent, often frivolous lawsuits, Mohammed is subject to filing bars in different courts, including the United States District Court for the Northern District of Illinois, the United States Court of Appeals for the Seventh Circuit, and Illinois state courts and agencies. *See Mohammed v. Naperville Cmty. Unit Sch. Dist. #203*, No. 19 C 6525, 2021 WL 1253452, at *4 (N.D. Ill. Apr. 5, 2021) (Feinerman, J) (listing cases). As relevant here, the Northern District of Illinois Executive Committee has ordered that all of Mohammed's

2

lawsuits must be reviewed before going forward. After reviewing this case, the Executive Committee allowed this lawsuit to go forward on September 16, 2021.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[A] motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Vergara v. City of Chicago*, 939 F.3d 882, 886 (7th Cir. 2019) (citation omitted). When ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *O'Brien v. Village of Lincolnshire,* 955 F.3d 616, 621 (7th Cir. 2020) (citation omitted).

**Discussion**

In Count I of his pro se complaint, Mohammed alleges an assault and battery claim sounding in tort. Under Illinois law, a plaintiff must bring a claim for assault and battery within two years of the injury. *See* 735 ILCS 5/13-202; *Lynam v. Foot First Podiatry Ctr., P.C.,* 919 F.Supp. 1141, 1149 (N.D. Ill. 1996) (Castillo, J.). As such, Mohammed's assault and battery claim is time-barred because he filed this lawsuit over four years after the November 2016 incident.

Nevertheless, Mohammed argues that defendants fraudulently concealed this cause of action, and thus a five-year limitations period applies under 735 ILCS 5/13-215. This argument is without

3

merit because an assault and battery claim accrues on the day the injury occurred. *See Slabon v. Sanchez*, No. 15 C 8965, 2021 WL 4146909, at *20 (N.D. Ill. Sept. 13, 2021) (Seeger, J.). Here, Mohammed was well aware that he was allegedly assaulted and battered on November 10, 2016. *See Greenhill v. Vartanian*, 917 F.3d 984, 988 (7th Cir. 2019) ("Illinois starts the period of limitations no later than actual discovery, even if the potential defendant tried unsuccessfully to conceal the offense."). His claim in Count I is thus time-barred.

Next, Illinois' aggravated assault and battery statutes are criminal statutes without a private cause of action, therefore, the claims alleged in Count II are untenable because only the government can bring criminal charges. *See Diamond v. Charles*, 476 U.S. 54, 64, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986) ("a private citizen lacks a judicially cognizable interest in the prosecution" of another). In fact, Mohammed voluntarily dismisses Count II.

Similarly, in Count III, Mohammed brings a stalking and aggravated stalking claim under the Illinois Criminal Code, 720 ILCS 5/12-7.3, 5/12-7.4, which criminalize a wide range of conduct. Mohammed cannot bring a civil action for stalking and aggravated stalking because these are criminal statutes that do not authorize a civil right of action. *See Ellison v. Minnear*, No. 08 C 3247, 2008 WL 11432100, at *1 (N.D. Ill. July 7, 2008) (Leinenweber, J.). In his response brief, Mohammed voluntarily dismisses this claim against defendants.

In Count IV, Mohammed asserts a claim under the Illinois Hate Crime Act ("IHCA"), which allows for a civil right of action independent of any criminal prosecution. *See* 720 ILCS 5/12-7.1(c). Although the IHCA does not specifically state a statutory period of limitation, courts have applied the two-year limitations period for Illinois personal injury lawsuits. *See Nihiser v. Lutz*, 15 CV 2102, 2017 WL 5759979, at *4 (C.D. Ill. Mar. 29, 2017) (Bruce, J); *Caudle v. Illinois,* No. 18 CV 50230, 2019 WL 1522641, at *5 n.9 (N.D. Ill. Apr. 5, 2019) (Johnston, J.); *Smith v. Board of Educ. of City of Chicago*, No. 94 CV 6850, 1995 WL 781463, at *3 (N.D. Ill. Aug. 11, 1995) (Holderman, J.). Mohammed was

aware that he was removed from the building on November 10, 2016 through the alleged assault and battery of the security guard. His IHCA claim is therefore untimely. *See Hobley v. Burge*, No. 03 C 3678, 2004 WL 1243929, at *8 (N.D. Ill. June 3, 2004) (Aspen, J.); *Gudino v. Town of Cicero*, No. 02 C 6248, 2003 WL 260707, at *2 (N.D. Ill. Jan. 29, 2003) (Grady, J.).

Next, in Count V, Mohammed alleges a claim under the Computer Fraud and Abuse Act ("CFAA") based on Uber allegedly tracking him through its apps on his iPhone. "The CFAA, 18 U.S.C. § 1030, is primarily a criminal anti-hacking statute," however, "§ 1030(g) provides a civil remedy for any person who suffers damage or loss due to a violation of § 1030." *Fidlar Tech. v. LPS Real Estate Data Sol., Inc.,* 810 F.3d 1075, 1079 (7th Cir. 2016). The CFFA prohibits any person from "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value." 18 U.S.C. § 1030(a)(4). And, § 1030(g) of the CFFA clearly states that "[n]o action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage."

Mohammed's response brief indicates that he knew Uber was following him by intercepting, accessing, monitoring and/or transmitting electronic communication by February 9, 2018, therefore he had until February 9, 2020 to file this claim. It is untimely because he brought this action in January 2021. The Court grants defendants' motion to dismiss Count V.

Likewise, Mohammed contends that defendants violated the Stored Communications Act ("SCA") in Count VI. "The SCA provides a private cause of action for unauthorized, intentional access to communications held in electronic storage." *Joseph v. Carnes*, 108 F.Supp.3d 613, 616 (N.D. Ill. 2015) (Darrah, J.) (citation omitted). The SCA provides that a "civil action under this section may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation." 18 U.S.C. § 2707(f). As discussed,

5

Mohammed knew Uber was spying on him by February 9, 2018. As such, Mohammed's SCA claim is untimely under the two-year limitations period because he was aware of the cause of action in February 2018 and filed this lawsuit in January 2021. *See In re Copper Antitrust Litig.*, 436 F.3d 782, 791 (7th Cir. 2006) ("In order for a plaintiff to benefit from tolling for fraudulent concealment, he must show 'that he neither knew nor, in the exercise of due diligence, could reasonably have known of the offense.") (citation omitted).

In his next claim, Mohmmed alleges a state law intrusion upon seclusion claim in Count VII based on Uber allegedly spying on him via Uber's apps when he was at 321 North Clark Street on November 10, 2016. The Illinois Supreme Court recognized the tort of intrusion upon seclusion in 2012, which follows the Restatement (Second) of Torts § 652B: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Lawlor v. North Am. Corp. of Ill.*, 983 N.E.2d 414, 424, 368 Ill.Dec. 1, 11, 2012 IL 112530, ¶¶ 33, 35 (Ill. 2012).

Mohammed's tort claim of intrusion upon seclusion claim fails because he has not alleged that defendants gathered intimate personal or private facts about him, like "family problems, romantic interests, sex lives, health problems, [and] future work plans." *Vega v. Chicago Park Dist.*, 958 F.Supp.2d 943, 959 (N.D. Ill. 2013) (Zagel, J.) (private facts are "facially embarrassing and highly offensive if disclosed."). Instead, Mohammed alleges that Uber knew he was in a building open to the public when he attempted to meet with Antonio Romanucci in November 2016, and thus his allegations do not fulfill the privacy element of his claim. *See McGreal v. AT & T Corp.*, 892 F.Supp.2d 996, 1015 (N.D. Ill. 2012) (Castillo, J.). The Court grants defendants' motion to dismiss Count VII.

In Count VIII, Mohammed brings a defamation per se claim under Illinois law based on

someone from Littler Mendelson telling the security officer that Mohammed was a criminal. Under Illinois law, "[s]tatements are considered defamatory per se when the defamatory character of the statement is apparent on its face; that is, when the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed." *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 206, 180 Ill.Dec. 307, 312, 154 Ill.2d 1, 10 (Ill. 1992). "Section 13-201 of the Code of Civil Procedure provides that a cause of action for defamation or false light publicity must be filed within one year of the cause of action's accrual." *Ciolino v. Simon*, 2021 IL 126024, ¶ 19, 2021 WL 1031371, at *3 (Ill. 2021). Because Mohammed alleges that he overheard the security officer state that Little Mendelsohn called him a criminal on November 10, 2016, his defamation per se claim is barred by the one-year limitations period.

Next, in Count IX, Mohammad has alleged a claim under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.,* which prohibits the intentional interception of any electronic communication. Mohammed bases his ECPA claim on Uber spying on him by intercepting, accessing, monitoring, and transmitting electronic communications via Uber's apps. Under § 2520(e), a civil action under the ECPA may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation. As mentioned, Mohammed was aware of Uber allegedly spying on him in early 2018, and he filed this lawsuit in January 2021. His ECPA claim is untimely.

In Count X, Mohammed alleges a RICO claim. *See* 18 U.S.C. § 1862. Mohammed bases his RICO claim on Uber spying on him via the apps on his iPhone and he alleges that he did not discover this spying until February 9, 2018. He therefore asserts his claim falls within RICO's four-year limitations period. *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).

Setting aside the RICO statute of limitations, the Court turns to Mohammed's substantive

allegations. "Enacted in response to long-term criminal activity, including, of course, acts of organized crime, RICO provides a civil cause of action for private plaintiffs." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir. 2019). RICO "does not cover all instances of wrongdoing," but rather, "it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). "To plead a pattern of racketeering activity, 'a plaintiff must demonstrate a relationship between the predicate acts as well as a threat of continuing activity.'" *Menzies*, 943 F.3d at 337 (citation omitted). To be related, predicate acts must have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.*" Sabrina Roppo v. Travelers Commercial Ins. Co.,* 869 F.3d 568, 589 (7th Cir. 2017) (citation omitted).

In his complaint, Mohammed alleges that the predicate acts for his RICO claim include U.S.C. § 1343 (wire fraud), 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. § 1513 (relating to retaliation against a witness, victim, or an informant) and the threat of kidnapping and bodily injury by the security officer, among other allegations. Viewing his pro se complaint generously, Mohammed does not sufficiently allege that these predicate acts are similar or interrelated nor does he allege facts raising a reasonable inference of the threat of continuing activity. In addition, Mohammed has not addressed defendants' arguments made in their opening brief that he has failed to sufficiently allege a pattern of racketeering activity under the federal pleading standards. As such, Mohammed has waived his argument that he sufficiently alleged his RICO claim. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). The Court grants defendants' motion to dismiss Count X.

In Counts XI and XII, Mohammed asserts two malicious prosecution claims under Illinois law, but has since voluntarily dismissed these malicious prosecution claims because *Mohammed I* did not terminate in his favor. *See Barnes v. City of Centralia, Ill.*, 943 F.3d 826, 833 (7th Cir. 2019).

Mohammed alleges a fraudulent misrepresentation claim under Illinois law in Count XIII. "In a claim of fraudulent misrepresentation, a plaintiff must establish the following elements: (1) a false statement of material fact, (2) known or believed to be false by the person making it, (3) an intent to induce the plaintiff to act, (4) action by the plaintiff in justifiable reliance on the truth of the statement, and (5) damage to the plaintiff resulting from such reliance." *Lewis v. Lead Indus. Assoc.*, 178 N.E.3d 1046, 1055–56, 449 Ill.Dec. 195, 204–05, 2020 IL 124107, ¶ 30 (Ill. 2020).

In his complaint, Mohammed alleges defendants presented false and fabricated evidence in *Mohammed I*. There are no allegations that he relied on these allegedly false statements or fabricated evidence nor that he was induced to act based on these alleged falsehoods. The Court thus dismisses Mohammed's fraudulent misrepresentation claim as alleged in Count XIII.

Next, Mohammed brings an Illinois intentional infliction of emotional distress ("IIED") claim based on the November 2016 incident in Count XIV. The applicable statute of limitations for an IIED claim in Illinois is two years. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85, 207 Ill.2d 263, 278 (Ill. 2003); 735 ILCS 5/13–202. Mohammed's IIED claim is untimely because he was aware of his claim on November 2016. Moreover, Mohammed's fraudulent concealment argument based on his Illinois Department of Human Resources Charge, number 2017CP2125, does not save the day because he withdrew this charge in September 2017. Thus, assuming September 2017 is when he discovered his IIED claim, his claim became untimely in September 2019.

Last, in Count XV, Mohammed alleges an Illinois civil conspiracy claim against all of the defendants. "Under Illinois tort law, a civil conspiracy requires '(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by

unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.'" *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017) (citation omitted).

Because Mohammed has failed to adequately allege any claims against any of the defendants, they cannot be held liable for civil conspiracy under Illinois law. *See Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) ("[A] conspiracy is not an independent tort. Where, as here, a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails.") (citation omitted). The Court grants defendants' motion and dismisses Count XV.

**Conclusion**

For the foregoing reasons, the Court grants defendants' motion to dismiss all counts in plaintiff's complaint with prejudice because any amended complaint would be futile [36]. Civil case terminated.

IT IS SO ORDERED.

Date: 3/2/2022

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge